**Narine Mkrtchyan, Esq. (SBN 243269)**
**MKRTCHYAN LAW**
655 N. Central Ave, Suite 1700
Glendale, CA 91203
Telephone:   (818) 388-7022
Web:         www.narinelaw.com
Email:       narine57@gmail.com

Attorney for Plaintiff Jeremy Holloway

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEREMY HOLLOWAY,<br><br>                    Plaintiff,<br><br>    vs.<br><br>COUNTY OF ORANGE, DEPUTY CHAD RENEGAR, individually and as a peace officer, DEPUTY JOEL GONZALEZ, individually and as a peace officer, DEPUTY KEVIN PAHEL, individually and as a peace officer, DEPUTY BRANDON BILLINGER, individually and as a peace officer, DEPUTY MARK BORBA, individually and as a peace officer, DEPUTY JAMESON GOTTS individually and as a peace officer, DEPUTY JUSTIN GUNDERSON, individually and as a peace officer, and DOES 1-10.<br><br>                    Defendants. | No. 8:19-cv-01514-DOC-DFM<br><br>***SECOND AMENDED* COMPLAINT FOR DAMAGES**<br><br>1. Violation of Civil Rights (42 U.S.C. §1983)<br>2. *Monell* Claim (42 U.S.C. §1983)<br><br><br>**DEMAND FOR JURY TRIAL** |

## JURISDICTION

1.      Jurisdiction of this court is invoked under 28 U.S.C. §§ 1343, (1), (2), (3) and (4). This action at law for money damages arises under Title 42 U.S.C. Section 1983 and the United States Constitution, the laws of the State of California and common law principles to redress a deprivation under color of state law of rights, privileges and immunities secured to Plaintiff by said statutes, and by the Fourth, and Fourteenth Amendments of the United States Constitution.

**ALLEGATIONS COMMON TO ALL CAUSES OF ACTION**

2. At all times herein mentioned, Plaintiff JEREMY HOLLOWAY was a 41-year old homeless resident of the County of Orange.

3. At all times herein mentioned Deputy CHAD RENEGAR, Deputy JOEL GONZALEZ, Deputy KEVIN PAHEL, Deputy BRANDON BILLINGER, Deputy MARK BORBA, Deputy JAMESON GOTTS, Deputy JUSTIN GUNDERSON, and DOES 1-10, inclusive and each of them, were employees of the COUNTY OF ORANGE, and the ORANGE COUNTY SHERIFF'S DEPARTMENT.

4. Defendant COUNTY OF ORANGE (hereinafter referred to as "COUNTY") is and at all times herein mentioned has been a public entity and an incorporated county duly authorized and existing as such in and under the laws of the State of California; and at all times herein mentioned, Defendant COUNTY has possessed the power and authority to adopt policies and prescribe rules, regulations and practices affecting the operation of the ORANGE COUNTY SHERIFF'S DEPARTMENT, ("OCSD") and particularly said Department's Patrol, Internal Investigations and Training and Personnel Divisions and other operations and subdivisions presently unidentified to Plaintiff, and their tactics, methods, practices, customs and usages related to internal investigations, personnel supervision and records maintenance, the use and deployment of dangerous weapons, the use of force, and powers of arrest by its rank and file.

5. Plaintiff is informed and believes and thereon alleges that Deputy CHAD

RENEGAR, Deputy JOEL GONZALEZ, Deputy KEVIN PAHEL, Deputy BRANDON BILLINGER, Deputy MARK BORBA, Deputy JAMESON GOTTS, and Deputy JUSTIN GUNDERSON, and each of the Defendants designated as a DOE, is intentionally and negligently responsible in some manner for the events and happenings herein referred to, and thereby proximately caused injuries and damages as herein alleged. The true names and capacities of DOES 1 through 10, inclusive, and each of them, are not now known to Plaintiff who therefore sues said Defendants by such fictitious names and will be added to this action as provided by California Code of Civil Procedure Section 484 and FRCP Section 15.

6. Defendants, and each of them, did the acts and omissions hereinafter alleged in bad faith and with knowledge that their conduct violated well-established and settled law.

