**MKRTCHYAN LAW**
Narine Mkrtchyan, Esq. (SBN 243269)
1010 N. Central Ave, Suite 204
Glendale, CA 91202
Telephone No. (818) 388-7022
Web: www.narinelaw.com
Email: narine57@gmail.com

Attorney for Jeremy Holloway

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEREMY HOLLOWAY,<br><br>             Plaintiff,<br><br>      vs.<br><br>COUNTY OF ORANGE, DEPUTY CHAD RENEGAR, individually and as a peace officer, DEPUTY JOEL GONZALEZ, individually and as a peace officer, DEPUTY KEVIN PAHEL, individually and as a peace officer, DEPUTY BRANDON BILLINGER, individually and as a peace officer, DEPUTY MARK BORBA, individually and as a peace officer, DEPUTY JAMESON GOTTS individually and as a peace officer, DEPUTY JUSTIN GUNDERSON, individually and as a peace officer, and DOES 1-10.<br><br>             Defendants. | Case No. 8:19-cv-01514-DOC-DFM<br><br>**PLAINTIFF'S *EX PARTE APPLICATION* TO DISQUALIFY MAGISTRATE JUDGE FOR BIAS AND PREJUDICE; DECLARATION OF NARINE MKRTCHYAN** |

TO DEFENDANTS AND TO THEIR ATTORNEYS OF RECORD:

1  Plaintiff Jeremy Holloway, through counsel of record Narine Mkrtchyan

2  hereby seek an *ex parte* Order to disqualify the magistrate judge from further

3  hearing this case on the grounds detailed in the appended Declaration of Counsel,

4  supported with memorandum of points and authorities.

5  This application is based on this Notice, the records, papers and files in this

6  case, as well as such oral and documentary evidence as may be produced at the

7  hearing on the motion.

8

9

10

11  **MKRTCHYAN LAW**

12

13  By: _____/s/Narine Mkrtchyan_____

14  **NARINE MKRTCHYAN**

15  Attorney for Plaintiff Jeremy Holloway

# MEMORANDUM OF POINTS AND AUTHORITIES

## Introduction

In the early morning hours of January 21, 2018, 41-year old Plaintiff Jeremy Holloway, an honorably discharged then homeless veteran of the United States Marine Corps, was lawfully camping at the O'Neill Regional Park in Trabuco Canyon, Orange County and sleeping peacefully in a tent with his dog. Defendants Deputy Chad Renegar, Deputy Joel Gonzalez, Deputy Kevin Pahel, Deputy Billinger and Borba awoke him, claimed he was the suspect in a domestic violence dispute, patted him down and searched his tents and campsite with all belongings without consent. The deputies left confirming the incident 'unfounded' as to Jeremy. Upset Jeremy then walked to the ranger station to make a complaint about the incident. Prevented from making a complaint by the locked doors at the Ranger station and the fact there were still police SUVs parked at the station, he walked back to his campsite and attempted to speak with the neighbors asking them to clear him with the deputies and accept responsibility for the disturbance caused by them. As he was preparing to get back to sleep, he saw about 7-10 sheriff's deputies, including Chad Renegar, Joel Gonzalez, Kevin Pahel, Brandon Billinger, Mark Borba, Jameson Gotts, and Justin Gunderson circling his campsite with guns drawn, ordering him to show his hands and get down on the ground. Jeremy put his hands out to his sides, but asked, 'Why? What have I done?' inquiring why he needed to get down on the ground. Another officer believed to be Gonzalez yelled, 'Tase him!' At this time, Jeremy felt that his life would be in danger if he got to the ground. Immediately, he was punched to the left side of his face by an officer he believed to be Deputy Renegar. The punch knocked him out, and when he came to his senses, he was already on the ground with multiple deputies, one deputy choking him, another striking him with full force in the head with a knee multiple times until he started bleeding profusely. He was kicked and punched in multiple

