**MKRTCHYAN LAW**
Narine Mkrtchyan, Esq. (SBN 243269)
1010 N. Central Ave, Suite 204
Glendale, CA 91202
Telephone No. (818) 388-7022
Web: www.narinelaw.com
Email: narine57@gmail.com

Attorney for Jeremy Holloway

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEREMY HOLLOWAY, | Case No. 8:19-cv-01514-DOC-DFM |
| Plaintiff, | |
| vs. | **DECLARATION OF NARINE MKRTCHYAN TO PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ANOTHER SESSION OF PLAINTIFF'S DEPOSITION OR FOR SANCTIONS** |
| COUNTY OF ORANGE, DEPUTY CHAD RENEGAR, individually and as a peace officer, DEPUTY JOEL GONZALEZ, individually and as a peace officer, DEPUTY KEVIN PAHEL, individually and as a peace officer, DEPUTY BRANDON BILLINGER, individually and as a peace officer, DEPUTY MARK BORBA, individually and as a peace officer, DEPUTY JAMESON GOTTS individually and as a peace officer, DEPUTY JUSTIN GUNDERSON, individually and as a peace officer, and DOES 1-10. | |
| Defendants. | |

1

# DECLARATION OF NARINE MKRTCHYAN

1. I am Plaintiff's counsel in this matter. The facts stated herein are personally known to me of firsthand knowledge, except where alleged on information and belief, and if called as a witness I would competently testify thereto.

2. I have been an attorney for over 14 years in good standing with the Bar. I have appeared in many cases in federal and state courts, both civil and criminal and have successfully represented my clients. I have never been sanctioned or sued for anything related to my practice as attorney despite the fact I have an extensive background in criminal cases where the stakes are higher and criminal court hearings are more contentious. While civil depositions are supposed to be conducted as if they take place in the court, I have always been shocked with the behavior of civil attorneys at these depositions who take advantage of the lack of formality and absence of a judge to control the proceedings. The level of animosity and antagonism in civil litigation by comparison to criminal is disproportionately higher. In this case, it has reached surprising levels especially with the defense voluminous discovery motions largely devoid of substance and full of personal attacks against me.

3. In Plaintiff's previous Oppositions to Defendants' Motion to Compel, I had already underlined the difficulties I have experienced in collecting discovery from defense and/or conducting depositions of these Defendants. See **Declaration of Counsel to Plaintiff's Opposition, Document No. 79**, **108**

4. These difficulties culminated in Plaintiff's filing a motion to compel under Rule 37 and two Ex Parte Applications to Compel Depositions and to Compel Discovery. See **Court Docket No. 110, 69, 29**.

**5.** The defense counsel had previously walked out of the Deposition Chad Renegar by unilaterally cancelling it and causing Plaintiff to file a motion to resume it. It was ordered to be resumed but with no costs or attorney's fees to Plaintiff for defense conduct. The defense had similarly cancelled and rescheduled multiple depositions of these Defendants, causing me to pay for additional costs of rescheduling of a number of depositions and the resumption of Renegar. I still owe a balance for those depositions. See **Exhibit C for the true and correct copy of the bills associated with those costs.**

6. I have spent countless number of hours in chasing after the defense for legitimate items of discovery since the inception of this case. My attorney hours in this case thus far are daunting, caused primarily by feet-dragging

and intransigent tactics of defense. Each item of discovery was obtained only after multiple emails chasing after defense in endless efforts to meet and confer, and multiple motions to compel beginning in December of 2019.

7. Plaintiff also supplied discovery in his Supplemental Disclosures on multiple occasions. However, the defense was still dissatisfied and filed two motions to compel further responses to form Interrogatories and Requests for Production of Documents, when all relevant records have already been produced by Plaintiff. See **Plaintiff's recent Supplemental Disclosures, as Exhibit F**.

