S. Frank Harrell – SBN 133437
sharrell@lynberg.com
Tamara M. Heathcote – SBN 193312
theathcote@lynberg.com
**LYNBERG & WATKINS**
A Professional Corporation
1100 W. Town & Country Road, Suite 1450
Orange, California 92868
(714) 937-1010 Telephone
(714) 937-1003 Facsimile

Attorneys for Defendants COUNTY OF ORANGE, DEPUTY CHAD RENEGAR, DEPUTY JOEL GONZALEZ, DEPUTY KEVIN PAHEL, DEPUTY BRANDON BILLINGER, DEPUTY MARK BORBA, DEPUTY JAMESON GOTTS and DEPUTY JUSTIN GUNDERSON

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEREMY HOLLOWAY,<br><br>Plaintiff,<br><br>vs.<br><br>COUNTY OF ORANGE, DEPUTY CHAD RENEGAR, individually and as a peace officer, DEPUTY JOEL GONZALEZ, individually and as a peace officer, DEPUTY KEVIN PAHEL, individually and as a peace officer, DEPUTY BRANDON BILLINGER, individually and as a peace officer, DEPUTY MARK BORBA, individually and as a peace officer, DEPUTY JAMESON GOTTS individually and as a peace officer, DEPUTY JUSTIN GUNDERSON, individually and as a peace officer, and DOES 1-10.<br><br>Defendants. | CASE NO. 8:19-cv-01514-DOC-DFM<br><br>*Assigned to:*<br>*Hon. David O. Carter, Courtroom 9D*<br><br>*Assigned for Discovery Purposes to:*<br>*Hon. Douglas F. McCormick, Courtroom 6B*<br><br>**DEFENDANTS' REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS FOR VIOLATION OF COURT ORDER, OR FOR ALTERNATIVE RELIEF; DECLARATION OF S. FRANK HARRELL**<br><br>Date:  December 8, 2020<br>Time:  10:00 a.m.<br>Dept.:  6B<br><br>*Trial Date: January 19, 2021*<br>*Second Amended Complaint filed: December 10, 2019* |

**1**

## Table of Contents

I. INTRODUCTION .................................................................................................. 1

II. DISMISSAL IS REQUIRED TO ADDRESS PLAINTIFF'S COUNSEL'S VIOLATION OF THE COURT'S ORDERS ............................... 1

III. DISMISSAL IS REQUIRED TO ADDRESS PLAINTIFF'S COUNSEL'S ATTACKS ON THE COURT AT THE SEPTEMEBER 2, 2020 HEARING .................................................................. 8

IV. CONCLUSION .................................................................................................. 11

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

Baca v. Ewing,
  402 Fed. Appx. 286 (9th Cir. 2010) ........................................................................ 7

Bakery Mach. & Fabrication, Inc., v. Traditional Baking, Inc.,
  570 F.3d 845 (7th Cir. 2009) ................................................................................ 10

Bd. of Trustees of Pipe Fitters' Ret. Fund, Local 597 v. Commercial Cooling & Heating, Inc.,
  2019 WL 2269959 (N.D. Ill. 2019) ...................................................................... 11

Buss v. W. Airlines, Inc.,
  738 F.2d 1053 (9th Cir. 1984) ........................................................................... 8, 9

Carey v. King,
  856 F.2d 1439 (9th Cir. 1988) ................................................................................ 8

Crawford v. JPMorgan Chase Bank, N.A.,
  242 Cal. App. 4th 1265 (2015) ............................................................................. 10

Ferdik v. Bonzelet,
  963 F.2d 1258 (9th Cir. 1992) ........................................................................... 6, 7

Ghazali v. Moran,
  46 F.3d 52 (9th Cir. 1995) ...................................................................................... 7

G-K Properties v. Redevelopment Agency of the City of San Jose,
  577 F.2d 645 (9th Cir. 1978) .................................................................................. 7

Gueye v. U.C. Health,
  2014 WL 4984173 (S.D. Ohio 2014) ................................................................... 10

