## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## SOUTHERN DIVISION

| | |
|---|---|
| JEREMY HOLLOWAY,<br><br>    Plaintiff,<br><br>    v.<br><br>COUNTY OF ORANGE et al.,<br><br>    Defendants. | No. SA CV 19-01514-DOC (DFMx)<br><br>Order re: Defendants' Motion for Sanctions (Dkt. 116) |

## I.    INTRODUCTION

Defendants County of Orange, Deputy Chad Renegar, Deputy Joel Gonzalez, Deputy Kevin Pahel, Deputy Brandon Billinger, Deputy Mark Borba, Deputy Jameson Gotts, and Deputy Justin Gunderson (collectively, "Defendants") move for an order dismissing this action for violations of this Court's orders. See Dkt. 116 ("Motion") at 2-3.[1] Defendants also seek an award of monetary sanctions against Plaintiff and Plaintiff's counsel Narine Mkrtchyan for costs incurred in taking Plaintiff's deposition as well as fees and expenses incurred in bringing this motion. See id. at 3. As an alternative to dismissal, Defendants seek orders: (1) compelling Plaintiff to appear for a renewed deposition; (2) appointing a special master under Fed. R. Civ. P. 53(a)

---

[1] Except for citations to the record, page citations are to the CM/ECF pagination.

to supervise the renewed deposition at Plaintiff's expense; (3) limiting the verbal statements of Plaintiff's counsel during the renewed deposition to matters permitted by Rule 30; and (4) limiting counsel from interrupting or speaking over any other counsel or the deponent. See id. at 3-4.

Plaintiff opposed Defendants' motion. See Dkt. 120 ("Opp'n"). Defendants filed a reply. See Dkt. 122 ("Reply"). After providing the parties with a written tentative ruling, the Court held a hearing on December 8, 2020, at which it heard oral argument from both sides and then took the matter under submission. See Dkt. 132.

Based on its review of the record, the parties' papers, and the arguments of counsel at the hearing, the Court now RECOMMENDS and ORDERS as follows:

1.     The Court RECOMMENDS to the District Judge that Defendants' motion for dismissal be DENIED.

2.     The Court ORDERS Plaintiff to appear at a renewed deposition of up to seven (7) hours within sixty (60) days of this order. During the renewed deposition, the defending attorney may:

a.     In response to a question, state any or all of the following, if legally appropriate: "Object to form," "I instruct you not to answer," or "Don't include privileged information in your answer."

b.     Request a break when appropriate, which the examining attorney shall agree to if no question is pending.

c.     When it appears that seven hours of record time has passed, ask the videographer, "has this deposition lasted seven hours of record time?" Upon receiving confirmation that the deposition has lasted seven hours, state "This deposition is over. We are leaving."

    d.     State, if warranted, "I move to terminate [or limit] this deposition under Rule 30(d)(3)," and at his or her option, "I demand that this deposition be suspended for the time necessary to obtain an order."

    e.     The defending attorney may say essentially nothing else during the deposition. The word "essentially" allows for only brief statements concerning the logistics of the deposition, such as "Can you please hand me a copy of the exhibit?" or "My real-time monitor stopped working" or the like.

    f.     These paragraphs apply to the defending attorney in his or her capacity as a defending attorney. When he or she does a redirect exam, the roles are reversed, and these paragraphs apply to the attorney who was previously the examining attorney.

3.    The Court ORDERS Plaintiff's counsel to pay Defendants' counsel the costs of the court reporter and videographer for Plaintiff's August 14, 2020 deposition in the amount of $7,086.82 within thirty (30) days of the date of this order. Defendants shall bear the costs for the renewed deposition ordered above.

4.    The Court ORDERS that Plaintiff and Plaintiff's counsel, jointly and severally, shall pay at least a portion of Defendants' reasonable expenses and attorney's fees for bringing this motion under Rule 30(d)(2) and Rule 37(a)(5)(A). No later than seven (7) calendar days from the date of the issuance of this Order, Defendants shall file declaration(s) supporting sanctions in the amount of the reasonable expenses related to the motion. Plaintiff and Plaintiff's counsel may, separately or jointly, file opposition(s), no later than seven (7) calendar days from the date Defendants file their declaration(s). Defendants may file a reply or replies, no later than seven (7) calendar days from the filing of the opposition(s).

## II.   BACKGROUND

### A.   Deputy Renegar's Deposition and the Court's Subsequent Ruling

This is a police excessive-force case. Plaintiff alleges that the Orange County Sheriff's Department deputies named as individual defendants violated his constitutional rights during an incident that occurred in the early morning hours of January 21, 2018, at O'Neill Regional Park. One of those individual defendants, Deputy Chad Renegar, was deposed on July 7, 2020.

Defendants' counsel terminated Deputy Renegar's deposition early, unilaterally leaving after approximately 5 ½ hours of on-the-record testimony. This prompted Plaintiff to file an ex parte application for an order compelling resumption of Deputy Renegar's deposition. See Dkt. 69. Plaintiff's counsel also sought an award of $5,000 in sanctions. See id. Defendants filed an opposition. See Dkt. 70.

After reviewing the parties' submissions, the Court held a telephone conference on July 9, 2020. During this telephonic hearing the Court began the discussion by stating its general expectation that counsel should comport themselves in a deposition the same as if they were in the courtroom. The Court learned that the deposition had been video-recorded by Plaintiff's counsel. See Dkt. 73 at 1. The Court accordingly directed Plaintiff's counsel to submit a copy of the video recording, which she did. Plaintiff's counsel also later supplied a transcript. The Court reviewed the entire transcript and substantial portions of the video recording. See id. at 2.

Based on the Court's review of the transcript and video recording, it was apparent that Deputy Renegar's deposition was not conducted in a way that was consistent with the Court's expectations. Nevertheless, the Court did not want to see the deposition of a key witness like Deputy Renegar terminated early. Accordingly, the Court issued a written order granting Plaintiff's ex

4

parte application and ordering Deputy Renegar's deposition resumed for the remaining 90 minutes. See id.

