O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# SOUTHERN DIVISION

| | |
|---|---|
| **JEREMY HOLLOWAY,**<br><br>　　Plaintiff,<br><br>　　vs.<br><br>**COUNTY OF ORANGE, et al,**<br><br>　　Defendants. | **Case No.: SA CV 19-01514-DOC (DFMx)**<br><br>**ORDER GRANTING DEFENDANT COUNTY'S MOTION FOR SUMMARY JUDMENT [102]; AND GRANTING INDIVIDUAL DEFENDANTS' MOTION FOR SUMMARY ADJUDICATION [105].** |

Before the Court is Defendant County of Orange's ("Defendant County" or "County") Motion for Summary Judgment (Dkt 102) and Individual Defendants' Motion for Summary Adjudication (Dkt. 105). Oral arguments were held in this matter on December 14, 2020. After considering the papers and hearing the arguments raised by the parties, the Court **GRANTS** Defendant County's Motion for Summary Judgment and **GRANTS** Individual Defendants' Motion for Summary Adjudication.

## I. BACKGROUND

### A. Facts[1]

#### 1. First Incident

The following facts are drawn from Plaintiff Jeremy Holloway's ("Holloway" or "Plaintiff") Disputed Statement of Facts ("DSF") (Dkt. 125-1) and Plaintiff's Separate Statement of Disputed Material Facts ("SS") (Dkt. 125-2).

On January 21, 2018, Brian Fuerbach called 9-1-1. DSF ¶ 1. Fuerbach reported to the 9-1-1 operator that he "had heard a male and female yelling, fists being landed on somebody, and a woman yelling to stop hitting her, that she's just a girl." *Id.* ¶ 2. At approximately 3:40 a.m., Defendant Deputy Renegar became aware of a call for service to O'Neill Park, an unincorporated area of the County of Orange. *Id.* ¶ 3. The call consisted of a reporting party advising that there was a male and female in a physical altercation that was disturbing the peace occurring to the right of campsite 63. *Id.* Around 4:07 a.m. Deputy Renegar heard dispatch state that per the reporting party, domestic violence was occurring in a tent by a white truck to the right of campsite 63. *Id.* ¶ 4. When Deputy Renegar reached the scene, witness Joshua Gomez advised Deputy Renegar that he heard the sounds of fighting and arguing. *Id.* Gomez pointed Renegar to the south or southeast, where he believed the sounds were coming from. *Id.*

Deputy Renegar and other deputies made contact with Holloway at campsite 65. *Id.* ¶ 5, SS ¶ 2. Holloway told Deputy Renegar his name and that Holloway was on informal probation.

---

[1] Unless indicated otherwise, to the extent any of these facts are disputed, the Court concludes they are not material to the disposition of the Motion. Further, to the extent the Court relies on evidence to which the parties have objected, the Court has considered and overruled those objections. As to any remaining objections, the Court finds it unnecessary to rule on them because the Court does not rely on the disputed evidence.

DSF ¶ 9. During the encounter, Deputy Renegar requested to pat down Holloway and asked if he had weapons anywhere on his campsite. SS ¶ 9. Holloway informed Renegar that he had camping knives in the campsite and a pocketknife on his person, which later turned out to just be a lighter. *Id.* ¶ 10. The deputies did not find anyone else in Holloway's campsite. *Id.* ¶ 17. At this time, Deputy Renegar did not detain Mr. Holloway or charge him with a crime. DSF ¶ 8. The deputies then wished him a good night and left Holloway's campsite. SS ¶ 21.

After the encounter with Mr. Holloway, Deputy Renegar went back to his vehicle and drove to the entrance of the park, pulled over and ran Mr. Holloway through the system. DSF ¶ 9. Deputy Renegar discovered that Mr. Holloway was on formal probation and subject to search and seizure at any time. *Id.*

### 2. Second Incident

As Deputy Renegar was driving back to his patrol area, he became aware of another call for service at approximately 4:55 a.m. to O'Neill Park. *Id.* ¶ 9. The reporting party advised that a male subject was walking from campsite to campsite looking for the individual(s) who had called the police. *Id.* The dispatch was updated and communicated that "We have a male yelling and a little girl screaming," and the call was upgraded to a priority one. *Id.* ¶ 12.

