Michael L. Wroniak (State Bar No. 210347)
Christie B. Swiss (State Bar No. 245151)
COLLINS + COLLINS LLP
750 The City Drive, Suite 400
Orange, CA 92868
(714) 825-4100 – FAX (714) 823-4101
Email: mwroniak@ccllp.law
Email: cswiss@ccllp.law

Attorneys for Defendant
DEPUTY CHAD RENEGAR

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA-SOUTHERN DISTRICT

| | |
|---|---|
| JEREMY HOLLOWAY, | CASE NO. 8:19-cv-01514-doc-dfm |
| | *Honorable David O. Carter; Courtroom 9D* |
| Plaintiff, | |
| vs. | **DEPUTY CHAD RENEGAR'S RULE 50(a) MOTION REGARDING EXCESSIVE FORCE** |
| COUNTY OF ORANGE; DEPUTY CHAD RENEGAR, individually and as a peace officer, DEPUTY JOEL GONZALEZ, individually and as a peace officer. DEPUTY KEVIN PAHEL, individually and as a peace officer, DEPUTY BRANDON BILLINGER, individually and as a peace officer, DEPUTY MARK BORBA, individually and as a peace officer, DEPUTY JAMESON GOTTS, individually and as a peace officer, DEPUTY JUSTIN GUNDERSON, individually and as a peace officer, and DOES 1 through 10, Inclusive | Complaint Filed: August 6, 2019<br><br>Trial Date: August 17, 2021 |
| Defendants | |

*FILE # 23084*

1

**DEPUTY CHAD RENEGAR'S RULE 50(a) MOTION REGARDING EXCESSIVE FORCE**

Deputy Chad Renegar brings this Motion for Judgment as a Matter of Law regarding Plaintiff Jeremy Holloway's cause of action for excessive force under Federal Rule of Civil Procedure 50(a).

FRCP 50(a) requires a party seeking judgment as a matter of law to file a Rule 50(a) motion at any time before the case is submitted to the jury. *Tortu v. Las Vegas Metro. Police Dept.*, 556 F.3d 1075, 1082 (9th Cir. 2009). If the jury returns a verdict against the moving party, that party may then file a Rule 50(b) motion for judgment as a matter of law no later than 28 days after the entry of judgment. Fed. R. Civ. P. 50(b). A Rule 50(b) motion may be considered only if a Rule 50(a) motion has been previously made during trial, as the motion is considered a renewal of an earlier 50(a) motion. *Tortu*, 556 F.3d at 1082 (citing Fed. R. Civ. P. 50 advisory committee's notes).

Here, Renegar is entitled to qualified immunity as a matter of law because the force that he used against Holloway was objectively reasonable under the circumstances.

The doctrine of qualified immunity shields a public officer from an action under a federal civil rights statute. *Mattos v. Agarano*, 661 F.3d 433, 440 (2011). Officers should be protected by qualified immunity for actions within the course and scope of their duties, unless their actions violated clearly established statutory or constitutional rights which a reasonable officer would have known. *Anderson v. Creighton*, 483 U.S. 635, 641 (1987). The purpose of qualified immunity "is to ensure that defendants

*FILE # 23084*

COLLINS + COLLINS LLP
750 The City Drive
Suite 400
Orange, CA 92868
Phone (714) 823-4100
Fax (714) 823-4101

reasonably can anticipate when their conduct may give rise to liability by attaching liability only if the contours of the right violated are sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Schwenk v. Hartford*, 204 F.3d 1187, 1197 (9th Cir. 2000). Moreover, qualified immunity is intended to protect "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986); *Clement v. Gomez*, 298 F.3d 898, 903 (9th Cir. 2002) (holding that the purpose of qualified immunity is to protect government officials from liability for good faith mistakes); *City and County of San Francisco v. Sheehan*, 135 S.Ct. 1765, 1774 (2015).

Courts use a two-part inquiry to determine whether an officer is entitled to qualified immunity. *Saucier v. Katz*, 533 U.S. 194, 200 (2001). In the first prong, courts look to when resolving all disputes of fact and credibility in favor of the party asserting the injury, whether a constitutional right has been violated. *Kennedy v. City of Ridgefield*, 439 F.3d 1055, 1061 (9th Cir. 2006). The second prong prompts the court to determine if the right was clearly established at the time of the violation. *Id*. A right is clearly established if its "contours" are "sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Saucier*, 533 U.S. at 202 (citing *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). However, if an officer makes a mistake in applying the relevant legal doctrine, and if "the officer's mistake as to what

*FILE # 23084*

3

**DEPUTY CHAD RENEGAR'S RULE 50(a) MOTION REGARDING EXCESSIVE FORCE**

the law requires is reasonable,. . . the officer is entitled to the immunity defense." *Kennedy*, 439 F.3d at 1062 (internal quotation marks and citation omitted). Courts may exercise sound discretion in deciding which of the two prongs of the Saucier inquiry should be addressed first in light of the circumstances in the particular case at hand. *Pearson v. Callahan*, 555 U.S. 223, 237 (2009).

