UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| **JEREMY HOLLOWAY**<br><br>    **Plaintiff,**<br><br>vs.<br><br>**COUNTY OF ORANGE et al.,**<br><br>    **Defendants.** | **Case No. SA CV 19-1514-DOC (DFMx)**<br><br><br>**ORDER GRANTING DEFENDANTS' ORAL MOTION FOR JUDGMENT AS A MATTER OF LAW** |

Before the Court is Defendants Brandon Billinger and Justin Gunderson's ("Defendants") Motion for Judgment as a Matter of Law ("Motion"). The Court finds the matter appropriate for decision without oral argument. *See* Fed. R. Civ. P. 78; L.R. 7-15. For the reasons described below, the Court **GRANTS** Defendants' Motion.

**I. BACKGROUND**

    A. Facts[1]

The following facts are drawn from Plaintiff Jeremy Holloway's ("Holloway" or "Plaintiff") Disputed Statement of Facts ("DSF") (Dkt. 125-1) and Plaintiff's Separate Statement of Disputed Material Facts ("SS") (Dkt. 125-2).

    **1.   First Incident**

On January 21, 2018, Brian Fuerbach called 9-1-1. DSF ¶ 1. Fuerbach reported to the 9-1-1 operator that he "had heard a male and female yelling, fists being landed on somebody, and a woman yelling to stop hitting her, that she's just a girl." *Id.* ¶ 2. At approximately 3:40 a.m., Defendant Deputy Renegar became aware of a call for service to O'Neill Park, an unincorporated area of the County of Orange. *Id.* ¶ 3. The call consisted of a reporting party advising that there was a male and female in a physical altercation that was disturbing the peace occurring to the right of campsite 63. *Id.* Around 4:07 a.m. Renegar heard dispatch state that per the reporting party, domestic violence was occurring in a tent by a white truck to the right of campsite 63. *Id.* ¶ 4. When Renegar reached the scene, witness Joshua Gomez advised Renegar that he heard the sounds of fighting and arguing. *Id.* Gomez pointed Renegar to the south or southeast, where he believed the sounds were coming from. *Id.*

Renegar and other deputies made contact with Holloway at campsite 65. *Id.* ¶ 5, SS ¶ 2. Holloway told Renegar his name and that Holloway was on informal probation. DSF ¶ 9. During the encounter, Renegar requested to pat down Holloway and asked if he had weapons anywhere on his campsite. SS ¶ 9. Holloway informed Renegar that he had camping knives in

---

[1] Unless indicated otherwise, to the extent any of these facts are disputed, the Court concludes they are not material to the disposition of the Motion. Further, to the extent the Court relies on evidence to which the parties have objected, the Court has considered and overruled those objections. As to any remaining objections, the Court finds it unnecessary to rule on them because the Court does not rely on the disputed evidence.

the campsite and a pocketknife on his person, which later turned out to just be a lighter. *Id.* ¶ 10. The deputies did not find anyone else in Holloway's campsite. *Id.* ¶ 17. At this time, Renegar did not detain Mr. Holloway or charge him with a crime. DSF ¶ 8. The deputies then wished him a good night and left Holloway's campsite. SS ¶ 21.

After the encounter with Holloway, Renegar went back to his vehicle and drove to the entrance of the park, pulled over and ran Holloway through the system. DSF ¶ 9. Renegar discovered that Holloway was on probation and subject to search and seizure at any time. *Id.*

### 2. Second Incident

As Renegar was driving back to his patrol area, he became aware of another call for service to O'Neill Park at approximately 4:55 a.m. *Id.* ¶ 9. The reporting party advised that a male subject was walking from campsite to campsite looking for the individual(s) who had called the police. *Id.* The dispatch was updated and communicated that "We have a male yelling and a little girl screaming," and the call was upgraded to a priority one. *Id.* ¶ 12.

Renegar returned to campsite 67. *Id.* ¶ 11. There, Renegar asked Gomez "Where did he go? Where is he?" and Gomez responded, "He's over that way." Pertinent Deposition Testimony of Gomez (Dkt. 128-2) at 103–04. The deputies approached Holloway with guns drawn. SS ¶ 59. The deputies, including Renegar, commanded Holloway to get down on the ground multiple times. *Id.* ¶ 32. Holloway did not comply with the command to get on the ground. *Id.* ¶ 33. There was a physical altercation as deputies attempted to arrest Holloway. *See id.* ¶¶ 34–48. Renegar placed Holloway under arrest. *Id.* ¶ 51. Holloway suffered injuries from the physical altercation and subsequently was treated by paramedics. *Id.* ¶ 62. During said altercation, based on Renegar's observations, Defendant Deputies Gunderson and Billinger had no physical contact with Holloway. DSF ¶ 15.

### B. Procedural History

Plaintiff filed the Complaint in the instant action on August 6, 2019 (Dkt. 1). On December 10, 2019, Plaintiff filed his SAC (Dkt. 28). On October 23, 2020, Defendants filed a Motion for Summary Adjudication (Dkt. 105). Plaintiff opposed the Motion for Summary Adjudication on November 30, 2020 ("Opp'n") (Dkt. 125). Defendants replied to Plaintiff's

opposition on December 8, 2020 (Dkt. 131). The Court ruled on the Motion for Summary Adjudication on May 5, 2021 ("MSJ Order") (Dkt. 217). Trial began on August 17, 2021, and Plaintiff rested his case on August 27.

