**MKRTCHYAN LAW**
Narine Mkrtchyan, Esq. (SBN 243269)
1010 N. Central Ave, Suite 204
Glendale, CA 91202
Telephone No. (818) 388-7022
Web:  www.narinelaw.com
Email: narine57@gmail.com

Attorney for Jeremy Holloway

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEREMY HOLLOWAY,<br><br>Plaintiff,<br><br>vs.<br><br>COUNTY OF ORANGE, DEPUTY CHAD RENEGAR, individually and as a peace officer, DEPUTY JOEL GONZALEZ, individually and as a peace officer, DEPUTY KEVIN PAHEL, individually and as a peace officer, DEPUTY BRANDON BILLINGER, individually and as a peace officer, DEPUTY MARK BORBA, individually and as a peace officer, DEPUTY JAMESON GOTTS individually and as a peace officer, DEPUTY JUSTIN GUNDERSON, individually and as a peace officer, and DOES 1-10.<br><br>Defendants. | Case No. 8:19-cv-01514-DOC-DFM<br><br>**Honorable David O. Carter**<br><br>**PLAINTIFF'S MOTION TO DISQUALIFY DISTRICT JUDGE FOR BIAS AND PREJUDICE; DECLARATION OF NARINE MKRTCHYAN; EXHIBIT A**<br><br><u>Hearing: July 18, 2022</u><br><u>Time: 8:30 am</u> |

TO DEFENDANTS AND TO THEIR ATTORNEYS OF RECORD:

1

Plaintiff Jeremy Holloway, through counsel of record Narine Mkrtchyan hereby seeks an Order to disqualify the assigned District Judge David O. Carter from further hearing this case on the following grounds detailed in the appended Declaration of Counsel, supported with memorandum of points and authorities:

1. Delaying trial of this case on various excuses causing severe prejudice to Plaintiff;
2. Granted defendants' motion for continuance to December 6, 2022 without regard to Plaintiff's availability, without making a substantive ruling if vacation of counsel or defendant is good cause for continuance and why it outweighs the expressed prejudice to Plaintiff of loss of witnesses;
3. Granted defendants' Motion for Summary Judgment in all respect after an erroneous interpretation of the facts disputed by Plaintiff, severely limiting Plaintiff's ability to prove his claims at trial;
4. Ensured that the first trial ended in a mistrial by the openly hostile and disparaging attitude towards Plaintiff's counsel with threats of sanctions at trial.

Therefore, Plaintiff Jeremy Holloway, respectfully requests the Court to recuse itself and case reassigned. This motion is based on this Notice, the records, papers and files in this case, trial transcripts, as well as such oral and documentary evidence as may be produced at the hearing on the motion.

**Date: June 16, 2022**     **MKRTCHYAN LAW**

By: _____/s/Narine Mkrtchyan_____

**NARINE MKRTCHYAN**
Attorney for Plaintiff Jeremy Holloway

# MEMORANDUM OF POINTS AND AUTHORITIES

### Introduction

This case is about the homeless veteran Jeremy Holloway who on January 21, 2018 was sleeping peacefully in his tent at the O'Neill Regional Park, Orange County, when awakened and harassed by the Orange County Sheriff's deputies, after they received calls of a domestic dispute on the campground. Needlessly agonizing Holloway when they immediately recognized he was alone, and not cause for a domestic dispute, they left his campsite to come back and beat him up after a few minutes, claiming he failed to complied with their commands to get down on the ground. Holloway was then ruthlessly beaten on the ground by at least 5 or more deputies, receiving punches and kneestrikes to his head causing serious injuries, then tasered and arrested, all for a call for a domestic disturbance he was not involved in. The use of force was audio recorded on PVS, objectively proving the excessiveness of the beating evident from Holloway's screams and noises.

Then to cover up their brutality, these defendants engaged in an intricate cover-up and conspiracy, lied about the headstrikes, denied about them to their supervisor and in police reports, claimed they were justified in their actions because Holloway who was on probation, aroused their officer safety concerns by not getting down to the ground quickly enough and had weapons within reach. To further absolve themselves of liability, they did not take pictures of his bleeding head until after the paramedics wrapped him up, covering up the damage they inflicted and arrested him on felony charges of Resisting police PC 69 and Battery on a peace officer PC 243(b). Plaintiff was not given his color booking photograph taken by jail on the day of the incident reflecting his facial injuries until he learned of its existence in April 2022, after defense counsel attached it mistakenly to their motion in limine to exclude it from the second trial. Defendant Deputy Renegar in particular, claimed Holloway placed him a in a headlock and grabbed his ballistic

vest while on the ground, necessitating the use of force. Needless to say, all of these was camouflaged falsification. Renegar who was in charge of the conspiratorial pack, had been caught lying in reports on multiple occasions, was reprimanded twice by his supervisors for excessive use of force, and was prosecuted for lying in police reports and forging a signature of a victim of a crime report, covered in the news.

