**MKRTCHYAN LAW**
Narine Mkrtchyan, Esq. (SBN 243269)
1010 N. Central Ave, Suite 204
Glendale, CA 91202
Telephone No. (818) 388-7022
Web:  www.narinelaw.com
Email: narine57@gmail.com

Attorney for Jeremy Holloway

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEREMY HOLLOWAY, | Case No. 8:19-cv-01514-DOC-DFM |
| Plaintiff, | |
| vs. | **DECLARATION OF COUNSEL NARINE MKRTCHYAN TO PLAINTIFF'S MOTION TO DISQUALIFY DISTRICT JUDGE** |
| COUNTY OF ORANGE, DEPUTY CHAD RENEGAR, individually and as a peace officer, DEPUTY JOEL GONZALEZ, individually and as a peace officer, DEPUTY KEVIN PAHEL, individually and as a peace officer, DEPUTY BRANDON BILLINGER, individually and as a peace officer, DEPUTY MARK BORBA, individually and as a peace officer, DEPUTY JAMESON GOTTS individually and as a peace officer, DEPUTY JUSTIN GUNDERSON, individually and as a peace officer, and DOES 1-10. | |
| Defendants. | |

1

# DECLARATION OF NARINE MKRTCHYAN

1. I am Plaintiff's counsel in this matter. The facts stated herein are personally known to me of firsthand knowledge, except where alleged on information and belief, and if called as a witness I would competently testify thereto.

2. I have been an attorney in good standing with the California State Bar for over 16 years, first as a criminal defense attorney fighting for the rights of the accused, and then fighting for victims of police brutality in civil rights suits. I have handled multiple civil rights cases in the Central District successful to a completion. I have done many trials in criminal cases with great results for my clients. As a public defender and private attorney I have had many courtroom confrontations and clashes with judges in zealous pursuit of my clients' rights, but this was the only time when I was brought to tears in open court by an openly hostile and humiliating admonition by this Court. I was trained and have survived and succeeded in the worst war zone trenches in criminal courts in the harshest counties of California (San Bernardino and Kern County), but this trial was physically exacting on me, because I was not even allowed to eat or get rest and when I would finally get a break, the Court several times resumed trial with jury in my absence. I would enter the courtroom with jury staring at me with a silent rebuke on their faces for making them wait for me, when I was either unaware of the time the trial was resuming or was late only for a few minutes stuck in the restroom or elevator. I was the only attorney representing my client, while the defense had multiple attorneys in their team with unlimited staff who were at an advantage to handle this rough military bootcamp.

3. This case has become reminiscent of Kafka's Castle where no matter how hard Plaintiff screams injustice, his voice is not heard, and he is invisible. It is the only federal case where I have filed motions to disqualify the assigned magistrate and now the District Judge for bias and prejudice. Whether this bias is against Plaintiff as a civil rights victim, or me as his counsel as a minority lawyer, Armenian female, who speaks with a noticeable Russian accent, is not clear to me. Either way, bias against me disables me from effectively representing my client prejudicing his case.

4. From the discovery motions to motion for summary judgment, Plaintiff's case was severely limited by both the magistrate who made erroneous and incomplete rulings, infused with open hostility against Plaintiff and me, and District Judge who erroneously granted defense motion for summary judgment in all respect, dismissing Plaintiff's false arrest claim despite Plaintiff's dispute of defense material facts with deposition testimonies of Plaintiff, the defendants and the reporting parties.

5. Furthermore, at the first trial the Court permitted character assassination of Plaintiff by diverging from its own motion in limine rulings on impeachment of Plaintiff with prior conviction, permitting the relentless defense to showcase the underlying facts of Plaintiff's felony conviction, with terms and conditions of probation, thereby dooming his case to failure.

6. After the assigned magistrate set the tone of hostility against me personally, the very first week of trial, the District Judge agonized and intimidated me from effectively representing my client by admonishing me, threatening me with sanctions and mistrial, demanding I apologize to him for 'claimed disrespect'. Putting my client's interests over mine, I humiliated myself and apologized in open court when for the first time in

my career I was brought to tears in front of everyone due to this unjust treatment of me. **Attached as Exhibit A are the excerpts of the trial transcript of the hearing**. I had to deal not only with the obstructionist defense counsel who had mistreated and harassed me and my client since the beginning of the case, but with these judges who have treated me and my client like pariahs. If this is the price my client and I had to pay for bringing suit against the Orange County Sheriff's Department, known for its corruption and brutality, it is too heavy of a price.

7. At the trial I was not permitted to go for lunch breaks, or take restroom breaks, was not permitted to go home after presentation of the case to jury at 5, was ordered to remain in courtroom until 8-9 pm, without ability to get rest for the next day, to effectively present my client's case to the jury. I was having health issues because of this inability to take breaks timely for food or rest. Since Plaintiff has the burden of proof and I had to prepare and present most of the witnesses, this schedule affected me more than the defense with multiple attorneys and staff.

8. Several times the court would resume trial by bringing in the jury before my return to courtroom. For example, the defense counsel began their closing argument before I returned from a lunch break. The jury was well aware of this treatment, which prejudiced Plaintiff in their eyes.

