Catalog

Exhibit A Cover Letter··········································································································1
Cover page for Exhibit to Motion to disqualify··········································································2
Exhibit to Motion to disqualify······························································································3

# EXHIBIT A

1          **UNITED STATES DISTRICT COURT**

2      **CENTRAL DISTRICT OF CALIFORNIA - SOUTHERN DIVISION**

3        **HONORABLE DAVID O. CARTER, U.S. DISTRICT JUDGE**

4
JEREMY HOLLOWAY,                        )
5                                        )
                    Plaintiff,           )   **Certified Transcript**
6                                        )
        vs.                             )   Case No.
7                                        )   8:19-cv-01514-DOC-DFM
COUNTY OF ORANGE, et al.,                )
8                                        )
                    Defendants.          )   **DAY 4, VOLUME II**
9  _____ )

10

11

12
              REPORTER'S TRANSCRIPT OF PROCEEDINGS
13                       JURY TRIAL
                FRIDAY, AUGUST 20, 2021
14                     1:03 P.M.
                 SANTA ANA, CALIFORNIA
15

16

17

18

19

20

21

22  _____

23        **DEBBIE HINO-SPAAN, CSR 7953, CRR**
          FEDERAL OFFICIAL COURT REPORTER
24        411 WEST 4TH STREET, ROOM 1-053
               SANTA ANA, CA 92701
25              dhinospaan@yahoo.com

**UNITED STATES DISTRICT COURT**

1          MR. BECK:  Oh, may I present this to --

2          THE COURT:  Oh, absolutely.  My apologies.  I just

3     couldn't hear you.  Thank you.

4          **(Videotape was played, not reported.)**

03:39PM 5  Q    BY MS. MKRTCHYAN:  So we heard the point in time before

6     he's taken down to the ground all the commands given to Jeremy

7     Holloway; yes?

8          MR. WRONIAK:  Objection.  Misstates the evidence.

9          THE COURT:  Sustained.  I'm not certain -- you may

03:39PM 10    be correct, but that's a statement by you.  Continue playing

11    this tape.

12         MS. MKRTCHYAN:  This is -- I'm talking about prior

13    to him --

14         THE COURT:  You're playing this tape.  I'm not sure

03:39PM 15    you completed that yet.  You may have.  But that's a statement

16    by you.  You're not a witness.

17         MS. MKRTCHYAN:  Yes, Your Honor.  My question next

18    is different.

19         THE COURT:  Complete playing this tape.

03:39PM 20         MS. MKRTCHYAN:  But that's not my question, sir.

21    This is my direct examination of a witness; right?  You are

22    diverting my ability to question him.  I'm talking about the

23    juncture before Holloway was taken to the ground.

24         THE COURT:  I'm sorry, Counsel.  I apologize.

03:39PM 25         MS. MKRTCHYAN:  Yes.

1          THE COURT:  I'm not diverting you in any way.  I'm

2    just not certain as the judge, and you may be right, that this

3    is all of the statements made.  And I can't take either you or

4    opposing counsel's word for that.  You may be absolutely

03:40PM 5    correct, but I need to make certain that these are all the

6    statements.

7          And when you make a statement in front of the jury

8    that these are all the statements, you may be correct.  I don't

9    know.  And I direct you to play this tape and continue on for a

03:40PM 10   few moments.  That's an order.  That's not a request.

11         And when you directly confront the Court in that

12   way, that's not appropriate --

13         MS. MKRTCHYAN:  I am just making --

14         THE COURT:  -- because that draws me into this kind

03:40PM 15   of discussion which is harmful for you and for the Court, and I

16   don't want that created.  But this is the third time for my

17   record that that confrontation has taken place where you direct

18   the comment to the Court.

19         Now, I have no option now except either to correct

03:40PM 20   you, because you're incorrect in the way you're presenting

21   evidence, or let you to continue this kind of conduct.  What am

22   I going to do about that?

23         MS. MKRTCHYAN:  Your Honor, I was making --

24         THE COURT:  Ladies and gentlemen, would you recess

03:41PM 25   for just a moment.  My apologies.  I need to have a thoughtful

1   discussion with all counsel.

2          **(Out of the presence of the jury.)**

3          THE COURT:  For my record, whether the Court's

4   correct or not, I have to be certain that I'm correct.  And

03:41PM  5   when counsel makes a statement that this is all of the

6   information, counsel may be absolutely correct.  But I not only

7   don't have a transcript, once again, I'm not certain from this

8   tape that that is all of the information.  So those kinds of

9   comments are inappropriate.

03:42PM 10          And when I ask you to play the tape for a few more

11   seconds so I can discern that and then you confront the Court,

12   I have two choices:  To let you continue on with that kind of

13   conduct, which means I lose control consistently now in a

14   situation where I'm in a confrontational situation with you,

03:42PM 15   which I choose not to be drawn into.  Unless you have a remedy,

16   this case is not continuing.

17          And I think, unfortunately, you've been able to do

18   that now, and I think the record's established with the

19   magistrate judge as well on a continuing basis.  But in front

03:43PM 20   of the jury, this Court does not want to be drawn into those

21   kinds of confrontations with you.  And it's much jeopardy in

22   this setting where you can confront the Court and I can respond

23   outside the jury and it's not prejudicial to your client.

24          But I'm very uncomfortable now, even on your

03:43PM 25   client's behalf, that I'm being drawn into this kind of

| | |
|---|---|
| 1 | accusation with the Court, whether you agree with my ruling or |
| 2 | not. |
| 3 | MS. MKRTCHYAN:  There's no -- |
| 4 | THE COURT:  It seems that you're very favorable in |
| 03:43PM 5 | terms of the ruling when I overruled my magistrate judge when |
| 6 | it's favorable, but you're very disrespectful, quite frankly, |
| 7 | to the Court when you get an unfavorable ruling and then |
| 8 | continue to badger.  And apparently, you've been able to |
| 9 | achieve that on a number of occasions.  And, quite frankly, |
| 03:43PM 10 | that won't be happening in this court. |
| 11 | MS. MKRTCHYAN:  There was no accusations.  May I |
| 12 | respond? |
| 13 | THE COURT:  I'm sorry.  I couldn't hear you.  Speak |
| 14 | loudly so we have a clear record of our discussion now. |
| 03:43PM 15 | MS. MKRTCHYAN:  Yes.  There was never on my part any |
| 16 | intent to disrespect anyone.  I have a very uncooperative |
| 17 | witness.  This is 3:44 p.m.  I have not even gotten to the |
| 18 | use-of-force incident.  Do you understand? |
| 19 | I have an uncooperative witness here.  And you are |
| 03:44PM 20 | referencing a magistrate's highly biased -- you are prejudicing |
| 21 | my client, and I don't appreciate that.  At this point I want |
| 22 | to take a break because -- you know, you see what I'm going |
| 23 | through.  I have a liar on the stand, and I'm trying to prove |
| 24 | my case.  And you're just telling me that I'm being |
| 03:44PM 25 | disrespectful. |

1          My question specific was that before he was taken

2    down to the ground.  I'm going methodically sequence by

3    sequence into the use-of-force incident.  Every point -- every

4    point is important.  And the reason I ask you not -- because

03:44PM 5    you are interrupting my flow.

