S. Frank Harrell – (State Bar No. 133437)
sharrell@lynberg.com
Catherine A. Naltsas – (State Bar No. 262259)
cnaltsas@lynberg.com
Tamara M. Heathcote – (State Bar No. 193312)
theathcote@lynberg.com
**LYNBERG & WATKINS**
1100 W. Town & Country Road, Suite 1450
Orange, California 92868
TEL: (714) 937-1010 FAX: (714) 937-1003

Attorneys for Defendants DEPUTY JOEL GONZALEZ, DEPUTY KEVIN PAHEL, DEPUTY MARK BORBA, and DEPUTY JAMESON GOTTS

Michael L. Wroniak (State Bar No. 210347)
Christie B. Swiss (State Bar No. 245151)
**COLLINS + COLLINS LLP**
750 The City Drive, Suite 400
Orange, CA 92868
TEL: (714) 825-4100 – FAX (714) 823-4101
Email: mwroniak@ccllp.law
Email: cswiss@ccllp.law

Attorneys for Defendant DEPUTY CHAD RENEGAR

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEREMY HOLLOWAY,<br><br>Plaintiff,<br><br>vs.<br><br>COUNTY OF ORANGE, et al.,<br><br>Defendants. | CASE NO. 8:19-cv-01514-DOC-DFM<br>*Assigned for All Purposes to:*<br>*Hon. David O. Carter, Courtroom 10A*<br><br>**DEFENDANTS' JOINT OPPOSITION TO PLAINTIFF'S MOTION FOR AWARD OF ATTORNEY FEES AND COSTS**<br><br>Date: November 13, 2023<br>Time: 10:00 a.m.<br>Dept.: 10A<br><br>**[SWISS AND HEATHCOTE DECLARATIONS WITH EXHIBITS CONCURRENTLY FILED]** |

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR AWARD OF ATTORNEY FEES AND COSTS**

## <u>TABLE OF CONTENTS</u>

I.    INTRODUCTION ............................................................................................. 1

II.   PLAINTIFF'S COUNSEL'S FEE REQUEST IS BARRED
      BY THE JURY'S VERDICT ........................................................................... 3

III.  PLAINTIFF'S COUNSEL'S CONDUCT IN THE CASE
      DOES NOT MERIT A FEE AWARD .............................................................. 6

IV.   CONCLUSION .............................................................................................. 19

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR AWARD OF ATTORNEY FEES AND COSTS**

1

## <u>TABLE OF AUTHORITIES</u>

2

3
<u>Page(s)</u>

4
<u>Cases</u>

5
<u>Adams v. Rivera</u>,

6
    13 F. Supp.2d 550 (S.D.N.Y. 1998) ...........................................................5

7
<u>Bigelow v. RKO Radio Pictures, Inc.</u>,

8
    327 U.S. 251 (1946)...................................................................................3, 19

9
<u>Blum v. Stenson</u>,

    465 U.S. 886 ...............................................................................................2, 18
10

11
<u>Chambers v. NASCO, Inc.</u>,

    501 U.S. 32 (1991).........................................................................................17
12

13
<u>Choate v. County of Orange</u>,

    86 Cal. App. 4th 312 (2000) ...........................................................................5

14

15
<u>Clinton v. Geovenetti</u>,

    2013 WL 5379487 (C.D. Cal. 2013) ...........................................................1, 4

16
<u>Dart Industries, Inc. v. Liberty Mut. Ins. Co.</u>,

17
    484 F.2d 1295 (9th Cir. 1973) .....................................................................3, 19

18
<u>Davis v. Superior Court of State of Cal.</u>,

19
    846 F.2d 1382 (9th Cir. 1988) ........................................................................18

20
<u>Estate of Brooks by and Through Brooks v. United States</u>,

21
    197 F.3d 1245 (9th Cir. 1999) ......................................................................1, 4

22
<u>Farrar v. Hobby</u>,

    506 U.S. 103 (1992)..............................................................................passim
23

24
<u>Gordon v. Site 16/17 Development, LLC</u>,

    2011 WL 3251520 (S.D.N.Y. 2011).............................................................19

25
<u>Gueye v. U.C. Health</u>,

26
    2014 WL 4984173 (S.D. Ohio 2014) .......................................................17, 18

27
<u>Guillory v. Hill</u>,

28
    36 Cal.App.5th 802 (2019) ..............................................................................5

2

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR AWARD OF ATTORNEY FEES AND COSTS**

Hensley v. Eckerhart,
461 U.S. 424 (1983).................................................................3, 17

Holloway v. Cnty. of Orange,
538 F. Supp. 3d 973 (C.D. Cal. 2021) ....................................4

Holloway v. Cnty. of Orange,
2020 WL 7906691 (C.D. Cal. 2020) ...................................7, 8

Holloway v. Cnty. of Orange,
2021 WL 430697 (C.D. Cal. 2021) ....................................9, 10

Holloway v. Cnty. of Orange,
2021 WL 454239 (C.D. Cal.  2021) ........................................10

Holloway v. Cnty. of Orange,
2021 WL 6102515 (C.D. Cal. 2021) ........................................4

Holloway v. Cnty. of Orange,
2022 WL 3013058 (C.D. Cal. 2022) ...................................12, 13

Illinois v. Allen,
397 U.S. 337 (1970)........................................................2, 17, 19

Jewell-Cohen v. L. Off. of Patenaude & Felix, A.P.C.,
2016 WL 1355767 (S.D. Cal.  2016)........................................3

Leaf v. County of Los Angeles,
270 Fed. Appx. 496 (9th Cir. 2008).....................................2, 18

Mayberry v. Pennsylvania,
400 U.S. 455 (1971).............................................................17

McCaffity v. Hurst-Euless-Bedford Indep. Sch. Dist.,
98 F.3d 1339 (5th Cir. 1996) ..................................................18

Mendez v. County of San Bernardino,
540 F.3d 1109 (9th Cir. 2008) ..............................................17

Migis v. Pearle Vision, Inc.,
135 F.3d 1041 (5th Cir. 1998) ..................................................5

