**MKRTCHYAN LAW**
Narine Mkrtchyan (SBN 243269)
655 N. Central Ave, Suite 1700
Glendale, CA 91203
(818) 388-7022
www.narinelaw.com
narine57@gmail.com

Attorneys for Plaintiff Jeremy Holloway

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEREMY HOLLOWAY, | No. CV 19-01514 DOC- DFM |
| Plaintiff, | *Assigned for All Purposes to the Honorable David O. Carter* |
| v. | |
| DEPUTY CHAD RENEGAR, individually and as a peace officer, DEPUTY JAMESON GOTTS individually and as a peace officer, and DOES 1-10, | **NOTICE OF MOTION AND MOTION FOR AWARD OF ATTORNEY FEES AND COSTS; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATIONS; EXHIBITS** |
| Defendants. | DATE:     September 15, 2025 <br> TIME:     8:30 am <br> CTRM:    10A |

TO DEFENDANTS AND TO THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on September 15, 2025, at 8:30 am, in Courtroom 10A  of the above entitled court, located at 411 W. 4th Street, Santa Ana, California, Plaintiff will move the court for an order awarding attorneys fees and costs.

Plaintiff has prevailed in establishing defendants liability on § 1983 claim by a jury verdict reached on May 21, 2025. Pending entry of judgment on the verdict, Plaintiff's costs and fees to date are therefore recoverable as a matter of law.

This motion will be based on this notice, on the attached memorandum of points and authorities, declarations and exhibits, and on such other evidence as may be received by the Court.


Dated: August 5, 2025                                    **MKRTCHYAN LAW**


                                            By: /s/Narine Mkrtchyan
                                                Narine Mkrtchyan
                                                Attorney for Plaintiff

1

# TABLE OF CONTENTS

2

3

I          INTRODUCTION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

II         PLAINTIFF IS ENTITLED TO PETITION THE COURT FOR
4          FEES AND COSTS AS THE PREVAILING PARTY
           PURSUANT TO 42 U.S.C. § 1988. . . . . . . . . . . . . . . . . . . . . . . . . . 7
5
           A.   AUTHORITY FOR AWARD OF ATTORNEYS  FEES  . . . . . . . . 7
6
           B.   STANDARDS FOR DETERMINING STATUS AS
7               PREVAILING PARTY. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

8    III.      THE LODESTAR SOUGHT BY PLAINTIFF IS
               DEMONSTRABLY  REASONABLE . . . . . . . . . . . . . . . . . . . . . . . 10
9
           A.   THE LODESTAR CALCULATION  . . . . . . . . . . . . . . . . . . . . . . 10
10
           B.   PLAINTIFF BEARS THE BURDEN OF ESTABLISHING THE
11              LODESTAR.       . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

12              1.   The Hours Claimed Are Reasonable  . . . . . . . . . . . . . . . . . . . 12

13              2.   Plaintiffs Attorney's Hourly Rate Is Reasonable . . . . . . . . . . 15

14         C.   COUNSEL HAS ACCURATELY DOCUMENTED HOURS,
                FEES AND EXPENSES.  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
15
           D.   TIME TOWARD THE RECOVERY OF FEES
16              IS COMPENSABLE  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

17   IV.       PLAINTIFF IS ENTITLED TO REIMBURSEMENT OF
               LITIGATION COSTS OVER AND ABOVE TITLE  28 U.S.C.
18             §1920 AND LOCAL RULE 54-4 . . . . . . . . . . . . . . . . . . . . . . . .  17

19         A.   Plaintiff is entitled to recover pre and post-verdict interest . . . . . .  17

20         B.   Copying, Postage, And Other Costs Ordinarily Not Encompassed
                by 28 U.S.C. §1920 Are Awardable under §1988. . . . . . . . . . . . . .  18
21
     V.    CONCLUSION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  21
22
     DECLARATION OF NARINE MKRTCHYAN  . . . . . . . . . . . . . . . . . . . . . . . . 23
23
     DECLARATION OF THOMAS BECK. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
24
     DECLARATION OF CAROL SOBEL . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
25

26

27

28

# TABLE OF AUTHORITIES

**FEDERAL CASES**

*Air Separation Inc. v. Underwriters at Lloyd's of London*,
(9th Cir.1995) 45 F.3d 288, 289–90 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Anderson v. Director, OWCP*,
(9th Cir. 1996) 91 F.3d 1322, 1325 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Barnard v. Theobald*,
(9th Cir. 2013) 721 F,3d 1069, 1076-1077 . . . . . . . . . . . . . . . . . . . . . . . . 8

*Blum v. Stensen*,
465 U.S. at 897 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 17

*Cabrales v. County of Los Angeles*,
(9th Cir. 1991) 935 F.2d 1050, 1053 . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Chalmers v. City of Los Angeles*,
(9th Cir. 1985) 796 F.2d 1205, 1214 . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*City of Riverside v. Rivera*,
477 U.S. at 568 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 10

*Dang v. Cross*,
(9th Cir. 2005) 422 F.3d 800, 804 . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 16

*Davis v. City of San Francisco*,
(9th Cir. 1992) 976 F.2d 1536, 1547 . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*DeLaCruz v. Pruitt*,
(N.D. Ind. 1984) 590 F. Supp. 1296, 1309 . . . . . . . . . . . . . . . . . . . . . . . . 18

*Dowell v. City of Apopka*,
(11th Cir. 1983) 698 F.2d 1181, 1188-92 . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Fadhl v. City and County of San Francisco*,
(9th Cir. 1986) 804 F.2d 1097, 1099 . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Farrar v. Hobby*,
(1992) 506 U.S. 103, 111, 121; L.Ed.2d 492, 503;
113 S.Ct. 566 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 11

*Gates v. Deukmejian*,
(9th Cir. 1992) 987 F.2d 1392, 1404 . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Gates v. Rowland*,
(9th Cir. 1994) 39 F.3d 1439, 1441 . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 15

*Golden State Transit Corp. v. Los Angeles*,
(C.D. Cal. 1991 773 F. Supp. 204, 211) . . . . . . . . . . . . . . . . . . . . . . . . . . 18

ii

*Gonzales v. City of Maywood*,
    (9th Cir. 2013) 2013 U.S. App. LEXIS 18703 * 3 . . . . . . . . . . . . . . . 10, 11

*Gorelangton v. City of Reno,*
    (D. Nev. 1986) 638 F. Supp. 1426, 1433 . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Graham v. Sauk Prairie Police Comm.* ,
    (7th Cir. 1990) 915 F.2d 1085, 1109 . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Guam Society of Obstetricians and Gynecologists v. Ada,*
    (9th Cir. 1996) 100 F.3d 691, 697 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Hall v. Ochs*,
    (1st Cir. 1987) 817 F.2d 920, 926 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Harris v. McCarthy*,
    (9th Cir. 1986) 790 F.2d 753, 758-59 . . . . . . . . . . . . . . . . . . . . . . . . 17, 20

