Name  Narine Mkrtchyan

Address  655 N. Central Ave, Suite 1700

City, State, Zip  Glendale, CA 91203

Phone  818 3887022

Fax

E-Mail  narine56@msn.com

☐ FPD    ☐ Appointed    ☐ CJA    ☐ Pro Per    ☒ Retained

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEREMY HOLLOWAY<br><br>PLAINTIFF(S),<br>v.<br>COUNTY OF ORANGE, ET AL.<br><br>DEFENDANT(S). | CASE NUMBER:<br><br>8:19-CV-01514 DOC-DFM<br><br>**NOTICE OF APPEAL** |

NOTICE IS HEREBY GIVEN that _____ JEREMY HOLLOWAY _____ hereby appeals to

*Name of Appellant*

the United States Court of Appeals for the Ninth Circuit from:

**Criminal Matter**

☐ Conviction only [F.R.Cr.P. 32(j)(1)(A)]
☐ Conviction and Sentence
☐ Sentence Only (18 U.S.C. 3742)
☐ Pursuant to F.R.Cr.P. 32(j)(2)
☐ Interlocutory Appeals
☐ Sentence imposed:

☐ Bail status:

**Civil Matter**

☐ Order (specify):

☒ Judgment (specify):
    following a trial

☐ Other (specify):

Imposed or Filed on ____ October 14, 2025 ____. Entered on the docket in this action on ____ October 14, 2025 ____.

A copy of said judgment or order is attached hereto.

November 11, 2025

Date

/s/Narine Mkrtchyan

Signature
☐ Appellant/ProSe    ☒ Counsel for Appellant    ☐ Deputy Clerk

**Note:**    The Notice of Appeal shall contain the names of all parties to the judgment or order and the names and addresses of the attorneys for each party.  Also, if not electronically filed in a criminal case,  the Clerk shall be furnished a sufficient number of copies of the Notice of  Appeal to permit prompt compliance with the service requirements of FRAP 3(d).

A-2 (01/07)                                    **NOTICE OF APPEAL**

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SOUTHERN DIVISION

| | |
|---|---|
| JEREMY HOLLOWAY<br><br>    Plaintiff,<br><br><br>    vs.<br><br><br>COUNTY OF ORANGE ET AL.,<br><br>    Defendants. | Case No. 8:19-CV-01514-DOC-DFM<br><br>ORDER DENYING PLAINTIFF'S MOTION TO COMPEL [883] AND GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR AWARD OF ATTORNEY FEES AND COSTS [888] |

Before the Court is Plaintiff's Motion for Award of Attorney Fees and Costs ("Motion") (Dkt. 888) and Plaintiff's Motion to Compel (Dkt. 883). For the reasons below, the Court **DENIES** Plaintiff's Motion to Compel (Dkt. 883) and **GRANTS IN PART AND DENIES IN PART** Plaintiff's Motion for Attorney's Fees and Costs (Dkt. 888).

## I.    BACKGROUND

### A.    Facts

This case concerns an altercation between Plaintiff and law enforcement at a campground that ended with Plaintiff's arrest.

Around 3 a.m., Orange County dispatch received a call from a man, who was camping in his RV. The caller informed the dispatcher that he heard a man and woman yelling, fists being landed, and a woman pleading to stop hitting her as she is just a girl. Officers arrived and approached Holloway, who was uncooperative, agitated, and hostile; he also demanded to know why the officers were there. Holloway informed one of the officers, Renegar, that he was on probation, and subject to search and seizure at any time. After searching Holloway's campsite, the officers could not locate the girl, but they did find several camping knives. The officers left without placing Holloway under arrest.

Within fifteen minutes of the officers departing the scene, Orange County dispatch received another call from the campground. The caller reported that Holloway was walking around the campground looking for and threatening the person who called the police, that he was rummaging through a white RV, and that a little girl was screaming.

Renegar, followed closely by two other deputies, was the first officer to respond to the second call. As the three officers approached Holloway, Renegar repeatedly ordered Holloway to show his hands and get on the ground. Holloway showed his hands, but he did not get on the ground and instead asked why the officers had returned. In between shouting orders at Holloway, Renegar repeatedly asked the officer who was close behind him, whether he had a taser.

Renegar, Holloway testified, then punched him in the face. Holloway momentarily lost consciousness and fell onto his stomach with his arms pinned beneath him, near his waistband.

Two other officers joined Renegar after the initial punch. They each placed their bodyweight on Holloway's back and tried, unsuccessfully, to free his arms so that they could handcuff him. Renegar, meanwhile, punched Holloway in the side but he too could not secure Holloway's hands. Renegar then attempted to deploy a taser to Holloway's buttocks, but the taser was ineffective.

Deputies Borba and Gotts arrived on the scene around the time Renegar unsuccessfully deployed the taser. Deputy Borba successfully freed one of Holloway's arms from beneath Holloway's stomach.

Renegar then deployed the taser for a second time during the struggle; this time, to one of Holloway's calves. The officers then finally freed Holloway's other arm and handcuffed him. As soon as Holloway was in handcuffs, the officers immediately went to Holloway's tent to look for a little girl, but they were unable to find her. Holloway was arrested for resisting arrest and battery on a police officer.

