UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| JEREMY HOLLOWAY<br><br>    Plaintiff,<br><br>vs.<br><br>COUNTY OF ORANGE ET AL.,<br><br>    Defendants. | Case No. 8:19-CV-01514-DOC-DFM<br><br>ORDER GRANTING DEFENDANT JAMESON GOTTS' JUDGMENT AS A MATTER OF LAW [833]; ORDER DENYING DEFENDANT CHAD RENEGAR'S JUDGMENT AS A MATTER OF LAW [834]; ORDER DENYING DEFENDANTS' MOTION FOR A NEW TRIAL [845] |

In the fourth trial in this matter, the jury concluded that both Defendant officers—Deputy Jameson Gotts ("Gotts") and Deputy Chad Renegar ("Renegar")—used excessive force when apprehending Plaintiff Jeremy Holloway ("Plaintiff" or "Holloway") and that Plaintiff suffered $337,000 in damages. Redacted Special Verdict (Dkt. 830). The jury also concluded that Plaintiff was entitled to an award of punitive damages in the amount of $30,000 against Gotts and $45,000 against Renegar. *Id.*

Both Defendants filed Motions for Judgment as a Matter of Law (Dkt. 833, 834) and a Motion for a New Trial (845). For the reasons explained below, the Court **GRANTS** Gotts' Motion for Judgment as a Matter of Law reversing the jury's verdict as to his use of excessive force and removing punitive damages pertaining to his conduct. But the Court **DENIES** Renegar's Motion for a Judgment as a Matter of Law leaving untouched the jury's verdict and award of compensatory and punitive damages. Considering this, the Court **DENIES** Defendants' Motion for a New Trial.

## I.    Factual Background

As Plaintiff is the non-moving party, the Court construes the evidence presented at trial in the light most favorable to him and draw all reasonable inferences in his favor. *See E.E.O.C. v. Go Daddy Software, Inc.*, 581 F.3d 951, 961 (9th Cir. 2009). This case concerns an altercation between Plaintiff and Defendants at a campground that ended with Plaintiff's arrest.

### A.  First Encounter

Around 3 a.m., Orange County dispatch received a call from Brian Fuerbach, who was camping in his RV. Fuerbach informed the dispatcher that he heard a man and woman yelling, fists being landed, and a woman pleading to stop hitting her as she is just a girl. The sounds of pleading and punches ceased after Fuerbach heard a tent unzip and someone run across the gravel. Fuerbach reported that the sounds were coming from inside a tent that was pitched near a white truck adjacent to Fuerbach's campsite. Deputy Chad Renegar, along with other officers, responded to Fuerbach's call. When they arrived at the campground, another camper identified Plaintiff's campsite, Campsite 65, as the source of the disturbance. Campsite 65 was both adjacent to Fuerbach's RV and had a white truck parked nearby.

Renegar proceeded to Campsite 65 and politely asked Holloway to exit his tent. After some back and forth, Holloway complied. Outside his tent, Holloway was uncooperative, agitated, and hostile; he also demanded to know why the officers were there. Holloway informed Renegar that he was on probation, and subject to search and seizure at any time. After searching Holloway's campsite, the officers could not locate the girl, but they did find several camping knives. The officers left without placing Holloway under arrest. Throughout the interaction, Holloway was angry that some campers had called 9-1-1, repeatedly asked the officers who had called, and called the campers who called "assholes and morons."

Within fifteen minutes of the officers departing the scene, Orange County dispatch received another call from the campground. The caller reported that Holloway was walking around the campground looking for and threatening the person who called the police, that he was rummaging through a white RV, and that a little girl was screaming. The call was classified as a priority one, meaning that there was a potentially life-threatening emergency.

**B. Second Encounter**

Renegar, followed closely by two other deputies, was the first officer to respond to the second call. As the three officers approached Holloway, Renegar repeatedly ordered Holloway to show his hands and get on the ground. Holloway showed his hands, but he did not get on the ground and instead asked why the officers had returned. In between shouting orders at Holloway, Renegar repeatedly asked the officer who was close behind him, whether he had a taser.

Renegar, Holloway testified, then punched him in the face. Holloway momentarily lost consciousness and fell onto his stomach with his arms pinned beneath him, near his waistband. Two other officers joined Renegar after the initial punch. They each placed their bodyweight on Holloway's back and tried, unsuccessfully, to free his arms so that they could handcuff him. Renegar, meanwhile, punched Holloway in the side but he too could not secure Holloway's hands. Renegar then attempted to deploy a taser to Holloway's buttocks, but the taser was ineffective.

-3-

Deputies Borba and Gotts arrived on the scene around the time Renegar unsuccessfully deployed the taser. Deputy Borba successfully freed one of Holloway's arms from beneath Holloway's stomach.

Renegar then deployed the taser for a second time during the struggle; this time, to one of Holloway's calves. The officers then finally freed Holloway's other arm and handcuffed him. As soon as Holloway was in handcuffs, the officers immediately went to Holloway's tent to look for a little girl, but they were unable to find her. Holloway was arrested for resisting arrest and battery on a police officer.

At trial, Holloway presented evidence of several injuries that he claimed were a result of the altercation, including (1) photos showing bruising and swelling to his face, (2) ongoing back pain, including a spinal injury, and (3) emotional distress.

This was the fourth trial in this case. The first trial ended in a hung jury. The Court declared a mistrial in the second trial after Plaintiff violated a pretrial order not to mention the first trial. In the third trial, the jury deliberated for less than one day and concluded that all five Defendant Officers violated Plaintiff Jeremy Holloway's Fourth Amendment right to be free from excessive force, but that he did not sustain any compensable injuries. In post-trial motions, the Court granted qualified immunity to three of the officers on the scene and granted a new trial on all issues with Renegar and Gotts as the remaining Defendants.

In this fourth trial, the jury deliberated for around two days and found that both Defendant officers—Gotts and Renegar—used excessive force when apprehending Plaintiff and that Plaintiff was owed general damages and punitive damages. After the fourth trial, both officers moved for judgment as a matter of law[1] and for a new trial.[2] Plaintiff opposed all three Motions.[3] As ordered by the Court, Defendants filed a joint brief regarding remittitur of damages[4] and Plaintiff also filed a brief on this issue.[5]

---

[1] *See* Gotts' Motion for Judgment as a Matter of Law ("Gotts' Motion") (Dkt. 833); Renegar's Motion for Judgment as a Matter of Law ("Renegar's Motion")(Dkt. 834).

[2] *See* Defendants' Motion for a New Trial ("Motion for a New Trial") (Dkt.845).

[3] *See* Plaintiff's Opposition for Judgment as Matter of Law ("Opp'n. JMOL") (Dkt. 836); Plaintiff's Opposition for Motion for New Trial ("Opp'n. New Trial") (Dkt. 847).

[4] *See* Joint Brief by Defendants Regarding Remittitur ("Defendants' Remittitur Brief") (Dkt. 879).

[5] *See* Plaintiff's Supplement to Motion Hearing ("Plaintiff's Remittitur Brief") (Dkt. 880).

## II.    Motions for Judgment as a Matter of Law

### A. Legal Standard

#### 1.    Judgment as a Matter of Law

Under Federal Rule of Civil Procedure 50(a), "[i]f a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may: (A) resolve the issue against the party; and (B) grant a motion for judgment as a matter of law against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue." Fed. R. Civ. P. 50(a). A Rule 50(b) motion for judgment as a matter of law is not a freestanding motion but a renewed Rule 50(a) motion.[6] *Go Daddy Software*, 581 F.3d at 961.

"Judgment as a matter of law is appropriate when the evidence presented at trial permits only one reasonable conclusion.'" *Torres v. City of L.A.*, 548 F.3d 1197, 1205 (9th Cir. 2008) (quoting *Santos v. Gates*, 287 F.3d 846, 851 (9th Cir. 2002), *cert. denied, Roberts v. Torres*, 556 U.S. 1183 (2009)). "In other words, '[a] motion for a judgment as a matter of law is properly granted only if no reasonable juror could find in the non-moving party's favor.'" *Id*. (quoting *El-Hakem v. BJY Inc*., 415 F.3d 1068, 1072 (9th Cir. 2005)). A "jury's verdict must be upheld if it is supported by substantial evidence, which is evidence adequate to support the jury's conclusion, even if it is also possible to draw a contrary conclusion." *Pavao v. Pagay*, 307 F.3d 915, 918 (9th Cir. 2002).

When considering a motion for judgment as a matter of law, the court must view the evidence "'in the light most favorable to the nonmoving party, and all reasonable inferences must be drawn in favor of that party.'" *Torres*, 548 F.3d at 1205–06 (quoting *LaLonde v. County of Riverside*, 204 F.3d 947, 959 (9th Cir. 2000)).

---

[6] Procedurally, both Defendants properly brought their Rule 50(a) motions during trial and the Court bookmarked them to be heard at a later time. The case proceeded to be heard by the jury and the Defendants then renewed their request for Judgment as a Matter of law under rule 50(b).