7. On January 21, 2018 at or around 2:00 am 41-year old Plaintiff JEREMY HOLLOWAY, a then-homeless veteran of the United States Marine Corps, was camping at O'Neill Regional Park in Trabuco Canyon, Orange County and sleeping peacefully in a tent with his dog. All his personal belongings were at his campsite and in his truck. His sleep was suddenly interrupted when he was awakened by Defendants Deputy CHAD RENEGAR, Deputy JOEL GONZALEZ, and Deputy KEVIN PAHEL who directed their flashlights at JEREMY while demanding he come out of his tent. The deputies informed JEREMY that they were following up on a domestic violence complaint for which he was a suspect. In stark contrast to the deputies' accusations, however, JEREMY had been sleeping at the campsite with his dog the entire evening, making it impossible for him to have been involved in any domestic dispute. As at least one Defendant continued to question JEREMY without a Miranda warning, Deputy

CHAD RENEGAR with the assistance of at least one other defendant, searched JEREMY's belongings in his tent without his consent, tossed and turned everything around, knowingly violating JEREMY's Fourth Amendment rights. In spite of this clear rights violation, JEREMY continued to cooperate with the officers and answer their questions for several minutes before they left him alone.

    Once the officers left, JEREMY walked to the ranger station to make a complaint about the incident. He also told the family next to his camp to tell the deputies that the noise was coming from their campsite as he had heard a woman screaming from their camp that night. As he approached the station, he noticed that two police SUVs remained parked near the ranger station. Within minutes, additional police SUVs began to circle around where he was standing. Prevented from complaining to the ranger station by their presence, in fear JEREMY began to walk back towards his campsite. Suddenly, approximately 10 police officers, including Deputy CHAD RENEGAR, Deputy JOEL GONZALEZ, Deputy KEVIN PAHEL, Deputy BRANDON BILLINGER, Deputy MARK BORBA, Deputy JAMESON GOTTS, and Deputy JUSTIN GUNDERSON ran towards JEREMY with their guns drawn and ordered him to put his hands behind his head. He complied with their commands to step away from the tent and put his hands up, but asked them 'Why are you doing this to me?' JEREMY was then surrounded by Deputies RENEGAR, GONZALEZ, PAHEL, BILLINGER, BORBA, GOTTS, and GUNDERSON and became frightened as he heard one of the deputies repeatedly order his colleagues, "tase him!" Suddenly and without provocation, at least one Defendant punched JEREMY on the left side of his face, causing him to fall to the ground. Immediately after his fall, he had deputies get on top

of him while choking him and kneeing him in the temple, maliciously causing him pain and suffering. While on the ground already detained, he was shot with a taser approximately five times. As he lay helpless on the ground bleeding profusely, he was ruthlessly attacked from all sides, and could feel the right side of his face get kneed and his head get kicked multiple times. JEREMY then experienced a violent blow to his temple, which caused him to temporarily lose consciousness. As Deputies RENEGAR, GONZALEZ, PAHEL, BILLINGER, BORBA, GOTTS, and GUNDERSON battered JEREMY, he continued to get shocked by a taser.

When Deputies RENEGAR, GONZALEZ, PAHEL, BILLINGER, BORBA, GOTTS, and GUNDERSON'S relentless attack finally ceased, JEREMY was left with bruised ribs and legs, head injury, severely bleeding and swollen face, lost eyesight vision, severe pain in his back, and periodic loss of consciousness. He was also under a severe emotional distress. Understanding the severity of the injuries that Defendants had inflicted during their violent attack, Deputies RENEGAR, GONZALEZ, PAHEL, BILLINGER, BORBA, GOTTS, and GUNDERSON turned JEREMY back on his stomach, handcuffed him, and had him transported to the emergency room at Mission Hospital in Mission Viejo by Deputies Carlos Barrientos and Matthew Brown after JEREMY was briefly interviewed by Sergeant Rawlings. The Sergeant as the only supervising officer arriving at scene grossly minimized the extent and scope of injuries by reporting them as 'minor scratches.'

At the hospital, JEREMY was treated for removal of taser probes and a number of injuries, including an eyelid laceration which required sutures, cervical strain, a closed head injury, and a rib contusion. After spending the night in the hospital, he was transported by