areas of his body, while his arms and legs were being held by multiple deputies. He was unable to breathe due to the chokehold and was hoping to survive. After this unjustified and cruel beating, the deputies turned him to his stomach and tasered him approximately 4 times, striking his buttocks area. Jeremy was left with bruised ribs and legs, head injury, severely bleeding and swollen face, lost vision, severe back pain, periodic loss of consciousness, and severe emotional distress. Jeremy was treated by the paramedics for visible injuries at scene and was hospitalized to the Mission Viejo hospital. After that Deputies Renegar, Gonzalez, and Pahel took him to the County Jail in Santa Ana where he was booked on false felony charges for Cal. Penal Code Sec. 69 and 243(b). In an implicit admission of the allegations' false nature, the Orange County District Attorney declined to file charges in the interests of justice. On May 24 when Jeremy ventured to camp again at the same location, a number of unknown OCSD deputies detained and searched him by harassing and instilling more fear for his life and safety, prompting him to pack his belongings and move to Pennsylvania. Due to the incident, Jeremy has been continuously receiving treatment from the Department of Veteran's Affairs in Long Beach and Pittsburgh for injuries including vision loss, headaches, backache, tooth loss and emotional distress. The extent of his injuries has been substantial and he is still undergoing treatment and will continue in the future.

### **28 U.S.C.A § 144 Bias or Prejudice of Judge**

> Whenever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding.

The affidavit shall state the facts and the reasons for the belief that bias or prejudice exists, and shall be filed not less than ten days before the beginning of the term at which the proceeding is to be heard, or good cause shall be shown for failure to file it within such time. A party may file only one such affidavit in any case. It shall be accompanied by a certificate of counsel of record stating that it is made in good faith.

### 28 U.S.C.A § 455 Disqualification of Justice, Judge or Magistrate Judge

**(a)** Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.

**(b)** He shall also disqualify himself in the following circumstances:

**(1)** Where he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding;

Under this statute, the test for disqualification is objective and asks whether a reasonable person with knowledge of all the facts would conclude that the judge's impartiality might be reasonably questioned. United States v. Winston, 613 F.2d 221, 222 (9th Cir.1980). "Recusal under §455(b)(1) is required only if actual bias or prejudice is proved by compelling evidence." Brokaw v. Mercer County, 235 F.3d 1000, 1025 (7th Cir. 2000). Furthermore, "judicial rulings alone almost never constitute a valid basis for a bias or partiality motion." Liteky v. United States, 510 U.S. 540, 555, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994).

In Brokaw v. Mercer County, 235 F.3d 1000, 1025 (7th Cir. 2000), the 7th Circuit of the United States Court of Appeals held that the plaintiff failed to prove

the judges bias and prejudice because the evidence the plaintiff used to prove his claim of judicial bias consisted of only judicial rulings.

Additionally, "opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible. Thus, judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge. They *may* do so if they reveal an opinion that derives from an extrajudicial source; and they *will* do so if they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible." *Liteky v. United States,* 510 U.S. 540, 555, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994). The Court further explained that, "*Not* establishing bias or partiality, however, are expressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women, even after having been confirmed as federal judges, sometimes display. A judge's ordinary efforts at courtroom administration—even a stern and short-tempered judge's ordinary efforts at courtroom administration—remain immune." Liteky v. United States, 510 U.S. 540, 555–56, 114 S. Ct. 1147, 1157, 127 L. Ed. 2d 474 (1994).

In *Liteky*, the petitioner asserted that based on the judge's prior rulings, the the Court found no basis for disqualification, "The duties of judicial office take precedence over all other activities. The judge should perform those duties with respect for others, and should not engage in behavior that is harassing, abusive, prejudiced, or biased." Code of Conduct for United States Judges Canon 3.