8. It seemed defense was focused more on the form, rather than substance of the discovery, but has consistently misrepresented the true state of discovery in their motions to compel. With the coronavirus restrictions and limitations that have imposed on my practice and my ability to retain an employee as a sole practitioner, I have been burdened by the continuous discovery escapades by this defense firm with unlimited resources and big staff of attorneys, paralegals, etc. It was not sufficient for Plaintiff to produce detailed multiple Supplemental Disclosures with voluminous records as proof of his multiple claims, he is essentially asked to amend each pleading document in the course of the year-long litigation,

that is related to these disclosures. Needless to say, it imposes an undue burden and expense on me as a sole practitioner and indeed, this abuse will drive up the value of this case for purposes of mediation, something which the defendants are working hard to avoid in their failed attempts to have this case go away on some technicality. See **Plaintiff's Opposition to Defendant's Motions, Court Docket 79, 108 and Exhibit F to this motion**.

9. In the same vein, in this motion to compel/dismiss, the defense counsel is unfairly accusing me of all manner of things, but have identified very little areas of substance related to Plaintiff's deposition they have not covered.

10. At the deposition, I instructed my client not to answer in good faith on some issues, as fully detailed in the motion. See **a true and correct copy of the Plaintiff's deposition attached as Exhibit A.**

11. My client was repeatedly harassed and badgered at this deposition necessitating objections in that regard. I had never been at any other Plaintiff's deposition similar to this.

12. First, at all depositions conducted in-person in this case by stipulation between parties, the Defendants were wearing masks and their counsel insisted I wore a mask too. That rule was fully ignored by defense counsel at Plaintiff's deposition, who refused to wear a mask and asked Plaintiff to

remove his mask, although there were 7 people in the conference room, seated close to each other. I objected because it jeopardized my health and my client's health to no avail. The deposition therefore was an extremely stressful event for me given the coronavirus numbers. In all cases throughout the Los Angeles County, all depositions and any other hearings have been conducted telephonically or remotely on Zoom, but parties agreed to in-person depositions in this case with precautions in place. This defense counsel refused to follow the stipulated precautions between the parties.

13. Then the male defense counsel taking the deposition, Mr. Frank Harrell, who appeared to be in his 60s, took the luxury of treating me as a child, or someone utterly inferior and not worthy of respect or decent treatment, indicative of bias and prejudice towards me or those of different ethnic background and gender. It was not so much what he actually said, but how he said it, the tone of voice, the facial expressions and body language he used, which unfortunately was not captured by the video recording, since the camera was not facing him. I am familiar with this attitude in the practice of law, where minority female lawyers like me, are targeted, underestimated and minimized. I have been taken for an interpreter, interrupted, disrespected, minimized on many occasions. This attorney's

conduct was not new, and I felt compelled to stand up for myself and not let that type of conduct push me or my client over. Sexism and bias should not be encouraged in the legal profession. There is no reason why I or anyone else should tolerate that type of behavior.

14. The defense counsel improperly quoted the Magistrate's statement from a prior ruling on Chad Renegar's deposition being a 'train wreck' and used it throughout this deposition to lodge paternalistic accusations against me. That is why, after this deposition, at an informal discovery conference on September 2, 2020 with the Magistrate, I objected to the Magistrate's personal characterizations about me and interruptions of me when making the record, as they were getting picked up by defense to lodge more harassment against me. It is unfair for defense counsel to use the judge's personal comments or treatment of me to their advantage. In fact, it is legally improper because the judge's comments about the case or parties should not be perceived as favoring one side over the other. That is a jury instruction codified in our legal system.

15. Despite the defense trying to make this case all about me, however, it is not about me, but my client, who felt similarly harassed, disparaged and attacked at this deposition. However, he provided answers based on his recollection and knowledge with very narrow exceptions, when in good

faith I instructed him not to answer, because I believed the defense was overstepping the form and substance of permissible questions. Some issues related to employment and arrest history that were objected to were already covered and responded by Plaintiff in his Supplemental Responses to County and Defendant Renegar Interrogatories. See **a true and correct copy of Plaintiff's Supplemental Responses to County Interrogatories as Exhibit E**. Because Plaintiff's responses to Renegar Interrogatories were related to his criminal record history, Plaintiff is not attaching them here based on privacy, but it is undisputed that he responded to all relevant inquiry about his criminal record history in his interrogatory responses and at his deposition.