Halaco Engineering Co. v. Costle,
  843 F.2d 376 (9th Cir. 1988) .................................................................................. 7

Henderson v. Duncan,
  779 F.2d 1421 (9th Cir. 1986) ................................................................................ 8

In re Maurice,
  167 B.R. 114 (Bankr. N.D. Ill. 1994) ................................................................... 10

Loop AI Labs Inc. v. Gatti,
 2017 WL 934599 (N.D. Cal. 2017) ............................................................................. 11

Malone v. U.S. Postal Service,
 833 F.2d 128 (9th Cir. 1987) ....................................................................................... 8

Maus v. Ennis,
 513 F. App'x 872 (11th Cir. 2013) ............................................................................ 10

McCaffity v. Hurst-Euless-Bedford Indep. Sch. Dist.,
 98 F.3d 1339 (5th Cir. 1996) ..................................................................................... 10

National Hockey League v. Metropolitan Hockey Club,
 427 U.S. 639 (1976) ................................................................................................... 11

Serra-Lugo v. Consortium-Las Marias,
 271 F.3d 5 (1st Cir. 2001) .......................................................................................... 10

Thompson v. Housing Auth. of Los Angeles,
 782 F.2d 829 (9th Cir. 1986) ....................................................................................... 6

Thorpe v. Ancell,
 367 F.App'x 914 (10th Cir. 2010) ............................................................................. 11

Yourish v. California Amplifier,
 191 F.3d 983 (9th Cir. 1999) ....................................................................................... 7

**Rules**

Fed. R. Civ. P. 1 ............................................................................................................. 6, 8

Fed. R. Civ. P. 41(b) ......................................................................................................... 6

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

The Orange County Defendants have filed this Motion to address: (i) Plaintiff's counsel Narine Mkrtchyan's repeated violation of this Court's verbal and written good conduct orders, requiring all counsel to conduct themselves at Plaintiff's deposition as though they were in a courtroom, (ii) Ms. Mkrtchyan's violation of the Court's directive to not hang up the phone during the parties' September 2, 2020 telephonic discovery hearing, (iii) Ms. Mkrtchyan's September 2, 2020 unfounded accusation of "bias" and "sexism" against the Court (before she hung up), and (iv) her previously videotaped instances of deposition misconduct. Put most charitably, nothing in Ms. Mkrtchyan's Opposition brief gives any indication that she even acknowledges the content of the Court's good conduct orders[1] -- let alone that she will comply with this Court's well-founded directives going forward. In such circumstances, errant counsel forfeit their right to continued access to the Court's valuable (and finite) dispute resolution resources. Instead, dismissal is required to permit those parties who do fairly comply with Court directives to be timely and fairly heard.

## II. DISMISSAL IS REQUIRED TO ADDRESS PLAINTIFF'S COUNSEL'S VIOLATION OF THE COURT'S ORDERS

The Orange County Defendants' moving papers demonstrated that Ms. Mkrtchyan repeatedly violated the Court's verbal and written good conduct orders during Plaintiff's deposition by: (i) insulting defense counsel, his clients and the Court[2], (ii) raising her voice[3], (iii) wrongly making unfounded charges of "sexism"

---

[1] See, Opp., 3:7-9 – Defendants' Motion "is improperly titled as 'Motion to Dismiss for Violation of Court Order' when there has been no specific order that Plaintiff or his counsel have failed to comply in the case."
[2] See, Motion, Section II (A).
[3] See, e.g., Plaintiff Depo., 258:6 - 260:21, Motion Ex. "B".

1

against defense counsel[4], (iv) interrupting others[5], (v) making disruptive comments[6], (vi) engaging in witness coaching[7], (vii) insinuating that defense counsel planned to destroy the video of Plaintiff's deposition[8], and even (iv) throwing papers across the table at others.[9] The video and audio of Plaintiff's deposition has been lodged with the Court. And the conduct it shows is not subject to dispute.