But the Court denied Plaintiff's request for sanctions, writing: "Although I do not agree that Renegar's deposition should be terminated, his deposition was, to put it mildly, a train wreck. And responsibility for that result lies predominantly with Plaintiff's counsel." Id. The Court then detailed what it did not like about what Plaintiff's counsel did, identifying eight examples of inappropriate remarks with citations to the transcript. See id. at 3-4. The Court also stated its concerns about what it saw on the video recording, noting that Plaintiff's counsel raised her voice, slapped the conference room table, appeared to lose her temper several times, and used a tone of voice that ranged from "exasperated to indignant." Id. at 3. Based on these concerns, the Court concluded that it could not find that Deputy Renegar's counsel's decision to leave the deposition early was without substantial justification. See id. at 4.[2]

The Court concluded its written order by acknowledging that depositions in a hotly contested case (like this one) should not be expected to be a "non-stop exchange of pleasantries" but must not be allowed to become an excuse for counsel to "engage in acts of rhetorical road rage." Id. (quoting Freeman v. Schointuck, 192 F.R.D. 187, 189 (D. Md. 2000)). The Court then stated that "I trust that my remarks on July 9 and this subsequent ruling will cause [future] depositions to be conducted without the rancor that was exhibited on July 7." Id.

---

[2] Although Deputy Renegar's counsel "largely remained professional" despite the behavior of Plaintiff's counsel, the Court noted that several of her objections were misplaced and that she made several inappropriate remarks toward the end of the deposition. Id. at 4.

**B.**   <u>**Plaintiff's Deposition and the Instant Motion**</u>

Plaintiff's deposition was taken on August 14, 2020, less than a month after the Court's written ruling about Deputy Renegar's deposition. <u>See</u> Motion, Exh. B at 1.[3] The deposition was taken by Defendants' lead trial counsel, who was not the same attorney who defended Deputy Renegar's deposition. <u>See</u> Depo at 2. Defendants' counsel questioned Plaintiff for over 6 hours.

On September 2, 2020, the Court held a telephonic hearing on two motions to compel filed by Defendants. <u>See</u> Dkt. 84. Plaintiff's counsel disconnected from the hearing without the Court's permission. <u>See</u> Dkt. 86 at 6. After Plaintiff's counsel left the hearing, Defendants' counsel raised the possibility of filing the instant motion related to Plaintiff's deposition. <u>See</u> <u>id.</u> The Court had previously ordered the parties to present any potential discovery disputes to the Court using its informal telephone conference procedure. <u>See</u> Dkt. 35. Defendants' counsel requested leave of court to file that motion without proceeding with an additional telephone conference; the Court granted the request and gave Defendants permission to file the instant motion without complying with Local Rule 37. <u>See</u> Dkt. 86 at 6.

Defendants filed their motion on November 9, 2020. Relying on Rule 37(b)(2), Rule 41(b), and the Court's inherent power, Defendants' motion seeks a recommendation that the case be dismissed for Plaintiff's counsel's violation of the Court's oral comments and written order related to Deputy Renegar's deposition. <u>See</u> Motion at 18-55. Separately, Defendants argue that a recommendation of dismissal is warranted based on Plaintiff's counsel's

---

[3] Defendants submitted portions of Plaintiff's deposition transcript in support of their motion. Plaintiff submitted the entire transcript. <u>See</u> Opp'n, Exs. A1, A2 (hereinafter "Depo").

conduct during the September 2 hearing. See id. at 55-64. As an alternative to dismissal, Defendants request that the Court order a "repeat" of Plaintiff's deposition at Plaintiff's counsel's expense. See id. at 64-79. Additionally, Defendants request the appointment of a special master and an order from this Court limiting Plaintiff's counsel's statements at the "repeat" deposition to matters permitted by Rule 30. See id.

## III.   DISCUSSION

### A.   Improper Instructions Not to Answer

The Court begins with counsel's instructions to Plaintiff not to answer Defendants' questions. The Court's review of Plaintiff's deposition reveals roughly two dozen instances where Plaintiff's counsel instructed her client not to answer a question based on relevance, privacy, argumentative, badgering, or asked and answered objections:

- Questions about his work history before 2012 – relevance (Depo at 39-42)

- Questions about his minor daughter – relevance and privacy (Depo at 46)

- Questions about his parents and siblings – relevance and privacy (Depo at 50-51)

- Questions about his understanding of deputy's request during the incident – asked and answered (Depo at 93)

- Question about what was important to him during the incident – asked and answered (Depo at 98)

- Question about his language during the incident – asked and answered (Depo at 115)

- Question about his belief during the incident – speculation, vague and ambiguous, asked and answered (Depo at 135)

- Question about prior time spent in jail – relevance (Depo at 252)

- Questions about name of older brother – privacy (Depo at 255)

- Question about why he deleted his Facebook account – argumentative (Depo at 264)

- Question about whether someone told him to delete his Facebook account – relevance, badgering, privilege (Depo at 265)

- Question about when he opened his Facebook account – privacy (Depo at 269)

- Question about prior experiences with law enforcement – asked and answered, argumentative (Depo at 279)

- Question about prior arrests – privacy, badgering, asked and answered (Depo at 280)

- Question about identity of victim involved in domestic violence arrest – relevance (Depo at 284)

- Question about charge on which Plaintiff was arrested – basis not specified (Depo at 289)

- Question about sentence – asked and answered (Depo at 291)

- Questions about why law enforcement came to Plaintiff's campsite – asked and answered (Depo at 301, 302)

- Question about outcome of Plaintiff's DUI arrest – relevance (Depo at 305)

8

- Question about deputy's request that Plaintiff get on the ground – badgering, asked and answered, argumentative, relevance (Depo at 329)

- Question about whether he said, "I'm going to file a lawsuit," during the incident – argumentative (Depo at 331)

- Question about what he'd like to achieve through lawsuit – argumentative, irrelevant (Depo at 333)

- Questions about whether plaintiff thinks he deserves money in this case – argumentative, badgering (Depo at 335)