Deputy Renegar returned to campsite 67. *Id.* ¶ 11. There, Deputy Renegar asked Joshua Gomez "Where did he go? Where is he?" and Gomez responded, "He's over that way." Pertinent Deposition Testimony of Gomez (Dkt. 128-2) at 103–104.[2]

Deputy Renegar approached Holloway for a second time on January 21, 2019. DSF ¶ 13. The deputies approached Holloway with guns drawn. SS ¶ 59. The deputies, including Deputy Renegar, commanded Holloway to get down on the ground multiple times. *Id.* ¶ 32. Holloway did not comply with the command to get on the ground. *Id.* ¶ 33. There was a physical altercation as deputies attempted to arrest Holloway. *See id.* ¶¶34–48. Deputy Renegar placed

---

[2] Plaintiff disputes that Deputy Renegar spoke with Gomez during the second incident, citing Gomez deposition testimony indicating the same. *See* DSF ¶ 13. However, Gomez later clearly corrects himself and states that he spoke with the deputies during the second incident. *See* Pertinent Deposition Testimony of Gomez at 103–104. Further, Patrol Vehicle Audio/Video recordings clearly show Deputy Renegar approaching a campsite and asking, "Where did he go?" before turning around toward campsite 65. Dkt. 125-11. Gomez's error in testimony is thus insufficient to create a genuine issue of material fact.

Holloway under arrest. *Id.* ¶ 51. Holloway suffered injuries from the physical altercation and subsequently was treated by paramedics. *Id.* ¶ 62. During said altercation, based on Deputy Renegar's observations, Defendant Deputies Gunderson and Billinger had no physical contact with Holloway. DSF ¶ 15.

### B. Procedural History

Plaintiff asserts claims for (1) unreasonable search and seizure, excessive force, false arrest, and conspiracy to deprive constitutional rights under 42 U.S.C. § 1983 against individual Deputy Defendants; and (2) unlawful custom and practice under 42 U.S.C. § 1983 against Defendant County of Orange and Individual Defendants. Second Amended Complaint ("SAC") (Dkt. 28) ¶¶ 8–23.

Plaintiff filed the Complaint in the instant action on August 6, 2019 (Dkt. 1). On December 10, 2019, Plaintiff filed their SAC (Dkt. 28). On October 23, 2020, Defendant County filed the instant Motion for Summary Judgment ("Mot. County") (Dkt. 102). Plaintiff opposed the County's motion on November 30, 2020 ("Opp'n County") (Dkt. 123). Also on October 23, 2020, the Individual Defendants filed the instant Motion for Summary Adjudication ("Mot.") (Dkt. 105). Plaintiff opposed the motion for summary adjudication on November 30, 2020 ("Opp'n") (Dkt. 125). Defendants collectively replied to Plaintiff's oppositions on December 8, 2020 (Dkt. 131).

## II. LEGAL STANDARD

Summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is to be granted cautiously, with due respect for a party's right to have its factually grounded claims and defenses tried to a jury. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). A court must view the facts and draw inferences in the manner most favorable to the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1992); *Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1161 (9th Cir. 1992). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact for trial, but it need not disprove the other party's

case. *Celotex*, 477 U.S. at 323. When the non-moving party bears the burden of proving the claim or defense, the moving party can meet its burden by pointing out that the non-moving party has failed to present any genuine issue of material fact as to an essential element of its case. *See Musick v. Burke*, 913 F.2d 1390, 1394 (9th Cir. 1990).

Once the moving party meets its burden, the burden shifts to the opposing party to set out specific material facts showing a genuine issue for trial. *See Liberty Lobby*, 477 U.S. at 248–49. A "material fact" is one which "might affect the outcome of the suit under the governing law." *Id.* at 248. A party cannot create a genuine issue of material fact simply by making assertions in its legal papers. *S.A. Empresa de Viacao Aerea Rio Grandense v. Walter Kidde & Co., Inc.*, 690 F.2d 1235, 1238 (9th Cir. 1982). Rather, there must be specific, admissible, evidence identifying the basis for the dispute. *See id.* The Court need not "comb the record" looking for other evidence; it is only required to consider evidence set forth in the moving and opposing papers and the portions of the record cited therein. Fed. R. Civ. P. 56(c)(3); *Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d 1026, 1029 (9th Cir. 2001). The Supreme Court has held that "[t]he mere existence of a scintilla of evidence … will be insufficient; there must be evidence on which the jury could reasonably find for [the opposing party]." *Liberty Lobby*, 477 U.S. at 252.