The court has also discussed a third consideration, which is peace officers must be given broad discretion and afforded immunity even when the officer makes a good faith mistake, thus giving "deference to the judgment of reasonable officers on the scene." *Jeffers v. Gomez*, 267 F.3d 895, 909 (9th Cir. 2001) (citing *Saucier*, 533 U.S. at 215).

Here, the facts established at trial show that Renegar's use of force was objectively reasonable. At the time that force was used, the facts were as follows:

- Renegar had responded to a previous domestic violence call where he and other deputies encountered Holloway at Holloway's campsite;

- During the first encounter, Holloway did not want to cooperate with the deputies; cursed at them; admitted that he had multiple knives (6), a machete and an axe at his campsite; was a convicted felon for insurance fraud and was on probation; and was a U.S. Marine Corps veteran.

- Before Renegar went to Holloway's campsite the second time, it was confirmed that Holloway was on probation for felony insurance fraud and

*FILE # 23084*

4
**DEPUTY CHAD RENEGAR'S RULE 50(a) MOTION REGARDING EXCESSIVE FORCE**

subject to search terms; there were multiple 911 calls that the person who the deputies had just encountered (Holloway) was yelling and shouting at other campsites looking for the person who had called the police on him; Holloway was using curse words when yelling at the other campers and threatening them; dispatch reported that the 911 informant Joshua Gomez heard a little girl screaming; dispatcher reported that the 911informant Joshua Gomez told her that Holloway was going through other campsites. Renegar and other deputies were reactivated by dispatch back to Holloway's campsite code 3, priority 1, which means they are to use lights and sirens on their patrol vehicles.

- When Renegar and other deputies arrived at Holloway's site, Renegar shouted "GET ON THE GROUND" multiple times. Holloway did not comply with these commands, instead arguing to the deputies that he did nothing wrong. Renegar gave a loud warning to Holloway that if Holloway did not get on the ground, then he would be tased. Fearing for officer safety, Renegar wanted to put Holloway on the ground, in a position of disadvantage, away from any of his potential weapons, in order to put handcuffs on him and then be able to investigate the potential crimes that Holloway committed. Renegar attempted an arm-bar takedown of Holloway, which was unsuccessful as Holloway maneuvered away from

*FILE # 23084*

Renegar, grabbing at Renegar's tactical vest and putting Renegar in a headlock. Renegar then administered several punches to Holloway's side in order to free himself from Holloway's headlock. Once Renegar was able to get out of the headlock, he attempted to grab Holloway's legs while other deputies attempted to gain control of his arms. Because Holloway was kicking and resisting the deputies' attempts to control his body, Renegar gave another warning, shouting "TASER, TASER, TASER," before applying a 5-second administration of his department-issued taser to Holloway's buttocks. Because the probes of the taser did not spread far enough, the taser did not work as intended to incapacitate Holloway, and Holloway continued kicking at the deputies and resisting. Renegar then administered the taser a second time for 5-seconds to Holloway's calf, at which point the taser did work to incapacitate Holloway. Other deputies were then able to put Holloway in handcuffs.

- No witnesses have corroborated Holloway's claim that Renegar punched Holloway in the face or that Renegar ever put Holloway in a chokehold. Further, Holloway never identified Renegar as one who allegedly kicked him or kneed him; and Reneger denies that ever happened either. Further, the force was found objectively reasonable in the force review conducted by the Orange County Sheriff's Department.

*FILE # 23084*

- Roger Clark, Plaintiff's use of force expert, testified that the deputies had reasonable suspicion to detain Mr. Holloway during the second encounter, and if a deputy is attempting to handcuff an individual and a scuffle occurs and the suspect wraps his arm around the officer's head and/or grabs at his ballistic vest, the officer would be justified in using reasonable force to prevent that from happening.

Based on these facts, Deputy Renegar should be entitled to qualified immunity Because the force he used was objectively reasonable. Further, in this situation, deference must be given to the deputies at the scene, dealing with an agitated individual with access to multiple weapons who had been trained by the U. S. Marine Corps in hand to hand combat training, who may have committed multiple crimes at the camp that night.

DATED: August 26, 2021    COLLINS + COLLINS LLP

By: _____
CHRISTIE BODNAR SWISS
MICHAEL L. WRONIAK
Attorneys for Defendant DEPUTY CHAD RENEGAR

*FILE # 23084*