**II. LEGAL STANDARD**

If, after the evidence is closed, there is only one reasonable conclusion that a jury may reach, the Court may grant a judgment as a matter of law as to any claim or defense in issue. Fed. R. Civ. P. 50(a); *see also Lawson v. Umatilla County*, 139 F.3d 690, 692 (9th Cir. 1998). The standard for granting judgment as a matter of law mirrors the standard for granting summary judgment. *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 150 (2000); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). If there is substantial evidence to support a contention, the Court may not grant a judgment as a matter of law. *Watec Co. v. Liu*, 403 F.3d 645, 651 n.5 (9th Cir. 2005). "Substantial evidence" must be sufficient for reasonable minds to accept it as support for a conclusion, even when the evidence might also support a contrary conclusion. *George v. City of Long Beach*, 973 F.2d 706, 709 (9th Cir. 1992).

In making its determination, the Court must view the facts and draw inferences in the manner most favorable to the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *Berry v. Bunnell*, 39 F.3d 1056, 1057 (9th Cir. 1994). However, the existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion. *Anderson*, 477 U.S. at 248-49. The Court may not weigh the evidence nor assess the witnesses' credibility. *Reeves*, 530 U.S. at 150; *George*, 973 F.2d at 709.

If the Court does not grant the relief and instead allows the case to go to the jury, a party may seek a renewed motion for a judgment as a matter of law within ten days after the entry of judgment. Fed. R. Civ. P. 50(b). However, a party may not make a post-judgment motion for judgment as a matter of law unless it has first raised the issue at the close of evidence and prior to its submission to the jury. *Freund v. Nycomed Amersham*, 347 F.3d 752, 761 (9th Cir. 2003).

## II. DISCUSSION

Defendants Deputies Billinger and Gunderson move for judgment as a matter of law on the conspiracy charge. The Court previously granted summary judgment for Billinger and Gunderson on all of Plaintiff's substantive claims, finding that neither deputy used force on Plaintiff and that neither had a reasonable opportunity to intercede during the altercation. *See* MSJ Order at 7-8. Plaintiff's remaining claim against Billinger and Gunderson is conspiracy to fabricate a police report. *See* SAC at 7.

Plaintiff's SAC alleges that after the altercation, "Deputies RENEGAR, GONZALEZ, PAHEL, BILLINGER, BORBA, GOTTS, and GUNDERSON then formed a quick meeting of the minds to author false police reports and/or refused to provide with exculpatory information, to justify their brutality and made a recommendation for felony criminal charges filed against JEREMY." SAC at 7.

Demonstrating a conspiracy under 42 U.S.C. § 1983 requires showing "an agreement or 'meeting of the minds' to violate constitutional rights." *United Steelworkers of Am. v. Phelps Dodge Corp.*, 865 F.2d 1539, 1540–41 (9th Cir. 1989) (en banc) (internal quotation omitted). An agreement need not be overt; for example, "a showing that the alleged conspirators have committed acts that are unlikely to have been undertaken without an agreement may allow a jury to infer the existence of a conspiracy." *Mendocino Env't Ctr. v. Mendocino Cnty.*, 192 F.3d 1283, 1301 (9th Cir. 1999) (internal quotation omitted). The "conspiracy must result in overt acts, done in furtherance of the conspiracy, that are both the cause in fact and proximate cause of plaintiffs' injuries." *Sanchez v. City of Santa Ana*, 936 F.2d 1027, 1039 (9th Cir. 1990), as amended (May 24, 1991). "A mere allegation of conspiracy without factual specificity is insufficient to support a claim." *Id.*

Plaintiff played to the jury audio and video tapes from the deputies' cars and body microphones, and both Billinger and Gunderson testified in Plaintiff's case-in-chief. Deputy Billinger testified that when he arrived on the scene for the second incident, he saw that the physical altercation had concluded and Plaintiff was sitting on a log in handcuffs with the deputies standing around him. Billinger did not produce a written report of the incident.

Deputy Gunderson testified that he arrived on the scene after the altercation had begun, and that when he arrived Plaintiff was already on the ground with other deputies attempting to handcuff him. Gunderson testified that Plaintiff was in handcuffs within seconds of his arrival. The Court found previously that "there was no evidence that Defendant Gunderson was aware of any constitutional violation as the altercation unfolded." MSJ Order at 8. After the altercation, Gunderson testified that he was near his trainee, Deputy Gotts, while Gotts gave a verbal report to their supervisor Sergeant Rollins. There is no evidence from Rollins' audio recording that Gunderson spoke to Rollins, and Gunderson did not produce a written report of the incident. There is no evidence that Gunderson "committed acts that are unlikely to have been undertaken without an agreement." *Mendocino Env't Ctr.*, 192 F.3d at 1301.

Plaintiff has produced no evidence that would suggest that Billinger or Gunderson participated in any conspiracy with regard to the altercation. In particular, there is no evidence of any overt act on either deputy's part. As such, there is no evidence on which a reasonable juror could conclude that these two deputies conspired in any violation of Plaintiff's rights.

**IV. DISPOSITION**

For the foregoing reasons, the Court **GRANTS** Defendants' Motion for Judgment as a Matter of Law on the conspiracy charge against Defendants Deputies Billinger and Gunderson.

DATED: August 27, 2021

*David O. Carter*

HON. DAVID O. CARTER
UNITED STATES DISTRICT JUDGE