This case was filed in federal court in August 2019, has received a highly antagonistic treatment at the Santa Ana Ronald Reagan Federal Building. Beginning from the assigned magistrate and his rulings on discovery motions, infused with outright hostility towards Plaintiff and his counsel as a minority lawyer, to the District Judge and his actions, Plaintiff simply has had no fair chance of proving his case in Santa Ana, Orange County against these deputies.

After the Covid-related multiple delays in discovery, which was extremely acrimonious in this court, Plaintiff's trial was continued multiple times until August 17, 2021. Defendants' motion for summary judgment, opposed by Plaintiff, was granted in all respect and multiple claims of Plaintiff were dismissed. The trial took place and ended in a mistrial on September 7, 2021, after the jury could not reach a verdict.

In particular as it is relevant to this motion, Hon. Judge David Carter has continued the re-trial of this action for over a year (**from September 2021 to December 2022**) on various excuses, one based on defense counsel's vacation without making a substantive ruling how a vacation of counsel overrides Plaintiff's identified prejudice. See **Court Orders, Doc. 307, 363, 370, 376.** This Court thereby has shown impermissible bias and prejudice towards Plaintiff favoring the Orange County, because by these actions Plaintiff's case is doomed to failure based on loss of witnesses and continued prohibitive expenses to track them down, subpoena them and gain their cooperation for another trial.

This was apparent from prior actions by this Court, when granting the defendants' Motion for Summary Judgment in its entirety, erroneously dismissing Plaintiff's claim for false arrest by interpreting facts wrong and not considering at all Plaintiff's dispute of defendants' false and misleading facts about the circumstances that culminated in the incident. See **Plaintiff's Motion for Reconsideration, Doc**. **231**.

Further, this attitude was apparent in this Court's presiding over the first trial in August-September 2021, when the Court threatened with mistrial almost every day, antagonized Plaintiff's counsel by a heavy admonition bringing her to tears in court, not letting her to take lunch/restroom breaks, bringing in the jury and resuming trial before Plaintiff's counsel would return from breaks, not permitting counsel to take a break after court and keeping counsel in court until 8 pm, and ordering them back to 7-8 am. The Court's actions disparaging, minimizing and attacking Plaintiff's counsel at every step at trial in front of the jury or outside the jury by intimidating her from representing her client, culminated in a hung jury, a mistrial, a miscarriage of justice. The Court made remarks outside the presence of the jury, that no matter how many times this case goes to trial, there will not be a verdict, thereby dooming this case for failure in his courtroom and discouraging any prospects of settlement.

**A. This Court is prejudiced and biased against Plaintiff's case because Plaintiff's loud screams of prejudice over delays of trial are ignored in substantive rulings of trial continuances on various excuses**.

After the Court declared a mistrial of this case in September 2021, this Court did not set the re-trial of the matter until May 3, 2022, a ***whole 8 months*** of delay when Plaintiff has had a continuing objection on grounds of loss of witnesses and exorbitant costs in tracking them down. See **Court Order, Doc**. **307**

In April 2022, after Plaintiff complied with previous court orders on pre-trial conference of counsel and filing of pre-trial motions, the Court sua sponte continued the trial of the matter for *another 3 months*, from May 3 to July 26, 2022. See **Court Order, Doc**. **363** Thereafter the defense counsel for Defendant Renegar filed a motion to continue based entirely on vacation of counsel. See **Doc. 367** Plaintiff objected and identified severe prejudice from these continuous delays for trial. See **Doc. 369** After the mistrial in September, Plaintiff lost witnesses, some of whom were uncooperative and others moved from their previous locations. Some witnesses were Orange County employees who no longer are with the Department, and Plaintiff has had to spend his resources to find them and subpoena them. As an indigent litigant, Plaintiff cannot spend on the case and has to rely on his counsel advancing the costs of this expensive litigation. These trial delays are making this case prohibitively costly to Plaintiff's counsel and more continuances are endangering Plaintiff's ability to continue litigating this case in court. Witnesses do not wish to cooperate with Plaintiff without a subpoena and continuously evade process service by relocating. By continuous delays costing Plaintiff, this Court is ensuring that Plaintiff will no longer be able to prosecute this case and substantively prove his case on the merits.