9. When I was asking questions of the clerk confirming the time the court would resume, the clerk would refuse to tell me, telling me to carry a watch, and she was not my secretary. I was operating under extreme pressure as the only attorney representing Plaintiff going up against multiple lawyers on the defense side with multiple staff assisting them and could not often keep track of times when to return to court, that varied due to court's schedule. At some point the clerk also remarked, that my words

4

were an incomprehensible mumble to her. When I asked for help with courtroom technology or Zoom presentation of witnesses, I was told it is not the responsibility of the court to provide technical assistance. I am aware the court provides IT assistance to attorneys to handle court equipment and my request was legitimate.

10. The court's hostile militaristic treatment affected court reporters who were giving me hard time throughout trial, complaining I talked too fast and they could not understand me, when I had many trials and was never told by any court reporters that they could not understand me. Due to my noticeable Russian accent as an Armenian immigrant, I have been previously subjected to biased treatment from lawyers and judges alike but in this case it was stark and affected my ability to represent my client effectively.

11. I have made it very clear before the first trial and after that these trial continuances and delays were severely prejudicing Plaintiff. First, as an indigent litigant, disabled and injured Plaintiff, cannot expend on this case and I am advancing the costs of litigation to him. But this case is costing me prohibitive sums and I cannot indefinitely fund it. To date with the second trial fees I have spent three times as much on this case, than any other similar federal civil rights case in the Central District. Out of my pocket I have expended approximately $100,000 on this case up to date for the second trial. If this case is going to cost Plaintiff more than any recovery he may get, it is no longer cost-effective for him to settle this case, or pursue this litigation further. This was the goal by defense, enabled by this Court, to outspend Plaintiff so that he gives up in pursuing this case. The defense obstructed discovery at every point, refused to produce written discovery of documents even after court orders, refused to

produce their clients for depositions, refused to produce witnesses for trial, costing Plaintiff more sums than necessary in litigating this case. Defendants failed to produce discovery forcing Plaintiff to spend its own resources to find witnesses. For example, Plaintiff had to depose all park rangers on duty on the day of the incident to find a missing percipient witness not disclosed or identified in any of the defendants' disclosures. Plaintiff had to spend moneys to track down retired or current non-party OC employees for depositions or trial without any assistance by defense. I had to deal with uncooperative reporting parties, the 911 callers, who were not produced by defense either for depositions or trials, while they were in touch with them and knew their locations. Plaintiff has had to spend his own resources to locate, depose all witnesses and bring them to trial, obstructed by defense counsel who were in touch with these witnesses but were refusing to produce them to Plaintiff. All of this was designed to force Plaintiff spend his resources and moneys to track them down for trial.

12. The first trial was delayed due to the Covid-related shutdowns of court which already put Plaintiff at a disadvantage, forcing me to spend resources to track down witnesses and subpoena them. After the first trial, the Court's further continuances of the re-trial caused further prejudice to Plaintiff, because now more witnesses have retired from the Orange County, and more witnesses were no longer located at their previous addresses. I have had to spend additional sums to not only retain an additional expert witness, but also to track down and subpoena more witnesses, who are mostly uncooperative or unable to come to court for various reasons. At this point, with these delays until December, I have no confidence that I will be able to bring any one to court.

13. When defense counsel asked for another continuance based on their vacation, I vehemently objected and listed these issues and concerns in an opposition, identifying the severe prejudice to Plaintiff. See **Doc. 369**.
14. The Court nevertheless ordered parties to meet and confer and provide available dates. See **Doc 370**.
15. The defense counsel for all defendants provided August 30th as the only available joint date for them. I took a week to clear it on my calendar and with material witnesses before defense counsel for Defendant Renegar withdrew their availability without stating the grounds. They refused to cooperate in filing a status report. I filed Plaintiff's status report identifying the parties' positions. See **Doc 371**.
16. Then when the defense counsel for Renegar filed their own status report, they made it clear that the reason they were unavailable for August 30th, was their client's Defendant Chad Renegar's vacation and asked the Court to continue the trial to December 6. See **Doc. 372**
17. Without making a substantive ruling how either defense counsel or their client's vacation plans were more important than the expressed prejudice to Plaintiff, this Court granted the defense motion when Plaintiff has not listed December as an available time because expert witness Dr. Barcay is not available after December 15 due to the holidays. He is a material witness for the second trial. I have also not been able to clear this date with the rest of my witnesses. See **Doc. 376**
18. The Court failed to consider Plaintiff's availability, failed to do balancing of the prejudice against the cause for continuance, and continued this trial further 5 months out, almost guaranteeing that the trial will not be held even then because Plaintiff has not cleared this date with his witnesses.

19. At this time, the combination of these actions make me seriously doubt that this Court is capable of presiding over this case impartially or is willing to resolve this case. By design these continuances are disabling Plaintiff from successfully proving his case, because I cannot indefinitely spend moneys in tracking down uncooperative witnesses, who are not willing to come to court without a subpoena. The Court made a comment at the status conference after trial that no matter how many times we try this case, there will not be a verdict, dooming this case to a failure, and a self-fulfilling prophecy. Sure enough, the promise of mistrial was realized by the hung jury.

20. Therefore, with all due respect to this Court and the judicial powers enshrined in the Article III of the U.S. Constitution, I request this Court to recuse himself and have this case reassigned to another judge in the Central District willing and able to expedite resolution of this case to repair prejudice to Plaintiff.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this June 16, 2022 at Los Angeles, CA

/s/ Narine Mkrtchyan

Attorney for Plaintiff