6          Whether you agree or not, it's for

7    cross-examination.  If I am wrong, it's from cross-examination

8    to bring that up.  Okay?  You interrupted me.  You wanted me to

9    play the use-of-force incident where this issue is not an

03:45PM 10   issue.  Okay?  I am trying to -- you keep me under pressure.  I

11   am the plaintiff.  I have the burden of proof; right?  You put

12   me under pressure.  You keep me after hours.  You want me to

13   present this case efficiently, effectively, and then you don't

14   want me to be aggressive with the witness.  How am I going to

03:45PM 15   prove my case, Your Honor?

16          And you don't like when I am making an offer of

17   proof.  You don't want to give us a sidebar.  I mean, I never

18   had a situation where I cannot have a sidebar with a judge

19   during examination.  I mean, we are operating in a very

03:45PM 20   different courtroom here, different rules.  I'm still learning

21   your rules, you know.  Every trial I've had judges give us

22   sidebar at any point in time.  I have not been given that

23   opportunity in this court.

24          So, I mean -- and I have an adverse witness here.

03:46PM 25   I'm trying to -- this is, like I said, 3:44 p.m.  Because of

his evasive answers, I still have not even gotten to the use of
force.

    And that is why I was trying to give you an offer of
proof that, Your Honor, that's not where we are going.  The
question was specifically before he was taken down to the
ground.  It was about what commands was given to this man when
they just approached him.  And I played that part of the video.

    So you keep going back to some magistrate's rulings
that have no play in this trial right now.  That's badgering me
as an attorney.  That's offensive.  That prejudices my client.
That was a biased ruling, and I took it up, and I asked to
disqualify that magistrate because he was biased towards me and
my client with all these rulings.

    So right now we are here in a new court in a new
place, and you keep bringing that up.  How fair is that to me
as an attorney?  How fair is that?  It's not fair.  Because
that just, you know -- it really prejudices me in terms of
proving this case.

    So instead of admonishing this witness who keeps
giving evasive answers, who doesn't remember his deposition --
you know, they prepared their clients for hours.  They don't
remember their deposition transcripts.  They don't remember.
So -- and they don't remember their patrol vehicle recordings.
I have to keep playing this stuff for them.

    So anyway, bottom line, Your Honor, is that you are

being unfair to me because my point was not to disrespect you.

I have not been disrespectful towards you.  That's not my

intention, never was my intention.  But we have a witness who

is not cooperative.  And you need to give us the benefit of the

03:48PM 5 doubt.  I am allowed to give leading questions.  If there is

anything wrong I'm doing, it's up for cross-examination.  I am

right here direct examination.

And with an adverse party, I have a right to lead

him.  And I'm entitled to yes-or-no answers.  And if he does

03:48PM 10 not remember his deposition transcript, I'm also allowed to

read it or have him read it.

So I don't really understand why you are so

concerned when I just -- only what I did is tell you,

"Your Honor, that's not where we are going."  If you want to be

03:48PM 15 her for another week, just -- that's fine.  I have the burden

of proof.  But I'm trying to make this case go faster.  That's

what I'm trying to do.  You tell me to slow down, but at the

same time you're not giving me -- you're putting me under

pressure.  So I don't know what else I'm supposed to do.  I

03:48PM 20 really do not know.

THE COURT:  Thank you, Counsel.  I'm going to

respond that your questions in some ways are very appropriate,

and I've allowed those.  But when they're compound or

argumentative or especially confusing, the Court cannot allow

03:49PM 25 that.  Nor can I allow you to make statements about what the

1    facts are of this case and continue to do so without proof.

2    You are not a witness in this case, and yet, you put yourself

3    into this as a witness.

4           And when a simple request of the Court is to play

03:49PM 5    the tape a little bit further and you become confrontational so

6    the next few moments I could discern if your statement, which

7    was inappropriate, was the entitled summation of all the

8    commands given, and you may be right, and you refuse to do

9    that, then you are confrontational.

03:50PM 10          So I think in the next trial I'm going to demand a

11   witness list from each of you.  I think I'm going to demand

12   time frames from each of you.  It will be a timed trial.  And,

13   quite frankly, I'll have a joint witness list on the next

14   occasion.

03:50PM 15          Pick a date in the future, Counsel.  I'll return in

16   five minutes.

17          **(Recess from 3:50 p.m. to 4:01 p.m.)**

18          THE COURT:  We're on the record.  All counsel are

19   present.

04:01PM 20          Counsel, if each of you would get a calendar, I'm

21   going to suggest some dates.

22          I think the next time, also, we'll need a jointly

23   prepared exhibit list.  You never agreed upon an exhibit list,

24   and it was submitted to this Court one day before.  I received,

04:01PM 25   with no fault by either party, last-minute motions from the

UNITED STATES DISTRICT COURT

```
 1  defendant concerning collateral acts that kept me up at night,

 2  quite frankly.  So when we complain about the time, each of you

 3  bear the responsibility for this late preparedness.

 4          And I'll make the record that I think the Court was

 5  extremely humble and gracious in this regard, and that is, you

 6  are one of 300 cases, and, quite frankly, there's a criminal

 7  case pending that was put back so you could try this matter in

 8  my court.  And the time estimate was four to eight days.  And

 9  I've actually moved two calendars now on your behalf and over

10  30 cases through my clerk to make room for you and give you

11  actually 12 to 13 days.

12          So, Counsel, look at your calendar.  Let's see if we

13  can get together.  But I'm thinking about March of next year.

14  That's the earliest on my calendar.  If not, I've got a

15  two-and-a-half-month murder case.  See if you can agree on a

16  date sometime in March.

17          MR. HARRELL:  Your Honor, would you like us to

18  confer amongst ourselves?

19          THE COURT:  Yeah, confer amongst yourselves.

20          (Counsel conferred off the record.)

21          MR. HARRELL:  Your Honor, I am available the first

22  three weeks of March.  It's my understanding plaintiff's

23  counsel is not available in March.

24          THE COURT:  What day would you be available then,

25  Counsel?  Because there's going to be a lot more preparation.
```

04:02PM (lines 5, 10, 15, 20)  04:03PM (line 25)

**UNITED STATES DISTRICT COURT**

1   Next time I think I'm going to demand time estimates of each

2   witness.  I'm going to demand, quite frankly, a joint witness

3   list.  And that way I can give a good faith estimate, because

4   the best estimate was four to eight days, and I tried to give

04:03PM 5   you ten.

6             So what days -- what month is best for you, Counsel?

7             MS. MKRTCHYAN:  Your Honor, I'm not agreeable to --

8   so you are declaring mistrial based on comment that you took

9   confrontational from me?

04:03PM 10            THE COURT:  In other words, unless I can make

11   rulings in good faith to the best of my ability and not be

12   constantly confronted by you in court, then I lose control, and

13   it encourages that kind of behavior.  If you could be

14   respectful, that's a whole different matter.  But,

04:04PM 15   unfortunately, I'm getting drawn into a conflict, and I think

16   that that's harmful to your client, quite frankly.