Morales v. City of San Rafael,
96 F.3d 359 .......................................................................2, 5

**3**
**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR AWARD OF ATTORNEY FEES AND COSTS**

Oshana v. Coca-Cola Co.,
   487 F. Supp. 2d 961 (N.D. Ill. 2007) ................................................................. 5

Pan Am. Grain Mfg. Co. v. Puerto Rico Ports Auth.,
   193 F.R.D. 26 (D.P.R. 2000) ............................................................................ 18

Poparic v. European Music & Video Store,
   2009 WL 6318212 (E.D.N.Y. 2009) ................................................................ 19

Shott v. Rush-Presbyterian-St. Luke's Med. Ctr.,
   338 F.3d 736 (7th Cir. 2003) ............................................................................ 14

Skender v. Eden Isle Corp.,
   33 F.4th 515 (8th Cir. 2022) .......................................................................... 2, 19

Texas State Tchrs. Ass'n v. Garland Indep. Sch. Dist.,
   489 U.S. 782 (1989) ........................................................................................... 4

U.S.I. Props. Corp. v. M.D. Constr. Co.,
   860 F.2d 1 (1st Cir. 1988) ............................................................................. 6, 12

United States v. Marshall,
   371 F.3d 42 (2d Cir.2004) ................................................................................ 17

Wescott Agri-Prods., Inc. v. Sterling State Bank, Inc.,
   682 F.3d 1091 (8th Cir. 2012) ..................................................................... 18, 20

**Statutes**

42 U.S.C. § 1988 ........................................................................................... passim

Business and Professions Code § 6068(b) ........................................................ 18

Cal. Code Civ. Pro. § 1209(a)(1) ...................................................................... 18

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR AWARD OF ATTORNEY FEES AND COSTS**

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

After five years of barely believable theatrics, the litigation spawned by Plaintiff Jeremy Holloway and his bar-carded enabler, Narine Mkrtchyan, ended in a deservedly crushing defeat — with the jury rightly awarding Holloway "zero damages". After all her rule violations, the sanctions awarded against her and the defense judgment now staring her in the face, Ms. Mkrtchyan has now seen fit to return to Court with a faintly comical request for over $2.4 million in attorneys' fees. (Motion, Dkt No. 664, 6:12-17).

Yes, the Court read that correctly. And it is frankly difficult to know where to begin in attacking Holloway's latest ill-considered Court filing.

Holloway's defeat in this case is perhaps as good a place as any. Plaintiff's case failed on "causation" — whatever "excessive force" the jury found here (a push, a shove, who knows because there were no factual findings) was plainly so minor that it caused no compensable damages to Holloway. And the jury found just that. Because he could not establish causation, Holloway could not establish a prima facie case — and a defense judgment is consequently now required. See, e.g., Estate of Brooks by and Through Brooks v. United States, 197 F.3d 1245, 1248 (9th Cir. 1999)("Causation is, of course, a required element of a § 1983 claim."); Clinton v. Geovenetti, 2013 WL 5379487, at *7 (C.D. Cal. 2013) )(Carter, D.J.)(finding for dismissal and entering defense judgment on causation grounds).

All of which brings us to this Motion. No attorney fee award is permissible in "civil rights" litigation under 42 U.S.C. § 1988 unless a jury awards a plaintiff more than de minimis damages. See, e.g., Farrar v. Hobby, 506 U.S. 103, 115 (1992) ("When a plaintiff recovers only nominal damages because of his failure to prove an essential element of his claim for monetary relief . . . the only reasonable fee is usually no fee at all."); id. at 121-122 ("[S]ection 1988 is not 'a relief Act for lawyers' who accomplish no public goal other than occupying the time and energy of counsel, court,

1

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR AWARD OF ATTORNEY FEES AND COSTS**

1   and client.")(Conc. opn. of O'Connor, J.); <u>Morales v. City of San Rafael</u>, 96 F.3d 359,

2   mod. 108 F.3d 981 (9th Cir. 1996) (" 'Nominal damages' is not limited to an award in

3   the amount of $1, but includes an award that may properly be classified as '<u>de</u>

4   <u>minimis</u>' ").

5      Here, the jury returned a defense causation verdict and found Holloway was

6   entitled to ***<u>no damages at all</u>***. Needless to say, zero was the most de <u>minimis</u> numeral

7   available to our jury for their consideration. As set forth in further detail below,

8   Holloway's failure to confront the Supreme Court case which flatly bars his attorney

9   fee request is an unpardonable omission in briefing which otherwise makes room for

10  all manner of off-point word jumbles. <u>See</u>, <u>Farrar v. Hobby</u>, 506 U.S. 103, 115

11  (1992)(when a plaintiff in a § 1983 action receives only nominal damages, "the only

12  reasonable fee is usually no fee at all.").

13     But there is more. Plaintiff's counsel's eyebrow-raising misconduct —

14  spanning five years of litigation — is a separate ground for summary denial of her fee

15  motion. Skill and professionalism matter in fee litigation. <u>See</u>, <u>e.g.</u>, <u>Leaf v. County of</u>

16  <u>Los Angeles</u>, 270 Fed. Appx. 496, 497 (9th Cir. 2008)(". . . plaintiffs' attorneys' lack

17  of skill and professionalism" critically relevant in fee decision); <u>Blum v. Stenson</u>, 465

18  U.S. 886, 895 n. 11 (1984)(attorney fee applicant's "skill, experience and reputation"

19  matter in fee proceedings); <u>Skender v. Eden Isle Corp.</u>, 33 F.4th 515, 521 (8th Cir.

20  2022)(court may reject fee request "if the court detects unprofessional conduct on the

21  part of counsel.").