*Harris v. Marhoefer*,
    (9th Cir 1994) 24 F.3d 16 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 20

*Henry v. Webermeier*,
    (7th Cir. 1984) 738 F.2d 188, 192 . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 20

*Hensley v.* Eckerhart,
    (1983) 461 U.S. 424, 428; 103 S. Ct. 1933;

    76 L.Ed.2d 40 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8, 10, 11

*Hewitt v. Helms*,
    (1987) 482 U.S. 755, 760 and 763; 100 S. Ct. 1987;
    64 L.Ed. 2d 670 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Int'l Woodworkers of America, AFL-CIO v. Donovan*,
    (9th Cir. 1986) 792 F.2d 762, 767 . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 21

*Jacobs v. Mancuso*,
    (1st Cir. 1987) 825 F.2d 559, 562 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Jane L. v. Bangerter*,
    (10th Cir. 1995) 61 F.3d 1505, 1517 . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Keith v. Volpe*,
    (C.D. Cal. 1986) 644 F. Supp. 1317 . . . . . . . . . . . . . . . . . . . . . . . . . 20, 21

*Laffey v. Northwest Airlines, Inc.*,
    (D.C. Cir. 1984) 746 F.2d 4, 30, (1985) *cert denied*, 472 U.S. 1021 . . . . . 19

*Jones v. Diamond*
    (5th Cir. 1981) 636 F.2d 1364, 1382 . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*McCown v. City of Fontana*,
　(9th Cir. 2008) 565 F.3d 1097, 1102 . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*McGinnis v. Kentucky Fried Chicken*,
　(9th Cir. 1994) 51 F.3d 805, 809 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Mendez v. Cnty. of San Bernadino*,
　(9th Cir.2008) 540 F.3d 1109, 1126 . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Moreno v. City of Sacramento*,
　(9th Cir. 2008) 534 F.3d 1106, 1116 . . . . . . . . . . . . . . . . . . . . . . . . 11, 12

*Murphy v. City of Elko*,
　(D.Nev.1997) 976 F.Supp. 1359, 1364 . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Northcross v. Board of Education*,
　(6th Cir. 1979) 611 F.2d 624, 639, (1980) *cert denied* 447 U.S. 911 . . . . 19

*Palmigiano v. Harrahy*,
　(1st Cir. 1983) 707 F.2d 636, 637 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*,
　(1986) 478 U.S. 546, 565; 106 S. Ct. 3088; 92 L.Ed.2d 439 . . . . . . . . . . . 8

*Perkins v. Mobile Housing Board*,
　(11th Cir. 1988) 847 F.2d 735, 738 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Quesada v. Thomason*,
　(9th Cir. 1988) 850 F.2d 537 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Ramos v. Lamm*,
　(10th Cir. 1983) 713 F.2d 546, 559 . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Romberg v. Nichols*,
　953 F.2d 1152, 1164 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Sablan v. Dept. of Finance of N. Mariana Islands*,
　(9th Cir. 1988) 856 F.2d 1317, 1324 . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Save Our Cumberland Mountains, Inc., v. Hodel*,
　(D.C.Cir. 1988) 857 F.2d 1516 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Schneider v. Cnty. of San Diego*,
　(9th Cir.2002) 285 F.3d 784, 789 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Schwartz v. Secretary of Health & Human Services*,
　(9th Cir. 1995) 73 F.3d 895, 909, . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Sorenson v. Mink*,
　(9th Cir. 2001) 239 F.3d 1140, 1149 . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Texas State Teachers Assn v. Garland Independent School District*,
　(1989) 489 U.S. 782, 790 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*United States v. Ernst & Whinney*,
　(N.D. Ga. 1983) 557 F.Supp. 1152, 1156 . . . . . . . . . . . . . . . . . . . . . . . . 20

*United Steelworkers v. Phelps Dodge Corp.*,
    (9th Cir. 1990) 896 F.2d 403, 407 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*West Virginia Univ. Hosps., Inc., v. Casey*,
    (1991) 499 U.S. 83, 87-88 n.3 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

**FEDERAL STATUTES**

28 U.S.C. §1920 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

28 U.S.C. § 1961 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

42 U.S.C § 1983 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

42 U.S.C. § 1988 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7, 17

**FEDERAL RULES OF CIVIL PROCEDURE**

Federal Rule of Civil Procedure Rule 54(d) . . . . . . . . . . . . . . . . . . . . . . . 18

Federal Rules of Civil Procedure  section 54(d)(1) . . . . . . . . . . . . . . . . . . 21

**OTHER AUTHORITIES**

LOCAL RULE 54-4 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

v

# I

## INTRODUCTION

On August 6, 2019 Plaintiff brought this action under 42 U.S.C. § 1983 alleging his rights had been violated  by defendants Chad Renegar, Joel Gonzalez, Kevin Pahel, Mark Borba, Jameson Gotts, Justin Gunderson, Brendon Billinger. After multiple re-trials, after Court dismissed 5 of the defendants Plaintiff prevailed at jury trial on May 21, 2025 by a finding of liability for excessive force against the named defendants. Court further dismissed Defendant Gotts at a Rule 50 motion after jury's verdict with punitive damages against him. Plaintiff is therefore the prevailing party and hereby moves for an order awarding attorneys fees and costs pursuant to 42 U.S.C. § 1988.

Plaintiff's counsel's lodestar begins on April 24, 2018 and continues through the present date as described in Exhibit A, Exhibit B appended hereto:

| Attorney | Hours Sought | Hourly Rate | Lodestar |
|---|---|---|---|
| Narine Mkrtchyan | 3,668.70 | $850 | $3,118,395.00 |
| Thomas Beck | 119.75 | $1150 | $137,712.50 |
| Paralegal | 696 | $200 | $139,200 |

COSTS AND EXPENSES SOUGHT: $ 142,485.86 (**Exhibit A**)

GROSS TOTAL **$** 3,395,307.50

The work performed by Plaintiff's counsel was necessary to the demands of the lawsuit that entailed highly contested discovery phase, motions for summary judgment, four trials, and the time dedicated to the case is consistent with the duties of the litigation. Ms. Mkrtchyan's $850 hourly rate requested is reasonable for counsel of her depth of professional experience in police misconduct litigation and prevailing hourly rates for counsel similarly situated in the Los Angeles metropolitan legal community. See appended Carol Sobel, Esq. declaration ¶ 22 as

**Exhibit C**.

**Exhibit A** is a copy of contemporaneous time billing records as set forth in the appended declaration of Narine Mkrtchyan. **Exhibit B** is the contemporaneous time billing records as set forth in the appended declaration of Thomas Beck.