At trial, Holloway presented evidence of several injuries that he claimed were a result of the altercation, including (1) photos showing bruising and swelling to his face, (2) ongoing back pain, including a spinal injury, and (3) emotional distress.

There have been four trials in this case. The first trial ended in a hung jury. The Court declared a mistrial in the second trial after Plaintiff violated a pretrial order not to mention the first trial. In the third trial, the jury deliberated for less than one day and concluded that all five Defendant Officers violated Plaintiff Jeremy Holloway's Fourth Amendment right to be free from excessive force, but that he did not sustain any compensable injuries. In post-trial motions, the Court granted qualified immunity to three of the officers on the scene and granted a new trial on all issues with Renegar and Gotts as the remaining Defendants.

In the fourth trial, the jury deliberated for around two days and found that both Defendant officers—Gotts and Renegar—used excessive force when apprehending Plaintiff, and that Plaintiff was owed general damages and punitive damages. After the fourth trial, both officers moved for judgment as a matter of law and for a new trial. The Court granted Gotts's

motion for judgment as a matter of law and granted Gotts qualified immunity, denied Renegar's motion for the same, and denied Defendants' motion for a new trial (Dkt. 881).

### B. Procedural History

This case has been around since 2019, and as detailed above, just finished its fourth trial and has gone through extensive motion briefing. On August 5, 2025 Plaintiff filed his Motion for Attorney Fees (Dkt. 888). On August 25, 2025 Renegar filed his Opposition ("Renegar Opposition") (Dkt. 892) and Gotts ("Gotts Opposition") filed his Opposition (Dkt. 893). On September 2, 2025, Plaintiff filed his Reply (Dkt. 895). On September 4, 2025 Renegar filed Objections to Additional Evidence Submitted in Reply ("Objections") (Dkt. 896) and on September 9, 2025 Plaintiff filed a Non-Opposition to Defendant's Request for a Sur-Reply ("Non-Opposition") (Dkt. 897).

On July 29, 2025, Plaintiff filed a Motion to Compel and For an Order to Show Cause Why Sanctions Should Not Issue Against Orange County Sheriff's Department (Dkt. 883). On August 4, 2025, Gotts and Renegar filed their Opposition (Dkt. 885). On August 8, 2025, Plaintiff filed his Reply (Dkt. 890).

The Court held a hearing on the motions on September 15, 2025. At the hearing the Court overruled Defendant Renegar's Objections to Plaintiff's Reply. The Court also concluded a sur-reply is unnecessary in light of Defendants' robust oppositions and that further briefing will only prolong this already extended case.

## II. LEGAL STANDARD

In an action brought pursuant to 42 U.S.C. § 1983, "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs . . . ." 42 U.S.C. § 1988(b). The Supreme Court has explained the historical underpinnings and purpose of § 1988(b) as follows:

> In *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240 (1975), this Court reaffirmed the "American Rule" that each party in a lawsuit ordinarily shall bear its own attorney's fees unless there is express statutory authorization to the contrary. In response Congress enacted the Civil Rights

-4-

Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988, authorizing the district courts to award a reasonable attorney's fee to prevailing parties in civil rights litigation. The purpose of § 1988 is to ensure "effective access to the judicial process" for persons with civil rights grievances. H.R. Rep. No. 94-1558, p. 1 (1976). Accordingly, a prevailing plaintiff " 'should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust.' " S. Rep. No. 94-1011, p. 4 (1976), U.S. Code Cong. & Admin. News 1976, p. 5912 (quoting *Newman v. Piggie Park Enterprises*, 390 U.S. 400, 402 (1968)).

*Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983) (parallel citations omitted); *see also Barnard v. Theobald*, 721 F.3d 1069, 1077 (9th Cir. 2013) ("'[A] court's discretion to deny fees under § 1988 is very narrow and . . . fee awards should be the rule rather than the exception.'"); *Sable Commc'ns of Cal. Inc. v. Pac. Tel. & Tel.*, 890 F.2d 184, 193 (9th Cir. 1989) ("Plaintiffs prevailing in a civil rights action should ordinarily receive attorney's fees unless special circumstances would render such an award unjust.").

"[T]he fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." *Hensley*, 461 U.S. at 437. *See also Gonzalez v. City of Maywood*, 729 F.3d 1196, 1202 (9th Cir. 2013) ("The prevailing party has the burden of submitting billing records to establish that the number of hours it has requested are reasonable."); *Carson v. Billings Police Dep't*, 470 F.3d 889, 891 (9th Cir. 2006). "The party opposing the fee application has a burden of rebuttal that requires submission of evidence to the district court challenging the accuracy and reasonableness of the . . . facts asserted by the prevailing party in its submitted affidavits." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 980 (9th Cir. 2008) (quoting *Gates v. Deukmejian*, 987 F.2d 1392, 1397–98 (9th Cir. 1992)).