## 2.    Excessive Force

An officer violates the Fourth Amendment when they use force "greater than is reasonable under the circumstances." *Graham v. Connor*, 490 U.S. 386, 396 (1989). Courts determine whether a use of force is objectively reasonable by "careful[ly] balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Id.* With respect to the Fourth Amendment intrusion side of the balance, courts "evaluat[e] the type and amount of force inflicted." *Chew v. Gates*, 27 F.3d 1432, 1440 (9th Cir. 1994). For the governmental interest side of the ledger, courts must examine all relevant factors, including "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Brooks v. Clark Cnty.*, 828 F.3d 910, 920 (9th Cir. 2016). "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396.

## 3.    Qualified Immunity

"Qualified immunity shields government officials from civil liability unless a plaintiff establishes that: (1) the official violated a constitutional right; and (2) that right was 'clearly established' at the time of the challenged conduct, such that 'every reasonable official' would have understood that what he is doing violates that right." *Morales v. Fry*, 873 F.3d 817, 821 (9th Cir. 2017) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 735, 741 (2011)). "[T]he two prongs of qualified immunity balance two important, competing interests: the need to hold public officials accountable for irresponsible actions, and the need to shield them from liability when they make reasonable mistakes." *Id.* at 822.

Because qualified immunity is a question of law, it is often decided before trial. *See Comm. House, Inc. v. City of Boise*, 623 F.3d 945, 968 (9th Cir. 2010); *S.R. Nehad v. Browder*, 929 F.3d 1125, 1140 (9th Cir. 2019). A qualified immunity case must proceed to trial, however, "when there are disputed factual issues that are necessary to a qualified immunity decision." *Nehad*, 929 F.3d at 1140 (quoting *Morales*, 873 F.3d at 821).

When deciding whether the right was clearly established on a Rule 50(b) renewed motion for judgment as a matter of law, "the jury's view of the facts must govern" the court's analysis. *A.D. v. Cal. Highway Patrol*, 712 F.3d 446, 457 (9th Cir. 2013). That is, the court must "view[] the evidence in the light most favorable to the nonmoving party, and draw[] all reasonable inferences in favor of the nonmoving party." *Tan Lam v. City of Los Banos*, 976 F.3d 986, 997 (9th Cir. 2020).

A right is clearly established when "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Hernandez v. Mesa*, 582 U.S. 548, 554 (2017). "The function of the inquiry…is to ensure that officials are subject to suit only for actions that they knew or should have known violated the law." *Cates v. Stroud*, 976 F.3d 972, 978 (9th Cir. 2020). Although a case directly on point is not necessary, "[c]learly established law *usually* means that there is a case where an officer acting under similar circumstances was held to have violated the Fourth Amendment." *Hill v. City of Fountain Valley*, 70 F.4th 507, 517 n.6 (9th Cir. 2023) (emphasis added). Whether law is clearly established is assessed "at the time of the challenged conduct." *Mendoza v. Block*, 27 F.3d 1357, 1360 (9th Cir. 1994).

The Supreme Court has reiterated that "clearly established law should not be defined at a high level of generality." *E.g.*, *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (per curiam). The inquiry "must be taken in the light of the specific context of the case, not as a broad general proposition." *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (per curiam). "Such specificity is especially important in the Fourth Amendment context," because "it is sometimes difficult for an officer to determine how" a legal doctrine like excessive force "will apply to the factual situation the officer confronts." *Mullenix*, 577 U.S. at 12 (internal quotations omitted). Put simply, qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *White v. Pauly*, 580 U.S. 73, 78 (2017).

**B. Gotts' Motion for Judgment as a Matter of Law**

After the third trial, the Court denied Gotts qualified immunity in the post-trial Order. *See generally* Omnibus Order on Post-trial Motions Submitted After the Third Trial ("Omnibus Order Post Third Trial") (Dkt. 679). This holding was based on the fact that a reasonable officer

in Gotts' position would have known that kneeing a prone suspect in the head who was about to be handcuffed would violate the Fourth Amendment. Omnibus Order Post Third Trial at 12. This Court emphasized that the question of qualified immunity in the third trial was "a close one," and that denying it was due to Holloway's testimony that Gotts kneed him in the head several times. Omnibus Order Post Third Trial at 11. But the same cannot be said about the fourth trial. Holloway did not testify that Gotts kneed him in the head—he only stated that he saw "another officer that wasn't from the first three come and knee [him] right in the eye, in the temple area of [his] right side." Reporter's Tr. at 23:5–10, Jury Trial, May 8, 2025, 8:05 a.m., Santa Ana, Cal ("May 8 Tr."). No other evidence was presented to the jury that Gotts kneed Holloway in the head. Rather, the evidence presented during the fourth trial points to the opposite conclusion; the body camera footage does not even place Gotts at the scene when the alleged kneeing or kicking in the head occurred.

The jury in this case has already conducted the first prong of the qualified immunity analysis—that Gotts violated Holloway's Fourth Amendment right to be free from excessive force. But in the post-trial motions Defendants argue that the jury's excessive force findings rest on "rank speculation." Gotts' Motion at 9. At the outset of its analysis, the Court notes that it is not to make credibility determinations or weigh the evidence, rather the Court is only permitted to ask whether the evidence "permits only one reasonable conclusion." *Pavao,* 307 F.3d at 918.

Defendants argue that the Court should grant their Motion because Plaintiff failed to attribute any specific act of excessive force to Gotts; accordingly, they contend, Gotts is entitled to qualified immunity. *See generally* Gotts' Motion. Defendants further assert that Plaintiff presented no evidence showing that Gotts acted with malice, oppression, or reckless disregard, and, therefore, punitive damages are unwarranted. *See* Gotts' Motion at 26-27. In opposition, Plaintiff contends that it is not necessary to identify which officer delivered each specific blow; rather, individual participation in the use of force is sufficient. *See* Opp'n. JMOL at 14. Plaintiff further argues that the Court must defer to the jury's findings, including its award of punitive damages. *See* Opp'n. JMOL at 23.

## 1. Gotts is Entitled to Qualified Immunity

The Court concludes that Gotts is entitled to qualified immunity under both prongs of the controlling test: (1) the evidence does not support a finding that Gotts violated Holloway's constitutional rights; and (2) even if it did, the alleged conduct did not violate a clearly established right.

### a. No Constitutional Violation

First the Court analyzes whether the evidence presented at trial could have reasonably supported a finding that Holloway's constitutional rights were violated. *See Torres*, 548 F.3d at 1205. The jury in this case was instructed that to establish a Section 1983 claim against each Defendant, Plaintiff had to prove by a preponderance of the evidence that "[t]he defendant's conduct was an actual cause of the claimed injury." Jury Instructions (Dkt. 831) # 21; *see Bearchild v. Cobban,* 947 F.3d 1130, 1150 (9th Cir. 2020) (quoting *Harper v. City of Los Angeles,* 533 F.3d 1010, 1026 (9th Cir. 2008)) ("In a § 1983 action, the plaintiff must also demonstrate that the defendant's conduct was the actionable cause of the claimed injury."). Further the instruction stated that Defendants' conduct could be found to be an actual cause of a plaintiff's injury "only if the injury would not have occurred 'but for' that conduct, and the conduct has a sufficient connection to the result." Jury Instructions # 21.

Under Ninth Circuit precedent, an official whose individual actions do not rise to the level of a constitutional violation "may be held liable under section 1983 only if the official is an 'integral participant' in the unlawful act." *Peck v. Montoya*, 51 F.4th 877, 889 (9th Cir. 2022) (quoting *Reynaga Hernandez v. Skinner*, 969 F.3d 930, 941 (9thCir. 2020)). An official may be deemed an "integral participant" in a constitutional violation, "only if (1) the defendant knew about and acquiesced in the constitutionally defective conduct as part of a common plan with those whose conduct constituted the violation, or (2) the defendant set in motion a series of acts by others which the defendant knew or reasonably should have known would cause others to inflict the constitutional injury." *Id.* at 891; *see Spencer v. Pew*, 117 F.4th 1130, 1144-45 (9th Cir. 2024) (rejecting plaintiff's claim that two officers were integral participants in a third officer's use of excessive force because plaintiff did not present evidence that two of the

officers knowingly acquiesced in a third officer's unlawful conduct as a part of a common plan with him or evidence that the two officers' conduct set in motion acts that they reasonably should have known would cause the third officer to engage in unlawful conduct).

Applying these standards, the evidence presented at trial was insufficient to support a finding that Gotts either directly participated or was an integral participant in any alleged constitutional violation. Holloway did not testify that Gotts used excessive force against him nor did any other witness offer testimony attributing specific unlawful conduct or injuries to Gotts. And "mere presence at the scene of a constitutional violation is insufficient to constitute integral participation." *See Adkins v. Corrections Corporation of America*, 681 Fed.Appx. 579, 581 (9th Cir. 2017). The Ninth Circuit's reasoning in *Adkins,* applies here. The Ninth Circuit explained that the plaintiff's collective testimony establishing only that some individual defendants were present during assaults perpetrated by others was insufficient to constitute integral participation; rather there had to be specific evidence identifying an individual defendant as having participated in the alleged beating of a particular plaintiff. *See id.* Applying that here, the absence of evidence tying Gotts to any specific act of excessive force renders the claims against him legally insufficient just for being present at the scene. *See id.*

The evidence presented at trial makes it implausible that any juror could have inferred that Gotts kneed Holloway in the head. Not only was there no testimony to that effect, but a close review of the video's that night admitted at trial confirms that Gotts was not even present at the scene when Holloway was screaming that he was being kicked or kneed in the head. *See Hughes v. Rodriguez,* 31 F.4th 1211, 1219 (9th Cir. 2022) (affirming the district court's reliance on objective bodycam footage when it blatantly contradicted testimonial evidence). The following chart outlines the sequence of events as captured by all available camera footage, which, despite different timestamps, collectively shows that Gotts arrived on the scene after the alleged incident.