Deputies RENEGAR, GONZALEZ, and PAHEL to the County Jail in Santa Ana where they made the decision to book him on false felony charges of California Penal Code Sec. 69, Resisting an Executive Officer and 243(b), Battery on a Peace Officer based on false claims that he used force or the threat of force against officers. Deputies RENEGAR, GONZALEZ, PAHEL, BILLINGER, BORBA, GOTTS, and GUNDERSON then formed a quick meeting of the minds to author false police reports and/or refused to provide with exculpatory information, to justify their brutality and made a recommendation for felony criminal charges filed against JEREMY.  JEREMY remained incarcerated for three full days before he bailed out, and during that time, he was ridiculed and sexually harassed in jail by deputies. His complaint in jail against deputies went nowhere. Furthermore, Deputies RENEGAR, GONZALEZ, PAHEL, BILLINGER, BORBA, GOTTS, GUNDERSON confiscated his camping equipment and injured his primary companion, his dog. In an implicit admission of the false nature of the Defendants' allegations, the Orange County District Attorney ultimately declined to file charges against JEREMY, but only after JEREMY had expended sums to retain an attorney to represent him in criminal court. While no citizen should be subjected to such inhumane treatment by officers, the sacrifices JEREMY has made to serve his country make the mistreatment he experienced all the more reprehensible.

On May 23-24, 2018 JEREMY returned to O'Neill Regional Park in hopes that he could camp there peacefully as he had prior to the incident in January. As he was working on his car, between 5 and 6 officers, OCSD Deputies approached JEREMY and began verbally harassing him and searching his vehicle and his camp. JEREMY was immediately terrified and feared for

his life as he recognized that between 1 and 2 of the officers were the same deputies who had attacked him during the previous incident in January. This second encounter, in tandem with the violent attack on January 21, 2018, permanently impacted JEREMY's emotional well-being and sense of safety and security. Several weeks after this second encounter JEREMY vowed to never return to the O'Neill Regional Park and packed his belongings and moved to Pennsylvania, where he currently receives ongoing treatment from the Department of Veteran's Affairs for his mental and physical injuries, including vision loss, headaches, backache, and severe emotional distress stemming from Defendants' brutal beating.

JEREMY retained an attorney and filed a state law tort claim for damages on July 10, 2018. In a letter dated July 13, 2018, JEREMY was notified that his tort claim had been referred to the County of Orange Risk Management Office for processing and recommendation. In a letter dated August 29, 2018 the County of Orange Risk Management Office notified JEREMY that its investigation of his attack had been completed and disclosed no negligence on behalf of the County of Orange.

Through his lawyer JEREMY also filed a formal citizen complaint by a letter directed to OCSD Chief policymaker Sheriff Coroner Sandra Hutchens on April 24, 2018. JEREMY was not interviewed regarding his complaint, nor was asked to provide any supporting documentation. In a letter dated July 4, 2018, Sheriff Captain Sheryl Dubsky notified Jeremy that the unwarranted violence inflicted on him did not violate the Department's policies or procedures or otherwise fail to meet its expectations, while adding, "I do feel the situation may have been handled better." On information and belief, none of the Defendants who attacked

JEREMY have been disciplined for their actions. Through these acts and omissions, the OCSD and the County of Orange have effectively ratified the egregious misconduct and unlawful police practices, as it has been their long-standing custom and practice with respect to other detainees and citizens.

**FIRST CAUSE OF ACTION**
**(VIOLATION OF CIVIL RIGHTS- UNREASONABLE SEARCH AND SEIZURE, EXCESSIVE FORCE, FALSE ARREST, CONSPIRACY TO DEPRIVE CONSTITUTIONAL RIGHTS – 42 U.S.C. § 1983)**
**(By Plaintiff Against All Individual Defendants)**

8. Plaintiff refers to and re-pleads each and every allegation contained in paragraphs 1 through 7 of this complaint, and by this reference incorporate the same herein and make each a part hereof.

9. This action at law for money damages arises under Title 42 U.S.C. § 1983 and the United States Constitution, the laws of the State of California and common law principles to redress a deprivation under color of state law of rights, privileges and immunities secured to Plaintiff by said statutes, and by the Fourth, and Fourteenth Amendments of the United States Constitution.

10. Commencing at or about the aforementioned date and place, without cause or

justification, and acting under color of law, Defendants DEPUTY CHAD RENEGAR, Deputy JOEL GONZALEZ, Deputy KEVIN PAHEL, Deputy BRANDON BILLINGER, Deputy MARK BORBA, Deputy JAMESON GOTTS, Deputy JUSTIN GUNDERSON and DOES 1-10, inclusive and each of them, intentionally and maliciously deprived Plaintiff of rights secured to him by the Fourth, and Fourteenth Amendments to the United States Constitution in that Defendants, and each of them, subjected Plaintiff to unreasonable detention, unreasonable search, false arrest, and unreasonable force as they in concert detained, searched, brutally battered, injured and arrested Plaintiff without probable cause or justification.