(c) Disqualification

> (1) A judge shall disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned, including but not limited to instances in which
>
>> (a) the judge has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding

**Argument**

In this case, Plaintiff's case has been highly prejudiced and has come to a halt due to the openly hostile and biased treatment of his counsel by the magistrate judge assigned to the case. Whether it is a bias and prejudice towards Plaintiff as a victim of police brutality or his counsel, the magistrate judge has made discovery rulings defective and biased towards Plaintiff, putting Plaintiff in a position to request an extension of the discovery deadlines and trial. See **Filed Stipulation to Extend Discovery Cut-Off. Court Docket No. 80.**

More importantly, the impartiality of the judge is questioned due to his disparaging treatment of Plaintiff's counsel as a minority female attorney at each discovery conference. Plaintiff's counsel speaks with an accent that puts her in the category of minority lawyers with a different national and ethnic origin who have endured bias and prejudice in the legal system for long. **Declaration of Counsel**.

In this case, Plaintiff has been enmeshed in a highly contentious and obstructionist litigation by the County and the defense firm Lynberg & Watkins, whose goal has been entirely to suppress and withhold discovery Plaintiff is entitled to and bury the case with paper. Plaintiff filed his first motion to compel as of December 13, 2019, seeking among other things, personnel files into these Defendants. **Plaintiff's motion to compel, Court Docket, No. 29.** At the very initial discovery conferences in-person and telephonically, Plaintiff's counsel was

unfairly attacked and disparaged by the magistrate judge who would point his finger at Plaintiff's counsel and attack her with terminology such as (paraphrasing), 'It is not your way or the highway,' 'You are rolling your eyes' interchanged by constant interruptions, displaying openly hostile attitude and bias. **Declaration of Counsel**. The magistrate judge made incomplete rulings, not rooted in the law on privileges in federal civil rights cases, without clear parameters, enabling the defense counsel to further drag feet and not produce even what appeared to be court-ordered, putting Plaintiff at a disadvantage. See **Plaintiff's Opposition to Defense Motion to Compel and for Discovery Sanctions, Court Docket No. 79.** Thus Plaintiff was denied access to essential items of discovery, including the personnel complaint files into these Defendants, received heavily redacted materials that disabled Plaintiff from developing the discovery. See **Plaintiff's Motion for Reconsideration, Document No. 55**. This is especially prejudicial to Plaintiff because the main Defendant Chad Renegar has been subject of a criminal investigation by the Orange County District Attorney's Office since November 2019, something which was not disclosed to Plaintiff until after he filed a motion to compel, and a Rule 37 Joint Stipulation. Thereafter, Plaintiff was asked to file a supplemental brief as to the relevance of this discovery to Plaintiff despite already filed motion to compel, enumerating all reasons why personnel files of Defendants are subject to disclosure in a case like this. **Plaintiff's Supplemental Brief, Court Docket Document No. 38**. Since then the magistrate judge requested an in-camera review of the documents by the District Attorney's Office for disclosure to Plaintiff. However, as it appeared, the magistrate judge was disinterested in making a formal order to produce this file to Plaintiff and most recently at an informal discovery conference on September 2 made a tentative ruling that Plaintiff is entitled only to the ***incomplete*** DA file into Chad Renegar criminal investigation without the supplemental investigation

conducted by the DA into the matter. On one hand, the magistrate judge has ruled these records are relevant, on the other hand has made it clear that Plaintiff will not get the complete records, despite the DA assertion that they have made multiple interviews of involved parties and have supplemental records since the judge reviewed the file in-camera. **Court order re DA file, Docket No. 41**. When Plaintiff's counsel asked to be heard on the internal inconsistency of the ruling, the judge interrupted in a rude tone, 'This is my ruling and I do not want any argument! You can have it reconsidered by the District Judge.' This type of treatment has been targeting only the Plaintiff's counsel not the defense counsel who have been treated only with respect. **Declaration of Counsel.**

Further, despite these challenges and the Covid-19, Plaintiff's counsel was determined to move the discovery and scheduled multiple in-person depositions of Defendants and party witnesses in July by putting major financial resources into obtaining a court reporter and a conference room for live depositions that needed to be scheduled well in advance. At the very first deposition of Defendant Chad Renegar, Plaintiff's counsel faced a highly hostile witness who refused to answer questions at the instruction of his counsel, who finally unilaterally cancelled the deposition and walked out of the room with her client, thereafter cancelling multiple depositions of Defendants. When Plaintiff filed an *ex parte* application for an order to resume and motion to compel the rest of the depositions, the magistrate judge did not sanction the defense counsel for conduct nor did he order the rest of the depositions to take place, but took the time in three pages to rebuke Plaintiff's counsel for a deposition that he characterized as a 'train wreck' in an openly hostile ruling towards Plaintiff's counsel. This further emboldened the defense in their obstructionist behavior who continued cancelling and rescheduling the depositions until Plaintiff was finally able to finish them by August, disabling