16. What is interesting, since the defense first letter of meet and confer regarding this deposition in September, when they demanded another session on very onerous terms and conditions, I have had multiple exchanges by email or by phone with defense counsel, Ms. Tamara Heathcote, who wrote this motion to compel, although she was not the one who conducted the deposition. **See a true and correct copy of our Email communications as Exhibit B.** At no point in time did she raise the issue of Plaintiff's deposition or ask me if I would be amenable to a Zoom deposition on the issues they felt they had not covered. The Local Rules

on meet and confer are for a purpose and personal communications are in fact required to resolve issues. True, in August in response to their initial meet and confer letter, I had responded I would not produce Plaintiff on the terms and conditions demanded by the defense counsel. However, I would have been amenable to producing Plaintiff for a short Zoom deposition instead of spending my time in defending this motion, had the defense bothered to engage in a substantive discussion at any point in time afterwards in our continuous communications.

17. Most of our exchanges were on a tolerable friendly note, and we were able to reach an agreement on some issues, including late noticed depositions of the Park Ranger employees, and extension of expert witness disclosures deadline. When defense counsel characterizes my behavior in strident terms in the motion as that of an obstructionist, it begs the question, who was I communicating throughout this litigation?! I have conducted approximately 14 depositions in this case, and at no point did the defense stop them and move for a protective order for their clients or witnesses. After the fallout at Chad Renegar's deposition that was caused by the witness and his counsel, all depositions by me were done without much acrimony because the defense counsel was not acting provocatively.

See **a true and correct copy of the of Defendant Gotts deposition as Exhibit D.**

18. Not until it came to Plaintiff's deposition and only three months after, did the defense move to compel for another session, by attacking me, demanding for drastic sanctions, such as dismissal and upward of $30,000 dollars in attorney's fees and costs. This is without any good faith effort to meet and confer on the issue.

19. It really points that the true motive behind the third motion to compel is not to repair some prejudice to the Defendants, but to further attack and harass me and my client by imposing onerous litigation costs and burdens and attempt to have the case dismissed on a non-existent discovery violation.

20. I also believe, the Magistrate's allowance to defense to file their motions without fulfilling Rule 37 requirements has been abused because now their motions are not about legitimate problems with Plaintiff's discovery or deposition, but simply to raise noise and divert the attention from substance to form.

21. Demanding sanctions for their costs and attorney's fees after not meeting and conferring in good faith, after they had a full six and a half hour deposition of Plaintiff is unheard of. I have spent approximately 90 hours

in attorney time and 30 hours of paralegal time in defending the defense discovery motions. This does not include my hours pursuing Plaintiff's own discovery issues with the defense. I request monetary sanctions to reimburse me for my time in the amount for $5,600, a conservative estimate not based on my actual hourly rate of $600. I also request monetary reimbursement for paralegal time spent in defending this motion and the depositions that were rescheduled due to defense cancellations in the amount for $3,300.

22. The DCO was on November 15. The defendants have also filed multiple Motions for Summary Judgment that I am bound to defend against within the deadlines. This is the time for me to prepare the case for resolution and/or trial. Instead I am compelled to defend against multiple late filed motions to compel, a coordinated effort by defense to bury this case in paper and delay trial because their clients do not have a legitimate substantive defense. This practice is impeding my ability to resolve this case. The whole purpose of discovery is to enable parties to resolve and prepare the case for trial. But what I am witnessing here is simple feet-dragging and clogging of the docket. Had the defense been really prejudiced by Plaintiff's discovery responses or his deposition, they would have acted sooner, not waited months until filing these motions and

noticing them after the DCO. This has been enabled by the Court's permission without restrictions to file these motions without following Rule 37. On one hand, Plaintiff is being punished for not formatting his discovery responses according to technical rules of FRCP, despite his detailed Supplemental Disclosures, on the other hand, the defense is allowed not to follow Local Rule 37 in filing their motions.

23. In addition to the financial and litigation burdens imposed on me by this abuse, Plaintiff would be extremely burdened financially and otherwise, by undergoing another session of a deposition, when he currently resides in Pennsylvania and made special arrangements to appear at his in-person deposition in August. See **Plaintiff's Declaration.**

24. For the following reasons, I request the Court to put a stop to this discovery abuse by the defense and deny their motion as unduly chilling Plaintiff from exercising his rights.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 17th day of November, 2020 at Glendale, CA

                               /s/ Narine Mkrtchyan

                               Attorney for Plaintiff