Ms. Mkrtchyan's Opposition goes on and on – and on some more. But it does not, and cannot, rebut what the video of Plaintiff's deposition depicts. Nor does Ms. Mkrtchyan display anything resembling a new spirit of professional temperament in her latest filing. Indeed, Ms. Mkrtchyan's latest brief only compounds her misconduct by voicing **_even more_** intolerable insults.

According to Ms. Mkrtchyan, her many rages, insults and outbursts were "appropriate" because defense counsel is some type of "sexist" bigot. In Ms. Mkrtchyan's apparent view, defense counsel's claimed "sexism" gave her free license to shout, insult, coach, interrupt and throw papers when and how she saw fit. See, e.g., (Opp., 20:20-22)(attacking defense counsel for "his sexist attitude"); (Opp., 37:21-22)(announcing that the "contentious colloquy between counsel . . . was provoked by the defense counsel's attitude throughout the deposition.")

Tellingly, Ms. Mkrtchyan never gives her definition of "sexism" – and for good reason. No definition of sexism exempts attorneys – of any gender – from the rule that they must conduct themselves at depositions as though they are in a courtroom. The Court's own good conduct order in this case is no different. On its face, the Court's rulings apply to **_all counsel_** in this case – **_regardless of gender_**. There is no exception for persons of any particular gender – or of any particular ethnic

---

[4] See, Motion, Section II (A).
[5] See, Motion, Section II (B).
[6] See, Motion, Section II (C).
[7] See, Motion, Section II (D).
[8] Plaintiff Depo., 194:17 – 195:8, Motion Ex. "B".
[9] Plaintiff Depo., 258:6 - 260:21, Motion Ex. "B".

background, sexual orientation or creed for that matter. (<u>See</u>, Court's Order, pp. 2 and 4, Motion Ex. "A")(going forward, "I expect, as I told counsel during the July 9 telephone conference, that all counsel should comport themselves in the deposition the same as if they were in the courtroom. . ..I trust that my remarks on July 9 and this subsequent ruling will cause [future] depositions to be conducted without the rancor that was exhibited on July 7 [at the Renegar deposition].")

The defense has demonstrated, with abundant case cites, that Ms. Mkrtchyan's conduct during Plaintiff's deposition would not be tolerated in any Orange County federal courtroom – or in any other federal courthouse for that matter. The issue is not even close. And Ms. Mkrtchyan does not cite one case, from anywhere, that has found differently.[10]

Ms. Mkrtchyan's inability to cite any authority supporting her conduct at Plaintiff's deposition is plainly of little importance to her. Indeed, Ms. Mkrtchyan's latest brief simply ***doubles down*** on her wild charge that defense counsel's request for compliance with the Court's good conduct orders amounts to "sexism" – at least according to her. Ms. Mkrtchyan's papers are suffused with wild, cringeworthy venom of this sort. <u>See</u>, <u>e.g.</u>, (Opp., 4:23-24 -- "expressing "surprise that anyone would find anything [Ms. Mkrtchyan's] did at plaintiff's depo out of line" and chastising Defendants' brief for "displaying ***bias and prejudice***. . ..")(emphasis added.); (Opp., 20:20-22 -- attacking defense counsel for "his ***sexist*** attitude")(emphasis added.); (Opp., 24:11-12 -- attacking defense counsel's claimed "***sexist*** attitude towards Plaintiff's counsel.")(emphasis added.); (Mkrtchyan Decl., ¶ 13 – ". . . the male defense counsel taking the deposition, Mr. Frank Harrell" conducted himself in a

---

[10] To be sure, Ms. Mkrtchyan claims that Defendants' Motion "improperly ask[s] for sanctions for [Plaintiff's] counsel's conduct, by taking out excerpts from the deposition out of context. . .." (Opp., 4:11-13). But this throw-away claim is unsupported by any actual record cites – let alone any reasoned discussion or analysis.