- Question about whether he was told to get on the ground before he was punched in the face – asked and answered (Depo at 340)

The Court starts with "asked and answered," an objection that served as the basis for several of counsel's instructions not to answer. Plaintiff's counsel explained her objections on the record during the deposition: "Any time you are re-asking the same question, I'm going to tell him not to answer the same question." Depo at 100. This statement is legally misplaced. As another district court in California recent noted, "[i]n the context of a deposition, 'asked and answered' objections are utterly pointless and serve no purpose." La Jolla Spa MD, Inc. v. Avidas Pharmaceuticals, LLC, No. 17-1124, 2019 WL 4141237, at *19 (S.D. Cal. Aug. 20, 2019). Another district court in California has elaborated:

> There is nothing wrong with asking a question multiple times during a deposition. Sometimes the witness didn't answer it, or answered only part of it, or the answer is implausible, or the answer builds in caveats that a slight rephrasing of the question might expose, or asking essentially the same question from

different angles or in slightly different ways yields different
answers. Unless repeated questioning crosses the line into
harassment, it can be an effective technique of cross-examination.
Objecting "asked and answered" is a way of coaching the witness
because it is not actually objectionable to ask a question multiple
times. Saying "asked and answered" can be a way of telling the
witness not to change his testimony from what he said before.
Also, as every lawyer knows, when the defending attorney objects
"asked and answered," often the question really wasn't answered,
so the objection becomes a suggestion to the witness to continue
refusing to answer the question, which is what happened here.

Zeleny v. Newsom, No. 17-7357, 2020 WL 6585793, at *4 (N.D. Cal. Nov. 10,
2020).[4]

Nor do counsel's instructions based on relevance or harassment (like
argumentative or badgering) fare any better. The Federal Rules distinguish
between evidentiary objections (like relevance) and objections necessary to
preserve a privilege or enforce a court-ordered limitation. Relying on this
distinction, the Rules permit counsel to instruct a witness not to answer "only
when necessary to preserve a privilege, to enforce a limitation ordered by the

---

[4] Moreover, contrary to her statement on the record, Plaintiff's counsel
knows better. Plaintiff's counsel correctly identified that "asked and answered"
was not a basis for an instruction not to answer during Deputy Gotts's
deposition on July 23, 2020, responding to such an instruction as follows: "No.
He – you cannot instruct him not to answer. . . . You're not going to go down
this path. Unless you have a privilege, you cannot instruct him not to answer
my questions." Gotts Depo (Opp'n, Exh. D) at 108-09 (emphasis added). As
noted above, that is a correct statement of the law. And in this instance
Defendants' counsel relented and Deputy Gotts answered Plaintiff's counsel's
questions.

court, or to present a motion under Rule 30(d)(3)." Fed. R. Civ. P. 30(c)(2).[5] For all other objections, the testimony should be taken subject to the objection. See Natural-Immunogenics Corp. v. Newport Trial Grp., No. 15-2034, 2017 WL 10562691, at *4 (C.D. Cal. Aug. 7, 2017); see also Jackson v. Cnty. of San Bernardino, No. 13-01650, 2016 WL 7495816, at *3 (C.D. Cal. Apr. 21, 2016) ("A relevance objection is an insufficient basis for instructing a witness not to answer."); In re Toys R Us-Delaware, Inc. Fair & Accurate Credit Transactions Act (FACTA) Litig., No. 08-1980, 2010 WL 4942645, at *9 n.12 (C.D. Cal. July 29, 2010) ("An attorney may not instruct a witness not to answer a question on the ground that it has been asked and answered, is vague and ambiguous or is irrelevant.").

To be sure, Rule 30 does allow a deponent to end the examination where deposing counsel acts "in bad faith" or "unreasonably annoys, embarrasses, or oppresses the deponent or party." Fed. R. Civ. P. 30(c)(2). But the Rules do not permit counsel to refuse to answer questions on this basis. See Natural-Immunogenics Corp., 2017 WL 10562691 at *4. Put simply, "[a] deponent may not unilaterally refuse to answer questions at a deposition and then require a deposing party to obtain a court order directing the deponent to answer." Luangisa v. Interface Operations, No. 11-00951, 2011 WL 6029880, at *12 (D. Nev. Dec. 5, 2011).

In sum, Plaintiff's counsel should have instructed her client to answer Defendants' questions subject to objections. Instead, as evidenced by the transcript, counsel repeatedly objected in a manner that resulted in incomplete answers or no answer at all. This was improper and impeded the fair

---

[5] Plaintiff's counsel understands the limitations of Rule 30(c)(2), having cited it verbatim in the Opposition. See Opp'n at 9.

examination of Plaintiff. For this reason alone, Plaintiff's deposition must be repeated.

**B.    Other Deposition Misconduct**

**1.    Lengthy Speaking Objections and Arguments**

A tell-tale sign of a deposition that has gone off the rails is page upon page of transcript that reflects counsels' squabbling rather than questions and answers. The transcript of Plaintiff's deposition contains several of these events. The Court has selected three episodes for discussion, although there were many more to choose from.

 The first extended episode arises at about the one-hour mark of the deposition when Defendants' counsel attempts to ask about Plaintiff's medical bills:

> MR. HARRELL: Sir, have you received a bill from the VA, to your knowledge, for your medical treatment since the incident happened? Yes, no, or I don't know?
>
> MS. MKRTCHYAN: Or has your lawyer -- see –
>
> MR. HARRELL: Ma'am, with respect, that's not my question. So you'll have an opportunity later if you're so inclined to ask whatever you want to ask. Right now my question has a limited focus that does not involve you, with all due respect.
>
> MS. MKRTCHYAN: Well, excuse me. If it's attorney-client privilege, then it is involving me.
>
> MR. HARRELL: Ma'am.
>
> MS. MKTRCHYAN: So -- and you know what? Your attitude -- I really do not appreciate this condescending attitude, unprofessional, sexist attitude that you're coming up across from the very beginning this morning.  I'm not going to tolerate that.

From the very beginning, you've been this hostile, you know, person, you know. So I'm not going to tolerate that.