## III. DISCUSSION

In the instant Motion for Summary Adjudication, Individual Defendants argue the Court should grant summary adjudication because the Officer Defendants are entitled to qualified immunity regarding the arrest of Plaintiff, and because no material issues of fact exist. *See generally* Mot. In the instant Motion for Summary Judgment, Defendant County argues that the Court should grant summary judgment as to Plaintiff's *Monell* claim because Plaintiff has failed to present evidence of persistent and widespread unconstitutional conduct. Mot. County at 1–2. The Court will examine each cause of action and the parties' arguments in turn.

### A. Unreasonable Search and Seizure and False Arrest

Individual Defendants argue that Plaintiff's false arrest claim is meritless because Plaintiff cannot establish a constitutional violation. The Court agrees.

As a preliminary matter, Plaintiff concedes that "due to the search and seizure conditions as part of his probation, Jeremy cannot claim a Fourth Amendment violation for unlawful detention and search for the first encounter with the deputies. Plaintiff concedes as part of this Opposition, he has no illegal search claim for those reasons." Opp'n at 14. Plaintiff then argues that the arrest in the second incident was a false arrest, because the deputies did not have probable cause. *See id*.

A warrantless arrest by a law enforcement officer "is reasonable under the Fourth Amendment where there is probable cause to believe that a criminal offense has been or is being committed." *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004). "Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest." *Devenpeck*, 543 U.S. at 152 (citing *Maryland v. Pringle*, 540 U.S. 366, 371 (2003)).

Probable cause exists when "the facts and circumstances within [the officer's] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the arrestee had committed a crime." *Hart v. Parks*, 450 F.3d 1059, 1065 (9th Cir. 2006) (modifications in original). A court must conclude that officers had probable cause for an arrest if "under the totality of the circumstances known to the arresting officers, a prudent person would have concluded that [the arrestee] had committed a crime." *Valencia-Amezcua*, 278 F.3d 901, 906 (9th Cir. 2002) (quoting *United States v. Garza*, 980 F.2d 546, 550 (9th Cir. 1992)).

Here, Individual Defendants had probable cause to arrest Plaintiff. Plaintiff mainly argues that witnesses did not actually see the offensive conduct that they reported, and that the deputies only assumed that Holloway was the subject of the complaints. However, an analysis of probable cause does not depend on what the witnesses knew, but the "reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest." The deputies here were initially responding to at least two reports of a man beating a woman. DSF ¶1–2, Gomez Deposition. Deputy Renegar arrived at the park and was directed by witnesses to Holloway's campsite. Renegar interviewed Holloway but did not find a woman in Holloway's

campsite. The deputies left after being unable to find a woman in question. Deputies then received further calls, stating that a man was walking from campsite to campsite looking for the one who had called the police. Dispatch then updated to communicate that there was a male yelling and a little girl screaming. When Deputy Renegar arrived at the scene for the second time, he was again directed towards Holloway's campsite. The second incident occurred around five in the morning. Regardless of whether the witness accounts were based on what they heard rather than what they saw, the Court finds that the information about a man allegedly beating a woman was reasonably trustworthy to the Individual Defendants. "[T]he facts and circumstances within [the deputies'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the arrestee had committed a crime." *Hart*, 450 F.3d 1059.

Accordingly, because Plaintiff concedes the search and seizure provisions of his probation, and because the Individual Defendants had probable cause to arrest Plaintiff, the Court GRANTS summary judgment as to Plaintiff's claims for unreasonable search and seizure and false arrest.

### B. Excessive Force Claim Against Deputies Billinger and Gunderson

Individual Defendants argue that Deputies Billinger and Gunderson did not use any force on Holloway, let alone excessive force. Mot. at 16. Plaintiff argues that even in the absence of excessive force, Deputies Billinger and Gunderson are liable under theories of failure to intercede. Opp'n at 27–28.