<u>Without making a substantive ruling how a vacation of counsel overrides Plaintiff's expressed prejudice</u>, the Court ordered parties to meet and confer and provide further available dates for trial. See **Court Order, Doc. 370** The defense counsel of two firms first proposed August 30 but after Plaintiff cleared it with his witnesses, counsel for Renegar withdrew their availability apparently on the basis of their client's vacation plans in August. Defense counsel for Gonzalez, Gotts, Pahel and Borba has identified only August 30 and December 6 available dates. Plaintiff and his counsel identified only two available dates for trial, July 26 and August 30, did not list December as available time because at least one of the

Plaintiff's witnesses is unavailable in December. See **Doc. 371 Declaration of Counsel ¶ 17**.

Without substantively addressing Plaintiff's objections or doing a balancing of interests on both sides, solely on the basis of vacations by counsel and Defendant Renegar, the Court granted the defendants' motion for continuance, by further continuing this trial for ***another 5 months***, as requested by defense to December 6, 2022, when Plaintiff did not make himself available for trial due to witness unavailability. There was no reason why the Court could not set the trial either in July or August because this defense counsel have not cited any law that makes vacation of counsel or party good cause for continuance especially under these circumstances. Generally, December is the worst month to set a trial, because due to the holidays there is no willing jury and there can be another surge of the pandemic in winter shutting down courts again. See **Court Order, Doc. 376** Clearly, this Court has done everything in its power to freeze this case in court by indefinite continuances either on its own motion or at defense request.

When every week and month is critical to success of Plaintiff's case due to continued difficulties of maintaining cooperation of witnesses, these continuances are simply guaranteeing Plaintiff will not be able to prove his case substantively in court.

**B. This Court granted Defendants' motion for summary judgment by an erroneous interpretation of facts favoring defendants and limiting Plaintiff's ability to prove his case at trial**

The Court dismissed Plaintiff's false arrest claim when Plaintiff had presented sufficient facts to dispute the defendants self-serving declarations not supported either with their depositions, or the PVS recordings. Because the false arrest claim was tied to Plaintiff's claims for excessive force and conspiracy, he

has been severely limited in his ability to prove his claims by the MSJ orders, used skillfully at trial by defendants.

Plaintiff gave an opportunity to Court to correct the error by filing a motion for reconsideration, which was also summarily denied without addressing Plaintiff's points. See **Plaintiff's Motion for Reconsideration, Doc**. **231**.

### C. This Court ensured the first trial ended in a mistrial and displayed extremely hostile attitude to Plaintiff's counsel at trial in front of the jury disabling her from representing her client

Every day at trial, the Court was annoyed and angry, threatened with a mistrial. Plaintiff's counsel not only had to deal with the obstructionist unethical defense counsel of two firms, representing multiple defendants, who refused to file joint exhibit/witness lists, refused to cooperate in exchanging exhibits, or producing of witnesses, but also with the Court who was raising his voice at Plaintiff's counsel in front of the jury and court personnel, was making disparaging remarks and rulings during presentation of witnesses, and then took two hours in court to admonish her with sanctions the very first week of trial, bringing her to tears in open court. See **attached, excerpts of certified trial transcripts as Exhibit A**, **Day 4 pp. 94-136, Declaration of Counsel, ¶ 2**. This Plaintiff's counsel, a female minority lawyer with a different national origin, as sole counsel representing Plaintiff, was unable to take lunch or restroom breaks, was not permitted to go home after trial until 8 pm to get rest, and was minimized in front of the jury, because the Court would resume trial with jury before Plaintiff's counsel would return to courtroom. The jury like a sponge absorbed that antagonistic attitude towards Plaintiff's counsel, which prejudiced Plaintiff in their eyes, culminating in a hung jury, as if by design, because the goal was to end the case in a mistrial. Even the court personnel with court reporters and clerk at some

point were influenced by the Court's remarks and were giving unfavorable treatment to Plaintiff's counsel while friendly to defendants and their counsel. Plaintiff's counsel was denied courtesy in gaining technical assistance for Zoom presentation of witnesses, delaying trial and prejudicing Plaintiff's presentation of the case, when the Court had granted Plaintiff's request for some witnesses to testify remotely due to the Covid and travel distance. These actions severely limited and disabled Plaintiff's counsel ability to effectively represent her client and prove Plaintiff's claims. **Declaration of Counsel, ¶7-10**.