17            So it's easier for me just to start over and feel

18   good ethically about a clean trial where we haven't had this

19   kind of confrontation because I don't want that to occlude

04:04PM 20   Mr. Holloway.

21            MS. MKRTCHYAN:  That would prejudice Mr. Holloway,

22   Your Honor, because as indicated --

23            THE COURT:  That's your conduct, Counsel, you're

24   responsible for.  And I've made my record, and you've made your

04:04PM 25   record.

1    MS. MKRTCHYAN:  Well, that's prejudicial to my

2    client because my conduct --

3         THE COURT:  I'm sorry.

4         MS. MKRTCHYAN:  -- was not directed at you.

04:04PM 5    THE COURT:  It was.

6         MS. MKRTCHYAN:  My conduct was confrontational only

7    to the witness.

8         THE COURT:  Am I about to hear an apology?

9         MS. MKRTCHYAN:  Of course.  I already indicated to

04:04PM 10   you.

11        THE COURT:  In front of the jury?

12        MS. MKRTCHYAN:  Apology to you?

13        THE COURT:  Absolutely.

14        MS. MKRTCHYAN:  Absolutely.  I never intended to

04:04PM 15   disrespect you.  Didn't I say that?

16        THE COURT:  In front of this jury.

17        MS. MKRTCHYAN:  Absolutely.  The problem is that you

18   misinterpret me.  And you know why you misinterpret me?

19   Because you already have a track record by another magistrate.

04:05PM 20   Why don't you give me clean slate?  You know, everyone is

21   entitled to clean slate.

22        THE COURT:  Counsel -- Counsel, I have given you a

23   clean slate.  In fact, you have got rulings where I overruled

24   the magistrate judge.

04:05PM 25   MS. MKRTCHYAN:  Sure.

1       THE COURT:  It has no effect upon me.  But what I've

2   seen is a continuing conduct on your part that's abusive

3   towards the court system in general and this court in

4   particular.

04:05PM  5       MS. MKRTCHYAN:  Your Honor --

6       THE COURT:  So between that kind of behavior --

7   you're either going to have to retrain yourself or this case is

8   not going to go forward in a timely fashion.

9       MS. MKRTCHYAN:  Your Honor, as I said, I already

04:05PM 10   indicated I was -- there was no -- first because of your age,

11   I'm not disrespectful to people who are older than me.  Okay?

12   That's not my background and personality, number one.

13       Number two, this is -- this is trenches.  I am a

14   criminal defense attorney.  What do you expect?  What do you

04:06PM 15   expect?  That was not directed against you.

16       THE COURT:  I'm going to take a recess, Counsel.

17   Just a moment.  You pick a date now.

18       **(Recess from 4:05 p.m. to 4:08 p.m.)**

19       THE COURT:  All parties are once again present.

04:08PM 20       Counsel?

21       MR. HARRELL:  Judge, the defense is agreeable any

22   time during the first three weeks of March.  We have been

23   available for the Court.  And, frankly, the other matter is a

24   case of mine, it's a conflict.  It's another County of Orange

04:09PM 25   case.  I'll see what I can do to get that moved.

                    THE COURT:  All right.  Counsel, now I want to be

courteous to both sides.

                    Which is the best move for you, Counsel?

                    MS. MKRTCHYAN:  The best move for us is for me to

04:09PM  apologize to this Court, if I have done that.  Again, apologize

because I have witnesses.  I have my client who needs a

resolution of this case.  I will do my best not to engage in

the behavior that I've engaged in.  I'm not sure, of course,

what I did wrong because the intention was not what was

04:09PM  projected.  But if it was indeed disrespectful or

confrontational, I apologize.

                    I'm not available later.  I want my client to

resolve this case because we have expended a lot of resources,

time.  I have filed everything that I was supposed to file.  I

04:09PM  want to finish this case.  And I will apologize in front of the

jury.  But I want to make it very clear --

                    THE COURT:  How are we going to avoid getting into

this kind of confrontation?  Because I am extraordinarily

worried about Mr. Holloway right now.  I've gotten drawn into

04:10PM  this on more than one occasion now, unintentionally on my part.

Quite frankly, I think that's prejudicial to Mr. Holloway, and

I'm not too certain it's not prejudicial to you gentlemen,

also, on the defense side.  That's what I'm worried about.

                    I'm especially worried about those officers who may

04:10PM  be subject to either a summary judgment motion or a directed

**UNITED STATES DISTRICT COURT**

verdict because there's at least two of you that are really in

play right now where a summary judgment motion wasn't brought.

I'm not certain about the rest.

But I've always had some misgivings granting the

04:10PM substantive portions and not knowing what to do with the

conspiracy.  So I've kept you in waiting to see the default of

the conspiracy or not.  And I didn't know if I was going to

wrestle with that issue with at least two of you after the

plaintiff's case or wait until the defense case or never reach

04:11PM that and let you go to verdict.  So all that was up in the air,

quite frankly, so no representation.

But two of you are very close in this matter in

terms of motions.  And I haven't made up my mind, but I know

that I was very concerned and waiting for the plaintiff and the

04:11PM defendant to finish their cases to even attempt to make a

decision.

The second thing is I'm even worried as I reflect

upon it to have you apologize to me in front of the jury.  The

more I think about that, I think that's even inappropriate for

04:11PM me to request that of you.  Because in doing so, there's some

intonation that you've done something wrong.  And if this did

go forward, I don't think, upon reflection, I would want your

apology because I think it might be harmful to your client.

I just, quite frankly, don't know how to control and

04:12PM am unwilling to control the argument that takes place when you

```
        1  direct a comment to the Court.  And if you disagree, we've got
        2  to recess.  You can be caustic if you want to.  You can be
        3  confrontational with me.  I don't mind that during the recess.
        4  I do mind that in front of the jury.
04:12PM 5         And by not taking action, somehow you're being
        6  encouraged to continue, at least in my court, with that, and
        7  that I cannot allow.  How can I get some guarantee that if I
        8  humbly back off that we're not going to get into this kind of
        9  confrontation again come Monday or Tuesday or Wednesday?
04:12PM 10 Because having said it once, if I back away now, it becomes a
       11  joke.  Gee, did the judge really mean it?  Well, normally I
       12  mean it.
       13        How are we going to resolve this, Counsel?
       14        MS. MKRTCHYAN:  We can resolve it, Your Honor, by
04:13PM 15 setting clear rules.  If, for example -- and I've been an
       16  attorney for 15 years.  I have been able to appear many judges,
       17  and I have been in the same way with many judges.  I've never
       18  been sanctioned in trial.  So here's the issue I'm having.
       19        THE COURT:  I'm not sanctioning you.
04:13PM 20        MS. MKRTCHYAN:  I understand.  But you asked me how
       21  to guarantee this; right?  I want to understand the clear rules
       22  here.
       23        THE COURT:  Do not confront me over rulings.  If you
       24  disagree with them, don't make side comments.  Don't address
04:13PM 25 the other attorney.  And if I ask you to do something, even if
```

```
 1   you disagree with my ruling, please do that.  And then if I'm

 2   wrong, the appellate court will reverse me.

 3              MS. MKRTCHYAN:  But I'm not confronting your

 4   rulings.  This is the whole point of it.  I understand what

 5   you're telling me.  But all I was trying to do at this

 6   juncture -- at this juncture, all I was trying to do, all I was

 7   trying to do is to make an offer of proof that, Your Honor,

 8   where I'm going with this question is not there.

 9              But, of course, if it sounded like I'm confronting

10   you, again, I apologize.  But that's why we need to have clear

11   rules.

12              THE COURT:  Counsel, you're making statements as if

13   you're a witness.  Let me give you just one small example.

14              MS. MKRTCHYAN:  Sure.  Sure.

15              THE COURT:  "Well, that concludes all of the

16   evidence concerning the commands made.  And I'll have that read

17   back."  I'm paraphrasing that.  You may be right.  But I'm

18   looking at a tape.  And I don't know that from the best

19   evidence.  And I'm asking you at the time in front of the jury

20   just to play a few more moments of that tape so I can be

21   certain that those are all the commands.

22              And instead of doing that, you can't even give me 60

23   more seconds of a tape so I can verify that with the best

24   evidence.  And that is in your transcript.

25              MS. MKRTCHYAN:  That's true.
```