22     Here, Plaintiff's counsel's astonishing history of rule violations (big and

23  small), her unforgettably scathing attacks on Magistrate Judge Douglas McCormick,

24  this Court's reporting staff and defense counsel — as well as her repeated defiance of

25  this Court and its orders are plainly not the type of "skill" befitting a fee award. To

26  state the obvious, it represents the exact opposite of what is required. <u>See</u>, <u>e.g.</u>, <u>Illinois</u>

27  <u>v. Allen</u>, 397 U.S. 337, 346–47 (1970)("if our courts are to remain what the Founders

28  intended, the citadels of justice, their proceedings cannot and must not be infected

with . . . scurrilous, abusive language and conduct."); <u>Bigelow v. RKO Radio Pictures, Inc.</u>, 327 U.S. 251, 264 (1946)(stating the long-standing principle that the justice system should not "enable the wrongdoer to profit by his wrongdoing."); <u>Dart Industries, Inc. v. Liberty Mut. Ins. Co.</u>, 484 F.2d 1295, 1298 (9th Cir. 1973) ("[T]he wrongdoer as a matter of public policy should not profit from his own wrong.").

Not since tobacco companies regularly populated courtrooms has the needed result on an issue before a court been so clear. Holloway and Mkrtchyan's fee claim is worth just what the jury said their case in chief was worth — zero. The Court should wholeheartedly deny this pestiferous fee motion as prayed.

## II.   PLAINTIFF'S COUNSEL'S FEE REQUEST IS BARRED BY THE JURY'S VERDICT

The federal attorney fee statute applicable to civil rights cases expressly grants courts "discretion" in awarding a "***reasonable***" amount of fees to a "***prevailing*** party". 42 <u>U.S.C.</u> § 1988 (emphasis added). But Holloway knows that he is not a "prevailing party" in this case – and his attempted fee request fails for this threshold reason alone.

As the Court will recall, Holloway's case failed on "causation" grounds — as whatever "excessive force" the jury found occurred was so inconsequential that it caused him no compensable damages. And the jury found just that. (<u>See</u>, Special Verdict, Dkt No. 618 – Q: Did the acts or omissions of any of the Defendants cause the Plaintiff injury, harm, loss or damage? A: No"). Holloway sought to recover at least $1 million in damages in this case. (Email Correspondence, Ex. "F"). The jury rightly gave him nothing. <u>Id.</u> [1]

---

[1] The United States Supreme Court has made it clear that a reasonable fee is determined by examining "the extent of success" achieved by the plaintiff. <u>Hensley v. Eckerhart</u>, 461 U.S. 424, 438 (1983). A plaintiff's level of success, in turn, is determined by reviewing what a fee claimant sought in litigation, versus what he, she or it ultimately obtained. <u>See</u>, <u>Farrar v. Hobby</u>, 506 U.S. 103, 114 (1992) ("Where recovery of private damages is the purpose of ... civil rights litigation, a [trial] court, in fixing fees, is obligated to give primary consideration to the amount of damages awarded as compared to the amount sought."); <u>see also</u>, <u>Jewell-Cohen v. L. Off. of</u>

3

1         Because he could not establish causation, Holloway also could not establish a

2    <u>prima facie</u> case — and a defense judgment is consequently now required. <u>See</u>, <u>e.g.</u>,

3    <u>Estate of Brooks by and Through Brooks v. United States</u>, 197 F.3d 1245, 1248 (9th

4    Cir. 1999)("Causation is, of course, a required element of a § 1983 claim."); <u>Clinton</u>

5    <u>v. Geovenetti</u>, 2013 WL 5379487, at *7 (C.D. Cal. 2013) )(Carter, D.J.)(finding for

6    dismissal and entering defense judgment on causation grounds).[2]

7         "[A] technical victory may be so insignificant. . . as to be insufficient to support

8    prevailing party status." <u>Texas State Tchrs. Ass'n v. Garland Indep. Sch. Dist.</u>, 489

9    U.S. 782, 792 (1989). Thus, no attorney fee award is permissible in "civil rights"

10   litigation under 42 <u>U.S.C.</u> § 1988 unless a jury awards a plaintiff more than <u>de</u>

11   <u>minimis</u> damages. <u>See</u>, <u>Farrar v. Hobby</u>, 506 U.S. 103, 115 (1992) ("When a plaintiff

12   recovers only nominal damages because of his failure to prove an essential element of

13   his claim for monetary relief . . . the only reasonable fee is usually no fee at all."); <u>id.</u>

14   at 121-122 ("[S]ection 1988 is not 'a relief Act for lawyers' who accomplish no public

15

16   _____

17   <u>Patenaude & Felix, A.P.C.</u>, 2016 WL 1355767, at *2 (S.D. Cal. 2016)(the law " 'does
     not bar district courts in the Ninth Circuit from considering amounts discussed in

18   settlement negotiations as evidence of the extent of the plaintiff's success' in
     determining a reasonable attorney's fees award.")(citations omitted).

19

20   [2] Notably, Plaintiff's "false arrest" and "unreasonable search" claims against the
     individual deputies and all of his claims against the County of Orange were dismissed

21   by summary judgment. <u>See</u>, <u>Holloway v. Cnty. of Orange</u>, 538 F. Supp. 3d 973, 976

22   (C.D. Cal. 2021), <u>reconsideration denied sub nom.</u> <u>Holloway v. Orange</u>, 2021 WL
     2515644 (C.D. Cal. 2021), and <u>motion to certify appeal denied,</u> 2022 WL 18278383

23   (C.D. Cal. 2022). Plaintiff's claims against two other individual Defendants were also

24   found to be insufficient for jury submission. <u>See</u>, <u>Holloway v. Cnty. of Orange</u>, 2021
     WL 6102515, at *1 (C.D. Cal. 2021) ("Before the Court is Defendants Brandon

25   Billinger and Justin Gunderson's ('Defendants') Motion for Judgment as a Matter of

26   Law ('Motion'). . . .. For the reasons described below, the Court **GRANTS**

27   Defendants' Motion.")(emphasis original). And Plaintiff's "conspiracy" claims
     suffered a similar fate – with all of them being dismissed just prior to the case being

28   submitted to the jury in Trial 3.