## II

### PLAINTIFF IS ENTITLED TO PETITION THE COURT FOR FEES AND COSTS AS THE PREVAILING PARTY PURSUANT TO 42 U.S.C. § 1988.

### A.    AUTHORITY FOR AWARD OF ATTORNEYS FEES

A party who prevails in an action brought under 42 U.S.C. § 1983 has a statutory right to reasonable attorneys' fees pursuant to 42 U.S.C. § 1988.

To be eligible for such award, the prevailing party must have obtained some relief on the merits of his claim that alters the legal status of the parties, in accord with the legislative intent of the civil rights fee shifting statutes. *Hewitt v. Helms*, 482 U.S. 755, 760 and 763; 100 S. Ct. 1987; 64 L.Ed. 2d 670 (1987). "Therefore, to qualify as a prevailing party, a civil rights plaintiff must obtain at least some relief on the merits of his claim." *Farrar v. Hobby*, 506 U.S. 103, 111, 121 L.Ed.2d 492, 503, 113 S.Ct. 566 (1992). Succeeding on his challenging federal claim, as is the case here, indubitably grants plaintiff prevailing party status for fee entitlement purposes. "42 U.S.C. § 1988 'provides that in federal civil rights actions the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.' *Hensley v. Eckerhart*, 461 U.S. 424, 426, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983) (internal quotation marks and citation omitted). Congress passed § 1988 "to attract competent counsel to prosecute civil rights cases." *Mendez v. Cnty. of San Bernardino*, 540 F.3d 1109, 1126 (9th Cir.2008) (citation omitted). Consequently, 'a court's discretion to deny fees under

1    § 1988 is very narrow and fee awards should be the rule rather than the exception.'

2    *Id.* (quoting *Herrington v. Cnty. of Sonoma*, 883 F.2d 739, 743 (9th Cir.1989))

3    (internal quotation marks omitted)." *Barnard v. Theobald* 721 F,3d 1069, 1076-

4    1077 (9th Cir. 2013). An award of attorneys' fees as sought in this motion will

5    satisfy the primary purposes of the pertinent fee shifting statutes.  The award of

6    reasonable fees is necessary to attract competent counsel for plaintiff in cases as in

7    the instant matter, within which  important constitutional and statutory rights have

8    been vindicated. See *Hensley v. Eckerhart,* 461 U.S. 424, 428; 103 S. Ct. 1933; 76

9    L.Ed.2d 40 (1983) (citing legislative history of 42 U.S.C. § 1988); *City of Riverside*

10   *v. Rivera,* 477 U.S. 561; 106 S.Ct. 2686, 91 L.Ed.2d 466 (1986); and *Pennsylvania*

11   *v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565; 106 S. Ct.

12   3088; 92 L.Ed.2d 439 (1986).  Furthermore, Congress and the courts have

13   recognized that payment of such fees by Defendants in civil rights cases is

14   necessary to discourage violations of these rights.

15       "Because damages awards do not reflect fully the public benefit

16       advanced by civil rights litigation, Congress did not intend for fees in

17       civil rights cases, unlike most private law cases, to depend on

18       obtaining substantial monetary relief. Rather, Congress made clear that

19       it "intended that the amount of fees awarded under [§ 1988] be

20       governed by the same standards which prevail in other types of

21       equally complex Federal litigation, such as antitrust cases and not be

22       reduced because the rights involved may be non-pecuniary in nature."

24       *Riverside v. Rivera*, 477 U.S. 561, 575 (1986)

26   **B.    STANDARDS FOR DETERMINING STATUS AS**

27   **PREVAILING PARTY.**

28   In the Ninth Circuit, there is a two-part analysis for establishing entitlement

1    to status of a prevailing party who merits attorneys' fees.

2        Initially, the Court "must determine what [Plaintiff] sought to accomplish in

3    bringing [the] lawsuit and then determine whether the lawsuit was causally linked

4    to the relief actually obtained. *Sablan v. Dept. of Finance of N. Mariana Islands*,

5    856 F.2d 1317, 1324 (9th Cir. 1988).

6        Second, the "prevailing party" standard determines entitlement to an award

7    of attorneys' fees if "there . . . [is] a legal basis for [the Plaintiff's] claim – it must

8    not be 'frivolous, unreasonable or groundless.'" Plaintiff undoubtedly meets

9    "prevailing party" status. The lawsuit sought to establish liability for deprivation of

10   rights guaranteed to him by the United States Constitution and he was awarded a

11   verdict for damages including punitive damages.

12       Plaintiff is the prevailing party as the defendants' motion for new trial and

13   directed verdict was denied. This is the case even though Plaintiff did not succeed

14   on all claims against all defendants, that were dismissed at Rule 50 motions. This is

15   so even if Plaintiff had to go through multiple re-trials of the hotly contested case.

16   "[I]t is clear that a litigant need not prevail on every claim in order to receive a full

17   fee." *Gates v. Deukmejian,* 987 F.2d 1392, 1404 (9th Cir. 1992). *Cabrales v.*

18   *County of Los Angeles*, 935 F.2d 1050, 1053 (9th Cir. 1991)("Rare, indeed, is the

19   litigant who doesn't lose some skirmishes on the way to winning the war. Lawsuits

20   usually involve many reasonably disputed issues and a lawyer who takes on only

21   those battles he is certain of winning is probably not serving his client vigorously

22   enough; losing is part of winning. The County would have us scalpel out attorney's

23   fees for every setback, no matter how temporary, regardless of its relationship to

24   the ultimate disposition of the case. This makes little sense. Plaintiffs are entitled to

25   compensation for unsuccessful motions during successful litigation.""A plaintiff

26   who is unsuccessful at a stage of litigation that was a necessary step to her ultimate

27   victory is entitled to attorneys fees even for the unsuccessful stage." *Romberg v.*

28   *Nichols*, 953 F.2d 1152, 1164.

1

2                                    **III.**

3              **THE LODESTAR SOUGHT BY PLAINTIFF IS**

4              **DEMONSTRABLY REASONABLE**

5       **A.     THE LODESTAR CALCULATION**

6           "'Several important principles bear on the district court's determination of a

7   reasonable fee amount. First, the court must compute the fee award using an hourly

8   rate that is based on the "prevailing market rates in the relevant community.'*Dang*

9   *v. Cross*, 422 F.3d 800, 813 (9th Cir. 2005)" *Gonzales v. City of Maywood*, 2013

10  U.S. App. LEXIS 18703 * 3 (9th Cir. 2013). The lodestar calculation is based upon

11  determination of an applicable hourly fee multiplied by number of hours expended.