"The Supreme Court has stated that the lodestar is the 'guiding light' of its fee-shifting jurisprudence, a standard that is the fundamental starting point in determining a reasonable attorney's fee." *Van Skike v. Dir., Off. of Workers' Comp. Programs*, 557 F.3d 1041, 1048 (9th

Cir. 2009) (quoting *City of Burlingtion v. Dague*, 505 U.S. 557, 562 (1992)); *see also Hensley*, 461 U.S. at 433. Accordingly, a district court is required "to calculate an award of attorneys' fees by first calculating the 'lodestar' before departing from it." *Camacho*, 523 F.3d at 982 (quoting *Caudle v. Bristow Optical Co.*, 224 F.3d 1014, 1028 (9th Cir. 2000), *as amended* (Nov. 2, 2000)). "The 'lodestar' is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate." *Camacho*, 523 F.3d at 978 (quoting *Ferland v. Conrad Credit Corp.*, 244 F.3d 1145, 1149 n.4 (9th Cir. 2001)); *see also Moreno v. City of Sacramento*, 534 F.3d 1106, 1111 (9th Cir. 2008) ("The number of hours to be compensated is calculated by considering whether, in light of the circumstances, the time could reasonably have been billed to a private client."); *Caudle*, 224 F.3d at 1028; *Morales v. City of San Rafael*, 96 F.3d 359, 363 (9th Cir. 1996), *opinion amended on denial of reh'g*, 108 F.3d 981 (9th Cir. 1997). Applying these standards, "a district court should exclude from the lodestar amount hours that are not reasonably expended because they are 'excessive, redundant, or otherwise unnecessary.'" *Seachris v. Brady-Hamilton Stevedore Co.*, 994 F.3d 1066, 1083 (9th Cir. 2021) (internal citation and quotation marks omitted).

In addition, "a district court may make upward or downward adjustments to the presumptively reasonable lodestar." *Camacho*, 523 F.3d at 982; *see also Edmo*, 97 F.4th at 1169 ("If an enhancement is justified, then the court may adjust the lodestar upward . . . using a multiplier.") (internal citation and quotation marks omitted). In applying these legal standards the court is cognizant of the following overarching guidance provided by the Ninth Circuit:

> Lawyers must eat, so they generally won't take cases without a reasonable prospect of getting paid. Congress thus recognized that private enforcement of civil rights legislation relies on the availability of fee awards: "If private citizens are to be able to assert their civil rights, and if those who violate the Nation['s] fundamental laws are not to proceed with impunity, then citizens must have the opportunity to recover what it costs them to vindicate these rights in court." S. Rep. No. 94-1011, at 2 (1976), as reprinted in 1976 U.S.C.C.A.N. 5908, 5910. [fn. omitted] At the same time, fee awards are

not negotiated at arm's length, so there is a risk of overcompensation. A district court thus awards only the fee that it deems reasonable. *See Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). The client is free to make up any difference, but few do. As a practical matter, what the district court awards is what the lawyer gets.

In making the award, the district court must strike a balance between granting sufficient fees to attract qualified counsel to civil rights cases, *City of Riverside v. Rivera*, 477 U.S. 561, 579–80 (1986), and avoiding a windfall to counsel, *see Blum v. Stenson*, 465 U.S. 886, 897 (1984) (quoting S. Rep. No. 94-1011, at 6 (1976)). The way to do so is to compensate counsel at the prevailing rate in the community for similar work; no more, no less.

*Moreno*, 534 F.3d at 1111.

A district court "has a great deal of discretion in determining the reasonableness of the fee." *In re Smith*, 586 F.3d 1169, 1173 (9th Cir. 2009) (quoting *Gates v. Deukmejian*, 987 F.2d 1392, 1398 (9th Cir. 1992)). Where "a voluminous fee application is filed in exercising its billing judgment the district court is not required to set forth an hour-by-hour analysis of the fee request." *Gates*, 987 F.2d at 1399. In those instances, "the district court has the authority to make across-the-board percentage cuts. . . in the number of hours claimed. . . as a practical means of trimming the fat from a fee application." *In re Smith*, 586 F.3d at 1174 (quoting *Gates*, 987 F.2d at 1399).

## III.  DISCUSSION

Plaintiff requests $3,395,307.50 in legal fees and $142,485.86 in costs and expenses. Motion at 6. The Court will assess whether Plaintiff qualifies as a prevailing party first and then determine to what extent Plaintiff's proposed lodestar must be adjusted.

## A.       Prevailing Party

The Court concludes that Plaintiff is a prevailing party as against Renegar, but not as against Gotts. "When considering 'prevailing party' status in suits with multiple defendants, courts have made separate determinations of whether or not the plaintiff prevailed against each defendant." *Tubbs v. Sacramento Cnty. Jail*, 258 F.R.D. 657, 659 (E.D. Cal. 2009). Here, the jury concluded after trial that Plaintiff suffered $337,000 in damages. Redacted Special Verdict (Dkt. 830). The jury also concluded that Plaintiff was entitled to an award of punitive damages in the amount of $30,000 against Gotts and $45,000 against Renegar. However, the Court found after trial that Gotts is entitled to qualified immunity. Order on Judgment as a Matter of Law ("Post-Trial Motions Order") at 15 (Dkt. 881).