-10-

|  | Renegar's Footage | Pahel's Footage | Gotts' Footage |
|---|---|---|---|
| Car arrives on Scene | 5:01:54 | 5:02:11 | |
| Holloway is told to "Get on the ground now" | 5:02:42 | 5:02:37 | |
| Sounds of altercation begin with Renegar and two other officers present | 5:03:12 | 5:03:14 | |
| Holloway yells "Owe bitch you kneed me in the head" | 5:03:27 | 5:03:27 | |
| **Gotts' car arrives on the scene** | | | 5:03:46 |
| Officer yells "taser, taser, taser" the first time | 5:03:50 | 5:03:49 | 5:03:53 |
| Officer yells "taser, taser, taser" the second time | 5:03:56 | 5:03:55 | 5:30:59 |

In sum, no reasonable juror could conclude that Gotts was present at the scene long enough to have been the officer who kneed Holloway in the head in support of an excessive force claim.

Another theory presented by Plaintiff is that Gotts violated Holloway's Fourth Amendment right to be free from excessive force by failing to intercede. Officers can only be held liable for failing to intercede in situations involving excessive force if "they had an

-11-

opportunity to intercede." *Cunningham v. Gates*, 229 F.3d 1271, 1289–90 (9th Cir. 2000) (finding a failure to intervene claim failed because there was no realistic opportunity for officers to prevent a rapidly unfolding shooting). An officer has such an opportunity only if he is aware of the constitutional violation as it occurs. *See Tobias v. Arteaga*, 996 F.3d 571, 584 (9th Cir. 2021) (citing *Ramirez v. Butte-Silver Bow Cnty.*, 298 F.3d 1022, 1029–30 (9th Cir. 2002), *aff'd sub nom. Groh v. Ramirez*, 540 U.S. 551, 124 S.Ct. 1284, 157 L.Ed.2d 1068 (2004)).

As shown by the camera footage, Gotts arrived only at the tail end of the physical altercation between Holloway and the other officers. He was not present during the alleged punching by Renegar, nor was he present when Holloway was screaming that he was being kicked or kneed in the head. Gotts testified that when he arrived and exited his vehicle, he was approximately thirty feet away from the incident. Reporter's Tr. at 76:18, vol. 1, Jury Trial Day 5, May 7, 2025, 7:51 a.m., Santa Ana, Cal ("May 7 Tr."). It was pitch black, with no streetlights or artificial lighting at the campground at that early morning hour. May 7 Tr. 76:22-25. Prior to his arrival, Gotts had been informed via radio that Holloway possessed knives, a deputy had drawn a firearm (with no clear information on who had it or where it was), and that there was an active altercation in which Holloway's hands were not yet secured. May 7 Tr. 24:10-22. When Gotts exited his vehicle and began running toward the scene, he fell before reaching the altercation. May 7 Tr. 30:15-17. Then he was only involved in the incident for approximately fifteen seconds total. May 7 Tr. 54:5-7. During that time, Holloway was still actively resisting, and officers were attempting to end the struggle and secure his hands. May 7 Tr. 24: 9-12.

Given these circumstances, Gotts could only potentially be liable for any use of force occurring after his arrival. Yet there is no evidence that he saw what was occurring in the altercation or that he had a realistic opportunity to intercede in the mere seconds he was present. *See Freeland v. Sacramento City Police Dep't,* 2010 WL 408908, at *5 (E.D. Cal. Jan 29, 2010) (citing *Knapps v. City of Oakland*, 647 F. Supp. 2d 1129, 1159-60 (N.D. Cal. 2009)) ("if a constitutional violation occurs too quickly, there may be no realistic opportunity to intercede to prevent the violation."). This is also not a situation where Gotts arrived to find

-12-

Holloway already subdued or restrained, such that he could have assessed the scene and decided whether intervention was necessary. *See Stephenson v. California,* 761 F.Supp.3d 1242, 1265-67 (C.D. Cal. 2025). Accordingly, no reasonable jury could have concluded that Gotts had a realistic opportunity to intervene in the alleged use of excessive force, and thus he cannot be held liable under a failure-to-intervene theory.

The only evidence concerning Gotts' actions came from Gotts himself, who testified that he placed his knee on Holloway's upper back and pulled Holloway's left arm out to assist in handcuffing him—actions that occurred after Holloway being kneed in the head. May 7 Tr. 23:17-21. Even assuming the jury had found Gotts' use of his knee to be excessive force, he is nonetheless entitled to qualified immunity because this conduct did not violate clearly established law.

### b. No Violation of a Clearly Established Right

Under the second prong of the qualified immunity analysis, the Court must determine whether Gotts' actions of placing his knee on Holloway's upper back violated a clearly established constitutional right. *See Morales,* 873 F.3d at 821.

This issue was directly addressed by the Supreme Court in *Rivas-Villegas v. Cortesluna,* 595 U.S. 1 (2021) ("*Cortesluna*"). In *Cortesluna,* officers responded to a domestic violence call at the suspect's house. *Id.* at 2. Upon arrival, officers ordered the suspect to come out and put his hands up. *Id.* at 3-4. As plaintiff walked out of the house and towards the officers, they saw a knife in his pocket. *Id.* After the suspect did not follow orders, they shot him twice with a beanbag round from a shotgun. *Id.* Following this, Plaintiff lowered himself to the ground and an officer pressed his knee into Plaintiff's back and pulled his arms behind his back before handcuffing him. *Id.* The Ninth Circuit denied qualified immunity to this officer, relying on its earlier decision in *LaLonde v. County of Riverside,* 204 F.3d 947 (2000), which found that the use of a knee to pin a nonresistant suspect to the ground that caused permanent back injury was sufficient to violate clearly established law. *Cortesluna,* 595 U.S. at 4-5; *LaLonde,* 204 F.3d at 962.

-13-

The Supreme Court reversed the Ninth Circuit, holding that *LaLonde* did not provide sufficiently specific guidance to clearly establish that the officer in *Cortesluna* had violated the Fourth Amendment. *Cortesluna,* 595 U.S. at 7-8. The Court emphasized key distinctions between the two cases: *LaLonde* involved a noise complaint and an unarmed suspect holding a sandwich who refused Officers' entry. *Cortesluna,* 595 U.S. at 7-8; *LaLonde,* 204 F.3d at 951-52. In response, officers grabbed him by the ponytail, knocked him to the ground, pepper sprayed him, and after he had stopped resisting, one officer deliberately drove his knee into the suspects back, causing permanent injury. *Cortesluna,* 595 U.S. at 7-8; *LaLonde,* 204 F.3d at 951-52. In contrast, *Cortesulna* involved a domestic violence report possibly involving a chainsaw, an armed suspect with a knife, and a brief application of force around eight seconds to a noncompliant individual in a high-risk situation. *Cortesluna,* 595 U.S. at 7. The Court found these differences materially distinguishable and concluded that the officer in *Cortesluna* was thus entitled to qualified immunity. *Id.* at 6-7.

This case is far more analogous to *Cortesluna* than to *LaLonde.* Here, officers responded to a domestic violence call involving a potentially armed suspect. Holloway was verbally combative and failed to comply with commands. Camera footage captures officers shouting, "put your hands up," and "stop fighting" before they tased him. Renegar's Footage 5:03:48. Gotts was told before arrival via radio that Holloway had several knives including a machete and other bladed weapons. May 7 Tr. 24:10-22. This is confirmed by the fact that after Holloway was subdued, officers are heard immediately checking for knives. Renegar's Footage 5:04:25. Gotts also stated during his testimony that when he arrived, the altercation was still active, Holloway's hands were not secured, and one officer had already drawn his firearm. May 7 Tr. 24:10-22; *c.f. Spencer v. Pew,* (distinguishing *Cortesluna* when reversing a district court's granting of qualified immunity because the officer delivered multiple knee strikes to the suspects head after he was handcuffed). When Gotts applied his knee, he had no clear knowledge of where the weapons were. May 7 Tr. 24:10-22. Gotts placed his knee on Holloway's back between his shoulder blades and was only involved in the use of force for a total of fifteen seconds to prevent Holloway from being able to get up or produce a weapon,

and to assist in gaining control of his arm for handcuffing. May 7 Tr. 92:22-25. There is no testimony that Gotts, like the officer in *LaLonde*, deliberately applied excessive force or caused significant or lasting injury.