11.     The aforementioned acts and omissions were committed in accordance with widespread policies, practices and customs maintained by COUNTY and OCSD as elaborated hereinafter at paragraphs 18-23.

12.     Defendants, and each of them, quickly and spontaneously reached meeting of minds to carry out and perpetrate the mutually supportive conspiracy to deprive Plaintiff of his rights by participating in a corrupt effort to search and arrest Plaintiff without probable cause, to deploy the use of unreasonable force against him and falsify reports to justify their actions.

13.     As a proximate result of the aforesaid acts and omissions of Defendants, and each of them, Plaintiff sustained great physical and mental pain and shock to his nervous system, fear, anxiety, torment, degradation and emotional distress.

14.     By reason of the aforementioned acts and omissions of Defendants, and each of

them, Plaintiff incurred medical expenses in an amount as proved.

15. In addition, by reason of the aforementioned acts and omissions of Defendants, and each of them, Plaintiff was kept from attending to his usual occupations, and has suffered loss and impairment of earnings and employment opportunities all to his damage in an amount as proved.

16. By reason of the aforementioned acts of Defendants, and each of them, Plaintiff was compelled to secure the services of an attorney at law to redress the wrongs hereinbefore mentioned and by virtue thereof, Plaintiff is indebted and liable for attorney's fees.

17. The aforementioned acts and omissions of Defendants were committed by each of them knowingly, willfully and maliciously, with the intent to harm, injure, vex, harass and oppress Plaintiff with a conscious disregard of Plaintiff's constitutional rights and by reason thereof, Plaintiff seeks punitive and exemplary damages from Defendants, and each of them, (except Defendant COUNTY) in an amount as proved.

## SECOND CAUSE OF ACTION
**(UNLAWFUL CUSTOM AND PRACTICE UNDER SECTION 1983)**
**(By Plaintiff Against Defendant COUNTY)**

18. Plaintiff refers to and re-pleads each and every allegation contained in paragraphs 1 through 17 of this complaint, and by this reference incorporate the same herein and make each a part hereof.

19. Defendant COUNTY is and at all times herein mentioned has been a public entity and an incorporated municipality duly authorized and existing as such in and under the laws of the State of California; and at all times herein mentioned, Defendant COUNTY, possessed the power and authority to adopt policies and prescribe rules, regulations and practices affecting the operation of the OCSD and its tactics, methods, practices, customs and usages related to internal investigations, personnel supervision and records maintenance, and the proper uses of force by its rank and file, generally.

20. At all times herein mentioned, Defendants, and each of them, were employees acting under the COUNTY's direction and control, who knowingly and intentionally promulgated, maintained, applied, enforced and suffered the continuation of policies, customs, practices and usages in violation of the Fourth and Fourteenth Amendments respectively to the United States Constitution, which customs, policies, practices and usages at all times herein mentioned required and encouraged the employment, deployment and retention of persons as peace officers who have demonstrated their brutality, dishonesty, bigotry, and numerous other serious abuses of their powers as peace officers in the employment of the COUNTY and OCSD.

21. Defendant COUNTY knowingly maintains and permits official sub-rosa policies or customs of permitting the occurrence of the kinds of wrongs set forth above, by deliberate indifference to widespread police abuses, failing and refusing to impartially investigate,

discipline or prosecute peace officers who commit acts of felonious dishonesty and crimes of violence, each ratified and approved by COUNTY and OCSD.

22. The unconstitutional policies, practices or customs promulgated, sanctioned or tolerated by Defendants COUNTY and OCSD include, but are not limited to:

(1) Defendant COUNTY, and OCSD had knowledge, prior to and since this incident, of repeated allegations of abuse and assaultive misconduct toward detainees and arrestees and refused to enforce established administrative procedures to ensure the safety of detainees and arrestees. Specifically, COUNTY and OCSD knew Defendants Deputy CHAD RENEGAR, Deputy JOEL GONZALEZ, Deputy KEVIN PAHEL, Deputy BRANDON BILLINGER, Deputy MARK BORBA, Deputy JAMESON GOTTS, Deputy JUSTIN GUNDERSON, and DOES 1-10, inclusive and each of them, had in the past committed acts of police abuse, dishonesty and prevarication against members of the public, most of them members of protected minority classes. COUNTY and OCSD failed to train, discipline and supervise Defendants and further exonerated them of any wrongdoing without proper investigation of Plaintiff's citizen complaint.