Plaintiff from timely finishing the discovery. See **Plaintiff's Ex Parte Application to compel depositions and Court Order, Court Docket No. 69, 73**.

This favorite treatment of the Defendants and biased treatment of Plaintiff's case has culminated in the magistrate's gracious permission of defendants to file a motion to compel further Plaintiff's Interrogatory Responses without fulfilling the requirements of the Local Rule 37, by prejudicing Plaintiff. It appeared the rules do not apply to the defense, but only to Plaintiff whose counsel was rebuked and disparaged in an openly hostile manner throughout the development of discovery. See **Plaintiff's Opposition to Defendants' motion to compel. Document No. 75, 78, 79.**

This openly hostile attitude culminated in yet another hostile telephonic discovery conference on September 2, when the magistrate judge rudely interrupted Plaintiff's counsel at every opportunity to be heard, expressly put the problems in discovery squarely on the shoulders of Plaintiff in the face of openly obstructionist behavior by the defense firm representing the Defendants. Because of this offensive and biased treatment Plaintiff's counsel excused herself from the hearing.

This openly biased and prejudicial treatment of Plaintiff's counsel has become intolerable to any sense of fairness and Plaintiff is requesting the magistrate judge to disqualify himself from further hearing the discovery matters in the case.

This is particularly prejudicial to Plaintiff because emboldened by this bias emanating from the judge, the defense firm has embarked on a consolidated harassment of Plaintiff and his counsel for various discovery issues. After a day-long deposition of Plaintiff that took place on August 14 after Plaintiff took the time to travel from Pennsylvania to California specially for his in-person deposition despite covid-19 restrictions and financial hardship, he was similarly

harassed and attacked. Now under the threat of sanctions, the defense is seeking yet another deposition of Plaintiff without any legitimate grounds. **Declaration of Counsel.**

Plaintiff believes, the case will not be ready for trial, because multiple items of discovery have been withheld by the County and without necessary court orders Plaintiff is unable to develop and finish discovery. For example, Plaintiff has learned at depositions, that not all audio/video of the incident has been produced and not all known witnesses to the incident identified by the County. **See Plaintiffs' Opposition to Defendans' Motion to Compel, No. 79.** When Plaintiff raised these issues at the most recent informal discovery conference on August 18, the magistrate judge has refused to make appropriate rulings to compel the County to produce them. These are items of discovery that Plaintiff sought as of September in formal requests for production of records, and the County claimed they had produced them until confronted with evidence to the contrary at the depositions. Furthermore, due to the flawed anticipated ruling by the magistrate judge, Plaintiff will not receive the complete DA file into Chad Renegar's criminal investigation and will not find out why Chad Renegar has been suspended from his assignments and duties, something Plaintiff also learned incidentally at a deposition of a party witness Sergeant Stewart Rawlings. **See Declaration of Counsel.**

An impartial magistrate is required to make necessary and unbiased rulings not colored by favoritism or hostility towards any party. This magistrate has openly antagonized the Plaintiff's counsel, a reputable attorney of 14 years both in state and federal courts, and put her in a defensive and disadvantageous position. Plaintiff respectfully requests to reassign this case to another magistrate judge. In the alternative, Plaintiff will seek a change of venue as he does not believe he will get a fair adjudication of his claims against the County because of incomplete and suppressed discovery.