3

manner "indicative of ***bias and prejudice*** towards me or those of different ***ethnic background and gender***.")(emphasis added.)[11]

One would suppose that repeated, serious charges of this sort would be followed by abundant transcript cites demonstrating defense counsel's outrageous, gender-based verbal attacks on Ms. Mkrtchyan – or, at least, on women in general. But there are no such cites. Not even one. Plainly, Ms. Mkrtchyan's silence comes with good reason – no "sexist" words by defense counsel at Plaintiff's deposition actually exist.

After much off-point equivocation and delay, even Ms. Mkrtchyan's high-voltage briefing ultimately and sheepishly admits that she ***cannot*** point to any actual "sexist" words to support her wild "sexism" charges. (Mkrtchyan Decl., ¶ 13 – "It was not so much what [defense counsel] actually said, but how he said it, the tone of voice, the facial expressions and body language he used, which unfortunately was not captured by the video recording, since the camera was not facing him.") But if "tone of voice" is where Ms. Mkrtchyan's "sexism" charge rests, tone ***was*** captured by the video. And the Court can readily hear from the deposition audio provided that there is ***nothing*** to Ms. Mkrtchyan's "sexist tone" allegations.[12] From that, the Court can readily surmise that there is nothing to the balance of her "facial expressions and body language" allegations either. See, Ninth Circuit Model Jury Instructions, No. 1.14 ("[I]f you decide that a witness has deliberately testified untruthfully about something important, you may choose not to believe anything that witness said.")[13]

---

[11] An abusive, unfounded charge of racism can now be safely added to Ms. Mkrtchyan's long, and growing, list of unacceptable smear words in this case.

[12] For his part, even the often truth-challenged Mr. Holloway acknowledges that defense counsel "did not raise his voice" at the deposition. (Holloway Decl., ¶ 9). Holloway prudently does not make the same claim as regards his own counsel.

[13] Ms. Mkrtchyan propensity for dishonesty with regard to what is shown on video often extends to her statements about what takes place off-camera. For example, Ms. Mkrtchyan alleges that defense counsel somehow "forced" her and Mr. Holloway to conduct Plaintiff's deposition without a Covid mask. (Opp., 3:22-23). But Ms.

1  Ms. Mkrtchyan plainly knows better than to repeatedly level unfounded, ugly
2  smears against a colleague in the legal profession. By her own admission, she has
3  "been an attorney for over 14 years". (Mkrtchyan Decl., ¶ 2). Ms. Mkrtchyan also
4  admittedly knew that "civil depositions are supposed to be conducted as if they take
5  place in the court" – even before the Court entered its orders to that effect. (Id.) But
6  now that good deposition conduct orders have been entered by the Court – at least
7  ***twice*** – Ms. Mkrtchyan was required to comply with them in good faith. Her repeated
8  failure to do so has consequences.

9  Other portions of Ms. Mkrtchyan's papers are frankly divorced from reality.
10  For example, Ms. Mkrtchyan comes close to suggesting that the Court ***never ordered***
11  the parties to conduct themselves at depositions as though they were in Court. From
12  this, Ms. Mkrtchyan asserts that she violated no order by acting as she did at
13  Plaintiff's deposition. (Opp., 3:7-9 – Defendants' Motion "is improperly titled as
14  'Motion to Dismiss for Violation of Court Order' when there has been no specific
15  order that Plaintiff or his counsel have failed to comply in the case."); (Mkrtchyan
16  Decl., ¶ 19 – denouncing Defendants' "attempt to have the case dismissed on a non-
17  existent discovery violation.") But the record shows that this Motion is not about a
18  simple "discovery violation". This Motion is about repeated violation of ***the Court's***
19  good conduct ***orders*** which, once again, have been voiced ***at least twice*** in this case
20  before Plaintiff's deposition was conducted.