I'm instructing him not to answer because the answer presupposes attorney-client privilege.  Okay? He is -- he has -- his attorney has received billing records. He has not received it. So, therefore, his answer is irrelevant.  So –

MR. HARRELL: Are you done?

One of the reasons, ma'am, why we have a camera here today is because we need one with you. You've already proven that. The magistrate judge characterized your conduct as, and I quote, "a train wreck."

MS. MKRTCHYAN: Okay.

MR. HARRELL: And that's being charitable.

MS. MKRTCHYAN: And excuse me.

MR. HARRELL: We have a camera here today –

MS. MKRTCHYAN: Train wreck.

MR. HARRELL:  --  so that you can see --

MS. MKRTCHYAN: Very good.

MR. HARRELL: -- that nobody has raised their voice here today.

MS. MKRTCHYAN: Very good, Counsel. Very good.

MR. HARRELL: Your comment about me being a sexist --

MS. MKRTCHYAN: Okay. I'm taking a break because I don't need this type of attitude.

MR. HARRELL: is what we call in the trade a lie.

> MS. MKRTCHYAN: Okay. Until you finish, I'm going to take a break.
>
> MR. HARRELL: -- and you need to get control of yourself.
>
> MS. MKRTCHYAN: Well, thank you.
>
> MR. HARRELL: You need to pull yourself together.
>
> MS. MKRTCHYAN: Maybe you need to pull yourself together.
>
> MR. HARRELL: -- and it needs to happen now.
>
> MS. MKRTCHYAN: We're going to break until you bring yourself to normal condition because you are being rude and unprofessional, and you have no right to condescend me like that. Thank you.
>
> Let's go.
>
> THE VIDEOGRAPHER: We are now going off the record.

Depo at 56-58. Here, a question about whether a bill was received from the VA prompts an inappropriate speaking objection from counsel, from which follows an extended diatribe by Plaintiff's counsel. This outburst prompts Defendants' counsel to remind Plaintiff's counsel of this Court's prior ruling, and after some additional colloquy, a break is taken.

A second episode occurs about an hour later when Defendants' counsel asks Plaintiff about his demeanor during the incident:

> MR. HARRELL: You were calm and cool the entire time of the incident?
>
> MS. MKRTCHYAN: Asked and answered.
>
> THE WITNESS: Yes.

14

MR. HARRELL: You used restrained, respectful words throughout the entire incident; right?

THE WITNESS: I will say I cussed a couple times.

MR. HARRELL: And was that calm and respectful words?

THE WITNESS: You know what? It was not out of control. I was in very control -- I was very controlled , and I was treating them with far more respect than they were treating me.

MR. HARRELL: Do you make it your practice to use curse words when you're angry and upset?

MS. MKRTCHYAN: Argumentative.

THE WITNESS: I wasn't angry --

MS. MKRTCHYAN: Argumentative.

THE WITNESS: -- or upset. I was frustrated.

MS. MKRTCHYAN: Let me object. Okay? This is going--

MR. HARRELL: Do you make it your practice to use curse words when you're angry and upset?

MS. MKRTCHYAN: Asked and answered. Badgering the witness.

Are you going to continue doing the same thing over and over again? You asked, and he answered.

MR. HARRELL: Do you make it your practice, sir, to use --

MS. MKRTCHYAN: Don't answer that.

(Discussion off the record.)

15

(The following record was read: "Q Do you make it your practice, sir, to use --")

MS. MKRTCHYAN: Okay. Asked and answered. I'm instructing not to answer that question.

MR. HARRELL: Do you make it your practice, sir, to use curse words when you're angry and upset?

MS. MKRTCHYAN: I'm instructing you not to answer.

MR. HARRELL: Mark it.

MS. MKRTCHYAN: He answered it.

MR. HARRELL: So when Deputy Renegar says, "We've received multiple calls on you being involved in misconduct" or words to that effect, what is the very next thing that you say or do?

MS. MKRTCHYAN: Asked and answered. Vague and ambiguous. The very next thing, say, and do.

Do you understand the question?

THE WITNESS: He's asking me when he told me the call was on me.

MR. HARRELL: Counsel, you're really not helping, and I'm trying not to bother the magistrate judge.

MS. MKRTCHYAN: There's not your problem.

MR. HARRELL: I have heard reports on you that have been very unsettling, and now I see why. It's like nothing else I've done in quite a while.

MS. MKRTCHYAN: By the way, right now you have no right to talk to me like that. Okay? Right now I can say--

MR. HARRELL: Then pull yourself together.

MS. MKRTCHYAN: Excuse me. I have a right to object. Who the hell do you think you are? I have a right to object.

MR. HARRELL: Make legal objections.

MS. MKRTCHYAN: I am making the objections the way I understand. If you have a problem with my objections, you can take it up later. Okay? There you go.

MR. HARRELL: Ma'am, you've got to pull yourself together.

MS. MKRTCHYAN: Okay. You have yet to see me too -- I mean seriously, this is the sexist, condescending attitude, Counsel, and you are really behaving just like this with any female attorney that is younger than you? I'm sorry. If no one told you outright that that's sexist attitude, I will. I'm not afraid.

And I will tell you that your behavior from this morning and even before then, your letters, your -- you know, your harassing letters towards me have been infused with condescending attitude. Who do you think you are?

Who do you think you are? I know who I am, but you need to know your place. Okay? I am a female young attorney, and you have no right to do this to me or my client.

You're badgering the witness. Let's go over the questions. You have to ask only appropriate questions, and you are not.

And I will object as long as it takes, or I will just stop this deposition as your co-counsel did. So --

MR. HARRELL: Are you all done? Any more?

MS. MKRTCHYAN: Continue with your questioning, or we will take a break.

Depo at 116-19. Here, after an improper instruction not to answer, counsel makes another speaking objection, which prompts Defendants' counsel to make another reference to the Court's prior ruling by mentioning "the magistrate judge." As it did before, the reference to the Court's prior ruling does not end the colloquy, and it continues as Plaintiff's counsel makes a lengthy speech about counsel's questioning.