"[P]olice officers have a duty to intercede when their fellow officers violate the constitutional rights of a suspect or other citizen." *United States v. Koon*, 34 F.3d 1416, 1447 n.25 (9th Cir. 1994) *aff'd in part, rev'd in part on other grounds*, 518 U.S. 81, (1996). "[A]n officer who failed to intercede when his colleagues were depriving a victim of his Fourth Amendment right to be free from unreasonable force in the course of an arrest would, like his colleagues, be responsible for subjecting the victim to a deprivation of his Fourth Amendment rights." *Id.* Importantly, "officers can be held liable for failing to intercede only if they had an opportunity to intercede." Cunningham v. Gates, 229 F.3d 1271, 1289 (9th Cir. 2000); *see also*

*Ramirez v. Butte-Silver Bow Cnty.*, 298 F.3d 1022, 1029–30 (9th Cir. 2002) (holding no violation of duty to intercede where there was no evidence that the defendant was aware of the constitutional violation as it occurred), *aff'd sub nom. Groh v. Ramirez*, 540 U.S. 551 (2004).

Here, neither deputy had a reasonable opportunity to intercede. While Deputy Gunderson was present at the time of the altercation, the Court finds that there was no evidence that Defendant Gunderson was aware of any constitutional violation as the altercation unfolded. The Court has already found that the arresting deputies had probable cause. To Deputy Gunderson's knowledge, the deputies were properly arresting a suspect. The ensuing physical altercation took place quickly and Gunderson testified that when he arrived, Holloway was already on the ground and the deputies were attempting to handcuff him. DSF ¶ 15. Deputy Billinger testified that he never saw guns being pointed and that he only assumed there was a use of force because Billinger heard it over the broadcast. *Id.* There is no evidence to show that either Deputy Gunderson or Deputy Billinger were in positions to intercede and prevent any excessive force as it occurred. Plaintiff's allegations otherwise are mere speculation.

Without discussing the severity of the force employed, the Court finds that neither Gunderson nor Billinger had a reasonable opportunity to intercede during the physical altercation. Accordingly, the Court GRANTS summary judgment as to Plaintiff's excessive force claim against Deputies Gunderson and Billinger.

### C. *Monell* Claims

Defendant County argues that Plaintiff's *Monell* claims fail as a matter of law because Plaintiff failed to present evidence of persistent and widespread unconstitutional conduct. Mot. County at 1–2.

To hold a city liable under § 1983 for the violation of a constitutional right, a plaintiff must establish liability under *Monell v. Dep't. of Soc. Servs. of City of New York*, 436 U.S. 658 (1978). "[M]unicipalities may be held liable as 'persons' under § 1983 'when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent the official policy, inflicts the injury.' " *Price v. Sery*, 513 F.3d 962, 966 (9th Cir. 2008) (quoting *Monell*, 436 U.S. at 694). Four conditions must be

satisfied in order to establish municipal liability under Monell. The plaintiff must show " '(1) that he possessed a constitutional right of which he was deprived; (2) that the municipality had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's constitutional right; and (4) that the policy is the moving force behind the constitutional violation.' " *Van Ort v. Estate of Stanewich*, 92 F.3d 831, 835 (9th Cir. 1996) (quoting *Oviatt v. Pearce*, 954 F.2d 1470, 1474 (9th Cir. 1992)). The Ninth Circuit has identified several ways a section 1983 plaintiff can establish municipal liability:

> First, the plaintiff may prove that a city employee committed the alleged constitutional violation pursuant to a formal governmental policy or a longstanding practice or custom which constitutes the 'standard operating procedure' of the local governmental entity. Second, the plaintiff may establish that the individual who committed the constitutional tort was an official with "final policy-making authority" and that the challenged action itself thus constituted an act of official governmental policy . . . Third, the plaintiff may prove that an official with final policy-making authority ratified a subordinate's unconstitutional decision or action and the basis for it.

*Gillette v. Delmore*, 979 F.2d 1342, 1346–47 (9th Cir. 1992) (internal citations and quotations omitted).

As a preliminary matter, because the Court has now granted summary judgment as to the majority of Plaintiff's claims, Plaintiff's *Monell* claim must be based on Plaintiff's alleged constitutional violation of excessive force by the remaining Individual Defendants.

Here, Plaintiff has alleged two discrete theories of *Monell* liability. Opp'n County at 3. First, Plaintiff alleges a longstanding practice or custom: that the County and deputies "promoted the code of silence that enables officers . . . to falsify the true version of events, use excessive force in detention and fail to report the use of force to their superiors" pursuant to a longstanding practice or custom of the County. *Id.* Second, Plaintiff alleges an official's ratification of an unconstitutional decision: that the County has ratified all actions be the individual defendants. *Id.* at 6. The Court examines each theory in turn.