The Court further prejudiced Plaintiff by permitting defense to highlight and showcase Plaintiff's felony conviction and probation terms and conditions to the jury not only to impeach him under FRE 609 (b), as the court had ruled in motions in limine, but also to claim he was emotionally distressed not from the beating with arrest by these deputies, but because he had been sentenced to a felony days before the incident. This heavily prejudiced Plaintiff in the eyes of the jury because not only the <u>fact of the conviction</u> was admitted, over the objection of Plaintiff, but the underlying facts of his conviction with probation terms, making Plaintiff look in the most unfavorable light to the jury as a criminal not deserving of compensation. Even the fact that he had signed a Fourth Amendment waiver as part of his probation was showcased to the jury, when this waiver had no legal bearing on his claims for excessive force and conspiracy, nor was factually relevant at all, but only confused and misled the jury. See further **Plaintiff's Motion in Limine #1, Doc. 332.** Legally this was erroneous on multiple grounds but primarily because Plaintiff not only has claimed emotional distress but also physical injuries in the case, and any claimed distress from a felony sentencing (with misdemeanor probation terms and no jail time) is not remotely comparable to an emotional distress claimed as a result of a beating with physical injuries and arrest with jail as here. The design was only to assassinate Plaintiff in the eyes of the jury and

alienate him as a criminal and if nothing else, this erroneous ruling was responsible for the hung jury, causing Plaintiff this prejudice.

**POINTS AND AUTHORITIES**

**<u>28 U.S.C.A § 144 Bias or Prejudice of Judge</u>**

> Whenever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding.
> The affidavit shall state the facts and the reasons for the belief that bias or prejudice exists, and shall be filed not less than ten days before the beginning of the term at which the proceeding is to be heard, or good cause shall be shown for failure to file it within such time. A party may file only one such affidavit in any case. It shall be accompanied by a certificate of counsel of record stating that it is made in good faith.

**<u>28 U.S.C.A § 455 Disqualification of Justice, Judge or Magistrate Judge</u>**

**(a)** Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.

**(b)** He shall also disqualify himself in the following circumstances:

> **(1)** Where he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding;

"The substantive standard for recusal under 2 8 U.S.C. § 144 and 28 U.S.C. § 455 is the same: "[W]hether a reasonable person with knowledge of all the facts would conclude that the judge's impartiality might reasonably be questioned." " United States v. Hernandez, 109 F.3d 1450, 1453 (9th Cir. 1997) See also United States v. Winston, 613 F.2d 221, 222 (9th Cir.1980). "Recusal under §455(b)(1) is required only if actual bias or prejudice is proved by compelling evidence." Brokaw v. Mercer County, 235 F.3d 1000, 1025 (7th Cir. 2000). See Berger v. United States, 255 U.S. 22, 41 S.Ct. 230, 65 L.Ed. 481 (1921), in which the Court held that a district court judge's comments were sufficient to support an affidavit of bias or prejudice under the then-applicable statute (Section 21 of the Judicial Code)" Furthermore, "judicial rulings alone almost never constitute a valid basis for a bias or partiality motion." Liteky v. United States, 510 U.S. 540, 555, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994). See In re Bernard, 31 F.3d 842 (9th Cir. 1994) (concluding that a motion for disqualification "is addressed to, and must be decided by, the very judge whose impartiality is being questioned)

In Brokaw v. Mercer County, 235 F.3d 1000, 1025 (7th Cir. 2000), the 7th Circuit of the United States Court of Appeals held that the plaintiff failed to prove the judges bias and prejudice because the evidence the plaintiff used to prove his claim of judicial bias consisted of only judicial rulings.

Additionally, "opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible. Thus, judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do

not support a bias or partiality challenge. They *may* do so if they reveal an opinion that derives from an extrajudicial source; and they *will* do so if they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible." *Liteky v. United States,* 510 U.S. 540, 555, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994). The Court further explained that, "*Not* establishing bias or partiality, however, are expressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women, even after having been confirmed as federal judges, sometimes display. A judge's ordinary efforts at courtroom administration—even a stern and short-tempered judge's ordinary efforts at courtroom administration—remain immune." Liteky v. United States, 510 U.S. 540, 555–56, 114 S. Ct. 1147, 1157, 127 L. Ed. 2d 474 (1994).

In *Liteky*, the petitioner asserted that based on the judge's prior rulings, the the Court found no basis for disqualification, "The duties of judicial office take precedence over all other activities. The judge should perform those duties with respect for others, and should not engage in behavior that is harassing, abusive, prejudiced, or biased." *Code of Conduct for United States Judges Canon 3.*

(c) Disqualification

(1) A judge shall disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned, including but not limited to instances in which

(a) the judge has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding

**Conclusion**

For the following reasons, Plaintiff believes this Court is biased and prejudiced against his cause or his attorney and requests this Court to recuse himself and reassign this case to another judge.

Date: June 16, 2022              MKRTCHYAN LAW

By: _____/s/Narine Mkrtchyan_____

**NARINE MKRTCHYAN**
Attorney for Plaintiff Jeremy Hollowa