04:13PM  5
04:14PM 10
04:14PM 15
04:14PM 20
04:14PM 25

**UNITED STATES DISTRICT COURT**

1          THE COURT:  That is the tape.

2          MS. MKRTCHYAN:  Yes.

3          THE COURT:  So, therefore, you confront me and put

4    me in the position as the judge in my own court of asking for

04:15PM  5    what, 5 to 30 seconds at the most to make certain that that

6    statement, which was improper on your part, is verifiable.  And

7    if it is and you're right, I'm going to say, "Counsel, cut off

8    the tape."

9          But you can't even give me that courtesy of a few

04:15PM 10    seconds to verify that, and you continually make statements.

11    And you put yourself in a position of being a witness.

12          And what I'm afraid of is this:  Unless you obey the

13    rules, then you somehow have come to believe, at least in my

14    court, that you can continue on with this.  And if I can't

04:15PM 15    control that now, I'm not going to be able to control that in

16    the next couple days.  And you are not going to continue on

17    with this in my court.

18          And yes, I am worried about Mr. Holloway because I

19    don't know his financial well-being.  It's got to be

04:16PM 20    devastating to him.  Most of these officers would like to get a

21    resolution.  And whether you agree with me or not, for goodness

22    sakes, have the respect to obey my ruling without comment, and

23    have the respect on all parties' parts not to engage each other

24    in combative language when I make a ruling.  If you don't like

04:16PM 25    it, have at it at the recess.  I've got a thick skin, but not

UNITED STATES DISTRICT COURT

1    in front of this jury.

2           Having said that, I'm right back in the same

3    position with the continuing conduct on your part.  And if I

4    have to go through this record, I'll pick it out, but that's

04:16PM  5    dangerous for you.  Because if I have to go through this, I'm

6    telling you, it is not a good record for you regardless of what

7    you think.

8           And if you don't understand that, then I'm dealing

9    with a person who, quite frankly, isn't capable now or in the

04:16PM 10    next trial of adopting himself or herself to the rules of the

11    Court.  And if you tell me that other judges have allowed that,

12    then I am absolutely baffled by it.

13           And I think what's happened is you've been able to

14    do this in my court a number of times when we aren't in front

04:17PM 15    of the jury, and I have absorbed that.  And perhaps I sent the

16    wrong message, but I am not absorbing that.  And you are not in

17    control of my court.  I am.

18           So what's my guarantee if there is one?  And,

19    Counsel, if I did this in front of the jury -- and, by the way,

04:18PM 20    the record doesn't reflect the facial expressions, but watch

21    for a moment.  Let's assume that you said something that I

22    didn't appreciate as the judge, and I looked over at the jury

23    and went like this -- watch me (indicating).  What's the

24    impression on the jury?  Devastating.

04:18PM 25           What's the impression when I make a ruling and you

UNITED STATES DISTRICT COURT

convey and that 30 percent of the record doesn't capture, a
demeanor that's disrespectful to the rulings I've made, and
that's what the record is not capturing also.

          I just need some comfort level that I don't have to
go through this every single day because it's detrimental to
your client.  And, quite frankly, it's easier for me just to
start over again.  And if you haven't learned it by that time,
I'll start it over again.  Because I don't want this to go up
to the Circuit on this kind of record.  Do you understand that?
I don't want this kind of confrontation with you.  Do you
understand that?

          MS. MKRTCHYAN:  Yes, Your Honor.

          THE COURT:  I want a fair trial.  Do you understand
that?  And you're the cause in this Court's opinion and finding
of the exacerbation that's taking place right now, and that's
detrimental to your client.  And that's what's disturbing me.
It's not you, it's Mr. Holloway and the deputies I'm concerned
about.  How are we going to resolve this?

          MS. MKRTCHYAN:  If you get to know me better, if
you --

          THE COURT:  I don't want to.  I don't want to know
either counsel any better.  I just want respect concerning my
rulings.  No more eyeball-rolling, no more demeanor gestures,
and no more confrontation with the Court, and no more side
content, and no more testifying as if you were a witness in

```
 1    this case.  Ask the question.
 2            Some of these areas are absolutely good for you.
 3    The problem is they get so compound that I'm going to sustain
 4    the objection because they're either not understandable or
 5    compound.  And a couple times I literally told you what could
 6    be asked.
 7            And here's what will happen.  So let me trace this
 8    out.  This isn't a situation where I get reversed.  This isn't
 9    the trial that I have to fear going on, which I, quite frankly,
10    do at this point in terms of, you know, the fairness to the
11    parties.  Then the Circuit gets this and they should be looking
12    at this record.  This is a case where if I start over again,
13    Circuit isn't going to have much say in it.  Are they?  We just
14    start over again.
15            Can you stop directing in a confrontational way
16    comments towards the Court?
17            MS. MKRTCHYAN:  Yes, Your Honor.  I did not intend
18    to do that.
19            THE COURT:  Can you stop doing that?
20            MS. MKRTCHYAN:  Yes.
21            THE COURT:  Because yes, you did.
22            MS. MKRTCHYAN:  Yes.
23            THE COURT:  And I won't let you make the record that
24    you did.  Yes, you did, and that's my finding.
25            Number two, can we stop the banter with other
```

04:20PM (line 5)
04:21PM (line 10)
04:22PM (line 15)
04:22PM (line 20)
04:22PM (line 25)

**UNITED STATES DISTRICT COURT**

```
 1   counsel?  And can we stop the testimony where you make a

 2   statement as if you were a witness which automatically is going

 3   to bring an objection?  Can we minimally stop that?

 4          MS. MKRTCHYAN:  Those are leading questions,

 5   Your Honor.

 6          THE COURT:  You can ask leading questions, but

 7   you're testifying at the same time.

 8          MS. MKRTCHYAN:  If my question is, "Isn't it true to

 9   this point in time you did not hear commands, any more commands

10   about hands?" that's, to my understanding, a question.  But as

11   far as going to my body language or eye contact or any other

12   body language, I was not aware of that type of body language,

13   nor was my intention to be disrespectful towards you.  You have

14   been a fair judge to this so far.  You have given us a fair

15   trial.

16          THE COURT:  I can't hear you.  I'm sorry.

17          MS. MKRTCHYAN:  You have been a fair judge in this

18   case so far.  There's no need for me --

19          THE COURT:  Well, I'm trying to.  Time out.  That's

20   what's disappointing to me.  I'm trying to be fair to both

21   sides.

22          MS. MKRTCHYAN:  Sure.  And I agreed with that, and I

23   appreciated that.  And I was never intending to be in any way

24   disrespectful towards you, but I hope you understand it was the

25   heat of passion.  You know, I mean, there is something to be
```

said about heat of passion.