**4**

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR AWARD OF
ATTORNEY FEES AND COSTS**

goal other than occupying the time and energy of counsel, court, and client.")(Conc. opn. of O'Connor, J.); see also, Morales v. City of San Rafael, 96 F.3d 359, mod. 108 F.3d 981 (9th Cir. 1996) (" 'Nominal damages' is not limited to an award in the amount of $1, but includes an award that may properly be classified as 'de minimis' "); Choate v. County of Orange, 86 Cal. App. 4th 312, 325-327 (2000)(after a lengthy jury trial seeking hundreds of thousands of dollars in damages, the jury awarded $3,380 in compensatory damages and $ 1,000 in punitive damages; Court denies fees under Section 1988 – "There was sufficient basis in this record to determine that plaintiffs' de minimis recovery merited a de minimis (zero) fee award."); Guillory v. Hill, 36 Cal.App.5th 802, 806 (2019)("Plaintiffs originally sought over $1 million in damages but ultimately obtained an award of less than $5,400; Plaintiffs then moved for almost $3.8 million in attorney fees"; Court awards zero fees based on plaintiff's counsels' "cringeworthy" fee request); Adams v. Rivera, 13 F. Supp.2d 550 (S.D.N.Y. 1998) (denying 42 U.S.C. § 1988 fees to plaintiff who sought over $ 1.4 million in compensatory and punitive damages in excessive force case, but recovered only $ 1,000); Oshana v. Coca-Cola Co., 487 F. Supp. 2d 961, 976 (N.D. Ill. 2007) ("Since plaintiffs counsel viewed this as a big case, with a prospect for a large recovery, they litigated as though it was a big case ... In light of the [summary judgment] rulings ..., having lost the big case, they overreached in seeking the kind of fee award one would expect to see only had they won the big case"; Court held that the plaintiff "forfeited any right to an award by the unreasonableness of their request"); Migis v. Pearle Vision, Inc., 135 F.3d 1041, 1048 (5th Cir. 1998)("As indicated in interrogatory answers, [plaintiff] sought recovery of back pay and benefits of $25,000, and punitive and compensatory damages of $300,000. At trial [plaintiff] asked for $50,000 in compensatory damages. The court awarded her only $7,233.32 in back pay, $5000 in compensatory damages, and no punitive damages"; Court observes that an attorney fee award of $81,000 was "over six and one-half times the amount of damages

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR AWARD OF ATTORNEY FEES AND COSTS**

#:25663

awarded," i.e., $12,233, and this ratio was "simply too large to allow the fee award to stand.")

Put most charitably, the forgoing authorities – and others like them -- doom Holloway's putative $2.4 million fee request here. If de minimus recoveries do not qualify for fee compensation, what then to make of Holloway's "zero" damages recovery? How exactly does a recovery get any more de minimus than zero? Holloway prudently does not even attempt to formulate answers to these questions.

Viewed from any angle. Holloway is not a "prevailing party" for purposes of a fee recovery in this case. Without "prevailing party" status, Holloway's fee request is frivolous on its face. See, 42 U.S.C. § 1988 ("prevailing party" status required to seek "civil rights" attorneys' fees).

## III.    PLAINTIFF'S COUNSEL'S CONDUCT IN THE CASE DOES NOT MERIT A FEE AWARD

"Careful research and cogent reasoning, not aspersions, are the proper tools of our trade." U.S.I. Props. Corp. v. M.D. Constr. Co., 860 F.2d 1, 6 n.2 (1st Cir. 1988). Little of the professionalism federal courts rightly require was to be seen in Plaintiff's prosecution of this case.

Since the outset of the litigation, Plaintiff's counsel's conduct has been . . . well, one hardly knows what to call it. A narcissistic, elongated temper tantrum? One long seismic outburst of high-voltage rhetoric? Sometimes, the written word falls short in its ability to fully describe a spectacle like this one. What is clear is that Plaintiff's counsel has treated the judicial system she has a duty to protect with utter contempt.

The provable record[3] of Plaintiff's counsel's misconduct begins with her nightmarish deposition misconduct and her astounding attacks on the integrity of

---

[3] Plaintiff's counsel's wild conduct with defense counsel -- away from judicial officers, court reporters and deposition videographers – has been, to put it mildly, jaw-

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR AWARD OF ATTORNEY FEES AND COSTS**

Magistrate Judge Douglas McCormick. Plaintiff's counsel's conduct of the deposition of Defendant Chad Renegar featured one wild outburst after another. After his patient review of the relevant videotape record, Magistrate Judge McCormick did not hesitate to find that Plaintiff's counsel's pugilistic and profane word choices produced a "train wreck". <u>Holloway v. Cnty. of Orange</u>, 2020 WL 7906691, at *2 (C.D. Cal. 2020)(finding Renegar's deposition "was, to put it mildly, a train wreck. And responsibility for that result lies predominantly with Plaintiff's counsel.")[4] As the Magistrate Judge rightly noted:

> If anything, the video recording is worse than the cold transcript. For the most part, Renegar and his counsel are largely subdued. Plaintiff's counsel is anything but. Not only does she raise her voice, but it appears to me that she slaps the conference room table at least twice. Her tone of voice ranges from exasperated to indignant. She appears to

/ / /

/ / /

---

dropping.

[4] The record is suffused with shrill invective:
 "Tr. at 166 ('A. I do not recall. Q. You don't recall a lot of things.'); 270 ('Q. Do you remember ever telling him why this guy is bleeding to his face? A. I do not recall what I told him. Q. Because you didn't care; right? The guy is injured. You don't give a shit.'). . .By her own admission on the record, [Mkrtchyan] raised her voice, and the Court's review of the video recording shows that she raised her voice several times. <u>See, e.g.</u>, Tr. at 267 ('I will raise my voice as long as I want.'). . ..Plaintiff's counsel erupted 'Excuse me. Excuse me. I'm tired of you.... If you are here to testify to the truth, the whole truth, but the truth, why can't you admit a simple fact from your own fricking fucking report.' Tr. at 282."