12  *Hensley v. Eckerhart, supra,* 461 U.S. at 433.  The lodestar is "presumed to be the

13  reasonable fee contemplated by Section 1988."  *City of Riverside v. Rivera, supra,*

14  477 U.S. at 568.

15          More than occasionally, the fee award will exceed damages awarded,

16  particularly when demands of the litigation drive attorney hours upward beyond the

17  value of the damages incurred. "Those who elect a militant defense in the face of a

18  statute allowing attorney's fees if they are defeated must take into account the time

19  and effort they extract from their opponents. It was ... [defendants] right to contest

20  every aspect of this claim, but they cannot now disclaim the consequences of their

21  actions." *City of Riverside v. Rivera*, 477 U.S. 561, 580 n. 11 (1986). See also,

22  *Graham v. Sauk Prairie Police Comm.* 915 F.2d 1085, 1109 (7th Cir.

23  1990)(upholding plaintiff's requested hours noting posture adopted by the

24  defendants increased the amount of time needed to protect plaintiff's rights);

25  *Jacobs v. Mancuso*, 825 F.2d 559, 562 ((1st Cir. 1987)(defendants have only

26  themselves to blame for prompting responses from the plaintiffs); *McGinnis v.*

27  *Kentucky Fried Chicken*, 51 F.3d 805, 809 (9th Cir. 1994)(refusing to reduce award

28  by district court for overstaffing and excessive hours agreeing with the district

court's that the defendant's arguments "might have more weight if it had not found it necessary to spend considerably more money losing that its adversary spent winning.") Accordingly, it is not per se unreasonable for the prevailing party in a civil rights case to be awarded an amount of attorney's fees that exceeds the amount of money recovered by his or her client. *Gonzales v. Maywood, supra*, *4.

The defense bears the burden of producing a sufficiently cogent explanation and specific reasons for reductions of the lodestar. *Moreno v. City of Sacramento*, 534 F.3d 1106, 1116 (9th Cir. 2008). Only exceptional circumstances will justify deviating from the lodestar calculation.  *Quesada v. Thomason,* 850 F.2d 537 (9th Cir. 1988).

Once the lodestar figure is fixed, it may be adjusted upwards or downward by the court. Courts must determine whether "the Plaintiffs achieve[d] a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award." *Ibid.*  "*Hensley* indicates that the *degree* of the plaintiff's success in relation to other goals of the lawsuit is a factor critical to the determination of the size of a reasonable fee, not to eligibility for a fee award at all." "*Texas State Teachers Assn v. Garland Independent School District* 489 U.S. 782, 790 (1989), quoted with approval in *Farrar v. Hobby*. 506 U.S. 103, 114 (1992). "Where a Plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee. . ." *Hensley v. Eckerhart, supra,* 464 U.S. at 435.


### B.    PLAINTIFF BEARS THE BURDEN OF ESTABLISHING THE LODESTAR.

The fee applicant bears the burden of documenting the appropriate hours expended in the litigation and must submit evidence in support of those hours worked. *Hensley v. Eckerhart, supra p.* 437.  These details are set forth in plaintiff's counsel's contemporaneous billing records set forth in **Exhibit A, B** hereto.

The party opposing the fee application has the burden of rebuttal that requires submission of evidence to the district court challenging the accuracy and reasonableness of the hours charged of the facts asserted by the prevailing party in its submitted affidavits. *Gates v. Rowland*, 39 F.3d 1439, 1441 (9th Cir. 1994), *Moreno v. City of Sacramento*, 534 F.3d 1106, 1116 (9th Cir. 2008). Non compensable time are those hours which are shown to be "excessive, redundant, or otherwise unnecessary." *McCown v. City of Fontana*, 565 F.3d 1097, 1102 (9th Cir. 2008).

## 1.    The Hours Claimed Are Reasonable

**Exhibit A** sets forth Ms. Mkrtchyan's expenditure of 3668.70 hours between April 24, 2018 and the present date as the lead counsel for the plaintiff. **Exhibit B** sets forth Mr. Beck's expenditure of 119.75 hours between July 7, 2020 and the present date.

The litigation began immediately after pre-lawsuit investigation and filing of informal complaints with the Orange County Sheriff's Department, taking no substantial hours pre-filing. Substantial hours were expended at every stage of the lawsuit, where defendants litigated motions to dismiss, multiple discovery motions, motions for summary judgment. The defendants embarked on a militant litigation attempting to have the case dismissed at every juncture on issues that ultimately had no bearing on this litigation, resulting in enormous attorney time for Plaintiff. Plaintiff conducted over 10 depositions of defendants and non-party witnesses during the course of the discovery period, which was hotly contested, apparent from a casual glance at the docket. Plaintiff had to seek court orders to obtain necessary discovery of defendants' prior use of force reports, their personnel files, as defendants were refusing to produce any records even with a Protective Order. Defendants refused to produce even public records related to prosecution of Defendant Chad Renegar for falsification of reports and forgery, necessitating further court orders. Plaintiff had to oppose voluminous motions to compel by

defendants on a variety of claims, alleging Plaintiff was refusing to produce records and destroyed records on his Facebook page, that had no bearing to this lawsuit. Plaintiff had to spend attorney time in opposing motions to dismiss based on alleged discovery violations, seeking reconsideration of magistrate's order, that was granted as sanction of dismissal was not warranted.

Plaintiff's first trial in August-September 2021 ended in a hung jury, after Ms. Mkrtchyan expended substantial hours and costs. No offer to resolve the case was made by County. Between first and second trials, the Court permitted limited discovery on the issues of new expert witness designation at Plaintiff's request and more discovery of experts was conducted in the interim. Plaintiff's second trial proceeded as scheduled on December 6, 2022, which took up Ms. Mkrtchyan's substantial time for preparation of the case, refiling and opposing multiple motions in limine. See Docket. After two weeks of trial when Ms. Mkrtchyan spent considerable time at trial by calling multiple witnesses at trial for Plaintiff's case-in-chief, Court declared a mistrial at defense request on the basis of a slip of a tongue by Plaintiff referencing prior 'trial' on cross-examination. Court had ordered parties to use the word prior 'proceeding' instead of prior 'trial' which to Plaintiff as a layperson was confusing. Plaintiff argued that this technical violation of the motion in limine was not grounds for a mistrial under the legal standards and mistrial caused severe prejudice to Plaintiff in depriving him of relief sought. Plaintiff was prejudiced by mistrial that cost Plaintiff witness availability for the third trial, more expenditures in paying those witnesses and attorney time. Meanwhile, there was no prejudice to defendants because this issue came about only during their rigorous cross-examination of Plaintiff who was confused about the difference between phrases 'prior *proceeding*' and 'prior *'trial'*. There was no evidence that Plaintiff intentionally mixed those terms. The second mistrial demoralized Plaintiff and his witnesses who refused to cooperate at further re-trials. Plaintiff's retained medical experts refused to come to court without more

1  costly fees and subpoenas. Plaintiff's other witnesses were making themselves
2  unavailable for process service and unwilling to come to court voluntarily, while
3  they were cooperative at first two trials.