A prevailing party is one who succeeds on any significant issue in the litigation, resulting in a "material alteration of the legal relationship of the parties." *Tex. State Tchrs. Ass'n v. Garland Indep. School Dist.*, 489 U.S. 782, 792–93 (1989).  Here, Plaintiff has obtained a substantial jury verdict and punitive damages against Renegar. Thus, Plaintiff prevailed against Renegar. However, given the Court's ruling granting Gotts qualified immunity, Plaintiff did not prevail as to Gotts. Plaintiff also did not prevail against the other dismissed Defendants.

## B.       Lodestar

Plaintiff seeks a total fee amount based on their calculated lodestar. *See generally* Mot. Defendants dispute the fee amount, arguing that Plaintiffs hourly rates and hours are both excessive, and that the lodestar should also be reduced. *See generally* Renegar Opp'n; Gotts Opp'n. Defendants assert broadly that Plaintiff's hours are excessive. *See generally* Renegar Opp'n; Gotts Opp'n. Renegar claims that if any award is given it should be $585,775. Declaration of John D. O'Connor ("O'Connor Decl.") ¶ 86.

Defendants also make allegations regarding fraudulent billing with respect to Plaintiff's paralegals' bills and Mr. Beck's standing with the California bar. *Id*. ¶¶ 87-115. The Court has presided over this case for approximately six years and while it has taken issue with Plaintiff's counsel's conduct at times, it declines to accept as true Defendants' speculative accusations. The Court in no way concludes that Plaintiff's counsel's conduct here rises to the level of fraud.

The Court first turns to Plaintiff's hourly rates. Then the Court will turn to the Plaintiff's counsel's hours and whether any further lodestar adjustments need to be made.

### 1. Plaintiff's Billing Rates

A "reasonable hourly rate" for purposes of determining the appropriate lodestar figure "is ordinarily the 'prevailing market rate in the relevant community.'" *Kelly v. Wengler*, 822 F.3d 1085, 1099 (9th Cir. 2016) (citation omitted). The Ninth Circuit has "repeatedly held that the determination of a reasonable hourly rate is not made by reference to the rates actually charged to the prevailing party." *Welch v. Metro Life Ins. Co.*, 480 F.3d 942, 946 (9th Cir. 2007). "Rather, billing rates 'should be established by reference to the fees that private attorneys of an ability and reputation comparable to that of prevailing counsel charge their paying clients for legal work of similar complexity.'" *Id.*

Plaintiff requests an hourly rate of $850 for Narine Mkrtchyan, an hourly rate of $1,150 for Thomas Beck, and an hourly rate of $200 for paralegal work.[1] The Court assesses each of these rates in turn.

Narine Mkrtchyan:

Ms. Mkrtchyan has been a police misconduct litigator since 2014, and a trial lawyer for 19 years when she began her career as a public defender. Mot. at 16. She has been in private practice since 2009. *Id.*

Ms. Mkrtchyan's expert provides examples where attorneys with similar years of experience to Ms. Mkrtchyan have been approved rates in the approximate range of $850 per hour. Declaration of Carol Sobel ("Sobel Decl.") ¶¶ 22-36 (Dkt. 888-3). However, while the Court concludes that these attorneys have similar experience to Ms. Mkrtchyan in terms of years, the Court concludes that the credentials are not similar. For example, Ms. Sobel submits rates from a recent action involving Gibson Dunn as a comparison point. *Id.* ¶¶ 27-28. Ms. Sobel also submits an example involving a litigator who works at Dale Galipo and also teaches

---

[1] Plaintiffs' attorney fee calculations include time spent on paralegal tasks. As explained in further detail below, the Court finds the inclusion of reasonable hours spent on paralegal tasks reasonable, as the Supreme Court has held that attorney fee awards may include compensation for work of paralegals at market rates. *See Missouri v. Jenkins by Agyei*, 491 U.S. 274 (1989).

at University of California Irvine. The Court finds these comparison inapt and also notes that Ms. Sobel did not identify—nor has the Court been able to locate—any fee approvals for Ms. Mkrtchyan herself, specifically. The Court finds the absence of any such approvals telling given Ms. Mkrtchyan's extensive years of experience.

Furthermore, as this Court has repeatedly noted, Ms. Mkrtchyan has committed numerous instances of misconduct which points toward reducing her hourly rate. *See Karton v. Ari Design & Constr., Inc.*, 61 Cal. App. 5th 734, 747 (2021) ("Excellent lawyers deserve higher fees, and excellent lawyers are civil. Sound logic and bitter experience support these points."). The Court made some of these findings in its Post-Trial Motions Order, but repeats them here:

- Magistrate Judge McCormick's court proceedings were repeatedly interrupted by inappropriate comments and counsel's conduct. She repeatedly threatened to leave the proceedings, disobeyed Judge McCormick's orders, and, in fact, left the proceedings without authorization by the Court.

- During depositions she slammed her fists on the table and threw documents across the deposition table. Ms. Mkrtchyan also made multiple statement during the deposition indicating that she did not care "what one specific judge says or does not do." She also repeatedly threatened to leave and became so argumentative that the court reporter was unable to read back counsel's questions.

- Magistrate Judge McCormick also found that Ms. Mkrtchyan disconnected from a hearing before it concluded without the Court's permission.