As the Supreme Court emphasized in *Cortesluna*, "[s]pecificity is especially important in the Fourth Amendment context, where it is sometimes difficult for an officer to determine how the relevant legal doctrine, here excessive force, will apply to the factual situation the officer confronts." 595 U.S. at 6 (simplified). Because "[u]se of excessive force is an area of the law 'in which the result depends very much on the facts of each case,' ... police officers are entitled to qualified immunity unless existing precedent '*squarely governs*' the specific facts at issue." *Kisela v. Hughes*, 584 U.S. 100, 104 (2018) (emphasis added) (citation omitted). No precedent "squarely governs" the facts of this case, and if anything, *Cortesluna* supports the conclusion that Gotts' actions did not violate clearly established law.

In sum, because the evidence does not support a finding that Gotts had a realistic opportunity to intercede, Gotts cannot be liable for merely being present, he was not present when the alleged excessive force occurred, and his placement of his knee did not violate clearly established law, he is thus entitled to qualified immunity. Accordingly, Gotts' Motion is **GRANTED,** and the jury's finding that he used excessive force and is liable for punitive or compensatory damages is **REVERSED**.

## C. Renegar's Motion for Judgment as a Matter of Law

Defendants argue that the Court should grant Renegar's Motion because Plaintiff repeatedly referenced the use of a taser as excessive force in violation of a Court Order, there is no corroborating evidence to Plaintiff's claim that Renegar punched Plaintiff in the face, and Plaintiff has not met his burden to establish punitive damages. *See generally* Renegar's Motion. Each argument will be assessed in turn.

### 1. Plaintiff's Counsel's References to Renegar's Use of the Taser

As to Plaintiff's counsel's references to Renegar's use of a taser, Defendants argue this violated this Court's Order and unduly prejudiced Renegar. Renegar's Motion at 8. The Court's post-trial Order after the third trial held that Renegar's use of the taser did not violate clearly

established law. Omnibus Order Post Third Trial at 8-10. Very clearly the Court ruled that Renegar's use of the taser is protected by qualified immunity, but in a footnote the Court specified:

> This conclusion does not preclude Plaintiff from presenting evidence of the tasings at the fourth trial. Although Renegar's use of the taser itself does not violate clearly established law, its use is relevant to other issues in the case (e.g., whether Gotts' knees were reasonable).

*Id.* This specific issue was reraised during trial as objections were made to Plaintiff's counsel's discussion of the taser. *See* Trial Tr. 7–9, May 9, 2025, (Dkt.865) ("May 9 Tr."); Renegar's Motion at 8-11. In response, the Court reminded the parties of the Court's previous Order when informing Defendants that they cannot claim surprise because the Court explicitly defined the admissibility of the tasings. May 9 Tr. 16-17. The Court explained that although the initial deployments of the taser were protected under qualified immunity, the effect of the taser on Holloway is relevant because it goes to the pivotal issue of Holloway's ability to resist arrest and the Deputy's actions after the taser was employed. May 9 Tr. 21-22. Nonetheless, Defendants contend that Plaintiff's counsel violated the Court's Order by continuing to characterize the taser use as excessive and unreasonable, thereby improperly inviting the jury to consider it as a separate constitutional violation. *See* Renegar's Motion at 8-11.

The Court's prior Order was informed by the fact that it would be impossible for the jury to evaluate the excessiveness of the force without the tasing because all of the camera footage includes Renegar screaming "taser, taser, taser" during the altercation with Holloway. And the operative question in excessive force cases is "whether the totality of the circumstances justifie[s] a particular sort of search or seizure." *County of Los Angeles, Calif. v. Mendez,* 581 U.S. 420, 427-28. Thus, it is imperative that the jury hear evidence and testimony regarding the use of the taser to inform its decisions about excessive force. The Court does agree with Defendants that at times Plaintiff's counsel exceeded the bounds of the Court's Order by framing the questions concerning the taser as questions of excessive force rather than just contextualization; however, the Court properly cured these instances with instructions to

counsel and the jury. For example, the Court clarified to counsel that the taser wasn't to be taken out of this context. May 9 Tr. 22, 29-30. And the Court twice read the following instruction to the jury immediately after questioning regarding the tasings:

> I'm going to instruct you as follows. I've indicated to counsel outside your presence the following: This Court holds that the initial use and drawing of the Taser did not violate department policy. But the fact that the individual was tased is presented to you, the jury, in evaluating the reasonableness of the officers' actions after the initial tasing.

Reporter's Transcript of Proceedings, Jury Trial, Day 9, Vol. I, at 40:3–16 (May 13, 2025) (Santa Ana, Cal.) ("May 13 Tr.").

As the Ninth Circuit has articulated, jurors are presumed to follow instructions. *Deck v. Jenkins*, 814 F.3d 954, 979 (9th Cir. 2016) (citing *Weeks v. Angelone*, 528 U.S. 225, 234 (2000)). The Court's rulings were also clearly understood by Plaintiff's counsel, as evidenced by her reiteration of the instruction to the jury during closing argument, stating that the "initial application of the taser initial was not in violation of the policy." Reporter's Transcript of Proceedings, Jury Trial, Day 13, at 20–21 (12:18 p.m. to 1:49 p.m. and 4:46 p.m. to 5:26 p.m.) (May 20, 2025) (Santa Ana, Cal.) ("May 20 Tr."). The Ninth Circuit has emphasized, "[a] timely instruction from the judge usually cures the prejudicial impact of evidence unless it is highly prejudicial or the instruction is clearly inadequate." *United States v. Berry,* 627 F.2d 193, 198 (9th Cir. 1980), *cert denied,* 449 U.S. 1113 (1981). Thus, any alleged prejudice arising from Plaintiff's counsel's references to the taser was effectively mitigated by the Court's clear and repeated instructions to the jury, which limited the purpose for which that evidence could be considered. The Court finds no basis to conclude that Renegar was unfairly prejudiced to a degree warranting relief, as the comments regarding the taser did not undermine the fairness of the proceedings or the reliability of the jury's verdict against him.

### 2. Plaintiff's Claim that Renegar Punched Plaintiff in the Face

Second, Defendants argue that Renegar is entitled to qualified immunity because there is no corroborating evidence supporting Plaintiff's claim that Renegar punched Plaintiff in the

face. Renegar's Motion at 11. The Court disagrees, first finding that a reasonable juror could conclude based off the evidence presented that Renegar punched Holloway in the face and that it was excessive force, and second, the Court holds that the punch violated clearly established law.

Defendants contended at trial and in their Motion that Renegar's use of force was objectively reasonable. Renegar's Motion at 13. They rely primarily on the absence of witness corroboration for Plaintiff's allegation that Renegar punched him in the face. Renegar Motion at 13.

Holloway testified at trial that Renegar approached him, punched him in the face while applying a chokehold, took him to the ground, continued punching him in the side, and choked him. May 8 Tr. 21–23. Holloway testified that he sustained injuries to his face that are consistent with being punched and they were corroborated throughout the trial by testimony of medical experts and documentation. May 8 Tr. 51-52. Moreover, Renegar stated at trial and in his police report after the incident that he did punch Holloway during the altercation out of necessity. May 13 Tr. 27.

As the Ninth Circuit has emphasized, "[b]ecause [the excessive force inquiry] nearly always requires a jury to sift through disputed factual contentions, and to draw inferences therefrom, we have held on many occasions that summary judgment or judgment as a matter of law in excessive force cases should be granted sparingly." *Santos v. Gates*, 287 F.3d 846, 853 (9th Cir.2002); *see also Liston v. County of Riverside*, 120 F.3d 965, 976 n. 10 (9th Cir.1997) (as amended) ("We have held repeatedly that the reasonableness of force used is ordinarily a question of fact for the jury."). This case is no different.

The Court concludes that the evidence presented at trial does not compel the conclusion that the only verdict the jury could have reached was that Renegar did not use excessive force. Although other witnesses did not say they saw Renegar punch Holloway in the face, that does not mean it did not occur. This incident took place around 3 a.m. in the dark with many officers present and participating in the altercation, making clear observation difficult. And the evidence does support the conclusion that Renegar could have had animus towards Holloway, as he had

already had a verbal altercation with Renegar previously that night where Holloway was acting belligerent and verbally combative. In contrast, there was no evidence that an officer like Gotts would have the same type of animus towards Holloway because they had never had any interaction before Gotts arrived to the scene during the live altercation. The Ninth Circuit recognizes that the "testimony of one witness, if believed, is sufficient to prove a fact." *United States v. Brown,* 421 F.2d 1283, 1285 (9th Cir. 1970). Furthermore, where conflicting evidence exists, "it [is] for the jury to decide which version of events to believe." *See Willis v. City of Fresno,* 680 F.App'x 589, 591 (9th Cir. 2017). Here, the evidence presented to the jury a choice between Defendant's account and Plaintiffs' account—both were supported by evidence—and the jury apparently chose Plaintiff's story. It is not the Court's role to overturn that determination.