(2) On August 19, 2018 an OCSD dashcam video caught Orange County Sheriff's Deputies Michael Devitt and Eric Ota repeatedly punching a motorist in the face while apprehending him for misdemeanor intoxication. Mohamed Sayem was sleeping in his vehicle when officers approached to ask for his identification. When Sayem did not comply and moved his left leg out of the car, Officer Devitt placed his hand on him, which upset

Sayem. When Sayem asked the Deputy not to touch him and attempted to pull away, Devitt responded by violently striking Sayem in the face at least 3-4 times, with the force causing him to fall to the ground. When Sayem asked the deputies if they were going to shoot him, Officer Ota responded that he'd "like to." Despite video footage indicating that officers were the sole perpetrators of violence, the deputies falsely arrested and charged Sayem with felony resisting arrest, to which he has plead not guilty. https://ktla.com/2018/10/19/video-assistant-public-defender-alleges-excessive-force-in-stanton-arrest-sheriffs-department-stands-behind-deputy/; https://www.latimes.com/local/lanow/la-me-ln-deputy-force-20181018-story.html.

(3) On October 12, 2017 Orange County Sheriff's Deputies Cortes and Sheek deployed excessive force against an unarmed man who suffered from mental illness and had no criminal history. One of Mark Hanalei Matias' neighbors had contacted law enforcement to complain that Matias, after getting into a verbal altercation with another neighbor, retreated into his house, came back outside with a firearm, and then returned inside. In making his complaint to the police, the neighbor emphasized that Matias never pointed the firearm at anyone nor threatened them with it, and indicated that Matias suffered from mental health challenges. Despite this information, deputies notified a SWAT team and upon arriving to Matias' residence they ordered him to come out of his home. Deputy Cortes proceeded to fire at least three "less lethal" shotgun rounds at Matias' front torso and back, and as Matias attempted to retreat to protect himself from further violence Deputy Sheek deployed a K-9 to attack Matias, resulting in severe injuries to his left wrist. Although video footage of the incident shows Matias calmly engaging with deputies and complying with their orders, Matias was falsely charged with resisting arrest in an effort to cover up the violation of his civil rights. Mark Hanalei Matias v. County of Orange et al No. 8:18-cv-

02209-AG-KES; https://ocweekly.com/oc-deputies-sued-for-unneccessarily-shooting-and-launching-k-9-attack-on-disabled-man/.

(4)     Tragically, many of these unnecessarily violent encounters with Orange County Sheriff's Deputies have resulted in civilian fatalities over the past several years. In April 2018, 33-year-old Cristobal Solano had been transported to the county jail after being arrested on a disturbing the peace-related charge in Tustin. During intake, Orange County Sheriff's Deputies became frustrated when Solano could not open his mouth wide enough for them to conduct an oral cavity search. In response, at least seven deputies forcefully shoved Solano against the cell wall, violently pushed his face down onto a concrete bunk, and placed their collective weight of more than 1,000 pounds onto him as he pleaded for them to stop and stated he could not breathe. Solano became unresponsive and was pronounced dead two days later. M. H. et al v. County of Orange et al 8:19-cv-00549-JVS-ADS; https://ocweekly.com/orange-county-sheriff-jail-death/.

(5)     On August 20, 2018 Orange County Sheriff's Deputies unlawfully detained and arrested 23-year-old Andru Maldonado. Witnesses to the incident stated that Maldonado had merely been "acting strange" inside shops, was walking through traffic, and appeared to be in need of psychological help. When deputies arrived to the scene, they deployed multiple electroshocks from a taser rather than attempt to address his mental health needs. After deploying the taser, deputies failed to timely summon medical attention, which contributed to Maldonado's untimely death. Alisha Maldonado v. County of Orange et al. No. 8:19-cv-00883-JLS-JDE; https://ocweekly.com/deputy-taser-death-orange-county/.