Our deeply polarized country is on the brink of a collapse because of police brutality and an abyss between the government and its people, calling for institutional change and reform. Political, social, ethnic and racial divisions are further inflamed by civil protests, and federal judges as arbiters of justice should become more sensitive and acculturated in treating minority lawyers with respect and civility. Civility and impartiality are key components of judicial ethics. Federal courts as instruments for peaceful disposition of civil rights cases will lose their legitimacy if judges show open favoritism of police departments as defendants and bias against Plaintiffs as victims of police brutality in disregard of the well-established laws under 42 U.S.C. 1983.

## **DECLARATION OF NARINE MKRTCHYAN**

1. I am Plaintiff's counsel in this matter. The facts stated herein are personally known to me of firsthand knowledge, except where alleged on information and belief, and if called as a witness I would competently testify thereto.
2. I have been an attorney in good standing with the Bar for over 14 years, first as a criminal defense attorney fighting for the rights of the accused and the U.S. Constitution, and then fighting for victims of police brutality in civil rights suits. I have handled multiple civil rights cases in the Central District.
3. I have endured multiple instances of bias and prejudice from state court judges as a female attorney with a different ethnic origin, who speaks with an accent and has a difficult name. However, in federal courts this is the first time I have faced this type of a treatment, openly hostile and

disparaging. I had higher expectations from federal judges due to the level of formality inherent in federal courts and procedure.

4. From the very beginning of the case, my very first discovery hearing in January, the magistrate judge Douglas McCormick displayed a temperamental, impatient attitude towards me. At one point he interrupted me, pointed his finger at me and unfairly accused me of rolling my eyes, when I was making my arguments. He displayed a highly paternalistic attitude, dismissed any effort on my part to engage in legal and factual discussion on issues, did not make any effort to pronounce my name with some degree of accuracy. Any attempt to argue my points was met with resistance. Sure enough, the discovery order was not consistent, because it was based on incomplete understanding of the Plaintiff's discovery requests in the backdrop of the federal law on privileges. **See Court Order on discovery Docket No. 39**. For example, the magistrate judge ordered production of citizen complaints against unrelated deputies to prove *Monell* claims, but did not order production of personnel complaints against the named Defendants. I filed a motion for reconsideration to District court to no avail, because the District Court heavily relies on magistrate judges for discovery rulings. **Document Docket No. 55.**

5. This incomplete discovery order prejudiced Plaintiff particularly because the goal of the County has been to withhold and suppress evidence, and harass Plaintiff and his counsel with frivolous discovery requests. For example, after Plaintiff filed a motion to compel in December, I learned that the County had withheld the fact that Defendant Chad Renegar had been under a criminal investigation by the Orange County DA's Office since November of last year.

6. I raised this issue only to be told to file a supplemental briefing on the subject, when Plaintiff's motion to compel had covered all the grounds for relevance of this information. I filed a supplemental brief on the subject and the magistrate ruled that this information was relevant, however, did not order production of these records to Plaintiff and only to Court for in-camera review. **Document No. 38, Court ruling Document No. 39.**

7. After the in-camera review of records at an informal discovery conference, the magistrate judge indicated these records should be produced to Plaintiff upon completion of the DA investigation. To date, I have not received anything to do any sort of investigation into the issues.

8. After continuous requests for update, I raised this issue at an informal discovery conference with magistrate on August 18. On September 2 at another discovery conference with magistrate, the representative from the OC DA's Office made an appearance, informed the magistrate that the investigation has been completed, and supplemental records including interviews of various witnesses are available for review and disclosure by the Court. The magistrate judge made a tentative ruling that despite the initial ruling of relevance of these records, Plaintiff is not entitled to the complete file, but only what was produced to Court in-camera. When I asked to be heard on the subject, the magistrate rudely interrupted me by a loud tone, 'This is my ruling! I do not want to hear any argument!' In the same manner I was told to file a motion for reconsideration of his rulings to the District Judge and submit supplemental briefing on the issues. The tape recording of the conference is available upon request.

9. Taken aback and offended by this continuous hostility and prejudice towards me, which has been ongoing, I requested to be excused from the proceeding and left the telephonic conference.