21  _____

Mkrtchyan knows that the removal of masks at Plaintiff's deposition came at the request of ***the court reporter*** – who advised, off-the-record and at the outset of the deposition, that it would make her job easier if all speaking parties removed their masks. (Harrell Decl., ¶ 2-3). The court reporter further stated that many of her depositions proceeded in this manner, but the ultimate decision was a group call. (Id.) An off-the-record discussion was then held whereby all seven attendees at the deposition expressed their good health, gratitude that Covid had passed them by and their comfort with proceeding without masks. (Id.) The notion that defense counsel could somehow "force" all attendees at the deposition, including Ms. Mkrtchyan – who violates federal court orders with demonstrable vigor -- ***to do anything*** she did not want to do is Olympic-level nonsense. (Id.)

5

1  Even if her conduct violates the Court's order, Ms. Mkrtchyan otherwise
2  suggests that her violations were merely "technical" and should consequently be
3  ignored. (Mkrtchyan Decl., ¶ 8 – attacking Defendants' attempts "to have this case go
4  away on some technicality".); (id., ¶ 20 – "their motions are not about legitimate
5  problems with Plaintiff's discovery or deposition, but simply to raise noise and divert
6  the attention from substance to form.") But almost seven hours of repetitive shouting,
7  interruptions, coaching and ugly insults are not a momentary "technical" lapse. The
8  vigorous and repetitive nature of Ms. Mkrtchyan's violations of the Court's good
9  conduct orders demonstrate a narcissistic indifference[14] to this Court's directives – a
10 mindset that Ms. Mkrtchyan boldly confirmed during one of her many acidic
11 outbursts. (Plaintiff Depo., 275:7 – 276:25, Motion Ex. "B")("A lot of the things right
12 now are still up in the air in this country. **So whether you have a judge saying**
13 **something** . . . **it really doesn't matter anymore.** Okay?. . .*I don't care what one*
14 *specific judge says . . ..*")(emphasis added.)

15 Simply put, if Ms. Mkrtchyan "doesn't care" what this Court "says", as she
16 has so bluntly announced, the defense has no hope of achieving a "just, speedy, and
17 inexpensive determination" of their contentions in this case. Fed. R. Civ. P. 1. In such
18 a thoroughly poisonous environment, the end result is chaos – of the exact type on
19 display in Plaintiff's deposition transcript. Plainly, Ms. Mkrtchyan does what she
20 wants, when she wants regardless of what the Court says or does. While Ms.
21 Mkrtchyan is free to live her personal life as she sees fit, she is required to respect
22 Court directives and comply with them in this case. As she has chosen not to do so --
23 often in quite strident terms -- dismissal is now the required result.

24 "Pursuant to [Fed. R. Civ. P.] 41(b), the district court may dismiss an action for
25 failure to comply with ***any order*** of the court." Ferdik v. Bonzelet, 963 F.2d 1258,
26 1260-61 (9th Cir. 1992)(emphasis added); see, Thompson v. Housing Auth. of Los
27 Angeles, 782 F.2d 829, 831 (9th Cir. 1986) (stating "we have repeatedly upheld the

28

---

[14] "Contempt" is frankly a better descriptor.

imposition of the sanction of dismissal for failure to comply with pretrial procedures mandated by local rules and ***court orders***.")(emphasis added.) "Dismissal under a court's inherent powers is justified . . . in response to abusive litigation practices . . . .and to insure the orderly administration of justice and the ***integrity of the court's orders***." Halaco Engineering Co. v. Costle, 843 F.2d 376, 380 (9th Cir. 1988)(emphasis added.)

In fact, the Ninth Circuit "encourage[s]" dismissal whenever "counsel or a party has acted willfully or in bad faith in failing to comply . . . with ***court orders*** enforcing rules or in flagrant disregard of those rules and orders." G-K Properties v. Redevelopment Agency of the City of San Jose, 577 F.2d 645, 647 (9th Cir. 1978). As the Ninth Circuit has explained:

> Here the court dismissed the plaintiffs' action with prejudice. It acted properly in so doing. ***We encourage such orders.*** Litigants who are willful in halting the discovery process act in opposition to the authority of the court and cause ***impermissible prejudice*** to their opponents. It is even more important to note, in this era of crowded dockets, that they also deprive other litigants of an opportunity to use the courts as a serious dispute settlement mechanism.