From there, the deposition continues, and shortly thereafter, a third episode occurs:

> MR. HARRELL: You do understand that law enforcement has a responsibility to respond to complaints of criminal conduct. That's part of their job. You understand that; right?
>
> THE WITNESS: As much as I can, being a civilian.
>
> MR. HARRELL: And you understand, sir, that there was a complaint of criminal conduct at the campground before law enforcement appeared at your tent; true?
>
> MS. MKRTCHYAN: Vague and ambiguous.
>
> THE WITNESS: I understand that now.
>
> MS. MKRTCHYAN: Vague and ambiguous as to time.
>
> MR. HARRELL:  Do you hold it against law enforcement for responding to the complaint of criminal conduct at the campground, or do you think they just should have ignored it?
>
> MS. MKRTCHYAN:  How do you object to this type of nonsense?
>
> THE WITNESS:  This is --
>
> MS. MKRTCHYAN: Argumentative. Objection. Vague and ambiguous.

THE WITNESS: Yeah, I can't answer that question.

MS. MKRTCHYAN: Wait a minute. Let me finish my objection. Argumentative. Vague and ambiguous. Irrelevant.

MR. HARRELL: We're going to read it back for you, sir. And, ma'am, you're free to have a running objection if that's what you would like to have.

MS. MKRTCHYAN: No. I have an objection to your line of questioning because you are asking the argumentative questions. Badgering the witness. That is not likely to lead to admissible evidence. Okay?

And if you are going to interrupt this and I am going to call the magistrate and find out why is this question that right now you're posing three times is important.

The law enforcement has a job to do. No. Law enforcement has a job to do, but your clients did not have a right to beat the hell out of my client.

MR. HARRELL: No. No.

MS. MKRTCHYAN: And if you, as an attorney, have no sense of understanding and common sense as to what happened, this is a victim of police brutality, and you keep badgering him?  You think that your clients have not committed a crime here? So go after them, not my client.

And he's not going to tolerate this type of nonsense from a defense counsel who doesn't even bother to wear his mask when we have a coronavirus. Okay? Seriously.

MR. HARRELL: Ma'am, you're --

MS. MKRTCHYAN: It just bothers me that you have no sense of common sense and compassion. Someone is sitting in front of you who was beat up by your moron clients. Okay? Your clients, your

criminal clients who are wearing a badge and are using that badge to commit crimes, including falsifying reports.

And you are going to sit here and tell this guy, who was a victim of police brutality, that he does not understand the job of the law enforcement? Yes, he understands, but the job of law enforcement is not to go and beat the hell out of people.

And you, as an attorney, your job is not just to do your job, defend these kind of criminals, but to do it with some degree of compassion. Okay? If you do not have compassion, maybe you should not be an attorney at all.

That's why this country is in this deep shit that we are. Okay? People like you and people like your clients. That's all I've got to say.

The bottom line is that you know what? I'm going to take as many breaks as I want, and I may stop this deposition because you're continuing to badger this guy, who is a victim. He's a victim that your clients have ruined the life of, and you're telling him what is the job of law enforcement?

MR. HARRELL: Where are you going, ma'am?

MS. MKRTCHYAN:  I am taking a break because you need to take five minutes to understand what it means to be, you know -- to have common sense and compassion, you know.

MR. HARRELL: Okay. Well, you take your break. Try to pull yourself together.

MS. MKRTCHYAN: No, but because you do not have a clear understanding of what is the United States Constitution and what this country's flag is all about. Someone is sitting in front of you who has served you, your country, and you're badgering him with nonsense, stupid questions.

MR. HARRELL: Okay. We're off the record while plaintiff's counsel tries to pull herself together.

20

THE VIDEOGRAPHER: We're now going off the record. The
time is 1:10 p.m.

Depo at 140-44.

These lengthy episodes reflect a proceeding that has been derailed by
counsel's obstructionist behavior. It is beyond any reasonable dispute that
counsel's behavior was inappropriate. Another district court has written the
following about the "limited role" contemplated by Rule 30 for attorneys
defending a deposition:

> They may make a "nonargumentative and nonsuggestive"
> objection to a question. Fed. R. Civ. P. 30(c)(2). They may
> "instruct a deponent not to answer only when necessary to
> preserve a privilege, to enforce a limitation ordered by the court, or
> to present a motion under Rule 30(d)(3)." Id. They may "move to
> terminate or limit" the deposition "on the ground that it is being
> conducted in bad faith or in a manner that unreasonably annoys,
> embarrasses, or oppresses the deponent or party." Fed. R. Civ.
> Proc. 30(d)(3)(A). And in connection with so moving, the
> defending attorney may demand the suspension of the deposition.
> Id.

> By convention, there are a few more things defending
> attorneys may do that are not expressly mentioned in Rule 30.
> They can do redirect following the completion of the examining
> attorney's questioning. They can ask to take a break every hour or
> so, and provided that no question is pending, that request should
> be agreed to. They can suggest a lunch break around noon. They
> can ask the videographer how much time has gone by on the
> record. And then when the seven hours are up, they can declare
> the deposition over, take their witness and leave.

> And that's it. They are not allowed to make long,
> argumentative objections, or reframe the question for the witness,
> or make speeches about the irrelevance of the examining attorney's
> questions, or get into arguments with the other side. None of that
> is allowed.

<u>Hardin v. Mendocino Coast Dist. Hosp.</u>, No. 17-05554, 2019 WL 1855989, at *7 (N.D. Cal. 2019).

Suffice to say, Plaintiff's counsel did not stick to what is allowed. As illustrated above, large portions of the deposition veered from questions and answers to lengthy speaking objections and arguments between counsel. For this, Defendants' counsel is not without blame. Although for the most part he tried to continue questioning the witness in the face of Plaintiff's counsel's behavior, he did at times respond to her misconduct with unnecessary and unhelpful responses. Notably, he should not have suggested more than once that Plaintiff's counsel "pull herself together." Such a comment was unnecessary at the least and provoked rather than deescalated Plaintiff's counsel's misconduct.