In support of Plaintiff's theory of the practice of a code of silence, Plaintiff alleges that the deputies "actively covered each other up in their efforts to justify their brutal actions towards the Plaintiff." *Id.* at 3. Plaintiff continued that Deputy Renegar justified the use of force by baselessly claiming that Holloway placed Renegar in a chokehold. *Id.* at 4. Plaintiff argues that the deputies authored false police reports or otherwise fully corroborated reports by other deputies. *Id.* Plaintiff also claims that the shallow investigation that ensued is an ongoing and widespread practice in police departments, citing several cases in other districts. *Id.* at 4–5.

The Court finds that Plaintiff has not established a pattern of "persistent and widespread" unconstitutional conduct by the County's employees that is so "permanent and well settled as to constitute a custom." *Monell*, *supra*, 436 U. S. at 690; *see Sloman v. City of Simi Valley*, 21 F.3d 1462, 1470 (9th Cir. 1994) ("Customary practices ... are a sufficient basis for municipal liability" only where they are "widespread among police employees."); *Thompson v. City of Los Angeles*, 885 F.2d 1439, 1443 (9th Cir. 1989) ("[P]roof of random acts or isolated events are insufficient to establish custom."), *overruled on other grounds by Bull v. City & County of San Francisco*, 595 F.3d 964, 981 (9th Cir. 2010).

Courts have repeatedly required Section 1983 plaintiffs to support their "custom" allegations with multiple, similar past incidents. *See Thompson v. City of Los Angeles*, 885 F.2d 1439, 1444 (9th Cir. 1989) (Dismissing *Monell* "custom" allegation where plaintiff fails to produce evidence of "widespread abuses or practices. . .[which] are so pervasive as to have the force of law"); *Meehan v. Los Angeles County*, 856 F.2d 102 (9th Cir. 1988) (Two incidents not sufficient to establish actionable *Monell* custom); Davis v. Ellensburg, 869 F.2d 1230 (9th Cir. 1989) (Manner of one arrest insufficient to establish wrongful *Monell* policy).

Here, even viewing the facts in the light most favorable to the Plaintiff, Plaintiff has failed to establish evidence of an unlawful custom or practice. At best, Plaintiff alleges the instant, single incident of deputies falsifying reports following a use of excessive force. Plaintiff's allegations about the "code of silence" in other districts and states are inapposite to Defendant County of Orange.

Plaintiff's second theory of *Monell* liability also fails. Plaintiff argues that the County is liable because Sergeant Rawlings ratified the deputies' use of excessive force. Opp'n County at 5. In support, Plaintiff cites *Watkins v. City of Oakland, Cal.*, where the Ninth Circuit found a police chief liable for ratifying the use of excessive force by officers under his command by signing a letter denying a plaintiff's complaint, when expert testimony showed that the police chief should have disciplined the officers and established new police procedures. 145 F.3d 1087, 1093. Here, however, Plaintiff has not produced an expert witness or evidence to establish that Sergeant Rawlings or the County should have disciplined the deputies or established different procedures. In fact, as previously stated, Plaintiff vigorously argues that the deputies colluded to cover up this incident by writing false police reports or "fully corroborat[ing] their fellow officers' version of what happened to the arriving supervisor . . ." Opp'n at 4. Thus, Plaintiff argues that Sergeant Rawlings and the County were presented with reports indicating a justifiable use of force.

Accordingly, the Court GRANTS Defendant County's motion for summary judgment as to Plaintiff's second claim for *Monell* liability.

## IV. DISPOSITION

For the aforementioned reasons, the Court GRANTS Individual Defendants' Motion for Summary Adjudication and GRANTS Defendant County's Motion for Summary Judgment. In particular, the Court:

— GRANTS SUMMARY JUDGMENT as to Plaintiff's claim for unreasonable search and seizure, Plaintiff's claim for false arrest, and Plaintiff's claim for excessive force against Deputies Billinger and Gunderson; and

— GRANTS SUMMARY JUDGMENT as to Plaintiff's claim for *Monell* liability against Defendant County.

DATED: May 5, 2021

*David O. Carter*

DAVID O. CARTER
UNITED STATES DISTRICT JUDGE