        THE COURT:  I don't mind your exuberance.  I don't mind your enthusiasm.  I don't mind you ripping and tearing at a witness.  What I do mind is the inappropriateness of some of the questions.

        MS. MKRTCHYAN:  And that was my best --

        THE COURT:  And the problem is I don't want to have a chilling effect on you, but this has to be retrained and retrained quickly, unfortunately.

        MS. MKRTCHYAN:  Well, Your Honor, I'm learning your rules.  As I said --

        THE COURT:  No, they're not my rules.  These are simple rules of evidence.

        MS. MKRTCHYAN:  Sure.  No, but --

        THE COURT:  Let's do this.  Are you moving for a mistrial in this matter?  In other words, so far this has been sua sponte.  Are you moving for mistrial on behalf of the officers?

        MR. HARRELL:  Your Honor, this has been a lot to take in.  And there's a lot of things at play here.

        THE COURT:  I'll take a recess.  You discuss it with the officers.  I'm going to get a decision this evening.  Are you moving for mistrial on behalf of your client?

        MR. WRONIAK:  Can we take -- discuss that, please, Your Honor?

        1              THE COURT:  Uh-huh.

        2              MR. WRONIAK:   Thank you.

        3              THE COURT:  All right.  I'm going to take another

        4    recess because before I take action, I want to know if there's

04:24PM 5    a mistrial because I'm the one who brought this up sua sponte,

        6    and I want to --

        7              MR. WRONIAK:  Your Honor, we're all thinking here.

        8              THE COURT:  You discuss this with your clients,

        9    please.

04:25PM 10             (Recess from 4:25 p.m. to 4:35 p.m.)

       11              THE COURT:  We're on the record.

       12              MR. BECK:  There's no defense lawyers present yet.

       13              THE COURT:  So we're not going to be on the record

       14    yet.

04:36PM 15             (A discussion was held off the record.)

       16              THE COURT:  A couple thoughts as you're making your

       17    decisions right now.  Obviously, the two of the officers I've

       18    given an indication -- I'm looking -- they're all parties at

       19    present.  The two of you I'm looking very carefully at whether

04:36PM 20   a directed verdict should be granted.  Those are the two

       21    gentlemen I dismissed subsequent counts against.

       22              I'm not saying it would have, but there was a good

       23    possibility that those two defendants with the substantive

       24    counts are probably the weakest part of the plaintiff's case

04:36PM 25   right now.  With the others, I was simply waiting to see if

1   there was some kind of conspiracy involved.

2          The problem is it could be prejudicial to your side

3   also, because Mr. Renegar apparently is under indictment -- or

4   Sheriff Renegar, I'm sorry.  And if, in fact, that took place

04:37PM  5   before this case, and if he, in fact, was found guilty, then he

6   would be in a much different position with a felony conviction.

7   And a felony conviction would come into this court.

8          So I don't know the time schedule across the street,

9   and I worry about any prejudice to the remaining deputies

04:37PM 10   unless the case goes forward.  Because standing trial in a

11   joint situation which you would be has the same ramifications

12   that one of you then would be a convicted felon.  And I don't

13   know how that plays with the jury.  So I worry about the other

14   defendants also.  But if Sheriff Renegar is acquitted, no harm,

04:37PM 15   no foul.

16          Same token, Mr. Holloway, I worry about you in terms

17   of finances.  How do we get this case going?  And do I have any

18   different situation three months from now or six months from

19   now?  So I've got the equal concern on your part.  And whether

04:38PM 20   I think the trial is fair or not thus far, you know, I've made

21   my best efforts of keeping the same hours of counsel to make

22   the best decisions I could under the circumstances.

23          What are we going to do?

24          MR. HARRELL:  Your Honor, I have a suggestion.

04:38PM 25   First of all, in answer to the Court's question, yes, we do

```
 1    move for a mistrial.

 2              THE COURT:  Okay.

 3              MR. HARRELL:  Wholeheartedly we move for a mistrial.

 4    We have a great -- we concur entirely in the Court's comments.

 5    We've seen the same thing the Court has.  And we just have a

 6    concern at this point in time that the process has been tainted

 7    or prejudicial --

 8              THE COURT:  But tainted towards who?  In other

 9    words, my concern in thinking about it in chambers, if there's

10    anybody who I'm concerned about being tainted right now is

11    Mr. Holloway because of the confrontation between us.  And I'm

12    a little worried that there's a benefit gained on the other

13    side and not that detriment.

14              MR. HARRELL:  Your Honor --

15              THE COURT:  So explain to me the prejudice or

16    detriment other than the motion for mistrial which I've denied.

17    I've put that aside.

18              MR. HARRELL:  As the Court has well explained, this

19    trial has been punctuated by repeated testimony from

20    plaintiff's counsel.  It is hard to unring the bell.  Everybody

21    has tried.  But it hasn't been a momentary slip of the tongue.

22    It has been repeatedly -- she has practically testified as a

23    witness.

24              THE COURT:  Can we do this?  Can we gather the jury,

25    can I send them home so we can have a thoughtful and lengthy
```

discussion?  Can I tell them to return on Monday at

8:00 o'clock, and if I decide that there's a mistrial, I can

simply inform them then.

                MR. HARRELL:  Sure.

04:39PM          THE COURT:  But I don't want to make a snap decision

this evening.  I think that with all of your permission, let's

summon the jury.  Let's just say the matter's been resolved for

the time being, whether it has been or not.  So there's no

harm, no foul if we go forward.  And we'll resume on Monday at

04:40PM 8:30.  That's subject to the Court's ruling.  I can always say

if there's a mistrial on that date.

                **(In the presence of the jury.)**

                THE COURT:  First of all, the jury is present.

                We're going to send you home immediately.  We're

04:41PM going to resume at 8:30 on Monday.  We think we've resolved all

the issues.

                Whatever is occurring is the Court's responsibility.

It shouldn't bear on either counsel.  So take that as my

inability for the moment.  And I think we resolved everything

04:42PM satisfactorily this evening.

                Don't think about the case.  Don't discuss it.