<u>Holloway v. Cnty. of Orange</u>, 2020 WL 7906691, at *2-3 (C.D. Cal. 2020)

**7**

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR AWARD OF ATTORNEY FEES AND COSTS**

1    lose her temper several times. I am confident that none of these antics

2    would have been permitted to persist in any courtroom in the federal

3    courthouse in Orange County.

4    Id.

5        One would assume that the Court's findings would have led Ms. Mkrtchyan to

6    reflect on her past conduct in this case – and to move forward in a new spirit of

7    professionalism. The Magistrate Judge's order plainly called for her to do just that.

8    Holloway v. Cnty. of Orange, 2020 WL 7906691, at *2-3 (C.D. Cal. 2020)

9    (going forward, "I expect, as I told counsel during the July 9 telephone conference,

10   that all counsel should comport themselves in the deposition the same as if they were

11   in the courtroom. . ..I trust that my remarks on July 9 and this subsequent ruling will

12   cause [future] depositions to be conducted without the rancor that was exhibited on

13   July 7 [at the Renegar deposition].")

14        But Plaintiff's counsel chose another path. Her venomous conduct at the

15   August 14, 2020 deposition of Plaintiff Jeremy Holloway reached a new low. All of it

16   was captured on YouTube-worthy video. Magistrate Judge McCormick was rightly

17   appalled by what the tape revealed:

18        Plaintiff's misconduct reached a zenith during questions about Plaintiff's

19        Facebook account. After some back and forth over attorney-client privilege

20        objections, Plaintiff's counsel, whom the Court had previously chided for

21        slamming her fists down on the table, ***stood up and threw documents across***

22        ***the deposition table in the direction of Defendants' counsel and deposition***

23        ***staff***. See Depo at 260. Nothing – ***absolutely nothing*** – would justify this type

24        of outburst. Were it to occur in a courtroom, the Court cannot imagine any

25        possible outcome other than ***a finding of contempt***. It is no less contemptuous

26        because it occurred during a deposition.

27

28

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR AWARD OF
ATTORNEY FEES AND COSTS**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

After a short recess, Defendants' counsel attempted to continue his line of questioning. In response, Plaintiff's counsel repeatedly threatened to leave and became so argumentative that the court reporter was unable to read back counsel's questions, prompting Defendants' counsel to suggest the Court's assistance. This did not deter Plaintiff's counsel:

MR. HARRELL: Ma'am, I'm going to go to the Magistrate Judge, and I'm going to ask him to bring your client back.

MS. MKRTCHYAN: I will. I will go to the Magistrate Judge to stop this, and I will walk away. Okay? And my client is not going to come back for another deposition.

MR. HARRELL: Maybe the judge will have the final word on that, ma'am.

MS. MKRTCHYAN: Well, you know what? I'm sorry. A lot of the things right now are still up in the air in this country. So ***whether you have a judge saying something . . ., it really doesn't matter*** anymore. Okay?

MR. HARRELL: It doesn't matter to you what the judge says?

MS. MKRTCHYAN: Right now what I care is my client being badgered by you and your condescending behavior toward me.

MR. HARRELL: Ma'am, are you saying it doesn't matter to you what the judge says?

MS. MKRTCHYAN: At this point all I care is what the books say. ***I don't care what one specific judge says or does not do.*** Nobody is above the law.

<u>Holloway v. Cnty. of Orange</u>, 2021 WL 430697, at *11–12 (C.D. Cal. 2021)(emphasis added).

Ms. Mkrtchyan thereafter proved, beyond any reasonable doubt, that she "doesn't care" about federal court bench officers, the office they hold or the rulings they make. Indeed, during a wild September 2, 2020 discovery hearing. Ms.

**9**

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR AWARD OF ATTORNEY FEES AND COSTS**

Mkrtchyan wasted no time in delivering a window-rattling tongue-lashing to Magistrate Judge McCormack the instant she received a ruling which was not to her liking. (Transcript of Proceedings, September 2, 2020, 17:3-22:6, Ex. "C"). The drama featured shouted, thoroughly nasty insults that are frankly not worth repeating here. Id.

Due to Ms. Mkrtchyan's demonstrably improper conduct – and her loudly-voiced hostility to any type of corrective judicial admonitions -- Magistrate Judge McCormick ultimately found that discovery sanctions were appropriate in this case to address the escalating defense costs her misconduct has inflicted on Orange County taxpayers.[5]

If one would suppose that Ms. Mkrtchyan would be on her best behavior once she finally arrived before this Court at the first trial of this matter, one would be wrong. The trial got off on bad footing when Mkrtchyan bluntly refused to provide the defense with copies of her trial exhibits:

> MR. HARRELL:  Your Honor, ***the defense does not have Plaintiff's paper exhibits***.  We don't.  ***We're four days into trial now***, and we've tried to be good sports about it.  We have asked nicely.  We have re-asked nicely.  It was promised in writing that we were gonna have them today.  And so if Plaintiff's counsel has brought them, great.

---

[5] Those sanctions remain unpaid pending further order of this Court. See, e.g., Holloway v. Cnty. of Orange, 2021 WL 430697, at *2 (C.D. Cal. 2021)("The Court ORDERS that Plaintiff and Plaintiff's counsel, jointly and severally, shall pay at least a portion of Defendants' reasonable expenses and attorney's fees for bringing this motion under Rule 30(d)(2) and Rule 37(a)(5)(A)."); id. ("The Court ORDERS Plaintiff's counsel to pay Defendants' counsel the costs of the court reporter and videographer for Plaintiff's August 14, 2020 deposition in the amount of $7,086.82 within thirty (30) days of the date of this order."); Holloway v. Cnty. of Orange, 2021 WL 454239, at *3 (C.D. Cal.  2021)("IT IS HEREBY ORDERED that Defendants' motion for sanctions based on spoliation of evidence is GRANTED.")

**10**

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR AWARD OF ATTORNEY FEES AND COSTS**

THE COURT:  Okay.  Well, just ask her.

MR. HARRELL: I don't see them.