4      Thereafter, Ms. Mkrtchyan prepared yet again for a third trial, expending
5  time and resources, taking time away from other cases, which took up substantial
6  hours, when Plaintiff finally received a verdict on liability. The verdict with no
7  damages was inconsistent because Plaintiff has sustained injuries with
8  hospitalization entitling him to damages. However, the jury at the third trial was
9  misled by the jury instructions and had a question during deliberations that was not
10 adequately answered. Plaintiff filed a motion for new trial *solely* on damages. The
11 Court granted the motion but ordered a trial on all issues, by setting aside the
12 liability verdict. The Court also dismissed three defendants on qualified immunity
13 grounds. Thereafter, Plaintiff through counsel yet again prepared for a fourth trial.
14 Defendants belatedly sought an order from Court to designate a new expert
15 toxicologist Richard Clark that required Plaintiff to search and find his own expert
16 toxicologist, Okorie Okorocha, conducting more discovery at the threshold of 4th
17 trial. Defendants then ordered his deposition a month before trial, causing Plaintiff
18 more attorney time and preparation. Thereafter, defendants re-filed multiple
19 motions in limine, requiring Plaintiff to oppose and file his own before fourth trial.
20 The hours claimed by Plaintiff are reasonably and necessarily spent in prosecuting
21 this hotly contested civil rights case. Had Plaintiff through counsel not prepared for
22 trials, not done discovery with depositions, there would have been no results
23 achieved in this case, since Plaintiff had limited resources with one attorney,
24 pursuing this case, while facing multiple attorneys with two firms representing
25 defendants. They are also within the range of hours normally associated with the
26 tasks performed in such cases through the filing of the instant motion.

27      An attorney declaration supporting the time incurred constitutes "[s]worn
28 testimony that, in fact, it took the time claimed" and "is evidence of considerable

weight on the issue of the time required in the case." *Perkins v. Mobile Housing Board,* 847 F.2d 735, 738 (11th Cir. 1988). Evidence that the rate has been awarded in the past is also competent proof. *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1214 (9th Cir. 1986).

**Exhibit A, Exhibit B** reflects the actual attorney time dedicated directly to advancing the litigation to its successful result. Plaintiff sought defense billable time sheets from defendants and County of Orange as proof that time expended by Plaintiff is commensurate and directly proportionate to the time expended by defense counsel in litigating this case.

### 2.    Plaintiffs Attorney's Hourly Rate Is Reasonable

This application seeks an hourly rate comparable to the prevailing rates for comparably experienced counsel  in the greater Los Angeles metropolitan legal community.  Reasonable rates are "to be calculated according to the prevailing market rates in the relevant community." *Blum v. Stenson, supra,* 465 U.S. at 900. "Furthermore, it is perfectly appropriate for a district court to award an hourly rate higher than is customarily charged by the Plaintiff's attorney or than is set forth in the retainer fee agreement." *Guam Society of Obstetricians and Gynecologists v. Ada,* 100 F.3d 691, 697 (9th Cir. 1996). Defendants bear the burden of competently challenging hourly rates requested. *Gates v. Rowland*, 39 F.3d 1439, 1441 (9th Cir. 1994). See also *Sorenson v. Mink*, 239 F.3d 1140, 1149 (9th Cir. 2001) (noting that the district court "must use" the market rate "to determine a fee under § 1988").

The hourly rate sought in this application is $850 per hour for Ms. Mkrtchyan, $1150 for Mr. Beck which is well within the range for counsel of similar depth of professional experience. The hourly rate is well within  prevailing market rates for similarly experienced attorneys.  The supporting declarations in 2023, 2024 by Carol Sobel for Ms. Mkrtchyan's and Mr.  Beck's hourly rate is consistent with the hourly billing rates and awards to comparably experienced

plaintiff's counsel in this legal community. Ms. Sobel's declaration and appended exhibits demonstrating recent fee awards in the Central District support Ms. Mkrtchyan's requested $850 hourly rate is slightly beneath the prevailing rate for attorneys of like experience and qualifications. *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1214 (9th Cir. 1985) (fee motion supported with proof the requested hourly rate had been awarded in another matter adequate to establish entitlement to the requested hourly rate). Ms. Mkrtchyan has been a police misconduct litigator since 2014, constituting over 10 years of experience in multiple police misconduct cases in federal courts. Ms. Mkrtchyan has been a trial lawyer for 19 years, when she began her career as a public defender and then opened her private practice serving Los Angeles since 2009. She has had multiple criminal and civil trials in her career with great results. Her areas of expertise are primarily criminal defense and civil rights. Ms. Mkrtchyan is recognized in the Los Angeles metropolitan legal community as an experienced criminal defense and police misconduct specialist who has obtained consistently great results for plaintiffs and criminal defendants alike. Mr. Beck's credentials as a distinguished civil rights attorney need no introduction.

The survey of the reported fee awards presented by Ms. Sobel's declaration and exhibits  demonstrates the acceptable hourly fee range has come a long way from the $110/hr used in 1988 to recent graduates, (*Davis v. City of San Francisco*, 976 F.2d 1536, 1547 (9th Cir. 1992), *amended after denying rehearing to omit award of expert witness fees* 984 F.2d 345 (9th Cir. 1993) or the $400 per hour in 2005 to seasoned counsel in *Dang v. Cross*, 422 F.3d 800, 804 (9th Cir. 2005). Ms. Sobel's input establishes the hourly rates for experienced counsel in the relevant legal community have kept pace with the economic realities of the times.

## C.     COUNSEL HAS ACCURATELY DOCUMENTED HOURS, FEES AND EXPENSES.

Plaintiff has  complied with legal and evidentiary standards related to

documentation of fees and costs to demonstrate the lodestar claimed is reasonable and necessary and that the claimed rates are those prevailing in the community for similar services of attorneys with comparable experience and background. See *Hensley v. Eckerhart, supra,* 461 U.S. at 433.

Plaintiff has provided the court and opposing counsel a detailed breakdown of the tasks and legal services  performed and the costs incurred.  (See Summary of Hours, Rates and Costs**, Exhibit A**)  This establishes prima facie reasonableness for the hours expended by counsel.  See, *Blum v. Stensen, supra,* 465 U.S. at 897.