- Magistrate Judge McCormick sanctioned Plaintiff's counsel for her conduct, including by ordering Plaintiff's counsel "to pay Defendants' counsel the costs of the court reporter and videographer for Plaintiff's August 14, 2020 deposition" and also that she "pay at least a portion of Defendants' reasonable expenses and attorney's fees for bringing [their sanctions] motion." *See generally* Order re: Defendants' Motion for Sanctions (Dkt. 144).

- Ms. Mkrtchyan's conduct continued as this matter proceeded to trial.

- She failed to timely provide trial exhibits to Defendants' counsel.
- Ms. Mkrtchyan frequently interrupted the Court and disagreed with evidentiary rulings in front of the jury.
- Ms. Mkrtchyan verbally attacked and also disobeyed the Court's rulings.
- Ms. Mkrtchyan spontaneously walked out of the courtroom during the middle of proceedings.
- Ms. Mkrtchyan could not frame a proper question throughout the proceedings. The questions were invariably argumentative, leading, or compound, and repeated again and again after the Court had made rulings.
- Ms. Mkrtchyan also made several inflammatory statements.
  - "I hope everyone in this courtroom gets a stroke. Everyone in this courtroom gets a stroke so that you understand what this man is going through right now in this court." Trial Tr., Day 7, vol. I, at 10:23-11:1 (May 9, 2025) (Dkt. 865).
  - "Today they're going to tell us *Get on the ground* and then they will Taser us. Tomorrow they will shoot us, if we don't get down on the ground. Is that what we want from our police officers?" Trial Tr., Day 13, vol. I, at 82:1-5 (May 20, 2025) (Dkt. 876).
  - "If he bleeds, he can die. For the horror, you can hear his screams. The horror he felt at that point moment will not escape us. We will remember it for the rest of our lives. I will remember. This case has taken an emotional toll on me, too." Trial Tr., Day 13, vol. I, at 71:11-15 (May 20, 2025) (Dkt. 876).

Indeed, the Court notes that Ms. Mkrtchyan's misconduct stretches beyond the instant proceedings and to other cases. *See Cradduck v. Hilton Domestic Operating Co.*, 112 Cal. App. 5th 284, 287 (2025) ("Such conduct is reprehensible and untenable, and accordingly, we are referring Mkrtchyan to the State Bar of California for potential disciplinary action.").

As such, the Court finds that Ms. Mkrtchyan's sought rate must be reduced and finds the Real Rate Report submitted by Ms. Sobel to be an effective measuring point. Ms. Sobel suggests the section of the Real Rate Report for Los Angeles dealing with employment and

labor law as a comparison, and the Court agrees that this practice area is the most similar of those listed to Ms. Mkrtchyan's practice of police misconduct litigation. *Id.* ¶¶ 35-36.

Given Ms. Mkrtchyan's small law firm and her misconduct in this case and elsewhere the Court concludes that Ms. Mkrtchyan's rate should be proportional to the first quartile in the Employment and Labor practice band from the Real Rate Report. Sobel Decl., Ex. 1 ("Real Rate Report").[2] Since Ms. Mkrtchyan's firm does not fall within the size amounts in the section specific to Los Angeles, the Court directs its attention to the section discussing the practice area in Los Angeles more broadly. *Id.* at 117. For the reasons above, the Court concludes it should look to the first quartile amount which provides for a rate of $525 an hour. Given Ms. Mkrtchyan's misconduct in this case, the Court concludes that no adjustment is needed for inflation and that a rate of $525 an hour is appropriate for Ms. Mkrtchyan.

Thomas Beck:

Mr. Beck has been a lawyer since 1978. Declaration of Thomas Beck ("Beck Decl.") ¶ 8 (Dkt. 888-2). He has been counsel in over 900 different police misconduct actions over these 47 years. *Id.* ¶ 9. He has lectured and taught extensively in his specialty field of police misconduct and been profiled and recognized in various outlets and organizations. *Id.* ¶ 10. He has also played a role in many prominent cases, such as the Rodney King case. *Id.* ¶ 11.

Here, unlike Ms. Mkrtchyan, the Court has been able to identify previous fee approvals for Mr. Beck, including some that were provided. Mr. Beck provides that he was awarded a rate of $1150/hour by Judge Wesly Hsu in *Hit &10 Miss, Inc, v. City of Long Beach*. 2: 18-cv-09996-WLH-SSC (C.D. Cal. Feb. 11, 2025). Mr. Beck also provides that he was awarded an $850 hourly rate in *Contreras v. City of Long Beach* in 2017. The Court has also identified other cases where Mr. Beck was a rate of $500 per hour in 2012, *Perrin v. Goodrich*, No. ED CV 08-00595 LLP, 2012 WL 1698296, at *6 (C.D. Cal. May 14, 2012), and $700 per hour in 2015, *Shafer v. Cnty. of Santa Barbara*, No. CV118110FMOFFMX, 2015 WL 13604246, at *8 (C.D. Cal. Sept. 8, 2015).

---

[2] Plaintiff does not include an Exhibit cover page, but the Real Rate Report is the first exhibit appended to Ms. Sobel's declaration.