Moving to the second prong of the qualified immunity analysis, Renegar's punch did violate clearly established law. In *Nelson v. City of Davis*, the Ninth Circuit cited cases dating back to 2001 clearly establishing "that a failure to fully or immediately comply with an officer's orders" does not "justif[y] the use of a non-trivial amount of force." 685 F.3d 867, 881 (9th Cir. 2012); *see also Gravelet-Blondin v. Shelton*, 728 F.3d 1086, 1093 (9th Cir. 2013). The most analogous of the cases cited in *Nelson* is *Smith v. City of Hemet*, 394 F.3d 689 (9th Cir. 2005) (en banc). There, police responded to a domestic violence report and found the plaintiff on the porch, separated from his wife, the alleged victim. *Id.* at 693. The plaintiff complied with the officer's instruction to show his hands but did not follow an order to put his hands on his head and walk toward the officer. *Id.* In response, the officers unleashed considerable force on the plaintiff. *See id.* at 693-94. This force, the Ninth Circuit ruled, was excessive. *Id.* at 704. The court emphasized that, because the plaintiff had removed his hands from his pockets, there was no "reason to believe that he possessed any weapon or posed any immediate threat to the safety of the officers or others." *Id.* at 702. And, although the officers were responding to a serious crime, the plaintiff was "on the porch alone and separated from his wife," indicating that he no longer posed a threat to her. *Id.*

When Renegar punched him, Holloway's "resistance" resembled the resistance in *Smith*. Like the plaintiff in *Smith*, Holloway obeyed Renegar's orders to show his hands. Consequently, Holloway did not pose an immediate safety threat to Renegar, despite Renegar's knowledge that Holloway had knives at his campsite. *See id.* Additionally, Holloway was alone when Renegar returned to the campground. Even if it was reasonable for the officers to believe that Holloway had been assaulting the girl who the campers heard screaming, he was not presently a threat to her. *See id.*

Because Holloway did not pose an immediate threat to the officers or the alleged domestic violence victim, Renegar could not use more than a trivial amount of force. *See id.*; *Nelson*, 685 F.3d at 881. There is no Ninth Circuit caselaw establishing that a punch is more than non-trivial force; however, it does not matter that no case directly addresses a particular type of force. "[A]n officer is not entitled to qualified immunity solely on the grounds that the law is not clearly established every time a novel method is used to inflict injury." *Mendoza v. Block*, 27 F.3d 1357, 1362 (9th Cir.1994). The Ninth Circuit has ruled that tasers, *Gravelet-Blondin*, 728 F.3d at 1095, baton strikes, *Young*, 655 F.3d at 1160, pepper spray, *Headwaters Forest Defense v. Cnty. of Humboldt*, 276 F.3d 1125 (9th Cir. 2002), and bean bag projectiles, *Deorle v. Rutherford*, 272 F.3d 1272, 1281 (9th Cir. 2001), all constitute non-trivial force. A punch to the face is similar to those types of non-trivial force, both in its capability to impose immediate pain as well as lasting damage, so it too constitutes non-trivial force. Accordingly, Renegar's decision to punch Holloway—who, at that point, was showing his hands, verbally challenging Renegar, and refusing a demand to get on the ground—violated clearly established law.

In sum, because a reasonable jury could find that Renegar punched Holloway in the face, and because such force violated clearly established law, Renegar is not entitled to qualified immunity. Thus, the Court **DENIES** Renegar's Motion and upholds the jury's verdict finding that he did exhibit excessive force against Holloway.

### 3.    Punitive Damages Award against Renegar

The jury award Holloway $337,000 in general damages and $45,000 in punitive damages against Renegar. *See generally* Redacted Special Verdict. Defendants argue that Plaintiff failed to meet his burden to justify an award of punitive damages. Renegar's Motion at 17.

Punitive damages are appropriate under Section 1983 when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others. *Morgan v. Woessner,* 997 F.2d 1244, 1255 (9th Cir. 1993). "[A] challenge to the sufficiency of the evidence to support a punitive damage award must be rejected if the award is supported by substantial evidence." *Binkovich v. Barthelemy,* 672 Fed.Appx. 648, 650 (9th Cir. 2016) (citing *Fair Hous. of Marin v. Combs*, 285 F.3d 899, 907 (9th Cir. 2002)). Under the Due Process Clause of the Fourteenth Amendment, the determination of whether punitive damages are excessive turns on several factors, including the egregiousness of the conduct, the proportionality between punitive and compensatory damages awards, and the amount of the punitive damages awarded or upheld in similar cases. *See State Farm Mut. Automobile Ins. Co. v. Campbell*, 538 U.S. 408, 418 (2003).

As applied to the facts of this case, these factors do not warrant reversal as to punitive damages. Viewing all the evidence in favor of Plaintiff, substantial evidence supports the jury's finding that Renegar acted with callous indifference when he punched Plaintiff in the face, choked him while forcing him to the ground, and struck him in the side multiple times. Because "reasonable minds might accept [this evidence] as adequate to support [the jury's conclusion]," the Court declines to disturb the punitive damages award. *See Binkovich,* 672 Fed.Appx. at 650 (reversing the district court's decision to strike a punitive damages award in an excessive force case, holding that testimony of overt cruelty was not required where reasonable minds could find the evidence adequate to support the jury's conclusion).

Defendants also argue the punitive award is improper given Renegar's financial circumstances. Renegar's Motion at 21. Under federal law, "ability to pay is of some importance" in assessing the propriety of a punitive damages award, "but it is not dispositive."

*Rodriguez v. Cty. Of Los Angeles*, 891 F.3d 776, 806 (9th Cir. 2018) (quoting *Tri-Tron Int'l v. Velto*, 525 F.2d 432, 438 (9th Cir. 1975)). The Ninth Circuit has stated that it is appropriate to take an individual's ability to pay into account in assessing the excessive nature of a punitive damages award, *see Swinton v. Potomac Corp.*, 270 F.3d 794, 819 (9th Cir. 2001), as well as "any indemnification by the County for the payment of such damages," *see Bell v. Clackamas County*, 341 F.3d 858, 868 (9th Cir. 2003). But Defendants have not put forth sufficient evidence that this award—amount to roughly one-eight of the compensatory award—would cause financial hardship beyond noting that Renegar has three children. *See* Renegar's Motion at 21-22. The Ninth Circuit has upheld significantly higher punitive damages in similar cases. *See Willis v. Vasquez*, 648 F. App'x 720, 724 & n.1 (9th Cir. 2016) (affirming $165,000 in punitive damages and $125,000 in compensatory damages in an excessive force case against the County of Los Angeles and individual LASD officials working in the jail); *Rodriguez v. County of Los Angeles,* 891 F.3d 776, 806 (9th Cir. 2018) (upholding punitive awards ranging from $15,000 to $70,000 against multiple defendants, noting they were modest in comparison to the compensatory damages and significantly lower than the punitive award sustained in *Willis*).

Thus, the Court finds there was sufficient evidence to support the jury's punitive damages award and thus **DENIES** Renegar's Motion on these grounds.

### 4.    Request for Remittitur on the Jury's Compensatory Damages Award

Defendants argue that the Court should reduce the jury's damage award of $337,000 in compensatory damages. *See generally* Defendants' Remittitur Brief. Specifically, they contend that the jury may have been confused and awarded excessive damages based on Plaintiff's counsel's references to the taser as excessive force. Defendants' Remittitur Brief at 5. Defendants further argue that, because the jury did not specify the basis for its verdict, it is unclear whether the compensatory damages were tied to Renegar's punch. Defendants' Remittitur Brief at 6. They also challenge the emotional distress testimony elicited by Plaintiff's counsel. *Id.*

The jury's verdict must be upheld unless the amount is "grossly excessive or monstrous, clearly not supported by the evidence, or based only on speculation or guesswork." *Harper v. City of Los Angeles*, 533 F.3d 1010, 1028 (quoting *Del Monte Dunes at Monterey, Ltd. v. City of Monterey*, 95 F.3d 1422, 1435 (9th Cir. 1996)). The Ninth Circuit has emphasized that there "must be an upper limit" to every damages award." *Bell v. Williams,* 108 F.4th 809, 830-31 (9th Cir. 2024). Otherwise, the compensatory damages could go beyond their compensatory function and turn punitive. *Id.* at 831. The Courts are to consider two factors when determining whether an award is grossly excessive: the evidence presented at trial and awards in comparable cases. *Id.* at 832. The evidence presented at trial is to be given "foremost priority in assessing the reasonableness of a damages award." *Id.* And if the evidence is sufficient to support even a high award, then there is no need to compare cases. *Id.*

As to the sufficiency of the damages, the Supreme Court has stated that Section 1983 damages may include "impairment of reputation, personal humiliation, and mental anguish and suffering." *Tortu v. Las Vegas Metro. Police Dep't,* 556 F.3d 1075, 1086 (9th Cir.2009) (quoting *Memphis Cmty. Sch. Dist. v. Stachura,* 477 U.S. 299, 307, 106 S.Ct. 2537, 91 L.Ed.2d 249 (1986)). "[C]ompensatory damages may be awarded for humiliation and emotional distress established by testimony or inferred from the circumstances, whether or not plaintiffs submit evidence of economic loss or mental or physical symptoms." *Tortu,* 556 F.3d at 1086 (quoting *Johnson v. Hale,* 13 F.3d 1351, 1352 (9th Cir.1994)).

The Court cannot know what motivated the jury's award and that is not the question here; the question is the maximum that would fairly compensate Holloway for the emotional distress and pain and suffering he endured. Here, Plaintiff sought damages of $286,500 that were comprised of the following:

- Past medical bills: $54,000
- Bail and criminal lawyer, property damage: $7,500
- Loss of wages: estimated $40-60K
- Future damages of medical costs and loss of earning capacity: $165,000.