(6) In February 2018 deputies were called to the residence of Paul Mono, a 65-year-old retired cartoonist and screenwriter who was suffering a mental crisis due to the increasing loss of his vision. During a meeting with his real estate agent Mono had retrieved an antique revolver and began waving it around. The real estate agent persuaded him to put it down and did not believe it was loaded. When officers arrived to the scene, instead of taking time to assess the situation they shot through the windows and doors 14 times, fatally shooting Mono and narrowly missing his wife. Susan Peck et al v. County of Orange et al. No. 2:19-cv-04654-DSF-SS; https://www.latimes.com/local/lanow/la-me-blind-man-lawsuit-sheriffs-killed-20190529-story.html. Other notable recent incidents include the 2013 fatal shooting of Connor Zion, whom officers shot nine times and stomped on his head as he lay on the ground (https://www.usnews.com/news/best-states/california/articles/2019-01-24/jury-california-deputy-used-excessive-force-in-shooting; https://abc7.com/$11-million-settlement-reached-in-oc-excessive-force-case/5335263/; https://www.nbclosangeles.com/news/local/Federal-Judge-Upholds-360k-Verdict-to-Mom-of-Man-Killed-by-Deputy-508622741.html) and Brandon Lee Witt, who was shot by Deputy Nicholas Petropulos while sitting in a parked car outside an Extended Stay America motel on Feb. 15, 2016 while being apprehended for a missing license plate on his vehicle. (https://www.latimes.com/local/lanow/la-me-ln-oc-sheriff-shooting-lawsuit-20190430-story.html; https://www.ocregister.com/2019/04/29/jury-awards-3-4-million-to-parents-of-man-killed-by-sheriffs-deputy-in-yorba-linda-finds-officer-used-excessive-force/.)

(7) Defendant COUNTY and OCSD failed to do proper background investigations of Defendants under Cal. Gov. Code §1031 before hiring for employment as peace officers.

(8)     Defendant COUNTY and OCSD refused to take citizen complaints, interview involved officers and adequately discipline individual officers and employees found to have committed similar acts of abuse and misconduct.

(9)     Defendant COUNTY and OCSD refused to competently and impartially investigate allegations of abuse and misconduct alleged to have been committed by Defendants and other OCSD deputies;

(10)    Defendant COUNTY and OCSD reprimanded, threatened, intimidated, demoted and fired officers who reported acts of abuse by other deputies;

(11)    Defendant COUNTY and OCSD covered up acts of misconduct and abuse by OCSD deputies and sanctioned a code of silence by and among officers;

(12)    Defendant COUNTY and OCSD rewarded officers who displayed aggressive and abusive behavior towards detainees and arrestees;

(13)    Defendant COUNTY and OCSD failed to adequately train and educate officers in the use of reasonable and proper force and failed to enforce the department's written regulations with respect to uses of force;

(14)    Defendant COUNTY and OCSD and failed to adequately supervise the actions of officers under their control and guidance;

(15) Defendant COUNTY and OCSD condoned and participated in the practice of prosecuting known groundless criminal charges for the purpose of insulating the County of Orange, OCSD and its officers from civil liability and reducing or dismissing criminal charges against individuals in return for release from civil liability;

(16) Defendant COUNTY and OCSD condone and encourage a conspiracy of silence among its employees for the purpose of concealing and furthering wrongful and illegal conduct by its employees;

(17) Defendant COUNTY and OCSD engaged in the practice and custom of withholding from criminal defendants, judges and prosecutors, known Brady evidence favorable to defendants and unfavorable to its officers in violation of law and the Constitution.

(18) Defendant COUNTY and OCSD fostered and encouraged an atmosphere of lawlessness, abuse and misconduct, which by January 21, 2018 and thereafter, represented the unconstitutional policies, practices and customs of the COUNTY and OCSD.

23. By reason of the aforesaid policies, customs, practices and usages, Plaintiff's rights under the Fourth, and Fourteenth Amendments to the United States Constitution were deprived.

## PRAYER

WHEREFORE, Plaintiff prays judgment against Defendants and each of them, as follows:

AS TO EACH CAUSE OF ACTION AS APPLICABLE

1. For General damages according to proof;
2. For Special damages according to proof;
3. For Punitive damages as provided by law, in an amount to be proved against each individual Defendant;
4. For Attorney's fees pursuant to 42 U.S.C § 1988;
5. For Costs of suit;
6. For such other and further relief as the Court may deem proper.

DATED:  November 5, 2019         MKRTCHYAN LAW


                         By:   /s/Narine Mkrtchyan
                               Narine Mkrtchyan
                               Attorney for Plaintiff

## **PLAINTIFF'S JURY TRIAL DEMAND**

Plaintiff hereby demands trial by jury.

DATED:  November 5, 2019                         MKRTCHYAN LAW

                                                By: /s/Narine Mkrtchyan
                                                Narine Mkrtchyan
                                                Attorney for Plaintiff