10. This openly biased treatment has been evident earlier also when I filed an *ex parte* application to resume the deposition of Chad Renegar and to compel the rest of the depositions. Instead of sanctioning the defense counsel for walking out with her client from the deposition, I was rebuked by the magistrate for the deposition that he called a 'train wreck' but put the responsibility largely on me despite the openly obstructionist and arrogant behavior of the deponent and his counsel. Plaintiff had spent time and financial resources in coordinating in-person depositions in order to be thwarted by the defense refusal to cooperate. The magistrate did not compel the rest of the depositions and ordered the resumption of Renegar deposition only for 90 minutes. **Plaintiff's Ex Parte Application to compel depositions and Court Order, Court Docket No. 69, 73** Emboldened by this, the defense cancelled and rescheduled multiple depositions, which disabled my ability to finish discovery timely.

11. Further emboldened by this openly disparaging treatment of me, the defense law firm has mounted a consolidated attack to harass me and Plaintiff with frivolous discovery requests. I began receiving multiple lengthy and personally hostile invitations to meet and confer by the defense law firm, mounting unreasonable discovery demands on Plaintiff. The defense further began asking for multiple informal discovery conferences with the magistrate, in circumvention of Rule 37 and on the brink of the DCO. This is in disregard of Plaintiff's legitimate discovery demands that have been ignored.

12. The magistrate tacitly approved this defense tactics by permitting them to file a motion to compel for Plaintiff's discovery without fulfilling Rule 37 and notice requirements for motions. **Court Docket No. 75, 76, 79**

13. Plaintiff has learned at depositions in July-August, that not all 911 calls by reporting parties have been produced, not all patrol vehicle recordings have been produced, and not all witnesses to the incident have been identified. The County has ignored the discovery demands made as of September for this discovery. I also learned at the deposition of Sergeant Stewart Rawlings, that Defendant Chad Renegar has been suspended from his assignments and duties. When I asked to meet and confer with the defense on the topic, I did not get an answer. When I raised these issues at the informal discovery conference on August 18, the magistrate did not take any action, nor made any rulings. Instead at the next conference on September 2, the magistrate put the blame for these discovery issues squarely on the shoulders of Plaintiff with no rhyme or reason. Clearly, this showed favorite treatment of County at the expense of Plaintiff's legitimate discovery demands.
14. To date, I have not received any answer on these outstanding discovery issues and my ability to finish discovery is brought to a halt.
15. Further emboldened by this favoritism, now the County is demanding another deposition of Plaintiff, when he was examined on August 14 at an all day deposition, when the defense counsel Shelton Harrell took the opportunity to attack and badger my client and me on several occasions.
16. It seems, the hostile treatment of me by the magistrate judge has infected the defense counsel, who are now quoting the judge at every opportunity to disable and discredit me from representing my client.
17. The incomplete and biased discovery rulings thus far have put the Plaintiff in a position to seek and receive an extension of the discovery deadlines. However, at this time, I believe, the biased treatment of the magistrate towards me and my client's case will not enable me to finish necessary

discovery in time for trial to prove the claims. I have yet to receive basic items of discovery, audio/video and witness names to the incident but the magistrate is not making appropriate rulings to move this case and is further permitting the defense to withhold evidence and further harass me and Plaintiff with unreasonable discovery demands.

18. Plaintiff is prejudiced by the actions of the magistrate judge who is displaying open hostility to his case and his counsel, and is favoring the County in all discovery proceedings. I request examination of the magistrate's ties with the Orange County and the defense firm Lynberg & Watkins.

19. To facilitate a reasonable and fair culmination of the discovery, I request this case to be reassigned to another magistrate judge as I do not feel comfortable to engage in further discovery conferences with this judge and believe he is biased towards me and my client's case based on the reasons stated in this motion.

20. In the alternative, Plaintiff will seek change of venue in the Central District for a fair adjudication of his case. Discovery is an essential component of police misconduct litigation and Plaintiff is highly prejudiced at this juncture by these biased discovery rulings and/or absence of necessary rulings to move the Plaintiff's case towards trial.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this September 8, 2020 at Glendale, CA

/s/ Narine Mkrtchyan
Attorney for Plaintiff