Id. (emphasis added.)

Courts in this Circuit have followed the Ninth Circuit's directive – over and over again. See, e.g., Baca v. Ewing, 402 Fed. Appx. 286, 287 (9th Cir. 2010)("The district court did not abuse its discretion by dismissing the action . . . because Baca failed to comply with [a local rule]."); Yourish v. California Amplifier, 191 F.3d 983, 986-87 (9th Cir. 1999)(dismissal with prejudice affirmed where plaintiff failed to file an amended complaint per the court order within the time directed by the court); Ghazali v. Moran, 46 F.3d 52, 53-54 (9th Cir. 1995) (dismissal for noncompliance with local rule); Ferdik v. Bonzelet, 963 F.2d 1258, 1260-61 (9th Cir. 1992) (dismissal for failure to comply with an order requiring amendment of complaint);

Carey v. King, 856 F.2d 1439, 1440-41 (9th Cir. 1988) (dismissal for failure to comply with local rule requiring *pro se* plaintiffs to keep court apprised of address); Malone v. U.S. Postal Service, 833 F.2d 128, 130 (9th Cir. 1987) (dismissal for failure to comply with court order); Henderson v. Duncan, 779 F.2d 1421, 1424 (9th Cir. 1986) (dismissal for failure to comply with local rules). Buss v. W. Airlines, Inc., 738 F.2d 1053, 1054 (9th Cir. 1984)("[T]he district court dismissed the complaint because of plaintiff's failure to comply with court orders and failure to comply with local rules in a number of respects that delayed the preparation of the case for trial."; Dismissal affirmed.)

Consistent with these principles, and others like them, the Court should recommend dismissal as prayed.

### III. DISMISSAL IS REQUIRED TO ADDRESS PLAINTIFF'S COUNSEL'S ATTACKS ON THE COURT AT THE SEPTEMEBER 2, 2020 HEARING

The foregoing violations of this Court's good conduct orders are compounded and exacerbated by Ms. Mkrtchyan's extended, raised-voice attack on the Court's integrity during a telephonic September 2, 2020 hearing. (Transcript of Proceedings, 17:3-22:6, Motion Ex. "F"). As the transcript of the event reveals, Ms. Mkrtchyan repeatedly denounced the Court as being "biased" (four times), lacking "impartiality" (three times) and "mistreat[ing] and disparag[ing] and harass[ing]" her because she is "a female attorney". (Id.) She repeatedly violated the Court's order to "please stop talking" and the Court's directive that she not hang up on the Court. (Id.)

The defense is now before the Court seeking dismissal because of what Ms. Mkrtchyan's latest disturbing outburst reveals about the irretrievably chaotic status of this case. Again, if Ms. Mkrtchyan finds the Court and its orders worthy of contempt, the defense has no hope of achieving a "just, speedy, and inexpensive determination" of their contentions in this case. Fed. R. Civ. P. 1.

For this reason, among others, far less outrageous smears against sitting judges

have justified dismissal under our democratic system. And for her part, Ms. Mkrtchyan cites ***no law*** that gives her the right to disrupt a courtroom or insult a sitting federal court judge in the manner she repeatedly did. Nor is there any.

Rather than join the issue actually before the Court, Ms. Mkrtchyan uses her latest brief as an opportunity to let loose with even more shrill, unfounded invective against the Court. Thus, she makes more dark insinuations of "sexism" -- her seemingly go-to, verbal weapon of choice. See, e.g., (Opp., 19:22-20:2 – Plaintiff's counsel made "legitimate objections to the Magistrate's perceived attitude towards Plaintiff's counsel and his rulings at discovery hearings, most notably of September 2, 2020."); (id. – "Plaintiff's counsel had the right to object to the . . . treatment of Plaintiff's counsel at these proceedings. . .."); (id., 20:6-8 – "requesting sanctions for alleged 'disrespect to judiciary' is without merit, when it is entirely based on Plaintiff's proper exercise of legal rights.") For good measure, Ms. Mkrtchyan also doubles down on her unfounded "judicial bias" claim. (Mkrtchyan Decl., ¶ 14 – defending her denunciation of the Court because "the judge's comments about the case or parties should not be perceived as favoring one side over the other.")