But as with Deputy Renegar's deposition, the vast majority of responsibility for these extended episodes of bickering falls on Plaintiff's counsel. Over the course of a two-hour period, Plaintiff's counsel called Defendants' counsel "sexist," "rude," "unprofessional," "condescending," and lacking "common sense and compassion." She also rebuffed his reasonable deposition questions as "nonsense" and "stupid," and referred to his clients as "morons." Near the end, Plaintiff's counsel's launched into lengthy diatribes about the injustice done to her client, effectively preventing Defendants from deposing the witness. As noted by the Court in <u>Hardin</u>, this type of behavior "substantively interferes with the whole point of a deposition" and "makes the discovery process valueless because it prevents the other side from building its case." <u>Id.</u>

### 2.    Improper Comments about Questions

Plaintiff's counsel's misconduct was not limited to these episodes and the improper instructions not to answer. The transcript and the video reveals a

"low hum" of obstructive and harassing behavior by Plaintiff's counsel that
persisted throughout the deposition. In the Court's ruling about Deputy
Renegar's deposition, it identified several of her improper comments on the
record about the witness's answers to her questions. See Dkt. 73 at 3-4. Here,
in Plaintiff's deposition, with counsel's role as the attorney defending the
deposition, those comments took the form of improper comments on the
record about counsel's questioning.

      The deposition transcript is littered with them. To cite just a few, counsel
described a question as "pathetic." Depo at 49. She called another question
"the [] dumbest question[] I have ever heard," id. at 54, an accusation she
repeats later in the deposition, see id. at 242. At one point she called the
questioning "hilarious." Id. at 97. At another she told counsel his questions
"do not make sense." Id. at 125.

      One of counsel's favorite words is "nonsense," and she used it repeatedly
to describe her adversary's questioning. Counsel called the questioning
"nonsense of all type of proportions." Id. at 140. She asked after another
question, "How do you object to this type of nonsense?" Id. at 141. Later in
the deposition she interrupted a question to say that counsel was "full of
nonsense." Id. at 288.

      She tells him that his question is "making a nightmare." Id. at 219.
Counsel wonders how someone can "ask" or "answer this type of question."
Id. at 243. At another point, when Defendants' counsel asks for a readback of a
question, counsel comments, "You are never happy. I wonder if anyone has
ever made you happy ever. Jesus." Id. at 247. When Defendants' counsel
suggests that an objection is an improper speaking objection, she responds,
"I'm making my objections. If you don't understand my objections, open the
legal foundation evidence book." Id. at 281. Counsel repeatedly told
Defendants' counsel that "you're just not learning your lesson" as she makes

improper instructions not to answer. Id. at 298. Counsel characterized the questioning as "a joke," id. at 302, in a repeat of something said in Deputy Renegar's deposition and cited by the Court as an inappropriate comment, see Dkt. 73 at 3 (identifying as improper counsel's comment "It's a joke. This civil litigation is entirely a joke").

As the Court has repeatedly stated, a deposition should be conducted as if it were a courtroom proceeding. These comments would have no place in a courtroom. The Court expressly counseled Plaintiff's counsel about these kinds of comments in connection with Deputy Renegar's deposition, making that very point, telling counsel that "none of these antics would have been permitted to persist in any courtroom in the federal courthouse in Orange County." Dkt. 73 at 3.

It is not just that the Court's earlier comments went unheeded. These kinds of comments denigrate the proceedings. They turn what is supposed to be an orderly, professionally conducted search for the truth into a forum for childish name calling. More critically, they signal to the witness that it is okay to argue with examining counsel and make flippant, inappropriate remarks, which was the case here. See, e.g., Depo at 272 (when asked what he meant by "Facebook is bathroom activity," Plaintiff's responding, "You read a book when you take a shit. Same thing.").

### 3. Disruptive Behavior and Comments about the Court

Plaintiff's misconduct reached a zenith during questions about Plaintiff's Facebook account.[6] After some back and forth over attorney-client privilege objections, Plaintiff's counsel, whom the Court had previously chided for slamming her fists down on the table, stood up and threw documents across

---

[6] Defendants believe that Plaintiff deleted his Facebook posts or entire account following their request for access to it.

the deposition table in the direction of Defendants' counsel and deposition staff. <u>See</u> Depo at 260. Nothing – absolutely nothing – would justify this type of outburst. Were it to occur in a courtroom, the Court cannot imagine any possible outcome other than a finding of contempt. It is no less contemptuous because it occurred during a deposition.

After a short recess, Defendants' counsel attempted to continue his line of questioning. In response, Plaintiff's counsel repeatedly threatened to leave and became so argumentative that the court reporter was unable to read back counsel's questions, prompting Defendants' counsel to suggest the Court's assistance. This did not deter Plaintiff's counsel:

> MR. HARRELL: Ma'am, I'm going to go to the magistrate judge, and I'm going to ask him to bring your client back.
>
> MS. MKRTCHYAN: I will. I will go to the magistrate judge to stop this, and I will walk away. Okay? And my client is not going to come back for another deposition.
>
> MR. HARRELL: Maybe the judge will have the final word on that, ma'am.
>
> MS. MKRTCHYAN: Well, you know what? I'm sorry. A lot of the things right now are still up in the air in this country. So whether you have a judge saying something or the president saying something, it really doesn't matter anymore. Okay?
>
> MR. HARRELL: It doesn't matter to you what the judge says?
>
> MS. MKRTCHYAN: Right now what I care is my client being badgered by you and your condescending behavior toward me.
>
> MR. HARRELL: Ma'am, are you saying it doesn't matter to you what the judge says?

> MS. MKRTCHYAN: At this point all I care is what the books
> say. I don't care what one specific judge says or does not do.
> Nobody is above the law.

Depo at 276-77. These comments are especially troublesome when considered
alongside Plaintiff's counsel prior decision to defy the Court and disconnect
from a telephonic hearing. See Dkt. 86 at 6.