There's no reason for you to be here except to have a very good

weekend.  We'll see you Monday at 8:30.  By the way, you'll be

in session until 1:00 o'clock.  We have consecutive days.  So

04:42PM we've moved about --

1           What, Kelly, 15 cases?  I don't know.

2           We moved a lot of cases to give us about a five-hour

3    block of time on Monday.  You can expect 1:00 o'clock on

4    Monday.  You're free the rest of the day.  And then we'll go on

04:42PM  5    Tuesday with a full day, Wednesday.  But I want to have

6    continuous days so we get the case to you.  Okay?  Have a good

7    weekend.  Thank you.

8           **(Out of the presence of the jury.)**

9           THE COURT:  This isn't fault-finding, but it is

04:42PM 10    something that's occurring, and that is, part of the problem

11    has been the lateness of some of the filings.  That's what's

12    kept me up, frankly.  And so as you file briefs, you know, on a

13    Tuesday, I respect that opportunity, but, you know, there could

14    be criticism going the other way also when I'm handed a

04:43PM 15    telephone book of exhibits and I'm supposed to read a brief on

16    Tuesday evening which, by the way, we did read, okay.  And

17    that's putting a lot of stress in terms of the hours on us

18    also.

19           So I've started to reflect that in trying to get

04:43PM 20    your case off the ground for all parties, I think I humbly need

21    to say that there's a tremendous amount of fault on my part for

22    trying to get a time frame for you because, quite frankly, we

23    are so inundated after COVID that all my criminal cases are

24    taking precedence.  So when the criminal case pled, my eyes lit

04:43PM 25    up.  I then didn't have to put you in a trailing position with

experts or officers on call and you're wondering when do you

come into court, you know, in a week or two, disturbing

vacations, et cetera.  So I thought, gee, that's a good thing.

04:44PM

In retrospect, I want to put on the record that I

should have had a joint exhibit list, et cetera.  I've never

signed your pretrial because I wasn't satisfied with your

pretrial documents.  I didn't have accuracy fault-finding with

me on the record of whether it's four days or eight days.  So I

took the eight-day time estimate, in fact, tried to throw in

04:44PM

two extra days.

And if I humbly say that to you, then you know that

judges certainly aren't perfect.  It was meant not out of

meanness but out of kindness.  So, therefore, when I heard the

complaint about the time, I understand everybody needs food,

04:44PM

but all of you look healthy.  I'm joking with you.  The same

hours that you're keeping, I'm keeping.  So it was meant and

intended out of goodness to try to get the case resolved.

And especially, Mr. Renegar, if, in fact, you were

under indictment and you went to jury trial over there, one of

04:45PM

the things that I saw is if you're acquitted, terrific.  But if

you were convicted, then you're in a joint trial as a felon,

and that prior does come in.  And right now you have a

favorable ruling that that charge isn't before this jury.

By the same token, you have a favorable ruling

04:45PM

because I've reversed the magistrate judge in this court, quite

1   frankly, and I think for good reason.  So I tell you humbly, I

2   think some of that fault lies with the Court because I pushed

3   the case forward.  But this is the first phase I've gotten to

4   with this kind of inadequacy, and I should have made more

04:45PM 5   demands upon you.

6        I should have said frankly, you know, "What's your

7   first, second, third, fourth witness?  What is that order?

8   What's your time frame?  What's your cross-examination?  And

9   you have a timed trial, that's it.  That's what you're limited

04:46PM 10  to in terms of the witnesses."  Because I thought, well, the

11  case has all sorts of pop-ups and I'm just going to give you

12  unlimited time.  I find fault with that because normally you

13  got a timed trial, end of discussion.

14       I, frankly, don't see the prejudice to your client.

04:46PM 15  I do see the prejudice to Mr. Holloway because on appeal, what

16  I'm concerned about is the Circuit would have to examine some

17  of the statements now I've made to maintain control of my

18  court.  And if the verdict was favorable -- or I'm sorry --

19  unfavorable in a sense, it could be appealable.  And so I'm a

04:46PM 20  little worried about that.

21       By the same token -- well, state to me the

22  prejudice.  I've stated the prejudice as far as the Court's

23  concerned, and that is the constant confrontation.  But I think

24  the detriment lies with Holloway, frankly.  I don't think your

04:47PM 25  officers are suffering from that.

1      MR. HARRELL:  Your Honor, thank you for allowing me

2  to be heard.

3      As I stated, we do make a motion for mistrial on

4  behalf of my officers.  Thank you for the opportunity to have a

04:47PM  5  break to confer, to hear their concerns.  I'm here to be their

6  voice.  They do want a mistrial.

7      My co-counsel for Mr. Renegar, he can speak to

8  Mr. Renegar's status.  But I can tell you sometimes I know

9  things before you do, and they join in the motion too.

04:47PM 10      THE COURT:  All right.  Let me hear from counsel.

11      MR. WRONIAK:  We join in the motion as well,

12  Your Honor.

13      THE COURT:  Let me hear from the plaintiffs.

14      MS. MKRTCHYAN:  Yes, Your Honor.  Thank you.

04:47PM 15      I do believe it would be prejudicial to my client,

16  Mr. Holloway, because first as an indigent person who is

17  virtually unable to work full time, he, first of all, has to --

18  he had to come from Pennsylvania.  He lost a few jobs already,

19  contract jobs, by being here.

04:48PM 20      And continuing this trial further, it has been

21  already long time that this case has been pending.  We have

22  expended -- I have expended on his behalf enormous sum of

23  money.  More expensive case than I've ever had is this case.

24      And putting all these witnesses on call again,

04:48PM 25  bringing them back -- I have VA's medical providers waiting

```
 1   online to testify, and I'm trying to cut them back as much as

 2   possible given the delays they're having.

 3              Yes, I agree with you wholeheartedly at this point

 4   that I might have crossed the line.  I agree with you because

 5   that is not my -- I am aggressive.  I am very, very aggressive

 6   attorney.  But my intention is never to disrespect people,

 7   especially, first of all, just fundamentally and morally

 8   speaking, a man of your age, you know.

 9              So secondly, a judge who has been fair to us,

10   frankly.  And we appreciate the fact -- all my cases have been

11   continued, and I appreciate it very much so you giving us a

12   courtroom under COVID to try this case.  I am very grateful for

13   that.  And I am trying -- part of the reason why I have been

14   abrasive and confrontational is because I've been doing my best

15   to move things along.  That is my whole purpose, to move this

16   case along because this is already how many days, four days

17   already we are in court, and we have gotten only very few

18   witnesses in and out.

19              So we are going slow, at a very slow pace.  And part

20   of the reason is -- I agree with you.  And why we didn't have

21   joint exhibit list, there is a reason for that too if you want

22   to be heard.

23              THE COURT:  I do.

24              MS. MKRTCHYAN:  Okay.  The exhibit lists, if you

25   recall, were filed initially when our trial was set in May.
```

04:48PM 5
04:49PM 10
04:49PM 15
04:49PM 20
04:50PM 25

1    May 25 was our trial set.  We filed our initial joint exhibit

2    list, completely joined, in April.