MS. MKRTCHYAN: They didn't ask me.  See, this is the problem, Your Honor.  They did not ask me this morning.  I have them in the attorney conference room.  They were just - - we need to bind them because we didn't get a chance.

THE COURT:  I'm not worried about binding.  Can we get through the first witness at least, the doctor, apparently who is waiting for us by Zoom? And can we at least get those documents to you for cross-examination purposes?

Now, if you've seen them in another form; in other words, if you've seen them in electronic exchange.

MS. MKRTCHYAN: I - -

THE COURT:  No.  Have you seen these documents in any other form?

MR. HARRELL: Your Honor, it's my understanding it's been represented to us that plaintiff's counsel has sent them electronically, but they weren't the best organized, and we don't have numbers to clearly correlate - -

THE COURT: I see.

MR. HARRELL: -- with that – and so, for example, plaintiff's counsel will say, 'I'd like to show the witness Plaintiff's Number 1,' and we over here are looking at each other going, 'What is that?  What is everybody looking at?'

THE COURT:  So can we just for a moment - - to get this doctor's testimony, can we just get those paper copies exchanged between the two of you for the first witness today?  Could you go get those for us?

MS. MKRTCHYAN:  Yes.

.  .  .

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR AWARD OF ATTORNEY FEES AND COSTS**

THE COURT: Let's not waste time, 'cause you've got the doctor

waiting.  Go get those exhibits for them, and then we'll get them to you in paper

form.

(Trial 1, Day 5, Volume I, 8:14-10:8, attached to the Declaration of Christie Swiss as

Exhibit "F".)(emphasis added)[6]

As was the case with Magistrate Judge McCormick, the Court's efforts to

maintain order at the first trial and ensure a just result in this case were met with open

scorn and a parade of contemptuous outbursts. As noted by the Court:

> Plaintiff's counsel's behavior during trial, include[ed] interrupting the Court and
> loudly disagreeing with evidentiary rulings in front of the jury. See, [Trial
> Transcript]  at 94:4-96:1; see also id. at 95:16-18 ('this is the third time for my
> record that that confrontation has taken place where you direct the comment to
> the Court.'). The Court also noted her lack of decorum outside the presence of
> the jury: 'what I've seen is a continuing conduct on your part that's ***abusive
> towards the court system*** in general and this court in particular.' Id. at 105:1-4.
> Plaintiff's counsel's conduct predated the trial, and led the Magistrate Judge to
> admonish her on professional conduct after a 'train wreck' deposition in which
> Plaintiff's counsel cursed at the deponent and 'los[t] her temper several times.'
> Order (Dkt. 73) at 2-3.

Holloway v. Cnty. of Orange, 2022 WL 3013058, at *2 (C.D. Cal. 2022), motion to

certify appeal denied, 2022 WL 18278383 (C.D. Cal. 2022)(emphasis added)

Rather than exhibit needed reform, Mkrtchyan filed multiple slanderous (and

thoroughly frivolous) recusal motions – in an apparent bad faith effort to obtain a less

confident, more easily intimidated jurist . Id. The Court responded to all of this

---

[6] The Court's word count limitations on briefing make it frankly impossible to fully
catalogue Ms. Mkrtchyan's disquieting misconduct at the first trial here. The
concurrently filed Tamara Heathcote and Christie Swift Declarations – which are not
word count limited – therefore do the job.

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR AWARD OF
ATTORNEY FEES AND COSTS**

astonishing venom by patiently denying Mkrtchyan's recusal motions in a tone befitting its high office. Id. In denying recusal, the Court optimistically expressed "full confidence in all counsel's ability to ensure the second trial proceeds smoothly and professionally." Holloway v. Cnty. of Orange, 2022 WL 3013058, at *3 (C.D. Cal. 2022), motion to certify appeal denied, 2022 WL 18278383 (C.D. Cal. 2022). But such an outcome required Ms. Mkrtchyan's good faith efforts to reform. And, as the Court will recall, there was no reform at the second trial. The trial transcript makes the defense's point.

Plaintiff's counsel began ignoring Court orders in her Opening Statement to the jury:

> MS. MKRTCHYAN: . . .When I took an oath as an attorney, I also took an oath --
>
> MS. SWISS: Objection.
>
> THE COURT: Sustained as to this portion, Counsel.
>
> MS. MKRTCHYAN: -- to defend and protect the Constitution.
>
> MS. SWISS: Objection.
>
> THE COURT: Counsel, I already made that ruling.  Please obey it. . ..

(Trial 2, Day 2, Vol. II, 32:7-17 attached to the Declaration of Tamara Heathcote as Exhibit "**D**".)

Ms. Mkrtchyan repeatedly displayed documents to the jury which had not been received into evidence – which amounted to another series of Court order violations:

> MR. WRONIAK: Your Honor, objection to the document being published.
>
> MS. MKRTCHYAN: Well, Your Honor --
>
> THE COURT: Yeah. Counsel, take down the document, please.
>
> MS. MKRTCHYAN: Well, Your Honor, clearly --

**13**

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR AWARD OF ATTORNEY FEES AND COSTS**

THE COURT: Counsel, that's --

MS. MKRTCHYAN: -- we have --

THE COURT: -- an order.

MS. MKRTCHYAN: -- the problem with --

THE COURT: Counsel, that's an order. Thank you very much.

MS. MKRTCHYAN: Well, I request --

THE COURT: It has not been --

MS. MKRTCHYAN: -- this document --

THE COURT: Counsel -- Counsel, that has not been received yet. Nothing goes up until I receive the document.

MS. MKRTCHYAN: There has been no objection to this document before, Your Honor.

THE COURT: Thank you very much, Counsel. You're next question now, please.

(Trial 2, Day 3, Vol. II, 34:14-35:9 attached to the Declaration of Tamara Heathcote as Exhibit "**D**".)