### D.     TIME TOWARD THE RECOVERY OF FEES IS COMPENSABLE

"[I]t's now well established that time spent in preparing fee applications under 42 U.S.C. § 1988 is compensable." *Anderson v. Director, OWCP*, 91 F.3d 1322, 1325 (9th Cir. 1996). This is so, even where the district court does not award the applicant the full amount of fees he requests. *See Harris v. McCarthy*, 790 F.2d 753, 758-59 (9th Cir. 1986). *Schwartz v. Secretary of Health & Human Services*, 73 F.3d 895, 909, (9th Cir. 1995)(endorsing entitlement to fees award for litigating fee applications). In this case, that time commences April 24, 2018 through the reply and hearing at a future date and will be provided to the court by supplemental declaration at the end.

### IV.

### PLAINTIFF IS ENTITLED TO REIMBURSEMENT OF LITIGATION COSTS OVER AND ABOVE TITLE  28 U.S.C. §1920 AND LOCAL RULE 54-4

#### A.     Plaintiff is entitled to recover pre and post-verdict interest

The prevailing plaintiff is entitled to pre and post judgment interest. *Barnard v. Theobald, supra*, p. 1078. "Under 28 U.S.C. § 1961, the award of post judgment interest on a district court judgment is mandatory. See *Air Separation Inc. v. Underwriters at Lloyd's of London*, 45 F.3d 288, 289–90 (9th Cir.1995)."  "We

have held that prejudgment interest is an element of compensation, not a penalty. See *Schneider v. Cnty. of San Diego*, 285 F.3d 784, 789 (9th Cir.2002) (explaining that prejudgment interest "serves to compensate for the loss of use of money due as damages from the time the claim accrues until judgment is entered, thereby achieving full compensation for the injury those damages are intended to redress."). Non-economic damages awarded for a plaintiff's pain and suffering are "just as much an 'actual loss' (for which prejudgment interest is in order)" as purely economic damages. See *Murphy v. City of Elko*, 976 F.Supp. 1359, 1364 (D.Nev.1997). Thus, to the extent the district court denied prejudgment interest because it thought such interest is unavailable for non-economic damages, the district court abused its discretion." *Id*., p. 1078.

 Prejudgment interest is also available to § 1983 plaintiffs such as Plaintiff once his general damages have been liquidated by a verdict. "In addition, guided by the principles of full compensation and deterrence, other courts have awarded prejudgment interest in § 1983 cases. *See Hall  v. Ochs,* 817 F.2d 920, 926 (1st Cir. 1987) (prejudgment interest awarded successful § 1983 plaintiffs who charged assault and battery, false arrest and imprisonment); *Gorelangton v. City of Reno,*638 F. Supp. 1426, 1433 (D. Nev. 1986)(prejudgment interest awarded at 12% per annum on§ 1983 claims of false arrest and wrongful death); *DeLaCruz v. Pruitt,*590 F. Supp. 1296, 1309 (N.D. Ind. 1984) (prejudgment interest awarded in case because it serves to further the congressional purposes underlying § 1983)." *Golden State Transit Corp. v. Los Angeles,* 773 F. Supp. 204, 211(C.D. Cal. 1991). The prejudgment interest applies at the same rate from July 19, 2013.

### B. Copying, Postage, And Other Costs Ordinarily Not Encompassed by 28 U.S.C. §1920 Are Awarded under §1988.

The traditional authority for the recovery of statutory costs by the prevailing plaintiff under FRCP Rule 54(d) is 28 U.S.C. §1920.  However, §1988 has been

interpreted to authorize the recovery, as part of the reasonable attorney's fees awarded to the prevailing plaintiff, of a broad range of litigation expenses that exceed or are not included within statutory costs. *Ramos v. Lamm*, 713 F.2d 546, 559 (10th Cir. 1983); *Laffey v. Northwest Airlines, Inc.*, 746 F.2d 4, 30 (D.C.Cir 1984) *cert denied*, 105 S.Ct. 3488 (1985)(Title VII); *Henry v. Webermeier*, 738 F.2d 188, 192 (7th Cir. 1984); *Palmigiano v. Harrahy*, 707 F.2d 636, 637 (1st Cir. 1983); *Dowell v. City of Apopka*, 698 F.2d 1181, 1188-92 (11th Cir. 1983); *Jones v. Diamond* 636 F.2d 1364, 1382 (5th Cir. 1981)(*en banc*); *Northcross v. Board of Education*, 611 F.2d 624, 639 (6th Cir. 1979), *cert denied* 447 U.S. 911 (1980).

Thus § 1988 has been construed to encompass the reimbursement for all reasonable out-of-pocket expenses that are normally charged separately to fee-paying clients and that are not part of the office overhead incorporated into the attorney's billing rates. *Int'l Woodworkers of America, AFL-CIO v. Donovan*, 792 F.2d 762, 767 (9th Cir. 1986). Plaintiff is entitled to recover these expenses as costs in the same manner fees are regarded as costs within the meaning of section 1988.

The Act [section 1988] seeks to shift the cost of the winning party's lawyer (in cases within the intended scope of the Act) to the losing party; and that costs includes the out-of-pocket expenses for which lawyers normally bill their clients separately, as well as fees for lawyer effort. The Act would fall short of its goal if it excluded those expenses. What is more, the line between fees and expenses is arbitrary. A lawyer's hourly billing rate includes many overhead expenses such as local telephone calls. It is impossible to believe that Congress would have wanted prevailing parties to get back their lawyer's local telephone expenses (invariably included in the hourly fee) but not their long-distance expenses (invariably billed separately); or to get back their secretarial expenses--which are included in

overhead and therefore billed as part of the lawyer's hourly rate rather than separately--but not the expenses of word processing, often billed separately to the client.

*Henry v. Webermeier, supra* at p. 192:

Accordingly, postage, long distance, photocopying, transportation, tolls, travel, food, lodging, parking, LEXIS or Westlaw research, messengers, couriers, Fed Ex, programming and computer use, transcripts, maps and exhibits, express mail service have been declared recoverable costs under §1988 although not particularized by the federal cost statute. *Jane L. v. Bangerter*, 61 F.3d 1505, 1517 (10th Cir. 1995) applied this broad interpretation of § 1988: "[O]ut of pocket expenses incurred during litigation may be awarded as attorneys fees under section 1988 if (1) the expenses are not absorbed as part of law firm overhead but are normally billed to a private client, and (2) the expenses are reasonable."