Putting these together—the approved rates from $500 per hour to $1,150 per hour over a period of years—the Court concludes that Mr. Beck's rate will be slightly reduced. The Court recognizes that Mr. Beck was recently awarded a rate of $1,150 by Judge Hsu, and therefore validates a higher rate. *See Abrego v. City of Los Angeles*, No. CV1500039BROJEMX, 2017 WL 3453293, at \*6 (C.D. Cal. June 16, 2017) ("Nevertheless, the Ninth Circuit has agreed with the approach of other circuits holding that judges may rely on their own knowledge of customary rates and their experience concerning reasonable and proper fees."). As such, the Court approves a rate of $1,000/hour for Mr. Beck.

Paralegals

Defendants do not seriously challenge Plaintiff's proposed rate of $200/hour for the paralegals used in this case. Instead, they claim that Plaintiff provided insufficient evidence and that the paralegal fees are being used to improperly compensate Mr. Beck. The Court finds $200 to be an appropriately conservative rate for paralegal work and is unpersuaded that Plaintiff perpetrated any fraud. As such, a rate of $200 per hour is appropriate.

## 2. Plaintiff's Billable Hours

Plaintiff requests compensation for 3,668.70 hours worked by Ms. Mkrtchyan, 119.75 hours worked by Mr. Beck, and 696 hours worked by Plaintiff's paralegals. Mot. at 6. In the Ninth Circuit, "[t]he number of hours to be compensated is calculated by considering whether, in light of the circumstances, the time could reasonably have been billed to a private client." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1111 (9th Cir. 2008). A district court should exclude hours that are "excessive, redundant, or otherwise unnecessary." *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1203 (9th Cir. 2013). "[W]hen faced with a massive fee application the district court has the authority to make across-the-board percentage cuts either in the number of hours claimed or in the final lodestar figure 'as a practical means of trimming the fat from a fee application.'" *Gates v. Deukmejian*, 987 F.2d 1392, 1399 (9th Cir. 1992).

Defendants do not dispute Mr. Beck's sought hours. O'Connor Decl. ¶ 59. Nor do they challenge the paralegal hours, other than to claim they are intended to compensate for fraud. *Id.*

¶p 87-115. As the Court declines to find any such fraud, the Court turns to Ms. Mkrtchyan's hours.

With respect to Ms. Mkrtchyan's hours the Court concludes that on occasion she overbilled for her time. For example, Ms. Mkrtchyan billed a boilerplate 14 hours per day for every day of the fourth trial, Mot., Ex. A ("Plaintiff's Billing Records") at 41, while the billing for the earlier trials varied by day but was generally in the 10 to 12 hour range, *see, e.g.*, *id.* at 32, 34. Furthermore, Ms. Mkrtchyan billed extensively for ostensibly preparing for re-trials, despite the fact that all of the previous trials in this matter should have resulted in less preparation being necessary for the later trials. All of the following examples were billed in preparation for the *fourth re-trial*, when the need for preparation should have been minimal.

- 9.9 hours for "Preparing for trial; trial notes; opening statement; jury selection issues; review of exhibits; discussion with YH re trial." *Id.* at 40.
- 7.5 hours for "Review of Renegar depos and video depo ; notes for P preparation of trial." *Id.*
- 7.8 hours for "Preparing for trial; review of trial notes, preparing updated exhibits." *Id.*

The Court also concludes that many of Ms. Mkrtchyan's entries are vague such that the Court cannot ascertain whether they are legitimate. *See, e.g.*, *id.* at 2 ("Preparing initial disclosures."); *id.* at 23 ("Preparing for trial; witness preparation."). Ms. Mkrtchyan also appears to have billed for administrative and menial tasks which are not compensable as legal fees. *MacDougal v. Catalyst Nightclub*, 58 F. Supp. 2d 1101, 1105 (N.D. Cal. 1999) ("When a lawyer spends time on tasks that are easily delegable to non-professional assistance, legal service rates are not applicable." (quoting *New Mexico Citizens for Clean Air and Water v. Espanola Mercantile Company, Inc.,* 72 F.3d 830, 834 (10th Cir. 1996)). There are several such menial tasks on her billing entries. *See, e.g.*, Plaintiff's Billing Records at 23 (2.5 hours for "[d]ownloading videos and photos of scene from cell phone to dropbox for defense"); *id.* at 40 (8.3 hours for "bought supplies for trial, exhibit books etc" among other legal tasks).

Finally, the Court concludes that much of Ms. Mkrtchyan's entries also qualify as block billing. "Block billing is the time-keeping method by which each lawyer and legal assistant enters the total daily time spent working on a case, rather than itemizing the time expended on specific tasks." *Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 945 n. 2 (9th Cir. 2007). As noted above, the fee applicant bears the burden to document the time for which compensation is requested. *Id.* at 945–46. A district court may therefore impose reductions if it is unable to attribute hours to one or another task because of, for example, block billing. *Id.* at 948.

Below are some examples of Ms. Mkrtchyan's block billing:

- 10.7 hours for "Preparing closing argument; powerpoint presentation; review of notes for final witnesses; discussion with paralegal on powerpoint presentation; discussion with YH." Plaintiff's Billing Records at 42.