Plaintiff's Remittitur Brief, Exhibit C.

-23-

As to Defendants' argument that the Court does not know exactly what damages flowed from Renegar's punch, the damages inflicted on Holloway's head are indivisible. It would be impossible to proportion exactly what injuries and costs were caused by Renegar's punch, choking, and takedown to the ground versus another officer kneeing Holloway in the head. This is evidenced by the fact that if the Court were to try and reduce the compensatory damages as they stand because another unidentified officer kneed Holloway in the head, it would have to come up with arbitrary amounts out of thin air. Thus, it makes sense why under federal common law in Section 1983 actions defendants can be jointly and severally liable for any judgment on an indivisible injury. *See Weeks v. Chaboudy,* 984 F.2d 185 (6th Cir. 1993). Although the Ninth Circuit has not directly spoken on this issue, it has found that parties suing under Section 1983 and *Bivens* may be held jointly and severally liable for their actions. *See Hervey v. Estes,* 65 F.3d 784, 792 (9th Cir.1995). Other Circuits have also held that the determination of whether defendants should be held jointly and severally liable depends on whether the plaintiffs' injuries are divisible. *See Harper v. Albert,* 400 F.3d 1052, 1061–62 (7th Cir.2005).

Here, the Court applies the well-established doctrine of joint and several liability: when independent tortious acts of two persons combine to produce an injury indivisible in its nature, either tortfeasor may be held for the entire damage—not because he is responsible for the act of the other, but because of his own act is regarded in law as a cause of the injury. *Jackson v. City of Pittsburg,* 518 Fed.Appx. 518, 520 (9th Cir. 2013) (citing *Husky Ref. Co. v. Barnes,* 119 F.2d 715, 716 (9th Cir. 1941). Under this principle, Renegar is not absolved of liability merely because another, unidentified officer may have also contributed to Holloway's injuries— especially where Renegar's conduct initiated the sequence of events that allegedly included excessive force by the unidentified officer. Accordingly, the Court finds that the injury here is indivisible and that Renegar is jointly and severally liable for the entire compensatory damages award.

Further, Defendants have failed to offer any persuasive evidence undermining the jury's compensatory damages award or challenging the substantial evidence presented at trial.

-24-

Notably, Plaintiff did not seek an outsized or emotionally inflated sum. Rather, Plaintiff's request for damages was modest—roughly in line with the cost of medical treatment and wages lost by Holloway. That the jury ultimately awarded a greater amount than Plaintiff requested only underscores the credibility and impact of the trial evidence.

This conclusion is reinforced by comparing the award here to compensatory damages upheld in similar excessive force cases. In *Webb v. Ackerman,* the plaintiff was rendered unconscious by the use of force and required hospitalization—facts that parallel Holloway's experience. No. CV 13-9112-PLA, 2017 WL 5665001 at *2 (C.D. Cal. Spet. 26, 2017). In both cases, the plaintiffs testified to enduring emotional harm. *See id.* There, the jury awarded $600,000 in compensatory damages, and the district court denied remittitur, citing serious physical injuries and long-term psychological consequences. *Id.* at *8. The Ninth Circuit relied on *Webb* in *Bell v. Williams,* 108 F.4th 809, 834 (9th Cir. 2024)*,* where it found a $504,000 award grossly excessive because the plaintiff had endured a significantly lower degree of force, no need for medical care, and no lasting harm. The Ninth Circuit also referenced *Cervantes v. County of Los Angeles,* No. 12-cv-9889, 2015 WL 5163031 (C.D. Cal. Sept. 3, 2015)*,* an unappealed case where a jury awarded $900,000 to a plaintiff who was punched, tackled, and jailed. Although his physical injuries—such as a swollen eye, contusions, and abrasions—were relatively minor, the court found them to have long-term effects and emotional distress. *Id.* at *1-2. Thus, the parties were given the option of a remittitur from $900,000 to $500,000 or a new trial. *Id.* at *3.

Here, Holloway's injuries are more comparable in severity to those in *Webb* and *Cervantes,* yet the jury awarded significantly less than in those cases. Thus, there is no indication of excessiveness akin to *Bell*, and the Court finds no basis to disturb the jury's award.

## III. Plaintiff's Motion for a New Trial

### A. Legal Standard

Rule 59(a) permits a court to grant a new trial after a jury trial "on all or some of the issues . . . for any reason for which a new trial has heretofore been granted in an action at law in

federal court." Fed. R. Civ. P. 59(a)(1)(A). Granting a new trial is left to the sound discretion of the trial court. *See Browning-Ferris Indus. v. Kelco Disposal*, 492 U.S. 257, 278 (1989).

"The trial court may grant a new trial only if the verdict is contrary to the clear weight of the evidence, is based upon false or perjurious evidence, or to prevent a miscarriage of justice." *Passantino v. Johnson & Johnson Consumer Prods.*, 212 F.3d 493, 510 n. 15 (9th Cir.2000). Specifically, the historically recognized bases for a new trial include, but are not limited to: (1) a verdict against the clear weight of the evidence, *Landes Constr. Co. v. Royal Bank of Canada*, 833 F.2d 1365, 1371 (9th Cir. 1987); (2) evidence discovered after trial that would not have been uncovered earlier through the exercise of due diligence, and that is of such magnitude that its production at trial would likely have changed the outcome of the case, *Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 992–93 (9th Cir. 2001) (citing *Defs. of Wildlife v. Bernal*, 204 F.3d 920, 929 (9th Cir. 2000)); (3) jury misconduct; and (4) error in law that has affected the substantial rights of a party, such as erroneous jury instructions, *Murphy v. City of Long Beach*, 914 F.2d 183, 187 (9th Cir. 1990), or erroneous evidentiary rulings, *Obrey v. Johnson*, 400 F.3d 691, 701 (9th Cir. 2005); *see also* Fed. R. Civ. P. 61.

When evaluating whether a verdict is against the clear weight of the evidence, the district court may "weigh the evidence and assess the credibility of witnesses, and need not view the evidence from the perspective most favorable to the prevailing party." *Landes*, 833 F.2d at 1371. At the same time, it is generally expected that a judge will grant motions for a new trial only when the judge has given full respect to the jury's findings but is left with the firm conviction that a mistake has been committed. *Id*. at 1371–72.

**B. Analysis**

Defendants argue that a new trial is warranted based on: (1) the Court's alleged errors on multiple evidentiary rulings; (2) their claim that the punitive damages award requires retrial; and (3) prejudicial misconduct by Plaintiff's counsel during trial. *See generally* Motion for a New Trial. Each issue is addressed in turn.

### 1. Alleged Errors in the Court's Evidentiary Rulings

"A new trial is only warranted when an erroneous evidentiary ruling 'substantially prejudiced' a party." *Ruvalcaba v. City of Los Angeles,* 64 F.3d 1323, 1328 (9th Cir.1995) (citation omitted).

First, Defendants take issue with the Court's decision to exclude evidence of alternative sources of Plaintiff's emotional distress, arguing that this exclusion was improper given Plaintiff's counsel's repeated violation of Court orders. Motion for a New Trial at 11. Prior to trial, the parties agreed, and the Court incorporated into its pretrial rulings, that emotional distress damages would not be claimed beyond the mutually agreed date of July 2018. Order re Pretrial Motions (Dkt. 778) at 9; Declaration of S. Frank Harrell re Motion for New Trial ("Harrell Decl."), Exhibit K (Dkt. 846-2) at 9. Defendants now contend that Plaintiff's counsel violated this limitation on two separate occasions during trial.

Defendants point to the direct examination of Plaintiff's mother, Ms. Tafoya. Motion for a New Trial at 12. Plaintiff's counsel began asking Holloway's mother what credit card she had given him and after an objection the Court stated that the questioning was "getting peripheral . . . I think the damages surrounding the incident, the credit card I'm going to exclude." *Id.* Yet Plaintiff's counsel continued to ask Holloway's mother how much money she has lent to Holloway to date, whether this money was on her credit card, discussed his homelessness during periods of time after the agreed upon dates, and discussed a stroke and heart surgery he had after the agreed upon date. *Id.* Defendants take issue with this testimony, arguing that the Court improperly denied their request to introduce evidence of Holloway's post-cutoff arrest—specifically, an incident involving the alleged assault of a female neighbor. Motion for a New Trial at 14. They contend that this prevented them from presenting an alternate explanation for Holloway's emotional distress and from offering counterevidence regarding the source of his stress. *Id.*

This was discussed at length between the Court and counsel outside the presence of the jury. *See* Harrell Decl., Exhibit K. The Court asked Defense counsel about their concerns and whether they objected during the questioning, to which they responded that they did not

-27-

because they did not want to be disrespectful to a "grieving mother." Harrell Decl., Exhibit K at 15-16. When counsel fails to object to alleged misconduct during trial, courts review conduct for plain error, which requires: "(1) an error, (2) the error is plain or obvious, (3) the error was prejudicial or effects substantial rights, and (4) review is necessary to prevent a miscarriage of justice." *Hemmings v. Tidyman's Inc.*, 285 F.3d 1174, 1193 (9th Cir. 2002) (citations omitted). This higher threshold is warranted because when an objection is properly made, the district court can admonish counsel or issue a curative instruction, if necessary, and prevents rewarding a party for awaiting the verdict and "sit[ting] silent in the face of claimed error." *Id*. In assessing whether the misconduct prejudiced the moving party, courts "consider 'the totality of circumstances, including the nature of the comments, their frequency, their possible relevancy to the real issues before the jury, the manner in which the parties and the court treated the comments, the strength of the case, and the verdict itself.'" *Id*.