To be sure, there is more.

But the point should have frankly been clear many pages ago.

To state the obvious, courts have value to our society because they dispense justice based on agreed, democratic legal principles. Pre-trial court orders give structure, boundaries and meaning to this important aspect of how civilized societies function. Accordingly, when courts are subjected to unfounded disrespect – or outright insults -- the result is unacceptable disorder and confusion. Litigation descends into a pointless free – for – all. Expenses unfairly mushroom. Issues are not fairly joined or resolved. And all parties' ability to reach a just, cost-effective result is jeopardized.

For these reasons, among others, dismissal is the appropriate result whenever courts are insulted and their fairness and impartiality are unfairly attacked while court

1 is in session. See, e.g., Maus v. Ennis, 513 F. App'x 872, 878 (11th Cir. 2013)(default
2 judgment affirmed where party "accused the district court of 'ignorance' and
3 'incompetency' . . .."); id. at 874–75 (ordering dismissal following allegations that
4 "Judge Presnell had shown 'prejudice and bigotry' against [plaintiff]" where "no
5 reasonable person could conclude that the court's references . . .were evidence of bias,
6 prejudice, or a lack of impartiality."); Gueye v. U.C. Health, 2014 WL 4984173, at *6
7 (S.D. Ohio 2014)("In this case, the Court concludes that dismissal of the complaint
8 with prejudice is the only feasible sanction . . ..There does not seem to be a sanction
9 short of dismissal of the complaint that will deter this Plaintiff from repeating the
10 same abusive, contemptuous, and harassing conduct."); In re Maurice, 167 B.R. 114,
11 127 (Bankr. N.D. Ill. 1994), as amended (Mar. 31, 1994), subsequently aff'd sub nom.
12 Matter of Maurice, 69 F.3d 830 (7th Cir. 1995)("the appropriate sanction against the
13 Debtor is dismissal of this case with prejudice . . ..[Debtor's counsel] has made several
14 *ad hominem* attacks on the Court."); Crawford v. JPMorgan Chase Bank, N.A., 242
15 Cal. App. 4th 1265, 1271 (2015), as modified on denial of reh'g (Jan. 4,
16 2016)(dismissal ordered under courts' inherent power where "Crawford . . . was
17 openly contemptuous of the trial court. He made it impossible to continue with the
18 litigation. Far from the trial court abusing its discretion, it would have been an abuse
19 of discretion not to impose a terminating sanction."); see also, McCaffity v. Hurst-
20 Euless-Bedford Indep. Sch. Dist., 98 F.3d 1339 (5th Cir. 1996)("*ad hominem* attacks
21 on district court judges will not be tolerated.")

22       Consistent with these principles, and others like them, the Court should
23 recommend dismissal as prayed. [15]

---

[15] "[C]ounsel who choose to disregard the orders of the district court place themselves and their clients at risk". Serra-Lugo v. Consortium-Las Marias, 271 F.3d 5, 6 (1st Cir. 2001). Thus, at this point, Plaintiff's "beef is against [his lawyer] not the court's ruling on the case.... 'Holding the client responsible for the lawyers' deeds ensures that both clients and lawyers take care to comply. If the lawyers' neglect protected the client from ill consequences, neglect would become all too common.' " Bakery Mach. & Fabrication, Inc., v. Traditional Baking, Inc., 570 F.3d 845, 848–49 (7th Cir. 2009). "

## IV.  CONCLUSION

Dismissal is appropriate whenever a party's "***actions*** evince a persistent belief that it is above any obligation to obey the Court's orders. . .or rules." <u>Loop AI Labs Inc. v. Gatti</u>, 2017 WL 934599, at *15 (N.D. Cal. 2017), <u>aff'd,</u> 742 F. App'x 286 (9th Cir. 2018). Here, Ms. Mkrtchyan has gone far beyond simply violating Court orders with ***actions*** alone. She has gone further by ***openly announcing*** that she will do and say exactly what she pleases – regardless of the Court's good conduct directives. (Plaintiff Depo., 275:7 – 276:25, Motion Ex. "B")("A lot of the things right now are still up in the air in this country. **So whether you have a judge saying something** . . . **it really doesn't matter anymore.** Okay?. . .<u>*I don't care what one specific judge says* . . ..</u>")(emphasis added.)