Plaintiff's counsel responds that she was simply acting in self-defense,
and that she was provoked and harassed by Defendants' counsel. See Opp'n at
22. In support, she cites sixty-seven examples of Defendants' counsel's
harassing and hostile deposition conduct. See id. at 23-38. The Court has
reviewed all of them. The vast majority showcase typical deposition behavior
and questions that Plaintiff's counsel should have countered with short
objections, not outrage. A few examples, such as telling Plaintiff's counsel she
was losing "the quiet game," were unnecessary and provoking; going forward,
Defendants' counsel should refrain from making these sorts of comments. But
having reviewed the entire transcript, these minor transgressions by
Defendants' counsel did not justify, in any fashion, the misconduct of
Plaintiff's counsel. Plaintiff's provocation claims are meritless.

## C.   Notwithstanding Counsel's Misconduct, Terminating Sanctions Are Not Warranted

District courts have inherent power to impose sanctions for "conduct
which abuses the judicial process." Chambers v. NASCO, Inc., 501 U.S. 32,
44-45 (1991); see also Leon v. IDX Sys. Corp., 464 F.3d 951, 958 (9th Cir.
2006) ("There are two sources of authority under which a district court can
sanction a party who has despoiled evidence: the inherent power of federal
courts to levy sanctions in response to abusive litigation practices, and the
availability of sanctions under Rule 37."). District courts have inherent power
to impose sanctions, including default or dismissal, when a party has "willfully

deceived the court and engaged in conduct utterly inconsistent with the orderly administration of justice." Fjelstad v. Am. Honda Motor Co., Inc., 762 F.2d 1334, 1338 (9th Cir. 1985); see also TeleVideo Sys., Inc. v. Heidenthal, 826 F.2d 915, 916 (9th Cir. 1987) ("Courts have inherent equitable powers to dismiss actions or enter default judgments[.]").

Terminating sanctions are a severe remedy, and should be imposed only in extreme circumstances, "where the violation is 'due to willfulness, bad faith, or fault of the party.'" In re Exxon Valdez, 102 F.3d 429, 432 (9th Cir. 1996) (quotation omitted); see also Anheuser-Busch, Inc. v. Nat. Beverage Distribs., 69 F.3d 337, 348 (9th Cir. 1995) (terminating sanctions are warranted where "a party has engaged deliberately in deceptive practices that undermine the integrity of judicial proceedings"). "The most critical criterion for the imposition of a dismissal sanction is that the misconduct penalized must relate to matters in controversy in such a way as to interfere with the rightful decision of the case. This rule is rooted in general due process concerns. There must be a nexus between the party's actionable conduct and the merits of his case." Tripati v. Corizon Inc., 713 F. App'x 710, 711 (9th Cir. 2018) (quoting Halaco Eng'g Co. v. Costle, 843 F.2d 376, 381 (9th Cir. 1988)).

Additionally, before imposing the "harsh sanction" of dismissal, the court must consider the following factors: "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its dockets; (3) the risk of prejudice to the party seeking sanctions; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions." Leon, 464 F.3d at 958 (citation omitted). Because the first two factors generally weigh in favor of sanctions and the fourth factor weighs against sanctions, "the key factors are prejudice and availability of lesser sanctions." Stars' Desert Inn Hotel & Country Club, Inc. v. Hwang, 105 F.3d 521, 524 (9th Cir. 1997).

Here, the Court finds that prejudice and the availability of lesser sanctions cut strongly against dismissal. Although Plaintiff's deposition was marred by counsel's conduct and her improper instructions not to answer, those incidents did not afflict the entire deposition and there were significant portions of Plaintiff's testimony that were taken without incident or interference. Moreover, a reopened deposition would cure any prejudice suffered by Defendants. The Court accordingly cannot conclude at this point that counsel's conduct during the deposition has impaired the ability of Defendants to go to trial or interfered with a rightful decision in the case. See U.S. for the Use and Benefit of Wiltec Guam, Inc. v. Kahaluu Constr. Co., 857 F.2d 600, 603 (9th Cir. 1988) (rejecting terminating sanctions where defendant's discovery violations, including delaying depositions, "certainly caused serious inconvenience for [plaintiff]" but "did not prejudice the outcome of [plaintiff's action"); Joshua Ventures Int'l Inc. v. Morse, No. 05-01018, 2007 WL 923631, at *3 (D. Nev. Mar. 23, 2007) (finding no prejudice where defendant failed to show for deposition because he agreed to appear a week later).

As to less drastic sanctions, the Court has considered (1) whether they are available, and if so, why they would be inadequate; (2) whether they were employed before; and (3) whether the party subject to dismissal was warned of the possibility of dismissal. Although the Court has previously cautioned Plaintiff's counsel about her deposition behavior, it has not previously imposed sanctions. And the Court has not warned Plaintiff of the possibility of dismissal—which it now does, explicitly.

Citing National Hockey League v. Metropolitan Hockey Club, 427 U.S. 639, 643 (1976), Defendants argue that any sanction short of dismissal will only embolden Plaintiff's counsel. See Motion at 63; Reply at 15-16. In NHL, plaintiffs continuously disregarded their discovery obligations, even in the face

of warnings that their failures could result in dismissal. <u>See</u> 427 U.S. at 640-41. We have not reached that point in this case, yet. Nevertheless, Plaintiff and his counsel are expressly warned that failure to comply with this order or any future order may result in a recommendation of dismissal.

**D.    The Renewed Deposition and Additional Sanctions**

**1.    A Renewed Deposition and Monetary Sanctions Are Warranted**

Sanctions, including costs and attorneys' fees, may be awarded for conduct that the court finds "impedes, delays, or frustrates the fair examination of the deponent." Fed. R. Civ. P. 30(d)(2). The court may order depositions to be resumed or taken again and that the cost be borne by the party whose counsel's conduct necessitated retaking the deposition. <u>See</u> <u>Obrien v. Amtrak</u>, 163 F.R.D. 232, 236 (E.D. Pa. 1995); Fed. R. Civ. P. 30(d)(3)(C) ("Rule 37(a)(5) applies to the award of expenses.").