3              After that, when our trial was continued at the

4    May 6 pretrial conference, I -- we didn't have any exhibit

04:50PM  5    list.  That was it.  But then when the -- Ms. Davis sent us

6    confirmation on July 30 for trial, I had amended my list.  I

7    sent a proposed amended list to the defense to get their side;

8    right?

9              So what happened then, the defense started adding

04:50PM 10    new names, new records on their exhibit list without

11    supplemental disclosures which has been the trend in this case.

12    I've been getting new and new exhibits, and you saw they're

13    filing continuously new stuff which I have never seen while

14    this case has been pending.  Discovery ended in November last

04:51PM 15    year.

16              So that's why I was very frustrated when we keep

17    getting new exhibits, new witnesses on their list.  And that's

18    why I filed my list separately.  And after they filed theirs,

19    their list, they continue still.  They have three amended lists

04:51PM 20    filed.  Three amended lists after this trial has been

21    confirmed.

22              So that's the frustration we have, that they -- they

23    were not prepared in May apparently.  And after May they added

24    an expert witness, which we have still supplemental briefing on

04:51PM 25    that issue.  But they just kept adding stuff on their exhibit

list without supplemental disclosures.  That's the reason we

don't have a joint exhibit/witness list.  But initially we did

in April.  And apparently, of course, it would have speed up

things.

04:51PM          And, of course, another reason was you wanted us to

go over the exhibits.  And, you know, the way I was thinking --

I was envisioning the exhibits should be done differently,

electronically a lot of times.  But -- so I'm learning how you

wanted the exhibits to be presented.  But that's the reason why

04:52PM we don't have joint exhibit list, because they keep adding

stuff without supplemental disclosures.

          But going back to the prejudice in this trial, I

will -- I mean, the problem I just want you to understand, my

intent was never to confront you.  But I will guarantee, if we

04:52PM come back on Monday, if I'm not under pressure to try this

case, I will be -- you know, I will not be under pressure, and

I --

          THE COURT:  I don't want a chilling effect on you.

I want to stop the confrontation between the Court and you.

04:52PM          MS. MKRTCHYAN:  Sure.

          THE COURT:  Because, quite frankly, I'm going to

find that there isn't prejudice to the defense at the present

time.  The reason for this mistrial would have been the lack of

control and the abeyance of my order, quite frankly.  And I

04:53PM don't find prejudice to the defendants at the present time.  In

```
 1   fact, this will be no harm, no foul if we can get through the
 2   rest of the trial without a direct confrontation between you
 3   and me and between -- and no side banter.
 4           And I don't mean baiting by the other side, and they
 5   haven't done that.  But this discussion back and forth between
 6   the parties just has to end.  If I make a ruling, that's the
 7   end of it for all sides.
 8           All right.  I'm going to deny the motion for
 9   mistrial.  I'm going to give it the good old whatever try
10   another time.  I don't want you to have a chilling effect in
11   terms of your aggressiveness, but I do want you to obey my
12   rulings without a confrontation with the Court.
13           MS. MKRTCHYAN:  Yes, Your Honor.
14           THE COURT:  Okay.
15           MS. MKRTCHYAN:  I agree.
16           THE COURT:  All right.
17           MS. MKRTCHYAN:  Thank you.
18           THE COURT:  Now, Mr. Holloway and the deputies, go
19   home.  We're going to be here late tonight so it's better
20   organized.  You go have a nice weekend.  Forget about this
21   case.  We'll see you on Monday at 8:30.  Good night.
22           Let's do this.  I'm going to do the same thing as I
23   did last evening.  I'll see you at 7:00 o'clock.  What I care
24   about is knowing what happens with -- on Monday -- I'm not
25   going to intermeddle in that anymore.  I care to know what
```

happens after Renegar, you know, who the next witness is.  And you two can discover that without me baby-sitting.  You two can go over the evidentiary items, quite frankly, professionally, and make sure they're marked.  It was much better today.  It was much better today.

04:54PM      If we can get through two days, in fact, that I don't have to keep you late Monday evening -- and what I'm debating is this.  I was going to bring you in for jury instructions, so let me lay out my worst fear.  We get through the plaintiff's case whenever.  You bring up a directed verdict motion.  You know I'm looking right now very closely at two officers.  That cannot be a secret in terms of my substantive decision, but the conspiracy still being out there.

04:55PM      And regards to the conspiratorial aspects of the Renegar incident, that's not connected to the report writing in this case.  Those are two separate constellations.  So Renegar's false reporting allegation on the other case with the district attorney indicting him goes to his credibility, but it doesn't go to my initial determination of is there a conspiracy here.  And a speculation of there being a blue line of silence is a great line, and that may be true.  But I have to see the evidence of that.

      So all of you are on notice that I'm very concerned about two officers right now.  I don't know what I would have done if a summary judgment motion had been brought as to those

1   two officers, but they weren't.

2           As far as the others, I've got two ways of doing

3   this to keep you fresh.  I would probably wait for your other

4   officers and let you bookmark a directed verdict at the end of

04:56PM 5   the plaintiff's case.  I would probably take that up at the end

6   of the defense case because I would want to see who you called

7   in case plaintiff's counsel didn't call them.

8           So let's say you just called Renegar and Gonzalez

9   hypothetically and one other person, or plaintiff's counsel

04:56PM 10  did.  You may decide to call all the additional officers.  And

11  I wouldn't want to make a decision until you have done your

12  cross-examination, because then I've got a full record.

13          Now, at that time they all may remain in the case.

14  But at that time maybe two or three other officers are

04:56PM 15  departing this case before we get to the jury.  I don't know.

16  I've got a completely open mind about that.

17          So all I've gotten to was kind of a warning on both

18  your part that it just seemed that the Court would obviously

19  look at two officers where I granted summary judgment on all

04:57PM 20  the substantive counts and the conspiracy remains.  And what

21  I'm waiting to do is to see if that's developed into a

22  conspiracy like, quite frankly, I'm hearing, which may be an

23  interesting allegation concerning the other incident with

24  Renegar and the sergeant where he says, you know, "Come on in

04:57PM 25  and we'll fix it."  But that's a conspiracy over here that has

nothing to do with these officers over here.  So I've got to

hear that.  I hope that makes sense to you.

          So what I thought was to keep the case moving and to

keep everybody fresh, you know that under the law I can

04:57PM  bookmark it.  You have to bring it at that point to preserve

it, but I was going to have you have your witnesses ready at

that point so we have a date/time certain, that we weren't

spending a day and a half on those motions at the time.  We

could do that at night at the end of the defense case, and you

04:57PM  bring it up in a thoughtful manner and I have a complete

record.

          So I'm going to kind of telegraph to everybody you

didn't have to stay up late briefing it.  Just bookmark it for

me because I'm probably going to delay it.  Okay?  That way you

04:58PM  have additional time and you weren't having to file a

supplemental.  And that's good for you as the plaintiff.

That's good for you as the defendant.

          The other thing was that I was really worried about

the jury instructions because I don't know what remains.  And

04:58PM  if the conspiracy doesn't remain, then this case takes a whole

set of instructions and spins them out.