Ultimately, Holloway joined his counsel in violating this Court's orders -- thereby personally imploding the second trial. Indeed, Holloway violated one of this Court's key Motion in Limine orders – yet another act of contempt which produced an immediate mistrial. (Trial 2, Day 9, Vol. I, pp. 66:2-71:18 attached to the Declaration of Tamara Heathcote).[7]

---

[7] Undaunted, Holloway even seeks taxpayer funds to pay for the second trial he poisoned. If anything, the check should be written by Holloway to Orange County for the wasted funds his violation of this Court's orders created. "[W]hen a retrial results from the prevailing party's own unreasonable conduct, attorney fees for work performed during the first trial should be denied." Shott v. Rush-Presbyterian-St. Luke's Med. Ctr., 338 F.3d 736, 742 (7th Cir. 2003).

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR AWARD OF ATTORNEY FEES AND COSTS**

Ms. Mkrtchyan's by now familiar circus-like psychodrama infected the third trial of this case well. For example, Mkrtchyan -- to all appearances -- sought to take more breaks than necessary in a bad faith effort to rescue her client from his own bumbling and self-destructive performance on the witness stand. She also misrepresented the Court's pattern of break scheduling:

> THE COURT: I've taken all the recesses you've asked except for your interruption yesterday, and you're not going to interrupt cross-examination depending upon how your client is doing, so I went an hour and forty-five minutes. I gave you two hours the prior day. ***So I don't appreciate a record that's false, quite frankly.***

(Trial 3, Day 10, Vol I, 10:6-12:22 a true and correct copy of the pertinent content is attached as Exhibit "**E**")(emphasis added).

On July 20, 2023, the Court sustained defense counsel's objection to using certain portions of Deputy Gonzalez's deposition transcript for "impeachment" – chiefly because Mkrtchyan misrepresented the content of the deposition in issue. As is too often the case, Mkrtchyan reacted to the Court's ruling with cold fury:

> MS. MKRTCHYAN: Is the Court not allowing me to impeach credibility of this officer with his prior deposition testimony, sir?
> THE COURT: Your statement to the jury was just ***misleading***, counsel. There is no statement on 297 nor 298 as to your question. As to the ruling of the Court, now be very careful.

(Trial 3, Day 5, Vol. II. 48:22-49:3, attached to the Declaration of Tamara Heathcote as Exhibit "**E**".)

Ms. Mkrtchyan's combative challenge to judicial authority ultimately grew so heated that the Court was required to excuse the jury for yet another needed admonition:

> THE COURT: Ladies and gentlemen -- I don't wish to engage you, counsel.

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR AWARD OF ATTORNEY FEES AND COSTS**

Ladies and gentlemen, you are ordered to disregard the comments of counsel.

MS. MKRTCHYAN: Well, I object.

THE COURT: I'm going to have to take a recess for just a moment. Thank you very much.

(Jury not present)

THE COURT: Have a seat, counsel. Counsel, I'm going to admonish you that you need a cooling period. When you confront the Court, you are on the edge of contempt. This is your first warning. If you confront me again, that will be the second I'm going to try to forebear.

You have directly confronted this Court with a specific ruling. ***Your statement to the jury was not only improper, but it was misleading.*** That statement that you made does not exist on page 297 or 298. Now, I am going to take a recess.

MS. MKRTCHYAN: I need to --

THE COURT: Thank you, counsel. You have made your record.

MS. MKRTCHYAN: Excuse me. I am moving for a mistrial. ***I am done with this Court.*** I am moving for a mistrial. Thank you.

(Trial 3, Day 5 at 49:10-50:9 attached to the Declaration of Tamara M. Heathcote as Exhibit "**E**")(emphasis added)[8]

---

[8] Again, word count limitations on briefing make it impossible to fully catalogue Ms.

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR AWARD OF ATTORNEY FEES AND COSTS**

An attorney fee claim is appropriately denied whenever "special
circumstances would render such an award unjust." Hensley v. Eckerhart, 461 U.S.
424, 429 (1983); see, Mendez v. County of San Bernardino, 540 F.3d 1109, 1126 (9th
Cir. 2008) ("We evaluate whether special circumstances exist by asking whether (1)
allowing attorney's fees would further the purposes of § 1988 and (2) whether the
balance of equities favors or disfavors the denial of fees.").

Section 1988 was plainly not enacted to reward rogue litigation tactics of the
sort in evidence here. And it would be difficult to conceive of a stronger "equity" than
the judiciary's entitlement to "respect, and decorum in their presence, and submission
to their lawful mandates." Chambers v. NASCO, Inc., 501 U.S. 32, 43 (1991). Indeed,
"there is an ***implicit standing order*** that parties, counsel, and courtroom attendees
refrain from direct and egregious insults to judicial authority." United States v.
Marshall, 371 F.3d 42, 48 (2d Cir.2004)(emphasis added); see, Mayberry v.
Pennsylvania, 400 U.S. 455, 462 (1971)("brazen efforts to denounce, insult, and
slander the court and to paralyze [litigation] are at war with the concept of justice
under law."); Illinois v. Allen, 397 U.S. 337, 346 (1970) ("It would degrade our
country and our judicial system to permit our courts to be bullied, insulted, and
humiliated and their orderly progress thwarted and obstructed.")

Thus, even pro per litigants must show respect for the judiciary and must
otherwise exhibit verbal restraint and decorum at court proceedings. See, e.g., Gueye
v. U.C. Health, 2014 WL 4984173, at *5 (S.D. Ohio 2014)("A pro se litigant is not
excused from the requirement to show appropriate courtesy and respect to the Court.
A pro se litigant is not entitled to make unfounded accusations that a court or judicial
officer is biased or prejudiced or to insult the judge's competence.")(citations omitted.)

---

Mkrtchyan's misconduct at the third trial here. The concurrently filed Tamara
Heathcote Declaration and Christie Swiss Declaration – which are not word count
limited – therefore present the relevant record in more detail.

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR AWARD OF
ATTORNEY FEES AND COSTS**

1

2

"A pro se litigant is not entitled to abuse the court system and its judicial officers."
Gueye v. U.C. Health, 2014 WL 4984173, at *5 (S.D. Ohio 2014)(citations omitted).