"Under § 1988 Harris may recover as part of the award of attorney's fees those out-of-pocket expenses that 'would normally be charged to the fee paying client.' *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1216 n. 7 (9th Cir. 1987); *Laffey v. Northwest Airlines, Inc.*, 746 F.2d 4, 30 (D.C. Cir. 1984), *cert denied*, 472 U.S. 1021 (1985), *overruled on other grounds, Save Our Cumberland Mountains, Inc., v. Hodel*, 857 F.2d 1516 (D.C.Cir. 1988)(en banc); *see also West Virginia Univ. Hosps., Inc., v. Casey*, 499 U.S. 83, 87-88 n.3 (1991). Thus reasonable expenses, thought greater than taxable costs, may be proper." *Harris v. Marhoefer* 24 F.3d 16 (9th Cir 1994)

"Whether the costs are taxable depends not so much on the nature of the items, but rather whether the item for which costs are sought was 'necessarily' obtained for use in the case.'" *United States v. Ernst & Whinney*, 557 F.Supp. 1152, 1156 (N.D. Ga. 1983). See also *Keith v. Volpe*, 644 F. Supp. 1317 (C.D. Cal. 1986), "Plaintiffs also seek reimbursement of $6,641.29 for out-of-pocket expenses.

These expenses include transcribing an administrative hearing, a next-day-delivery deposition surcharge, duplicating, mail, long distance telephone calls, travel mileage, and parking. . . . [I]t is current practice in Los Angeles to bill private clients separately for such expenses.  Thus, plaintiffs are entitled to reimbursement . . . 644 F. Supp. at 1326.

It is immaterial that the courts in *Int'l Woodworkers* and *Keith* were awarding fees under federal fee award statutes other than 42 U.S.C. § 1988.  The same standards for fee awards are generally applicable in all cases in which Congress has authorized an award of fees to the prevailing party.  *Hensley v. Eckerhart*, 461 U.S. 424, 433 n.7 (1983); *Keith*, *supra*, 644 F. Supp. at 1322.) By these reasons, Plaintiff requests the court make an  award of $142,485.86 in costs pursuant to F.R.Civ.P. section 54(d)(1), and 42 U.S.C. § 1988.  These expenses were required and necessary to the litigation. *United Steelworkers v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990).  This includes a variety of actual out of pocket expenses not often considered but paid out on behalf of clients and not expressly set forth in  28 U.S.C. §1920.

> "Even though not normally taxable as costs, out of pocket expenses
> incurred by an attorney which would normally be charged to a fee
> paying client are recoverable as attorney's fees under section 1988."
> *Chalmers v. City of Los Angeles,* 796 F.2d 1205, n.7 (9th Cir. 1986).

The expenses claimed are documented in the Summary of Hours, Rates and Costs.  (Exhibit A).

The declaration of plaintiff's counsel, together with the detailed disbursements in the Summary of Hours, Rates and Costs (Exhibits A) the costs and disbursements necessarily and reasonably incurred in connection with litigating this action, set forth costs and expenses ordinarily billed to hourly paying clients.  Plaintiff therefore requests that all compensable costs and disbursements be included in the order made by the Court.

# V.

## CONCLUSION

For the foregoing reasons, this Court should award Plaintiff's counsel the requested fees and costs, and issue appropriate findings with respect to rates, hours, and costs. "There is no reason to delay receipt of . . . undisputed fees." *Fadhl v. City and County of San Francisco,* 804 F.2d 1097, 1099 (9th Cir. 1986).

**DATED**:   August 5, 2025

**MKRTCHYAN LAW**


By:   /s/Narine Mkrtchyan

Narine Mkrtchyan
Attorney for Plaintiff

# DECLARATION OF NARINE MKRTCHYAN

I NARINE MKRTCHYAN declare:

1.  I am an attorney duly licensed to practice law in the courts of the States of California (6/6/2006); before the United States District Courts for the Central, (2009) and Eastern Districts (2016) of California, the United States Court of Appeals for the Ninth Circuit (2009) and the United States Supreme Court (2009). Each fact set forth herein is within my personal knowledge and if called upon to testify I could and would competently swear to each such fact.

2.  I was the lead and sole counsel of record for the plaintiff in this action. Attorney Thomas Beck was associated to assist me at various stages of the case.

3.  My pertinent legal education, background and professional experience are enumerated below.

       a.      I was raised in Armenia and Russia where I graduated from High School in Moscow 1995 with high honors. My family immigrated to the United States in 1996 from Armenia after the historic disintegration of the Soviet Union when I was 18 years old. I have graduated from the University of California, Los Angeles, Magna Cum Laude, High Honors in 2001. I have graduated from law school at the University of California, Davis, School of Law (King Hall), in 2005. I chose King Hall as my law school because of my lifelong dream to contribute to the cause of justice and civil/human rights. I earned the highest grades in my class in Constitutional Law, Civil Rights and Evidence courses. My career as a lawyer began as a public defender at the San Bernardino and Kern County Public Defender Offices, where I received rigorous trial training from distinguished trial lawyers at the prominent California Public Defenders Association and did multiple trials in a variety of criminal cases with great results, where I earned the reputation of a 'trial machine' and 'tiger' by colleagues and

supervisors.  Thereafter, I opened my private practice in 2009 serving Los Angeles, primarily in criminal cases. From 2009-2014 I was on the conflict panel at the Los Angeles County Bar Association, and represented indigent criminal defendants in hundreds of appointed cases throughout the Los Angeles County. My first civil rights case with similar claims here, <u>Howard v. City of Los Angeles</u>, 14-03687 SS ended with a Plaintiff's verdict with punitive damages against defendant police officers. The case settled for $875,000 including attorney's fees and costs post-trial without litigating any fee award motions. Thereafter, I primarily focused my boutique practice on police misconduct litigation, obtaining settlement awards in a variety of civil rights cases involving claims of false arrest and excessive force, including a well-publicized case of <u>Pelayo v. City of Pomona</u>, 17-07292 $700,000; <u>Nazarian v. City of Beverly Hills</u>, 19-04391 $500,000; <u>Williams v. City of Long Beach</u>, 19-05929 $498,000. I am the attorney of record in a highly publicized police shooting case in <u>Hernandez v. City of Los Angeles</u>, 20-04477, 21-55994, 21-55995, that was reversed and remanded by the Ninth Circuit after a grant of  Motion for Summary Judgment. I argued before the Ninth Circuit on behalf of my client twice, before a 3-panel judge and then before an 11-panel judge. See the link to oral argument. https://www.youtube.com/watch?v=wjhRl1nUDRs

I am the attorney of record in multiple civil rights cases currently pending in the Central and Eastern Districts of California, including another high-profile case of <u>I.R. v. County of Los Angeles</u>, 23-07073. See the link. https://www.youtube.com/watch?v=ZXOes7T06x0

Plaintiff's publicized case here also covered in the news in 2021-2022 took up enormous time and effort for me, taking my time away from other cases, in light of the heavily contested litigation by the defendants at every stage and the *four* trials I had to do. I hired law clerks and paralegals to perform specific assignments for this case and paid them based on hours performed between 2020-2025, still owing them payment for hours done on contingency. They accompanied me to trials to

assist with all clerical tasks. I was unable to devote more time to taking other cases and was predominantly working on this case during these periods delaying my other cases. My hours reflect my devotion to this case, the cause of my client, impairing my ability to draw significant income from other cases, causing financial hardship to me. I had to borrow a loan in 2020 for $150,000 from the SBA (Small Business Administration) to fund this case through trials and owe them the loan with interest. I continue to specialize in police misconduct litigation. In 2023 I received the Trial Lawyer of the Year award from the private criminal defense bar in Los Angeles for my trial experience and devotion to constitutional rights. See attached my CV.