- 8.0 hours for "Sent a meet and confer invite to defense re billing timesheets with no response; drafting a motion to compel/DSC for billing timesheets; review and updating of costs bill; revise and update fees motion ; back and forth with TB re his billing timesheets and declaration for fees." *Id.* at 43.

- 8.2 hours for "Status conference; judge set another trial date ; spoke with appellate lawyer re appellate options; spoke with LA times re mistrial ; sent press release to several news outlets ; considering dismissal for appeal because do not believe will *ever* get a fair trial or verdict in this court." *Id.* at 32.

For all of the foregoing reasons, the Court determines that a reduction of Ms. Mkrtchyan's hours is necessary. Accordingly, the Court reduces Ms. Mkrtchyan's hours by 40% from 3,668.70 to 2,201.22 hours.

### 3. Lodestar Calculation

Using the amounts from above the Corut computes Plaintiff's counsel lodestar as follows:

| Counsel | Hourly Rate | Billable Hours | Lodestar |
|---|---|---|---|
| Narine Mkrtchyan | $525 | 2,201.22 | $1,155,640.50 |
| Thomas Beck | $1,000 | 119.75 | $119,750.00 |
| Paralegal | $200 | 696 | $139,200.00 |

The above provides for a total lodestar of $1,414,590.50.

### C.    Lodestar Adjustment

Plaintiff's counsel has nobly persevered through prolonged litigation. She has had to advance costs, with no guarantee of success, to obtain providers and experts. Plaintiff's counsel should be justly compensated for the time and labor she has dedicated to this case. In addition, by the fourth trial Defendants were on notice that they would likely face liability because of the verdicts in the previous trials. In short, Defendants were forewarned that Plaintiff's counsel would likely prevail, entitling her to fees and costs. Thus, the award should be adequate to sufficiently compensate Plaintiff's counsel for her efforts.

The Court next evaluates whether any further adjustments are needed to the lodestar. As the Ninth Circuit has held, "[a] second critical component of attorney's fee calculations under 42 U.S.C. § 1988 is found in the Supreme Court's analysis in *Hensley*." *McCown v. City of Fontana*, 565 F.3d 1097, 1103 (9th Cir. 2009). Using this framework, "the reasonableness of a fee award is determined by answering two questions: 'First, did the plaintiff fail to prevail on claims that were unrelated to the claims on which he succeeded? Second, did the plaintiff achieve a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award?'" *Id.* (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)).

Turning to the first component of this analysis, the Court notes that Plaintiff prevailed on one claim against one defendant in reaching the final jury verdict in this case. The Second Amended Complaint (Dkt. 28) in this action advanced separate causes of action against each of eight defendants: seven deputies and the County of Orange. Plaintiff's false arrest and

-16-

unreasonable search claims were dismissed on summary judgment, along with all of the claims against Defendant County of Orange. *Holloway v. Cnty. of Orange*, 538 F. Supp. 3d 973, 976 (C.D. Cal. 2021). Plaintiff's conspiracy claims and claims against two defendant deputies were also dismissed prior to trial. At the conclusion of the third trial, three other deputy defendants were determined to have qualified immunity and thus could not be held liable. Finally, after the fourth trial the Court made a similar determination for Defendant Gotts. This leaves only the verdict against Defendant Renegar at the conclusion of the fourth trial. Thus, the vast majority of this litigation was spent litigating issues and claims that did not end up prevailing. The Court concludes that while Plaintiff has prevailed, the ultimate verdict was only on one of the many original claims. While these claims share a factual nexus with the excessive force claim against Renegar that prevailed, their unnecessary litigation and inclusion in this case only served to prolong what should have been a short and simple case. Thus, they are unrelated in that the prevailing excessive force claim did not rest on or inculpate any of the other dismissed claims against any of the other defendants.

The Court also notes that Plaintiff played a direct role in this prolonged litigation as it was due to Plaintiff that a mistrial occurred in the second trial. *See Athena Cosms., Inc. v. AMN Distribution Inc.*, No. 2:20-CV-05526-SVW-SHK, 2022 WL 20766003, at *4 (C.D. Cal. Nov. 15, 2022) (deducting from the award of fees the time that the plaintiff's lawyer spent during the first trial because her "disruption . . . caused a mistrial").

Turning to the second factor, the *McCown* court determined that "in judging the plaintiff's level of success and the reasonableness of hours spent achieving that success, a district court should "'give primary consideration to the amount of damages awarded as compared to the amount sought.'" *McCown v. City of Fontana*, 565 F.3d 1097, 1104 (9th Cir. 2009) (quoting *Farrar v. Hobby,* 506 U.S. 103, 114 (1992)). Here, at the end of the day Plaintiff has received a jury award of $337,000 in damages and $45,000 in punitive damages against Renegar. This is significantly below the fees award of $1,414,590.50 that would be awarded under the operative lodestar. This necessitates further reduction. Plaintiff achieved success here, but the success achieved was limited in comparison to what the lodestar suggests.