Even if there was plain error that testimony was elicited about events occurring after the agreed-upon cutoff date, the error did not substantially affect Defendants' rights so as to result in a miscarriage of justice warranting a mistrial. The Court acknowledged during its colloquy with counsel that the testimony should not have come in but concluded that the error was "curable." Harrell Decl., Exhibit K at 14. Although Defendants moved for a mistrial at that time, the Court determined that the appropriate remedy was to admonish Plaintiff's counsel and issue a curative instruction to the jury not to consider any post-cutoff stressors.

During this discussion, the Court noted that ordering another trial would unfairly punish Plaintiff, and further pointed out that Defense counsel failed to timely object, depriving the Court of an earlier opportunity to cure the issue. Harrell Decl. at 51. The Court stated that it would instruct the jury to disregard any evidence of events occurring after the agreed-upon date and reminded Plaintiff's counsel to comply with prior orders, while also admonishing Defendants to timely object. Harrell Decl., Exhibit K at 52.

The following morning, before trial resumed, the Court instructed the jury that damages were to be limited to the previously agreed time period. May 7 Tr. 10:17-25. Specifically, the

jury was instructed to disregard testimony from Plaintiff's mother regarding the heart attack, stroke, and homelessness. This limiting instruction was also repeated at the conclusion of trial.

Jurors are presumed to follow instructions. *Deck v. Jenkins*, 814 F.3d 954, 979 (9th Cir. 2016) (citing *Weeks v. Angelone*, 528 U.S. 225, 234, 120 S.Ct. 727, 145 L.Ed.2d 727 (2000)). Given this strong presumption and considering that the alternative—allowing Defendants to introduce evidence of Holloway's post-cutoff arrest for allegedly holding a female neighbor at knifepoint during a domestic violence incident—would have been highly prejudicial, the Court reasonably concluded that any prejudice caused by Plaintiff's counsel's improper remarks was adequately cured. Accordingly, no miscarriage of justice occurred.

Second, Defendants argue that Plaintiff's counsel violated the parties' prior agreement by posting unredacted medical billing summaries that included psychological treatment after July 2018. Motion for a New Trial at 15. The records at issue comprise a voluminous collection of billings spanning various time periods and medical providers. *See* Harrell Decl., Exhibit N. Although Defendants objected when they were posted, the Court overruled the objection, clarifying that the records were admitted solely for the purpose of establishing physical injuries—not to support claims of emotional distress. Harrell Decl., Exhibit M at 137. Moreover, Defendants have failed to identify any testimony by Holloway in which he used these records to seek emotional distress damages based on treatment received after the agreed-upon date.

Third, Defendants again take issue with Plaintiff's counsel's references to Renegar's use of the taser. Motion for a New Trial at 18. As previously discussed, the Court has already analyzed this issue and concluded that the admitted evidence did not justify altering the verdict against Renegar, as any potential prejudice was adequately addressed through curative jury instructions. That conclusion applies equally here. Accordingly, the Court finds no substantial prejudice resulted from this evidentiary ruling, and it does not provide grounds for granting a new trial.

Fourth, Defendants take issue with the testimony related to Renegar's prior criminal misdemeanor conviction. Motion for a New Trial at 21. Renegar was previously convicted of a

misdemeanor violation of California Government Code section 1222. Per a pretrial Order, Plaintiff was permitted to introduce evidence of Renegar's prior criminal matter in an effort to establish that he has a character trait of dishonesty or untruthfulness. Order re Pretrial Motions at 3. Defendants argue that this admission of evidence is impermissible under FRE Rule 609, 608, and 404. Motion for a New Trial at 22-24. In the Court's pretrial Order, the Court ruled that this misdemeanor involved admitting a "dishonest act or false statement" and thus was admissible under Rule 609(a)(2). Order re Pretrial Motions at 3. Defendants argue that the misdemeanor did not require proof of an act of dishonesty or a false statement nor did Renegar admit to any such dishonest act or false statement. Motion for a New Trial at 22.

This misdemeanor was based on allegations that Renegar filed a false police report concerning a stolen license plate. Defendant Renegar's Motion in Limine No. 4 (Dkt. 734) at 6. The charges were dismissed in exchange for Deputy Renegar's guilty plea for violating California Government Code § 1222, a misdemeanor. *Id.* The factual basis for this plea offered by Renegar was: "On or about 5/24/19, while in Orange County, I willfully and unlawfully omitted to perform a duty legally required of me as a peace officer." *Id.*

The Ninth Circuit has explained that "dishonesty or false statement" means "crimes such as perjury or subornation of perjury, false statement, criminal fraud, embezzlement, or false pretense, or any other offense in the nature of crimen falsi, the commission of which involves some element of deceit, untruthfulness, or falsification bearing on the accused's propensity to testify truthfully." *United States v. Ortega*, 561 F.2d 803, 806 (9th Cir. 1977). When a conviction falls in that category, its admission "is not within the discretion of the court" because "[s]uch convictions are peculiarly probative of credibility and, under this rule, are always to be admitted." *Id.*

In looking to the 2006 amendment of Federal Rule of Evidence 609(a)(2), it is apparent that the language chosen as to admitting crimes where "it readily can be determined that the elements of the crime, as proved or admitted, required an act of dishonesty or false statements" was written to admit crimes such as in this instance. FED R. EVID. 609(a)(2) (emphasis

added). This language was intended to allow some limited inquiry behind the elements of a conviction. The Committee explained by example that:

> evidence that a witness was convicted of making a false claim to a federal agent is admissible under this subsection regardless of whether the crime was charged under a section that expressly references deceit (e.g., 18 U.S.C. § 1001, Material Misrepresentation to the Federal Government) or a section that does not (e.g., 18 U.S.C. 1503, Obstruction of Justice).

FED. R. EVID. 609(a)(2) advisory committee's note.

In light of this information, even though the plea facts or the elements of the crime on their face do not explicitly appear to involve dishonesty, a cursory look into the facts demonstrates that falsifying a police report is a "false statement" and therefore admissible under Rule 609. Thus, the Court finds no issue with this ruling.

Fifth, Defendants take issue with the evidence related to Renegar's prior use of force. Motion for a New Trial at 24. In pretrial motions, the Court allowed the introduction of evidence related to two prior uses of force by Renegar. Order re Pretrial Motions at 6. Defendants argue that this evidence was irrelevant, more prejudicial than probative, and was improperly offered to show Renegar acted in conformity with a certain character trait on a particular occasion. Motion for a New Trial at 24.

The Court previously ruled in relation to the exhibits concerning these uses of force the following:

Ex. 79 (use of force report No. 15-264401, 11/14/2015 against inmate Andy Onwuka): On November 14, 2015, Deputy Renegar is alleged to have punched inmate Andy Onwuka in the head among other uses of force. Renegar's supervisors, Sgt Vega and Lt. Cataline, found that Renegar's incident report was inconsistent with video of the altercation and recommended an IA investigation into Renegar's conduct and report. The IA investigation subsequently cleared Renegar.

Ex. 80 (use of force report No. 16-195376, 7/29/2016 against inmate Alfredo Luna): On July 29, 2016, Deputy Renegar is alleged to have pushed inmate Alfredo Luna with both hands

-31-

without provocation. As with the prior exhibit, Renegar's found that his report was inconsistent with the video of the interaction. A subsequent departmental review found that Renegar violated an Orange County Sheriff's Department policy as to accurate documentation of uses of force. Renegar was formally reprimanded by the IA for this incident. Order re Pretrial Motions at 6-7.

The Ninth Circuit has held that Rule 608(b) permits impeachment "only by specific acts that haven not resulted in a criminal conviction." *U.S. v. Osazuwa,* 564 F.3d 1169, 1175 (9th Cir. 2009). Under Federal Rule of Evidence 608(b), specific instances of a witness's conduct may be inquired into on cross-examination if they are probative of the witness's character for truthfulness or untruthfulness. "[E]vidence may be admitted if: (1) the evidence tends to prove a material point; (2) the other act is not too remote in time; (3) the evidence is sufficient to support a finding that defendant committed the other act; and (4) (in certain cases) the act is similar to the offense charged." *U.S. v. Bailey*, 696 F.3d 794, 799 (9th Cir. 2012) (quoting *U.S. v. Romero*, 282 F.3d 683, 688 (9th Cir. 2002)). The Court may also exclude evidence under Federal Rules of Evidence 403 if it would be cumulative or confuse the issues, and these concerns substantially outweigh the evidence's probative value.

These rules are particularly relevant here because Renegar's credibility is central to the case, as he both allegedly initiated force against Plaintiff and authored the incident report justifying that use of force. Additionally, the actual interaction between Plaintiff and the officers was not caught on camera, so the determination of what happened comes down to credibility determinations in front of the jury.