The Court has patiently tried to provide this case with needed civility and professionalism boundaries through at least ***two orders***. As Ms. Mkrtchyan "doesn't care" about the Court's civility directives – and has proved as much through nearly seven hours of "train wreck" misconduct during Plaintiff's deposition and a cringeworthy September 2, 2020 verbal denunciation of the Court – the correct response now is dismissal. Doubtlessly, any order short of dismissal will only embolden Ms. Mkrtchyan to commit even more prejudicial outrages of the type that that defy Defendants' descriptive powers. <u>See</u>, <u>National Hockey League v. Metropolitan Hockey Club</u>, 427 U.S. 639, 643 (1976)(the most severe "sanctions ... must be available to the district court in appropriate cases, not merely to penalize

---

'[T]here is certainly nothing novel [or unjust] about holding clients responsible for the conduct of their attorneys, even conduct they did not know about.' " <u>Thorpe v. Ancell</u>, 367 F.App'x 914, 923 (10th Cir. 2010); <u>see</u>, <u>Bd. of Trustees of Pipe Fitters' Ret. Fund, Local 597 v. Commercial Cooling & Heating, Inc.</u>, 2019 WL 2269959, at *16–18 (N.D. Ill. 2019)("the proper remedy for an innocent client whose lawyer inexcusably . . . fails in required obligations is a suit against the attorney for malpractice. Keeping a suit alive on the theory that a party should not be penalized for the omissions of his chosen attorney – which is Mr. Johnson's belated, unsupported theory – would be visiting the sins of the lawyer on the blameless opponent.")

those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent.")

DATED: November 24, 2020      Respectfully submitted,

**LYNBERG & WATKINS**

By: *[signature: Frank HC]*

**S. FRANK HARRELL**
**TAMARA HEATHCOTE**
Attorneys for Defendants
County of Orange, Deputy Chad Renegar, Deputy Joel Gonzalez, Deputy Kevin Pahel, Deputy Brandon Billinger, Deputy Mark Borba, Deputy Jameson Gotts and Deputy Justin Gunderson

## DECLARATION OF S. FRANK HARRELL

I, S. Frank Harrell, do declare and state as follows:

1. I am an attorney at law duly authorized to practice before this Court and I am a partner at Lynberg & Watkins, attorneys of record for all Defendants herein. I have personal knowledge of the following facts and, if called as a witness, I could and would testify competently thereto.

2. Ms. Mkrtchyan's latest filing alleges that I somehow "forced" her and Mr. Holloway to conduct Plaintiff's deposition without a Covid mask. (Opp., 3:22-23). But Ms. Mkrtchyan knows that the removal of masks at Plaintiff's deposition came at the request of ***the court reporter*** – who advised, off-the-record and at the outset of the deposition, that it would make her job easier if all speaking parties removed their masks. The court reporter further stated that many of her depositions proceeded in this manner, but the ultimate decision was a group call.

3. An off-the-record discussion was then held whereby all seven attendees at the deposition expressed their good health and their comfort with proceeding without masks. The notion that I could somehow "force" Ms. Mkrtchyan to do anything she did not want to do is not accurate.

I declare under the penalty of perjury under the laws of the United States of America that the foregoing is true and correct, and that this Declaration was executed on November 24, 2020 in the City of Orange, County of Orange, State of California.

*/s/ Frank Harrell*
_____
S. Frank Harrell, Esq.

4847-7838-5107, v. 1

13