Here, for the reasons stated above, the Court finds that Plaintiff's counsel impeded and frustrated the fair examination of Plaintiff during his August 14, 2020 deposition. Defendants are entitled to a deposition that is not marred by improper instructions to answer and misconduct of Plaintiff's counsel. Additionally, counsel has not displayed any remorse about her conduct during Plaintiff's deposition. To the contrary, Plaintiff's counsel insisted at least twice during the hearing on this motion that she had not done anything wrong. Plaintiff's counsel is entitled to her point of view, but she is not entitled to continue disobeying the Court's clear orders or engaging in what the Court has repeatedly identified as inappropriate, unprofessional misconduct.

Accordingly, the Court will require that: (1) Plaintiff's counsel pay to Defendants' counsel the costs of the court reporter and videographer for the August 14 deposition and (2) Plaintiff's deposition be taken again within sixty (60) days of this order. This renewed deposition will be governed by an order

that implements the requirements of Rule 30, the details of which are set forth at the beginning and end of this order.

During the hearing, Plaintiff's counsel suggested that she would be unable to pay these or other monetary sanctions and may have to terminate her representation if sanctions are imposed. These arguments were not part of the Opposition and there is no evidence in the record regarding Plaintiff's counsel's financial condition. In any event, it is Plaintiff's counsel's repeated misconduct that necessitated the Court's intervention. Lesser sanctions, given the history of this case, would not suffice.

### 2.    A Special Master Is Not Warranted

Defendants also seek an order appointing a special master to oversee the renewed deposition. Rule 53 of the Federal Rules of Civil Procedure limits the scope of appointment of special masters to a narrow set of circumstances. See Fed. R. Civ. P. 53(a)(1). The only one relevant here is appointment to "address pretrial . . . matters that cannot be effectively and timely addressed by an available district judge or magistrate judge of the district." Fed. R. Civ. P. 53(a)(1)(C). "A pretrial master should be appointed only when the need is clear." Fed. R. Civ. P. 53(a)(1) advisory committee's note to 2003 amendment.

To be sure, the Court has already admonished Plaintiff's counsel both orally and in writing about deposition conduct. It had little effect. However, the Court hopes that this detailed order, and the threat of additional sanctions that will issue if the order is violated, will suffice to permit a new deposition to be completed without a special master. In ordering a renewed deposition the Court is mindful of Plaintiff's representation that attending a deposition would create considerable expense for him personally due to his relocation to Pennsylvania. Regrettably, his counsel's conduct and improper instructions not to answer at his initial deposition make a renewed deposition necessary.

### 3. Attorneys' Fees for Bringing This Motion

Pursuant to Fed. R. Civ. P. 37(a)(5)(A), if a court grants a motion to compel discovery it must, after giving an opportunity to be heard, require the non-moving party to "pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." Id. Because the Court grants Defendants' Motion, Defendants are instructed to file declarations supporting sanctions in the amount of the reasonable expenses related to the motion. Plaintiff and Plaintiff's counsel will have the opportunity to oppose the filings.

## IV. RECOMMENDATION AND ORDER

Objections to this order are governed by 28 U.S.C. § 636. The recommendation that Defendants' motion for involuntary dismissal be denied is dispositive and objections shall be reviewed de novo by the district judge. See id. § 636(b)(1)(C). The remaining rulings are non-dispositive and may be set aside by the district judge only when they are "clearly erroneous or contrary to law." Id. § 636(b)(1)(A). Objections to this order shall be filed within fourteen (14) days of the date of this order.

IT IS HEREBY ORDERED AS FOLLOWS:

1. The Court RECOMMENDS to the District Judge that Defendants' motion for dismissal be DENIED.

2. The Court ORDERS Plaintiff to appear at a renewed deposition of up to seven (7) hours within sixty (60) days of this order. During the renewed deposition, the defending attorney may:

    a. In response to a question, state any or all of the following, if legally appropriate: "Object to form," "I instruct you not to answer," or "Don't include privileged information in your answer."

    b. Request a break when appropriate, which the examining attorney shall agree to if no question is pending.

c.     When it appears that seven hours of record time has passed, ask the videographer, "has this deposition lasted seven hours of record time?" Upon receiving confirmation that the deposition has lasted seven hours, state "This deposition is over. We are leaving."

d.     State, if warranted, "I move to terminate [or limit] this deposition under Rule 30(d)(3)," and at his or her option, "I demand that this deposition be suspended for the time necessary to obtain an order."

e.     The defending attorney may say essentially nothing else during the deposition. The word "essentially" allows for only brief statements concerning the logistics of the deposition, such as "Can you please hand me a copy of the exhibit?" or "My real time monitor stopped working" or the like.

f.     These paragraphs apply to the defending attorney in his or her capacity as a defending attorney. When he or she does a redirect exam, the roles are reversed, and these paragraphs apply to the attorney who was previously the examining attorney.

**g.     Vioations of this paragraph by Plaintiff's counsel during a renewed deposition may result in a recommendation of dismissal or other sanctions.**

3.     The Court ORDERS Plaintiff's counsel to pay Defendants' counsel the costs of the court reporter and videographer for Plaintiff's August 14, 2020 deposition in the amount of $7,086.82 within thirty (30) days of the date of this order. Defendants shall bear the costs for the renewed deposition ordered above.

4.     The Court ORDERS that Plaintiff and Plaintiff's counsel, jointly and severally, shall pay at least a portion of Defendants' reasonable expenses and attorney's fees for bringing this motion under Rule 30(d)(2) and Rule 37(a)(5)(A). No later than seven (7) calendar days from the date of the issuance of this Order, Defendants shall file declaration(s) supporting sanctions in the

amount of the reasonable expenses related to the motion; Plaintiff and Plaintiff's counsel may, separately or jointly, file opposition(s), no later than seven (7) calendar days from the date Defendants file their declaration(s); and Defendants may file a reply or replies, no later than seven (7) calendar days from the filing of the opposition(s).

Date: January 11, 2021

DOUGLAS F. McCORMICK
United States Magistrate Judge