          So what I was going to do was get the basics out of

the way.  You would be amazed if we just took the basic opening

instructions and concluding instructions, it would take us an

04:58PM  hour and a half to do them on the table.  I know you don't

1    believe it, but it does.

2            And what we do in my court is we have what's called

3    a walk-around.  We take the exhibits, and we put them on the

4    table, and we're going to do that next door.  And what we can

04:58PM 5    do is look at those exhibits for the next three or four days --

6    I'm sorry, instructions, and the basic ones are about 12 to 15

7    in number, got the burden of proof, you know, don't talk to

8    anybody at home, here's your credibility instruction, those

9    basic things, and we got concluding instructions.

04:59PM 10           In between, we know certain counts are going to

11   survive obviously.  Those we bear down -- you know I've got an

12   issue concerning emotional, and I've got to look at that and

13   see if I'm going to bolster that or not or what the suggestions

14   are, and there's a number of ways to do that.  I don't like the

04:59PM 15   temporal time frame, but I do like a more robust instruction

16   concerning emotion.

17           And I'm also wondering about a special verdict.  You

18   know, I've been toying since the beginning of this case is if

19   there's emotional damages, maybe the jury should be required to

04:59PM 20   tell us what the emotional damages are up to first since May

21   and to give us the emotional damages after May if they're

22   occurring and give us a total.

23           And that way, if you get emotional damages, at least

24   for the Circuit argument, you're protected to take it to the

04:59PM 25   Circuit and say, "You know what?  It was too much.  There

wasn't the evidence in the record up until May 25th or July

when he moved for the judge to continue to allow emotional

damages after that or there was."  And that way I have got full

control of that case and the initial decision and the Circuit

05:00PM  sees the special verdict.

Now, I'm not saying I'm doing that, but I've been

toying with three or four ways to sort out emotional damages in

a fair way, because for my record this is what happened.

Excellent counsel on the plaintiff's side heard and have sworn

05:00PM  the following:  "Gee, if I go with the emotional damages

strongly all the way down and not just damages, maybe these

collateral issues become more relevant, and I really don't want

to take a chance and know what Judge Carter is going to do."

And so very wisely you went into damages, which are

05:00PM  significant physically.  You took him through emotional

damages.  And I understand that you shouldn't be, nor are you

ever going to be forced to say, "I accede to the stipulation."

I mean, it's an excellent counsel on the other side.  It's a

great tactic.  It worked for Tom Beck.  Congratulations.  But

05:01PM  it worked for good reasons.

You're not forced to do that.  But I think I'd like

to know, also, you know, where that demarcation line is and

have control.  So I've been toying with a special verdict when

this issue was first raised, and I wanted to alert you to that.

05:01PM  The second thing is I think the instructions will be

relatively easy until I get to conspiracy if it survives.  The problem will be that the verdict form won't be.  The verdict form will be a mess.

So here's my offer to you.  If the verdict form is too convoluted and not understandable, I just give general verdict forms.  Why?  I can't be reversed on it.  Let me repeat that.  I can't be reversed on it.

So the burden really shifts to the defense to convince me that they brought these verdict forms into a manageable, easy to read.  And if they have, then normally I've given them.  But you should be objecting to every one of these and probably, quite frankly, and I'm speculating, want a general verdict form because you don't want to dig too deeply into the jury if they give you a big emotional damages award.

The defense knows, and I'm tipping you off, if you dumb these down so that I can understand them -- and I'm joking with you but I'm not -- to a level that my jury can understand them, then I'm inclined to give those if they're reasonable and give you a fair shot if you have liability of going up to the Circuit and sorting out your greatest fear.  So I've been toying with this special verdict form.

But here's what you can't do.  You can't take my general packet of instructions and then put in those headers that come with the special instructions because it's an add-on to my instructions, and everything comes in that general

packet.  So every time I get a special verdict form, it's got a

little paragraph, "If you find willfulness beyond whatever

doubt" -- no, no, no.  Dumb it down.  And if you do that for me

and it's concise, then I can work with you.

05:03PM      That's what I was going to start into this weekend.

But what I'm worried about is I want some recovery time for

you.  Go home and get rest.  Okay?  Get enthused and exuberant.

And I'm just thinking maybe I just take the weekend off, which

is unheard of.  No, I'm serious, unheard of.

05:03PM      MR. HARRELL:  No, I'm laughing because I --

     THE COURT:  But tonight I'll see you at

7:00 o'clock.  And the reason for that is I want to know if you

have a discussion about what happens next without me

baby-sitting you.  And I just don't want to sit through those.

05:03PM I think you got a lot done last night on your own.  I think it

was much smoother today until we ran into the confrontation.

Please help me help myself.

     Let me say this again.  I'm going to be the first to

apologize to both of you.  That should be refreshing from a

05:04PM federal court standpoint.  When something goes wrong, it's my

fault.  Okay?  It's my fault.  Yes, it is.  It's my fault.  But

I've got to have control of this court, and I can't have

confrontation, and I can't have my rulings questioned even if

they're wrong.  The Circuit will correct me right away, and I

05:04PM will humbly obey anything that they tell me.  I promise you

```
 1   that.

 2            But in my own court, I must have that control, and I

 3   have to stop the bantering between both of you.  Fair enough?

 4   And if we can do that, you're not going to be hearing from me.

 5   I don't think whatever prejudices occurred either to the

 6   defendant, whether it's real or not, or to your client, quite

 7   frankly, after this point is going to be a concern if we can

 8   get through the next week or so, you know, in a workmanlike

 9   manner.  Okay?

10            Now, I'm taking too much of your time.  My clerk's

11   going to go home and have a wonderful evening.

12            I'm wondering why you're still here.  There's no

13   reason to be except I'm really going to miss you this weekend.

14            Good night.  I'll see you at 7:00 o'clock and that

15   will be informal.  I want to humbly thank you on the record.

16            I want to thank the court reporter.

17            THE REPORTER:  You're welcome, Your Honor.

18            THE COURT:  All right.  Thank you very much.

19            I'll see you at 7:00 o'clock.

20            (Proceedings concluded at 5:05 p.m.)

21                            --oOo--

22

23

24

25
```

**UNITED STATES DISTRICT COURT**

```
1                    CERTIFICATE OF OFFICIAL REPORTER

2

3    COUNTY OF LOS ANGELES   )
                             )
4    STATE OF CALIFORNIA     )

5              I, DEBBIE HINO-SPAAN, FEDERAL OFFICIAL REALTIME

6    COURT REPORTER, in and for the United States District Court for

7    the Central District of California, do hereby certify that

8    pursuant to Section 753, Title 28, United States Code that the

9    foregoing is a true and correct transcript of the

10   stenographically reported proceedings held in the

11   above-entitled matter and that the transcript page format is in

12   conformance with the regulations of the Judicial Conference of

13   the United States.

14

15   Date:  August 21, 2022

16

17

18

19                              /S/ DEBBIE HINO-SPAAN

20                              Debbie Hino-Spaan, CSR No. 7953
                                Federal Official Court Reporter
21

22

23

24

25
```

UNITED STATES DISTRICT COURT