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

Lawyers are rightly held to an even higher standard. See, e.g., Business and Professions Code § 6068(b)(it is the duty of all attorneys to "maintain the respect due to the courts of justice and judicial officers."); Cal. Code Civ. Pro. § 1209(a)(1)(forbidding "[d]isorderly, contemptuous, or insolent behavior toward the judge while holding the court, tending to interrupt the due course of a . . .judicial proceeding."); see also, Davis v. Superior Court of State of Cal., 846 F.2d 1382 (9th Cir. 1988)(counsel properly held in contempt for "interrupting the Court as it was trying to speak and raising [his] voice at the Court to where [he was] shouting at the Court."); McCaffity v. Hurst-Euless-Bedford Indep. Sch. Dist., 98 F.3d 1339 (5th Cir. 1996)("ad hominem attacks on district court judges will not be tolerated."); Pan Am. Grain Mfg. Co. v. Puerto Rico Ports Auth., 193 F.R.D. 26, 30 (D.P.R. 2000), aff'd sub nom. Pan Am. Grain Mfg. Co. v. Puerto Rico Ports Auth., 295 F.3d 108 (1st Cir. 2002)(courts will not tolerate conduct "disruptive of the orderly course of litigation, insulting to the dignity of the Court, and, most importantly, utterly lacking in civility. There is no excuse for such disregard of the principles of civility, one of society's most important virtues.")

19

20

21

22

23

24

25

26

Needless to say, skill and professionalism matter in fee litigation. See, e.g., Leaf v. County of Los Angeles, 270 Fed. Appx. 496, 497 (9th Cir. 2008)(". . . plaintiffs' attorneys' lack of skill and professionalism" critically relevant in fee decision); Blum v. Stenson, 465 U.S. 886, 895 n. 11 (1984)(attorney fee applicant's "skill, experience and reputation" matter in fee proceedings). Many cases nationwide are to like effect. See, e.g., Wescott Agri-Prods., Inc. v. Sterling State Bank, Inc., 682 F.3d 1091, 1095 (8th Cir. 2012)(in setting fees, "[i]t is well within the district court's broad discretion ... to consider ... the party's unprofessional conduct in the case.");

27

28

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR AWARD OF ATTORNEY FEES AND COSTS**

Skender v. Eden Isle Corp., 33 F.4th 515, 521 (8th Cir. 2022)(court may reject

attorney fee request "if the court detects unprofessional conduct on the part of

counsel."); Gordon v. Site 16/17 Development, LLC, 2011 WL 3251520, at *6

(S.D.N.Y. 2011)("The documents that counsel submitted here were of mediocre

quality and included numerous errors. The poor quality of counsel's work" matters in

fee litigation); Poparic v. European Music & Video Store, 2009 WL 6318212 at *9

(E.D.N.Y. 2009) ("the sub-par quality of the legal work in this case" matters to court's

fee decision).

Against this backdrop, what value does Ms. Mkrtchyan's style of lawyering in

this case have? Perhaps it could serve as a valuable warning to others on how ___not___ to

conduct litigation. Beyond that, the answer is obvious. The outbursts and insults at the

core of Plaintiff's counsel's presentation of this matter are of no value in federal court

– ___at all___. For this reason too, a zero fee award is now required. See, e.g., Illinois v.

Allen, 397 U.S. 337, 346–47 (1970)("if our courts are to remain what the Founders

intended, the citadels of justice, their proceedings cannot and must not be infected

with . . . scurrilous, abusive language and conduct."); Bigelow v. RKO Radio Pictures,

Inc., 327 U.S. 251, 264 (1946)(stating the long-standing principle that the justice

system should not "enable the wrongdoer to profit by his wrongdoing."); Dart

Industries, Inc. v. Liberty Mut. Ins. Co., 484 F.2d 1295, 1298 (9th Cir. 1973) ("[T]he

wrongdoer as a matter of public policy should not profit from his own wrong.").

## IV.    CONCLUSION

Plaintiff's counsel lost this case, and her attempted fee claim consequently fails

as a matter of law. See, e.g., Farrar v. Hobby, 506 U.S. 103, 115 (1992) ("When a

plaintiff recovers only nominal damages because of his failure to prove an essential

element of his claim for monetary relief . . . the only reasonable fee is usually no fee at

all."); id. at 121-122 ("[S]ection 1988 is not 'a relief Act for lawyers' who accomplish

no public goal other than occupying the time and energy of counsel, court, and

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR AWARD OF
ATTORNEY FEES AND COSTS**

1   client.")(Conc. opn. of O'Connor, J.) And even if this were not so, Plaintiff's counsel's

2   conduct of this litigation has been disturbing on multiple levels. Her five-year record

3   of profoundly bad choices have forfeited any claim to fees she may have otherwise

4   had. See, e.g., Wescott Agri-Prods., Inc. v. Sterling State Bank, Inc., 682 F.3d 1091,

5   1095 (8th Cir. 2012)(in setting fees, "[i]t is well within the district court's broad

6   discretion ... to consider ... the party's unprofessional conduct in the case.").

7        For these reasons, and for all the reasons set forth herein, the Court should

8   forcefully deny Plaintiff's Motion for Attorney's Fees in full.

9   DATED:  October 23, 2023       Respectfully submitted,

10                    **LYNBERG & WATKINS**

11

12           By:  */s/ S. Frank Harrell*
                      **S. FRANK HARRELL**

13                    **CATHERINE A. NALTSAS**
                      **TAMARA HEATHCOTE**

14                    Attorneys for Defendants
                      Deputy Joel Gonzalez, Deputy Kevin

15                    Pahel, Deputy Mark Borba, and Deputy
                      Jameson Gotts

16

17

18  DATED:  October 23, 2023       Respectfully submitted,

19                    **COLLINS + COLLINS LLP**

20

21           By:  */s/ Christie B. Swiss*
                      **MICHAEL L. WRONIAK**

22                    **CHRISTIE B. SWISS**
                       Attorneys for Defendant

23                    Deputy Chad Renegar

24

25

26

27

28

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR AWARD OF ATTORNEY FEES AND COSTS**