4.     I am responsible for maintaining my billable time keeping system since the inception of this case.  I have personally made the entries contemporaneously and reviewed the time sheets  manually recording the tasks and calculated the lodestar for my activities in this case. I certify the number of hours spent to date on this case amounting to **3668.70** as of August 4, 2025, is accurate and fairly reflect the tasks performed, the time it took me perform those tasks. While the number of hours seems excessive at first blush, it is sufficient to look at the docket of this case to surmise how much time and effort I had to spend in pursuing this case for Plaintiff. I have requested the billable time sheets of defense counsel to demonstrate that my hours are commensurate and proportionate to their time spent on the case. The Court may reduce my hours for specific tasks performed as it deems just and proper. However, I have not billed for time spent on clerical duties, such as copying, printing, preparing trial exhibits, etc. Defendants litigated every aspect of this case, beginning from motion to dismiss, objecting to Plaintiff's discovery requests, necessitating multiple rounds of motions to compel by Plaintiff. Defendants filed multiple motions to compel, forcing me to spend substantial number of hours in defending them. Plaintiff had to conduct over 10 depositions in this case of multiple defendants, multiple non-party witnesses. Thereafter, defendants filed motions for

summary judgment that I had to spend time in defending those motions. Plaintiff had to go to four trials in this case which required me to spend enormous amount of time to prepare for trial. The entries are made daily, contemporaneously with the events recorded. Each expense entry contained therein pertains to this case and this case only.  The expenses reported are necessary and essential to the proper representation of the plaintiff.

5.      My current hourly rate which I ask be applied to the instant motion is $850. That rate is supported by the appended declarations of Carol Sobel, Esq. 2023, 2024 with supporting exhibits highlighting the prevailing rates awarded to other attorneys with comparable experience and skills in the legal market. It is also supported by the declaration of Thomas Beck. Each are prominent and distinguished civil rights/police misconduct practitioners of long standing in this legal community. As Ms. Sobel's declarations in 2023, 2024 and exhibits demonstrate, she is particularly well versed in legal billing rates in this legal universe.  I am informed and believe that attorneys in private practice, at a comparable level have been billing $900 or greater hourly for the past three  years.

6.      The hourly rate being sought represents my length and depth of personal experience as a §1983 police misconduct litigator. The $850 hourly billing rate is a direct reflection of the economic necessities of my law practice. As a result of my devotion to civil rights cases, I have not pursued other more profitable personal injury or criminal defense cases, have not drawn any sizeable income since 2022 because of the federal docket delays, where the majority of my civil rights cases are pending. This case especially has taken up enormous time and energy from me, having had to travel to Santa Ana for each trial, staying at hotels during trials with limited resources. Court required personal presence at hearings and often during trials we were not excused until late hours, taking a toll on my health. I had

1   to constantly ask for breaks for food, as I get migraine headaches when I do not
2   have timely meals. Often the trial schedule was the cause of my main friction with
3   Court. I have been trained to be a trial lawyer since the inception of my career, and
4   genuinely enjoy trials. I have developed a stamina to endure the most difficult trials
5   as a public defender, but in this case, the multiple re-trials of the same case with
6   difficult schedule, with no end to be seen, took a toll on me, particularly because I
7   also had to endure personal attacks and hostility from defense at every juncture,
8   while also managing uncooperative witnesses and a client suffering from PTSD.
9   Defendants on the other hand had multiple attorneys at each trial and Court's
10  schedule did not have an impact on them. After each trial, I learned lessons and
11  attempted to restrategize and refocus the presentation of the evidence spending
12  more time on preparation. Defense counsel will continue mounting personal attacks
13  against me and accusations in their oppositions to this motion, but an objective
14  observer would agree not every attorney would persist in the pursuit for justice
15  under these severe conditions.

16

17        7.    I respectfully ask the Court to apply the current rate of $850 per hour to
18  all of my legal services and labor, reflected in **Exhibit A** in the manner authorized
19  by *Missouri v. Jenkins* (1984) 491 U.S. 274, 109 S.Ct 2463, *Barnard v. Theobald*
20  721 F. 3d 1069 (9th Cir. 2013) and *Gonzalez v City of Maywood*, 2013 U.S. App.
21  LEXIS 18703 (9th Cir. 2013)

22

23        8.    Attorney Thomas Beck, distinguished civil rights attorney, my mentor
24  in civil rights cases, was associated in the case, assisting me at depositions and other
25  earlier stages of the case, as reflected in his billable time sheet attached herein as
26  **Exhibit B.** His contribution and expertise behind the scenes were extremely
27  valuable to me, while he did not conduct trials with me as he was not the counsel of
28  record. I request the Court to award him hours for time expended as reflected in his

billing time sheet as they accurately reflect his assistance in the case.

10.    In this §1988 fee application I have sought the recovery of our out of pocket costs which I ordinarily pass to clients and which are not absorbed into my overhead. I do not have full-time staff and have hired contract-based part-time law clerks and paralegals to perform specific tasks for this case paying them based on their hours performed exclusively on this case. Some hours were performed by them on contingency basis amounting to approximately 696 hours and are still owed, as described in this fees motion. The costs charged to this case and summarized in **Exhibit A, Summary of Hours, Rates and Costs** are those that were actually charged to the plaintiff and paid out in this case out of my pocket. Exhibit A, Summary of Hours, Rates and Costs is a true and accurate reflection of attorney hours spent by myself on this lawsuit. The hours spent were necessary and reasonable under the circumstances of this case.

10.    By reason of the foregoing, I respectfully request the Court to set §1988 fees for legal services rendered to and on behalf of the plaintiff through the present in the aggregate sum of $ **3, 118, 395** for my services, $**137, 712.50** services of Thomas Beck, $139,200 for paralegal services, together with $142,485.86 costs for a gross total of **3,395,307.50**.

I declare under penalty of perjury, under the laws of the United States that the foregoing is true and correct.

Executed this 5th day of August, 2025 at Los Angeles, California.


/s/ Narine Mkrtchyan

_____

Narine Mkrtchyan