Lawyers should not be rewarded for limited success achieved through protracted litigation. *See Bell v. VF Jeanswear LP*, 819 F. App'x 531, 534 (9th Cir. 2020) ("[T]he district court did not abuse its discretion in reducing the lodestar formula by 40 percent based on its finding that Bell's counsel substantially protracted the litigation."). To hold otherwise would allow attorneys to deliberately slow roll their cases and reap profits at the end when the case eventually comes to a close. This results in perverse incentives that the Court refuses to condone. Attorneys should be motivated to efficiently run their cases and achieve results for their clients. That is why the Court holds as it does here. Plaintiff's counsel achieved a material benefit for their client, but the Court concludes that counsel may not profit at a level multiples above what Plaintiff achieved.

The Court also notes that Defendants sought to entirely invalidate Plaintiff counsel's fee request due Ms. Mkrtchyan's misconduct in this case. *See* Renegar Opp'n at 10-23. The Court concludes this would be inappropriate and that Plaintiff's counsel should receive an award for the reasons given above. However, the Court does find that Ms. Mkrtchyan's inappropriate conduct was a significant factor in contributing to this prolonged litigation and each of the lengthy four trials. *See Snoeck v. ExakTime Innovations, Inc.*, 96 Cal. App. 5th 908, 911 (2023) (concluding that a court "may consider an attorney's pervasive incivility in determining the reasonableness of the requested fees" and approving a downward multiplier because of incivility); *Skender v. Eden Isle Corp.*, 33 F.4th 515, 521 (8th Cir. 2022) ("The court may also reduce the lodestar if, for example, the plaintiff does not obtain all the relief sought or if the court detects unprofessional conduct on the part of counsel."). Much of this litigation's tortured and prolonged existence is due to the inappropriate conduct of Ms. Mkrtchyan. While Ms. Mkrtchyan achieved a material benefit for her client in the end as discussed above, she should not be permitted to profit from her own inappropriate conduct that directly caused unneeded expenditures of time. Indeed, as noted above, the witness questions posed by Ms. Mkrtchyan during the trials were frequently redundant, compound, or argumentative, and consumed an extraordinary amount of time. Even after the Court sustained objections to Ms. Mkrtchyan's questioning, she ignored these rulings and continuously re-asked the same inappropriate

questions. She also openly disagreed with and expended time arguing with other rulings during trial. Thus, it is Plaintiff's counsel's own inappropriate conduct that caused much unneeded expense of time in this case. The Court should not permit Plaintiff's counsel to profit from her own inappropriate conduct.

For the above reasons, the Court further reduces the lodestar by 40%. This results in an amount of $848,754.30.

**D. Costs**

Plaintiff seeks $142,485.86 in costs and expenses. Defendant Renegar argues that Plaintiff provides insufficient support to recover costs and expenses. Renegar Opp'n at 9. The Court has reviewed Plaintiff's submissions and disagrees. Accordingly, Plaintiff may recover costs and expenses.

However, it is the case that a prevailing plaintiff in a § 1983 case may not recover expert witness fees pursuant to § 1988. *Dominguez v. City of San Jose*, No. 18-cv-04826-BLF, 2023 WL 2717266, at *8 (N.D. Cal. Mar. 29, 2023) ("Plaintiffs concede that expert fees are not recoverable . . . . And the Court agrees. *See* 42 U.S.C. § 1988(c).") Accordingly, the Court deducts the $42,050 allocated toward expert fees in Plaintiff's submissions. Thus, the Court concludes Plaintiff may recover $100,435.86 in costs and expenses.

**E. Pre- and Post-Judgment Interest**

Plaintiff is entitled to post-judgment interest. 28 U.S.C. § 1961.

As for pre-judgment interest, "the ultimate decision whether to award prejudgment interest lies 'within the court's sound discretion, to be answered by balancing the equities.'" *Barnard v. Theobald*, 721 F.3d 1069, 1078 (9th Cir. 2013). Here, plaintiff did not set forth the equities that favor the award of pre-judgment interest, and, therefore, the court denies Plaintiff pre-judgment interest.

**F. Motion to Compel**

The Court denies Plaintiff's Motion to Compel and the attendant request for the billing records of defendants' counsel. First, the Court concludes from the submissions before it that the Orange County Sheriff's Department and Renegar do not have these billing records and that

Plaintiff instead would need to go to another entity to obtain these records. Because a party cannot produce records it does not possess, the Court concludes this motion is improper.

In addition, the Court agrees with Defendants' reading of *Los Angeles Conty Board of Supervisors v. Superior Court*, 2 Cal. 5th 282, 289 (2016). The records Plaintiff has requested here are for a pending and active matter. This case is certainly still active, and the billing records of defense counsel are thus still privileged. *Id.* at 300. The Court is also not persuaded by Plaintiff's argument that the Court must look to California law on this privilege issue. Plaintiff sought these records through the California Public Records Act, so California law should guide the Cout's analysis.

**IV.    DISPOSITION**

For the foregoing reasons, the Court **DENIES** Plaintiff's Motion to Compel and **GRANTS IN PART AND DENIES IN PART** Plaintiffs' Motion for Attorneys' Fees and Costs.

The Court **AWARDS** Plaintiff's counsel $848,754.30 in fees and $100,435.86 in costs and expenses.

DATED: October 14, 2025

_____
DAVID O. CARTER
UNITED STATES DISTRICT JUDGE