In the prior incidents above, Renegar submitted reports that were contradicted by video evidence. In one instance, he was formally reprimanded by Internal Affairs for inaccurate documentation. These are not mere allegations of prior bad acts; they directly concern Renegar's honesty in reporting uses of force. These use of force incidents are relevant to Renegar's truthfulness and credibility in writing reports regarding his use of force. Thus, the Court finds that both incidents are admissible to attack Defendant Renegar's credibility under Rule 608(b) and 404(b)(2). This is precisely the type of evidence Rule 608(b) permits.

Additionally, under 404(b)(2), these prior incidents are admissible to demonstrate intent and a pattern of misrepresenting the use of force—an issue central to this case, where they jury must evaluate the credibility of his report in determining what actually occurred.

As to Defendants' argument that this evidence is barred by FRE 403, this Court consistently limited the inquiry into these instances throughout the trial to limit prejudice to Renegar. For example, the Court sustained many of Defendants' counsel's objections when these incidents were used inappropriately. *See* Reporter's Tr. at 95–97, vol. 1, Jury Trial Day 8, May 12, 2025, 8:34 a.m., Santa Ana, Cal.

In light of the foregoing, the Court finds that none of the evidentiary rulings raised by Defendants, whether considered individually or cumulatively, resulted in substantial prejudice or a miscarriage of justice, and therefore, they do not warrant a new trial.

### 2. Punitive Damages Award

As to the remaining punitive damages against Renegar, the Court **DENIES** granting a new trial on these grounds. As discussed above, the Ninth Circuit has recognized that : "[i]t is well-established that a 'jury may award punitive damages under Section 1983 either when a defendant's conduct was driven by evil motive or intent, or when it involved a reckless or callous indifference to the constitutional rights of others.'" *Morgan v. Woessner,* 997 F.2d 1244, 1255 (9th Cir.1993) (quoting *Davis v. Mason County,* 927 F.2d 1473, 1485 (9th Cir.1991)). The Ninth Circuit has held that a jury's finding on the amount of damages should only be reversed if the amount is "clearly unsupported by the evidence" or "shocking to the conscience." *Brady v. Gebbie*, 859 F.2d 1543, 1557 (9th Cir. 1988).

As analyzed above, the Court did not find grounds to disturb the jury's award of punitive damages against Renegar and the same analysis applies here. It is reasonable that the jury could have found that Renegar's use of force warranted punitive damages; thus, they do not shock the conscious. As such, there is no grounds here to award a new trial.

### 3. Plaintiff's Counsel's Prejudicial Misconduct During Trial

This case has been riddled by repeated noncompliance, defiance of Court Orders, and persistent misconduct by Plaintiff's counsel. The Court has made extraordinary efforts to

ensure a fair trial—not once, but four times—in the hope that these issues could be corrected. But the Court's willingness to retry this case must yield when doing so imposes an undue burden and begins to prejudice Plaintiff's ability to have his claims tried fairly. If anything, the repeated trials have demonstrated that relitigating has no effect on counsel's conduct or her continued disregard for this Court's Orders. By the fourth trial, the Court had ample notice of counsel's conduct and was able to employ curative measures that effectively mitigated substantial prejudice that would rise to the level of warranting a new trial.

Plaintiff's counsel's misconduct is not limited to interactions with this Court but appears to be a recurring issue in front of any judicial officer. This pattern is evidenced by repeated instances of inappropriate behavior before the Magistrate Judge in this case. Magistrate Judge Douglas F. McCormick recommended to this Court that Plaintiff be sanctioned for misconduct during discovery. Order re: Defendant's Motion for Sanctions ("Magistrate Sanctions Order") (Dkt. 144).

In that Order, Magistrate Judge McCormick found that Plaintiff's counsel disrupted depositions and made inappropriate comments about the Court. *See generally* Magistrate Sanctions Order. Despite being previously admonished for slamming her fists on the table, Plaintiff's counsel later stood up and threw documents across the deposition table in the direction of Defendants' counsel and deposition staff. Magistrate Sanctions Order at 24. During questioning, she repeatedly threatened to leave and became so argumentative that the court reporter was unable to read back counsel's questions, prompting Defendants' counsel to request judicial intervention. Magistrate Sanctions Order at 25.

Plaintiff's Counsel also made multiple statement during the deposition indicating that she did not care "what one specific judge says or does not do." Magistrate Sanctions Order at 26. This conduct followed a prior incident where she disconnected from a hearing before it concluded without the Court's permission. *See* Minutes Order re Motions to Compel (Dkt. 86) at 6.

A motion for a new trial based on attorney misconduct should only be granted "where the flavor of misconduct sufficiently permeates an entire proceeding to provide conviction that

the jury was influenced by passion and prejudice in reaching its verdict." *Settlegoode v. Portland Pub. Schs.*, 371 F.3d 503, 516-17 (9th Cir. 2004) (cleaned up) (quoting *Kehr v. Smith Barney*, 736 F.2d 1283, 1286 (9th Cir. 1984)); *see also Anheuser-Busch, Inc. v. Nat. Beverage Distribs.*, 69 F.3d 337, 346 (9th Cir. 1995) ("Where misconduct permeates the proceeding, the jury is 'necessarily prejudiced.'" (citation omitted)). In other words, "[t]o receive a new trial because of attorney misconduct in the civil context, ... 'the moving party must demonstrate adverse counsel's misconduct ... "substantially interfered" with the moving party's interest.'" *S.E.C. v. Jasper*, 678 F.3d 1116, 1129 (9th Cir. 2012) (quoting *Cal. Sansome Co. v. U.S. Gypsum*, 55 F.3d 1402, 1405 (9th Cir. 1995)).

The Court understands Defendant's concerns, and this is a close call in terms of granting a fifth trial because of Plaintiff's counsel's repeated misconduct. But for the reasons stated below, the Court finds it curative measures were sufficient to rectify any substantial prejudice. Some of the curative measures were in the form of jury instructions immediately after inappropriate comments were made. *See Deck,* 528 U.S. at 234 (holding that jurors are presumed to follow instructions). As to the continuous attacks against the Court by Plaintiff's counsel, most of these comments were made outside the presence of the jury and thus had little effect on the proceedings. Counsel's offensive rhetoric, such as wishing a stroke on everyone in the Courtroom or asserting that the defense would "shoot her" or "lynch" her and her client to prevail in the lawsuit, were also mostly made outside the presence of the jury. In comparison, these statements are a far cry from comments in front of the jury found improper in other cases. *Cf. Call Delivery Sys., LLC v. Morgan*, No. 2:20-CV-04637-CBM-PDX, 2022 WL 18143363, at *1 (C.D. Cal. Sept. 20, 2022) (granting new trial in part because defense counsel engaged in ad hominem attacks on plaintiff's counsel, such as counsel engaged in "active and insidious deception"; did something "knowing ... intentionally, and ... deceptively to try and lie to you people"; and carried out "deception," a wrong that "continues to be done to [the defendant] by counsel and his client trying to pretend"); *see also Bird v. Glacier Elec. Coop., Inc.*, 255 F.3d 1136, 1140 (9th Cir. 2001) (granting new trial where "[t]he trial throughout had racial

-35-

overtones that culminated [in] a closing argument by [the plaintiff] that repeatedly appealed to racial and ethnic prejudice").

As to the evidentiary issues raised by Defendants, although the Court does not condone Plaintiff's Counsel's unprofessionalism, many of those concerns have already been addressed throughout this Order. The Court found that any potential prejudice was either cured contemporaneously with appropriate instructions or was ultimately harmless.

Following the Court's ruling on the judgment as a matter of law to remove Gotts, the remaining verdict does not run afoul to the clear weight of the evidence. Indeed, two juries have found liability against the involved officers in the third and fourth trail after the first trial resulted in a hung jury and the second trial resulted in a mistrial because of Plaintiff's blatant disregard of a Court Order. While the Court ultimately determined that liability could not lie against Gotts, there is no legal error remaining that was not addressed or remedied by the Court.

Moreover, the burden of repeated retrials has materially diminished Plaintiff's ability to present his case. For example, Plaintiff can no longer afford to call certain witnesses live, instead relying on Plaintiff's counsel's family members to read transcripts aloud to the jury. While much of this prejudice may be attributable to Plaintiff's counsel, the repeated retrials have not served as an effective remedy for her conduct—instead, they have only penalized Plaintiff and Defendants. At some point, the Court must accept that no amount of do-overs will change Plaintiff's counsel's behavior; the third and fourth time was not the charm. Although a new trial could be justified based on Plaintiff's misconduct alone, the Court concludes that the more fair and appropriate resolution at this stage is not another trail, but rather a modification of the verdict through this Order. Accordingly, the Motion for a New Trial is **DENIED.**

## IV. Disposition

For the foregoing reasons, the Court rules as follows:

- Defendant Jameson Gotts' Motion for Judgment as a Matter of Law is **GRANTED** (Dkt. 833)

- Defendant Chad Renegar's Motion for Judgment as a Matter of Law is **DENIED** (Dkt. 834)

- Defendants' Motion for a New Trial is **DENIED** (Dkt. 845).


DATED: July 24, 2025

*David O. Carter*

DAVID O. CARTER

UNITED STATES DISTRICT JUDGE